UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY TATINTSIAN, on his own behalf and for the benefit of ShopLink Inc., <br><br> Plaintiff, <br><br> -against- <br><br> MIKHAIL VOROTYNTSEV and ELENA VOROTYNTSEV, <br><br> Defendants, <br> and, <br><br> SHOPLINK INC., <br><br> Nominal Defendant. | Case No. 16 Civ. 7203 (GHW)(JLC) <br><br> **THIRD-PARTY COMPLAINT** <br><br> JURY TRIAL DEMANDED |
| MIKHAIL VOROTYNTSEV, <br><br> Third-Party Plaintiff, <br> -against- <br><br> DMITRIY KHMALADZE, ITADAPTER CORPORATION, INC., YOUNIS ZUBCHEVICH and DIABETICA RESEARCH SOLUTIONS, INC., <br><br> Third-Party Defendants. | |

Third-Party Plaintiff Mikhail Vorotyntsev ("Third-Party Plaintiff," or "Vorotyntsev"), by and through his undersigned attorneys, Sher Tremonte LLP, alleges for his third-party complaint against Third-Party Defendants Dmitriy Khmaladze ("Khmaladze"), ITAdapter Corporation, Inc., Younis Zubchevich ("Zubchevich,"), and Diabetica Research Solutions, Inc. (collectively, "Third-Party Defendants"), pursuant to Federal Rules of Civil Procedure 14 and 18, as follows:

## Nature of the Action

1. Vorotyntsev's third-party claims arise from a scheme by Khmaladze, Zubchevich, and Plaintiff Gary Tatintsian ("Plaintiff" or "Tatintsian") to usurp the valuable business plan Vorotyntsev devised and the technology he helped to develop through the company he founded, ShopLink Inc. ("ShopLink").

2. Recognizing ShopLink's potential, Khmaladze and Zubchevich each worked their way into Vorotyntsev's good graces, establishing special relationships of trust – Khmaladze as a trusted Chief Technology Officer of ShopLink and its affiliates and Zubchevich as a trusted corporate advisor for those entities – and obtaining confidential and commercially valuable information from Vorotyntsev. They then exploited that information in violation of their fiduciary duties in order to conspire with Tatintisan to take the company's business plan and technology for themselves.

3. From in or about May 2013 until in or about August 2016, Vorotyntsev caused ShopLink to pay Khmaladze to develop and deploy complex software for ShopLink and its affiliates.

4. From in or about 2014 until in or about August 2016, Vorotyntsev caused ShopLink to pay Zubchevich to advise Vorotyntsev concerning corporate governance issues and implement best business practices for ShopLink and its affiliates.

5. Instead of providing the promised services, Khmaladze and Zubchevich absconded with ShopLink's business plan and technology and conspired with Plaintiff to steal ShopLink's source code, terminate ShopLink's programmers and attempt to launch a competing venture.

6. In his action against Vorotyntsev, Plaintiff alleges that Vorotyntsev falsely represented that ShopLink owned its technology and that Vorotyntsev withdrew money from ShopLink's bank account for his own benefit. Plaintiff's allegations are false.

7. Throughout the relevant period, Vorotyntsev caused ShopLink to transfer money to Khmaladze and Zubchevich as compensation for, respectively, developing ShopLink's technology and putting in place the corporate structure and practices to safeguard that technology.

8. To the extent Plaintiff has stated any claims against Vorotyntsev concerning the purported improper use of ShopLink's funds, Khmaladze and Zubchevich are liable to Vorotyntsev for all or part of those claims.

9. To redress Khmaladze and Zubchevich's tortious conduct and to recover from them in the unlikely event Plaintiff prevails on any of his claims, Vorotyntsev brings third-party claims for contribution, unjust enrichment, breach of fiduciary duty, and civil conspiracy.

## The Parties

10. Third-Party Plaintiff, Mikhail Vorotyntsev, is an individual residing in New York, New York.

11. Upon information and belief, Third-Party Defendant, Dmitriy Khmaladze is an individual residing in Hudson, Ohio.

12. Upon information and belief, Third-Party Defendant, ITAdapter Corporation, Inc. is an Ohio corporation wholly owned by Khmaladze with its principal place of business in Ohio.

13. Upon information and belief, Third-Party Defendant, Younis Zubchevich is an individual residing in Miami, Florida.

14. Upon information and belief, Third-Party Defendant, Diabetica Research Solutions, Inc. is a Delaware corporation wholly owned by Zubchevich with its principal place of business in Miami, Florida.

## Jurisdiction and Venue

15. The original action as initiated and pled by Plaintiff-Counterclaim-Defendant Gary Tatintsian in the Complaint dated September 15, 2016 (the "Original Complaint") purports to arise under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331, 1337 and 1367. A copy of the Original Complaint is annexed hereto as **Exhibit A**.

16. Vorotyntsev interposed his Answer and Counterclaims to the Original Complaint on October 28, 2016. A copy of Vorotyntsev's Answer and Counterclaims is attached hereto as **Exhibit B**.

17. This Court has subject matter jurisdiction over this third-party action pursuant to 28 U.S.C. § 1367 because the claims alleged herein are so related to the claims alleged in the Original Complaint as to form part of the same case or controversy.

18. This Court also has subject matter jurisdiction over this third-party action pursuant to 28 USC § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

19. This Court has personal jurisdiction over Khmaladze and ITAdapter Corporation, Inc. under New York's long arm statute, CPLR § 302, and Federal Rule of Civil Procedure 4.

20. Khmaladze and ITAdapter Corporation, Inc. transacted business within the state of New York, contracted to supply services in the state of New York, and/or committed tortious acts within the state of New York.

21. Khmaladze and ITAdapter Corporation, Inc. committed tortious acts without the state of New York causing injury to a person within the state of New York and they regularly do or solicit business in the state of New York and/or derive substantial revenue from services rendered in the state of New York, and should reasonably expect their conduct to have consequences in the state of New York.

22. This Court has personal jurisdiction over Zubchevich and Diabetica Research Solutions, Inc. under New York's long arm statute, CPLR § 302, and Federal Rule of Civil Procedure 4.

23. Zubchevich and Diabetica Research Solutions, Inc. transacted business within the state of New York, contracted to supply services in the state of New York, and/or committed tortious acts within the state of New York.

24. Zubchevich and Diabetica Research Solutions, Inc. committed tortious acts without the state of New York causing injury to a person within the state of New York and they regularly do or solicit business in the state of New York and/or derive substantial revenue from services rendered in the state of New York, and should reasonably expect their conduct to have consequences in the state of New York.

25. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

**Facts Common to All Claims**

**A. Vorotyntsev Devises ShopLink to Revolutionize E-Commerce**

26.     Mikhail Vorotyntsev is the founder and Chief Executive Officer of ShopLink. Vorotyntsev founded ShopLink on or about May 31, 2012 to effectuate his vision for a novel e-commerce platform.

27.     ShopLink has spent over three years developing technology that has the potential to revolutionize the e-commerce industry.  Conceived by Vorotyntsev, ShopLink's software is designed to allow consumers to introduce products to their friends and followers on social media and invite them to purchase with a single click.  Upon facilitating a sale, a consumer earns a commission.  The consumer's friends and followers then have the ability to introduce the products to their own friends and followers and earn commissions themselves.  Through its multi-tiered referral/reward program, consumers and, in turn, their friends and followers, are incentivized to generate word-of-mouth sales through social networks.

28.     By harnessing the reach of social networks to promote e-commerce, ShopLink's product is designed to help companies convert consumers into massive salesforces and to exponentially increase points of sale.

29.     ShopLink has the potential to earn billions in revenue.

**B. Vorotyntsev Entrusts Khmaladze to Develop Software for ShopLink and Its Affiliates**

30.     In or about January 2013, eight months after founding ShopLink, Vorotyntsev was introduced to Khmaladze.

31.     Khmaladze is an experienced software architect and computer programmer with special expertise in system frameworks that allow multiple servers to work together and run complex programs.

32. Vorotyntsev disclosed his ideas for ShopLink to Khmaladze, and Khmaladze convinced Vorotyntsev that his special skills and expertise would be critical to developing key aspects of ShopLink's technology to render it efficient and scalable.

33. In or about February 2013, Khmaladze began working for ShopLink as its Chief Technology Officer.

34. Vorotyntsev subsequently established AUM Code LLC ("AUM Code") to develop and own source code and create the cluster system that would serve as ShopLink's back-end architecture.

35. AUM Code is a limited liability company comprised of two members, Vorotyntsev, who owns 60 percent, and Khmaladze, who owns 40 percent.

36. IT Adapter LLC is a wholly owned subsidiary of AUM Code. IT Adapter LLC is distinct from the similarly named Third-Party Defendant, ITAdapter Corporation, Inc., which is wholly owned by Khmaladze.

37. IT Adapter LLC oversees certain operations for AUM Code and ShopLink.

38. IT Adapter LLC opened its only bank account on or about March 6, 2015 in New York, New York. From its opening until on or about September 12, 2016, Khmaladze and Vorotyntsev were signatories of the account.

39. Khmaladze became a managing member and the Chief Technology Officer of AUM Code.

40. In connection with his employment by ShopLink and its affiliates, Khmaladze entered into a number of written agreements with ShopLink's affiliates (all of which are governed by New York law and subject to the jurisdiction of New York courts) and supervised

and managed a team of software developers charged with developing the technology to support ShopLink and its affiliates.

41. Over the course of their working relationship, Vorotyntsev relied on Khmaladze's superior knowledge and expertise and entrusted him with confidential and proprietary information concerning his business plan for ShopLink and its affiliates.

42. From in or about May 2013 through in or about August 2016, Vorotyntsev caused ShopLink to pay over $300,000 to Khmaladze and to his company, ITAdapter Corporation, Inc., in order to compensate Khmaladze for the work he promised to perform.

43. Many of the payments made for Khmaladze's benefit were made from the ShopLink bank account through the IT Adapter LLC bank account on which Khmaladze was a signatory, and from which Khmaladze withdrew and transferred funds.

44. The IT Adapter LLC bank account – which received and distributed funds for the purpose of developing and deploying ShopLink's technology – is among the accounts Plaintiff has identified as a recipient of allegedly embezzled and misappropriated funds.

**C. Vorotyntsev Entrusts Zubchevich to Provide Business Advice**

45. Zubchevich is an investment banker and businessman with decades of experience.

46. Vorotyntsev met Zubchevich nearly twenty years ago.

47. In or about 2014, Vorotyntsev engaged Zubchevich as a business advisor. In this capacity, Zubchevich agreed, among other things, to work with other outside professionals and help Vorotyntsev establish a board of directors for ShopLink, organize the corporate structure for ShopLink and its affiliates, review and manage their contracts and create corporate governance policies and procedures to safeguard shareholders and employees.

48. Vorotyntsev worked closely with Zubchevich over the course of several years, frequently communicating with him by phone and Skype from New York and meeting with him in person in New York. During this period, Vorotyntsev entrusted Zubchevich with proprietary and confidential information concerning his business plan and relied on Zubchevich to apply his superior expertise and knowledge to recommend and implement best practices.

49. Over the course of their working relationship, Vorotyntsev caused ShopLink to pay at least $67,000 to Zubchevich and his company, Diabetica Research Solutions, Inc. in order to compensate Zubchevich for the work he promised to perform for ShopLink and its affiliates.

50. At least one bank account controlled by Zubchevich is among those accounts that Plaintiff has identified as a recipient of allegedly embezzled and misappropriated funds.

**D. Khmaladze, Zubchevich, and Tatintsian Devise a Scheme to Usurp ShopLink's Technology**

51. Plaintiff and Counterclaim-Defendant Tatintsian is an art dealer who operates galleries in Moscow and New York.

52. In or about June 2015, Vorotyntsev told Tatintsian about the novel e-commerce platform he had conceived and intended to launch through his company, ShopLink. Tatintsian expressed enthusiasm for ShopLink's innovative business plan and, in or about September 2015, conveyed an interest in investing in ShopLink.

53. Vorotyntsev had introduced Tatintsian to Zubchevich in or about 2000 and reintroduced them in or about March 2016. At that time, Vorotyntsev explained to Tatintsian that Zubchevich was his trusted advisor and was assisting him with corporate governance issues relating to ShopLink and its affiliates.

54. Upon information and belief, Tatintsian spoke regularly with Zubchevich concerning Vorotyntsev and ShopLink.

55. Tatintsian invested in ShopLink in or about April 2016, purchasing a three-percent stake in the company. Tatintsian also expressed interest to both Vorotyntsev and Zubchevich in bringing in certain of his associates as additional investors.

56. From May through August 2016, Tatintsian and Zubchevich repeatedly urged Vorotyntsev to allow Tatintsian's associates to invest in ShopLink.

57. Upon information and belief, Tatintsian told his associates about the enormous profit potential of ShopLink.

58. Tatintsian proposed organizing a meeting in Miami, Florida to be held on August 26, 2016, where he planned to introduce his associates to Vorotyntsev.

59. Vorotyntsev informed Tatintsian and Zubchevich that he did not believe ShopLink needed Tatintsian's investors because ShopLink could attract capital from a reputable private equity firm. Tatintsian and Zubchevich scoffed at Vorotyntsev's suggestion.

60. Vorotyntsev was also concerned that Tatintsian's associates were affiliated with organized crime and would be investing illicit funds. Indeed, Tatintsian informed Vorotyntsev that a Swiss bank had frozen approximately $170 million belonging to one of the potential investors after the investor failed to provide information concerning the origin of the funds.

61. Because of his belief that ShopLink could find other sources of capital and his concerns about Tatintsian's associates, Vorotyntsev declined to attend the meeting in Miami.

62. Upon information and belief, Tatintsian was humiliated by Vorotyntsev's refusal to meet with his associates and angry that Vorotyntsev felt he did not need to rely on Tatintsian's network to launch ShopLink.

63. In response, Tatintsian devised a scheme to use his resources to punish Vorotyntsev, take over ShopLink and usurp its technology.

10

64. Upon information and belief, Tatintsian induced Zubchevich and Khmaladze to sever ties with Vorotyntsev and participate in his scheme.

65. Upon information and belief, Tatintsian paid Zubchevich a substantial salary and gave him the nominal title, "Director of Investments."

66. Upon information and belief, Zubchevich shared with Tatintsian the confidential information he had obtained in the course of serving as Vorotyntsev's trusted business adviser, including information about how Tatintsian could exploit the relationship between Vorotyntsev and Khmaladze for his own benefit.

67. On or about August 30, 2016 – four days after Vorotyntsev refused to meet with Tatintsian's associates in Miami – Tatintsian, acting through counsel, demanded that ShopLink appoint a board of directors made up of directors selected exclusively by Tatintsian. As a three-percent shareholder, Tatintsian had no right to appoint any directors.

68. On or about September 1, 2016, Zubchevich, acting in concert with Tatintsian, contacted Khmaladze by email to malign Vorotyntsev, ShopLink, and their affiliates and to propose reorganizing ShopLink under Tatintsian's direction.

69. Zubchevich represented that he could turn Khmaladze's work into a professional "demo" presentation that would bring in "big money" and that "Gary [Tatintsian] would very much like to work on that[.]"

70. Zubchevich, offered Khmaladze an increased salary and additional benefits to sever ties with Vorotyntsev and work instead with Tatintsian and Zubchevich.

71. Zubchevich affirmed, "I am all in on this plan of Gary's" and invited Khmaladze to call him or Tatintsian "anytime . . . including in the middle of the night."

11

72. On or about September 6, 2016, Tatintsian received copies of ShopLink's bank statements pursuant to an agreement by which Tatintsian agreed to keep them strictly confidential. Upon information and belief, shortly after receiving the statements, Tatintsian sent the statements to Khmaladze, Zubchevich, and others in violation of his agreement.

73. Upon information and belief, beginning on or about September 1, 2016 through the present, Zubchevich has contacted ShopLink investors, alleging that ShopLink is a sham and that Vorotyntsev lied about ShopLink's ownership of the technology.

74. In the days and weeks preceding the filing of his lawsuit, Tatintsian barraged Vorotyntsev with a string of insulting, threatening, and extortionate text messages and phone calls, in one instance calling Vorotyntsev and his wife "insects . . . Parasites which someone has to take care of" and promising "I will handle it."

75. Telegraphing his plans to usurp ShopLink and its technology, Tatintsian wrote to Vorotyntsev, "U will see how easy you will loose [sic] Dmitriy and all you Dreams."

76. Upon information and belief, Tatintsian and Zubchevich communicated with Khmaladze on multiple occasions in an effort to induce him to (i) stop communicating with Vorotyntsev; (ii) prevent Vorotyntsev from accessing ShopLink and AUM Code's proprietary source code and his IT Adapter email account; and (iii) resign as an employee and Chief Technology Officer of ShopLink and its affiliates and work instead for Tatintsian and Zubchevich.

77. On or about September 11, 2016, Khmaladze submitted a resignation letter to Vorotyntsev and terminated Vorotyntsev's access to the Assembla code repository where ShopLink and AUM Code's proprietary source code was stored.

78. Khmaladze also refused to release funds to pay software developers and other expenses necessary to complete the development of ShopLink and AUM Code's technology.

79. On or about September 12, 2016, Khmaladze disavowed his association with AUM Code and IT Adapter and removed Vorotyntsev's access to his IT Adapter email account.

80. Khmaladze subsequently agreed to provide Vorotyntsev with copies of certain source code and his archived email account. However, to date, Khmaladze has refused to provide Vorotyntsev with access to the Assembla code repository. Without such access, ShopLink cannot confirm that Khmaladze returned the complete and current source code and cannot launch its product.

81. On or about September 15, 2016, Tatintsian filed the Original Complaint.

82. On or about October 13, 2016, Khmaladze filed a lawsuit against Vorotyntsev, ShopLink, AUM Code, and IT Adapter, seeking rescission of all agreements entered into by Khmaladze and a declaration that, among other things, ShopLink's technology belongs to Khmaladze rather than to ShopLink, AUM Code, or any of their affiliates.

83. Upon information and belief, Plaintiff is paying for all or part of the legal fees to prosecute Khmaladze's lawsuit so that Plaintiff.

## FIRST CAUSE OF ACTION
**(Contribution against Khmaladze, ITAdapter Corporation, Inc., Zubchevich and Diabetica Research Solutions, Inc.)**

84. Vorotyntsev repeats and realleges each of the foregoing allegations as if set forth fully herein.

85. The Original Complaint alleges that Vorotyntsev is liable to Tatintsian for damages arising from Vorotyntsev's alleged violations of federal securities laws and alleged breach of fiduciary duty, waste, and unjust enrichment.

13

86. Vorotyntsev denies liability on all of Plaintiff's claims in the Original Complaint.

87. Without waiver of his denial of the allegations in the Original Complaint as set forth above, Vorotyntsev incorporates herein by reference the existence of those allegations (but not their truth) as part of the basis for his claim for contribution.

88. Should Vorotyntsev be found liable to Plaintiff for the tortious conduct alleged in the Original Complaint, his liability could arise only, in whole or in part, from the tortious conduct of Khmaladze, ITAdapter Corporation, Inc., Zubchevich, and Diabetica Research Solutions, Inc. Accordingly, Vorotyntsev would be entitled to contribution from Khmaladze, ITAdapter Corporation, Inc., Zubchevich and Diabetica Research Solutions, Inc. who, because of their receipt of funds from ShopLink and their own tortious conduct as alleged herein, are subject to liability for damages for the same alleged injury.

## SECOND CAUSE OF ACTION
**(Unjust Enrichment against Khmaladze, ITAdapter Corporation, Inc., Zubchevich and Diabetica Research Solutions, Inc.)**

89. Vorotyntsev repeats and realleges each of the foregoing allegations as if set forth fully herein.

90. As detailed above, Vorotyntsev caused payments to be made to Third-party Defendants in order to compensate them for services they promised to perform for ShopLink and its affiliates.

91. Third-Party Defendants received and accepted such payments but failed to provide the services as promised.

92. In taking compensation from ShopLink and then failing to provide services in support of ShopLink as promised, Khmaladze, ITAdapter Corporation, Inc., Zubchevich and Diabetica Research Solutions, Inc. have been unjustly enriched.

93.     Vorotyntsev denies that he is any way liable to Tatintsian on account of the matters alleged in the Original Complaint.  Should Vorotyntsev be found liable to Tatintsian for causing funds to be debited or transferred from ShopLink's bank account as alleged in the Original Complaint, then Vorotyntsev would be impoverished as a result Khmaladze, ITAdapter Corporation, Inc. Zubchevich and Diabetica Research Solutions Inc.'s receipt and acceptance of payments from ShopLink's bank account.

94.     Under such circumstances, Third-Party Defendants' enrichment would be at Vorotyntsev's expense.

95.     It would be against fundamental principles of justice, equity, and good conscience for Khmaladze, ITAdapter Corporation, Inc., Zubchevich and Diabetica Research Solutions, Inc. to retain the benefits they wrongfully obtained from ShopLink if Vorotyntsev is required to restore those funds, which he caused to be debited or transferred from ShopLink's bank account.

96.     Under such circumstances, Vorotyntsev would have no adequate remedy at law and Third-Party Defendants should be required to disgorge all benefits obtained from ShopLink as a result of their wrongful conduct.

### THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty against Zubchevich)

97.     Vorotyntsev repeats and realleges each of the foregoing allegations as if set forth fully herein.

98.     Younis Zubchevich owed fiduciary duties, including the duty of loyalty and care to Vorotyntsev because Zubchevich and Vorotyntsev had a special relationship of trust and confidence, pursuant to which Vorotyntsev reposed confidence in Zubchevich.  In particular, Vorotyntsev, reasonably relying on Zubchevich's superior knowledge and expertise in investment consulting and management, disclosed confidential and proprietary information to

Zubchevich with the expectation that Zubchevich would use that information to benefit ShopLink and its affiliates.

99. Zubchevich breached his fiduciary duties to Vorotyntsev by, among other things, willfully neglecting to coordinate corporate records and protocols to support ShopLink's operation as promised and, instead, exploiting his special knowledge of ShopLink's operations to malign Vorotyntsev and ShopLink to investors, induce the departure of ShopLink and AUM Code's Chief Technology Officer and conspire with Tatintsian to oust Vorotyntsev and usurp ShopLink's technology for a competing venture.

100. As a direct and proximate result of Zubchevich's breaches of fiduciary duty, Vorotyntsev has suffered damages in an amount to be proven at trial. In light of the gross, wanton, willful and/or morally culpable conduct alleged herein, these damages include, but are not limited to, punitive damages.

**FOURTH CAUSE OF ACTION**
**(Civil Conspiracy against Zubchevich)**

101. Vorotyntsev repeats and realleges each of the foregoing allegations as if set forth fully herein.

102. As described in the foregoing paragraphs, Khmaladze and Zubchevich have breached their fiduciary duties to Third Party Plaintiff and Tatintsian has aided and abetted those breaches of fiduciary duty.

103. Khmaladze, Zubchevich, and Tatintsian agreed to carry out a scheme to convert ShopLink and AUM Code's technology for their own benefit. They agreed to effect this scheme by depriving Vorotyntsev of his access to and interest in ShopLink and AUM Code's technology in order to place ShopLink's technology and business model in the control of Khmaladze, Zubchevich, and Tatintsian.

104. Khmaladze committed an overt act in furtherance of this agreement by, among other things, disabling Vorotyntsev's access to ShopLink and AUM Code's proprietary source code and his IT Adapter email account and refusing to pay IT Adapter employees or pay third-party expenses necessary for ShopLink and AUM Code to continue to develop their product.

105. Zubchevich committed an overt act in furtherance of this agreement by, among other things, emailing Khmaladze to malign Vorotyntsev, ShopLink, and their affiliates and to propose organizing ShopLink under Tatintsian's direction and offering Khmaladze employment under Tatintsian at an increased salary if he agreed to sever ties with Third-Party Plaintiff and convert ShopLink's technology.

106. Tatintsian committed an overt act in furtherance of this agreement by, among other things, upon information and belief: disclosing ShopLink's confidential bank statements to Khmaladze and others in violation of the express terms of an agreement between Counterclaim Defendant and Vorotyntsev, directing Khmaladze to disable Vorotyntsev's access to ShopLink and AUM Code's proprietary source code and his IT Adapter email account, and offering Khmaladze employment at an increased salary if he agreed to sever ties with Vorotyntsev and convert ShopLink's technology.

107. Khmaladze, Zubchevich, and Tatintsian individually and in conspiracy with each other intentionally participated in the furtherance of this plan and purpose as detailed in the foregoing paragraphs.

108. As a direct and proximate result of Khmaladze, Zubchevich, and Tatintsian's civil conspiracy and their overt acts in furtherance thereof, Vorotyntsev has suffered damages in an amount to be proven at trial. In light of the gross, wanton, willful and/or morally culpable conduct alleged herein, these damages include, but are not limited to punitive damages.

**REQUEST FOR RELIEF**

Third-Party Plaintiff respectfully requests that this Court enter judgment in his favor and against Third-Party Defendants, awarding Third-Party Plaintiff the following relief:

(1) Actual, compensatory, consequential, and/or incidental monetary damages, including interest, in an amount to be determined at trial;

(2) Exemplary, punitive, and/or multiple damages in an amount to be determined at trial;

(3) Reasonable expenses, including attorneys' fees and costs;

(4) Such additional relief, at law and in equity, to which Third-Party Plaintiff is justly entitled and which the Court deems just and proper.

Dated:  New York, New York
        November 11, 2016

                                SHER TREMONTE LLP


                                By:   /s/ Justin M. Sher
                                        Justin M. Sher
                                        Erica A. Wolff
                                80 Broad Street, 13th Floor
                                New York, New York 10004
                                Tel: 212.202.2600
                                jsher@shertremonte.com

                                *Attorneys for Third-Party Plaintiff*
                                *Mikhail Vorotyntsev*