# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY TATINTSIAN, on his own behalf and for the benefit of Shoplink Inc.,<br><br>*Plaintiff*,<br><br>vs.<br><br>MIKHAIL VOROTYNTSEV and ELENA VOROTYNTSEV,<br><br>*Defendants*,<br>and,<br><br>SHOPLINK INC.,<br><br>*Nominal Defendant*. | No. _____ |

**VERIFIED COMPLAINT**

Plaintiff Gary Tatintsian ("Plaintiff" or "Tatintsian") individually, and derivatively on behalf of Shoplink Inc. ("Shoplink"), hereby avers and alleges for his complaint against Defendants Mikhail Vorotyntsev and Elena Vorotyntsev (collectively, "Defendants" or "Vorotyntsevs") as follows:

**Preliminary Statement**

1. Plaintiff is the victim of a fraudulent scheme to induce him to buy common stock of Shoplink. Mikhail Vorotyntsev, Shoplink's CEO and sole board member, perpetrated the scheme. Specifically, Mikhail Vorotyntsev induced Tatintsian to purchase $1.35 million worth of Shoplink common shares by falsely assuring Plaintiff that the investment would be used to fund Shoplink's operations and to help Shoplink exploit valuable technology, which it was

1

supposedly on the verge of launching, that would enable the marketing and sale of goods on social media.

2. Unbeknownst to Tatintsian, Shoplink is actually a vehicle through which Mikhail Vorotyntsev and his wife, Elena Vorotyntsev, bilked Plaintiff and other investors. Mikhail and Elena Vorotyntsev used Shoplink's bank account to fund their lavish lifestyle. Bank records reveal that they misappropriated hundreds of thousands of dollars from Shoplink's bank account for their own personal use, including: paying rent for their $12,000 per month luxury apartment; buying at least $40,000 of luxury goods at Chanel; spending no less than $50,000 at luxury department stores and home furnishing suppliers; withdrawing over $200,000 in cash; making car and car insurance payments; transferring $100,000 to a new lawyer that Mikhail Vorotyntsev retained to represent him personally; and spending lavishly at upscale restaurants, grocery stores, pastry shops, bakeries, chocolatiers, hair salons, wine shops, health food stores, drug stores, and smoke shops.

3. Mikhail and Elena Vorotyntsev embezzled a substantial portion of Tatinsian's investment for their own personal benefit. And these misappropriations increased dramatically—totaling several hundred thousand dollars—after Mikhail Vorotyntsev learned that Tatintsian had hired an attorney and was contemplating legal action. Conscious of his own guilt, Mikhail Vorotyntsev began accelerating the withdrawals before Plaintiff or the authorities were able to freeze Shoplink's account. Mikhail Vorotyntsev then improperly transferred $100,000 of Shoplink funds to his personal defense lawyer, in violation of an agreement expressly prohibiting such a transfer. As a result, little of Plaintiff's investment remains in Shoplink's account, and Shoplink is nowhere close to launching any sales and marketing technology.

4. Plaintiff brings this action to remedy the fraudulent inducement of Plaintiff's purchase of Shoplink stock and Defendants' theft of corporate funds. Specifically, Plaintiff asserts claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against Vorotyntsev for his fraudulent inducement of Plaintiff's stock purchase. Plaintiff also asserts derivatively, on behalf of Shoplink, claims of breach of fiduciary duty against Mikhail Vorotyntsev, waste of assets against Mikhail Vorotyntsev, aiding and abetting breach of fiduciary duty against Elena Vorotyntsev, and unjust enrichment against each Defendant, for their misappropriation, self-dealing and theft of Shoplink's funds and the other misconduct set forth below.

**Jurisdiction and Venue**

5. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331, 1337 and 1367.

6. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Vorotyntsev resides in this District, transacts business in this District, and performed substantial acts in furtherance of the alleged wrongdoing within this District.

7. This Court has personal jurisdiction over Defendants because, *inter alia*: (1) Defendants regularly transact business in New York and have entered into contracts with Plaintiff in New York; and (2) Defendants have committed tortious acts within New York.

8. In connection with the acts, conduct and wrongdoing alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including, but not limited to, the United States mail, interstate telephone communications, and interstate wires.

**Parties**

9. Plaintiff Gary Tatintsian is a United States citizen and taxpayer who resides at 119 West 22nd Street, New York, NY 10011. Plaintiff is the proprietor of an art dealership in New York and Moscow.

10. On information and belief, Defendant Mikhail Vorotyntsev is a dual U.S. and Russian citizen who resides at 139 Wooster Street, New York, NY 10012. At all relevant times, Mikhail Vorotyntsev was Chief Executive Officer and the sole officer and board member of Shoplink.

11. On information and belief, Defendant Elena Vorotyntsev is a dual U.S. and Russian citizen who resides at 139 Wooster Street, New York, NY 10012. Elena Vorotyntsev is neither an officer nor an employee of Shoplink.

12. Nominal Defendant Shoplink Inc. was incorporated in Delaware on May 31, 2012. It purports to have a place of business at 511 Avenue of the Americas, Suite 372, New York, NY 10011. In fact, no work is performed at this address, whose purpose is simply to receive mail.

**Factual Allegations**

A. **Shoplink**

13. Shoplink purports to be a startup company engaged in the development of software that enables the marketing and sale of goods on social media. In 2014, Mikhail Vorotyntsev formed IT Adapter LLC purportedly as the operational subsidiary through which Shoplink would develop and deploy the technology.

14. Mikhail Vorotyntsev did not take seriously his job running the company. Shoplink had no office or employees. Mikhail Vorotyntsev falsely claimed to have university

4

professors on staff developing the business ideas, when in fact Mikhail Vorotyntsev had no such staff. Mikhail Vorotyntsev never understood the technology on which Shoplink's business supposedly was predicated. Shoplink had no revenue. It had no marketing or public relations. Nor did Mikhail Vorotyntsev hire outside auditors or tax advisors. Instead, as set forth in greater detail below, Mikhail Vorotyntsev used Shoplink as a vehicle to raise money from investors and convert the funds for his own personal use.

15. Shoplink has a single bank account at Chase bank (the "Shoplink Bank Account"). Despite having no operational role at Shoplink, Elena Vorotyntsev possessed an ATM and debit card giving her access to funds in the Shoplink Bank Account. Defendants controlled the Shoplink Bank Account. IT Adapter LLC also has a bank account controlled by Mikhail Vorotyntsev.

### B. Vorotyntsev Fraudulently Induces Plaintiff to Purchase Shoplink Shares and Misappropriates Shoplink's Assets

16. Plaintiff met Mikhail Vorotyntsev approximately twenty years ago. Until recently, they maintained a casual acquaintance, but did not communicate regularly or conduct business dealings.

17. In the summer of 2015, Mikhail Vorotyntsev approached Plaintiff about investing in Shoplink. In phone conversations, he told Plaintiff that Shoplink was an internet technology business that would enable the marketing and sale of goods on social media. Mikhail Vorotyntsev claimed that Shoplink owned the intellectual property rights to the technology underlying the business.

18. In fact, Mikhail Vorotyntsev knew that Shoplink did not own the technology. The technology underlying Shoplink's alleged business was in fact developed by Dmitriy Khmaladze, a software developer, during the late 1990s. Khmaladze and other certain engineers

working with him provided certain work and services for Mikhail Vorotyntsev but they were not employed by Shoplink. At one point Khmaladze and Mikhail intended to consummate an arrangement by which Khmaladze would transfer his rights in the technology to an entity affiliated with Vorotyntsev, but that arrangement was not consummated. Khmaladze has since severed ties with Mikhail Vorotyntsev and Shoplink, and he maintains that he continues to own the technology he developed, including the computer coding.

19.     Meanwhile, Mikhail Vorotyntsev was in the process of raising funds from other investors as well. Over a two year span ending January 2016, he convinced 6-7 investors to purchase approximately $1.83 million worth of convertible notes issued by Shoplink pursuant to note agreements.

20.     On April 8, 2016, Tatintsian signed a Subscription Agreement (the "Subscription Agreement"), pursuant to which he purchased 340,000 shares of Shoplink common stock for $1,098,200. The Subscription Agreement was executed by Tatintsian and by Mikhail Vorotyntsev as CEO of Shoplink. Annexed to the Subscription Agreement was the Stockholders' Agreement of Shoplink, Inc. dated as of April 16, 2013 (the "Stockholders' Agreement").

21.     Also on April 8, 2016, the parties entered a separate letter agreement (the "Letter Agreement"), pursuant to which Tatintsian obtained the option to purchase up to 255,000 shares for a purchase price of $2.50, provided the option was exercised within six months of the Subscription Agreement's closing. The Letter Agreement was signed by Plaintiff and by Mikhail Vorotyntsev on behalf of Shoplink. On or about August 11, 2016, Plaintiff purchased an additional 100,000 Shoplink shares for $250,000, bringing his total investment to $1,348,200.

22.     On April 8, 2016, before these agreements were signed, Plaintiff met with Mikhail Vorotyntsev and Michael Campoli of Pryor Cashman, which at the time represented Shoplink, at Pryor Cashman's offices. At this meeting, as he had done previously, Plaintiff requested assurances that Shoplink owned the technology underlying Shoplink's business. Mikhail Vorotyntsev repeated his prior misrepresentation that Shoplink owned the technology. As set forth above, Mikhail Vorotyntsev knew this representation was false, or was reckless with regard to its falsity. Mikhail Vorotyntsev made these misstatements to obtain investment funds that he could use for personal expenditures, as set forth below.

23.     Mikhail Vorotyntsev represented in the Subscription Agreement that Shoplink "is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and has all requisite corporate power and authority to carry on its business as now conducted and as proposed to be conducted."

24.     This representation was false. Because Shoplink owed back taxes to the State of Delaware, it was not in good standing. Vorotyntsev knew the representation was false, or was reckless with regard to its truth, because as the person controlling Shoplink's funds, he knew that the taxes had not been paid.

25.     Mikhail Vorotyntsev represented in the Stockholders' Agreement that Counter Capital LLC, a limited liability company of which Mikhail Vorotyntsev purported to be the managing member, "own[ed] all of the outstanding Shares" of Shoplink. Mikhail Vorotyntsev knew this representation was false. By letter agreement dated June 12, 2012, Mikhail Vorotyntsev had pledged 5% of Counter Capital's shares to Eudora Partners, LLC (in addition to 5% of Mikhail Vorotyntsev's interest in various other companies). Eudora Partners, LLC was a limited liability company managed by Eric Hellige, a Pryor Cashman attorney who had

7

performed work for Shoplink. Mikhail Vorotyntsev pledged the shares to Eudora in exchange for a personal short-term demand loan in excess of $20,000 that Eudora made to Mikhail Vorotyntsev.

26. Mikhail Vorotyntsev represented in the Subscription Agreement that "the net proceeds to the Company from the Shares will be used primarily for working capital to fund [Shoplink's] start-up operations, including the fees and expenses associated with the development of the Company's initial product offerings."

27. Mikhail Vorotyntsev further represented in that Agreement that "most of [Shoplink's] limited resources have and will continue to be spent on startup activities, which will include but not be limited to software development, contacting potential customers, establishing several initial customers, partners and business alliances, exploring marketing contacts, performing certain research and development activities, executing, updating and monitoring its business plan and model, selecting professional advisors and consultants and seeking capital for [Shoplink]."

28. Based on these representations, Tatintsian believed his investment in Shoplink was to be used for legitimate business purposes—to fund the operations of Shoplink's technology startup business and help launch its technology.

29. Unbeknownst to Tatintsian, Mikhail Vorotyntsev did not and never intended to use Tatintsian's investment for a proper business purpose. Even before entering the Subscription Agreement, Mikhail Vorotyntsev looted his companies' bank accounts and siphoned company funds for his own personal use. For example, banking information obtained by Plaintiff reveals that, in November and December 2015, Mikhail Vorotyntsev repeatedly spent corporate funds on personal items, including thousands of dollars transferred to a person unrelated to Shoplink's

business, and charges for Mikhail Vorotyntsev's groceries, purchases at drug stores, and other items that lacked any connection to Shoplink.

30. Shoplink Bank Account records confirm that Mikhail Vorotyntsev's misappropriation scheme intensified after Plaintiff invested in Shoplink. The records show that, soon after receiving Plaintiff's investment, Mikhail and Elena Vorotyntsev stole hundreds of thousands of dollars from the Shoplink Bank Account.

31. Examples of Mikhail and Elena Vorotyntsev's theft include:

- Over $40,000 of purchases at Chanel, a luxury goods retailer

- Over $50,000 of purchases at luxury department stores such as Barneys and Bloomingdales

- Rent for the Defendants' $12,000 per month luxury apartment

- Over $200,000 in cash withdrawals

- A $100,000 transfer to Mikhail Vorotyntsev's personal attorney

- Thousands of dollars spent on car payments and car insurance premiums

- Thousands of dollars spent at various high end home furnishing stores, such as ABC Home and The Line

- Numerous purchases, often occurring multiple times per day and totaling thousands of dollars, at restaurants, chocolatiers, wine stores, pastry shops, grocery stores, "smoke shops," doctors' offices, hair salons, dry cleaners, and drug stores.

32. Put simply, Mikhail and Elena Vorotyntsev treated the Shoplink Bank Account as their own personal account and used it to fund their extravagant lifestyle.

33. Further demonstrating Mikhail and Elena Vorotyntsev's misuse of corporate funds, as of August 1, 2016, the Shoplink Bank Account had a balance of $846,183. Despite receiving Plaintiff's $250,000 follow up investment on August 11, 2016, by month's end the balance had dwindled to $337,094. Shoplink Bank Account statements reveal that $133,902 of these withdrawals or transfers were made for the improper purposes set forth above. Despite

9

having no operational role at the company, Elena Vorotyntsev used her Shoplink debit card to make $86,608 of these August 2016 charges, which included purchases at Chanel, Barneys, ABC Home Furnishings, Bloomingdales, Republic of Fritz, Ligne Roset, Yves St. Laurent, grocery stores, smoke shops, and drug stores. $36,597 of Defendants' improper charges occurred in the 10 days leading up to Plaintiff's August 11 share purchase.

34. By late August 2016, Tatintsian became concerned that Mikhail Vorotyntsev had lied to him and was stealing Shoplink's funds. On August 30, 2016, Tatintsian's counsel wrote to Shoplink's counsel setting forth a list of apparent wrongdoing.

35. The next day, Mikhail and/or Elena Vorotyntsev made withdrawals and transfers from Shoplink's account totaling $460,000. Among these transfers was $290,000 in transfers to IT Adapter LLC. Prior to this transfer, IT Adapter LLC's bank account never had more than approximately $40,000, and typically had less than $20,000. Mikhail Vorotyntsev had previously used this account to make large expenditures for his personal use. The Shoplink Bank Account records also reveal large withdrawals whose purpose does not appear on the face the bank statement. For example, $201,500 in "other withdrawals"—apparently cash withdrawals—was made on August 31, 2016. Plaintiff provided Shoplink and Mikhail Vorotyntsev multiple opportunities to explain these withdrawals, but they have refused to do so. On information and belief, these withdrawals were not made for a valid business purpose.

36. In early September, Plaintiff and Mikhail Vorotyntsev negotiated the terms of an agreement pursuant to which Shoplink would disclose information about its finances to Tatintsian. During these negotiations, Vorotyntsev continued to convert Shoplink funds by using the Shoplift Bank Account to, *inter alia*, make car payments and purchase home furnishings.

10

37. On or about September 6, 2016, Tatintsian and Shoplink entered a Stipulation in which Tatintsian agreed to forgo initiating legal action before September 9, 2016. In exchange, Shoplink was required to provide Tatintsian with its bank statements. Shoplink promised that, before expiration of the Stipulation on September 9, 2016, "no funds will be withdrawn from the Company's bank account for purposes outside of Shoplink's ordinary course of business, which is limited to software development, contacting potential customers, establishing partners and business alliances, and exploring marketing opportunities."

38. On September 7, 2016, Mikhail Vorotyntsev caused Shoplink to transfer funds for purposes not permitted by the Stipulation. Specifically, $100,000 was transferred to Mikhail Vorotyntsev's personal lawyer. This reduced Shoplink's cash on hand to a mere $143,971.

39. There is no legitimate explanation for the depletion of the Shoplink Bank Account. As set forth above, hundreds of thousands of dollars of the withdrawals and transfers are facially improper. In addition, Shoplink's operations were minimal and required little funding. Beginning in April 2016, Shoplink and/or IT Adapter LLC spent approximately $13,000 per month on Khmaladze and his technicians, and $220 per month on servers. Shoplink and/or IT Adapter LLC also made one-time expenditures of approximately $2,000 for computers and less than $1,000 for domain registration between April and August 2016. Based on these monthly and one-time outlays, approximately $70,000 (or less) was spent on Shoplink's operations between April and August 2016— a figure dwarfed by the amount Mikhail and Elena Vorotyntsev converted for their own personal use.

## Demand Futility

40. Plaintiff asserts Counts Two through Five derivatively on behalf of and for the benefit of Shoplink for injuries suffered as a result of Defendants' misconduct.

11

41. Plaintiff will adequately and fairly represent the interests of Shoplink in enforcing its rights.

42. Plaintiff was the owner of stock of Shoplink during all times relevant to Defendants' improper conduct alleged herein, and remains a shareholder of Shoplink and its largest single investor.

43. Mikhail Vorotyntsev is the sole director of Shoplink. Accordingly, to obtain formal authorization for Shoplink to bring suit against Mikhail Vorotyntsev, Plaintiff would require Mikhail Vorotyntsev's approval.

44. Plaintiff did not make a demand on Vorotyntsev prior to instituting this lawsuit, because it would be futile for Plaintiff to issue a demand to Mikhail Vorotyntsev. Demand would be futile because (i) Mikhail Vorotyntsev, as a defendant and the husband of the other defendant, derived a personal financial benefit from the conduct alleged herein and has a direct, personal stake in the outcome of this lawsuit and thus cannot independently assess whether to assert the claims herein, and (ii) the transactions at issue, which were approved by Mikhail Vorotyntsev and which were unrelated to any legitimate corporate purpose, could not possibly have resulted from a valid exercise of business judgment. At the very least, there is reasonable doubt as to whether Mikhail Vorotyntsev can provide an independent assessment of the claims or show that he exercised business judgment with respect to the transactions.

45. First, Mikhail Vorotyntsev is an interested party, and is incapable of an unbiased assessment of this lawsuit, for reasons including the following. Mikhail Vorotyntsev is the sole officer and director of Shoplink and, aided and abetted by his wife Elena, he engaged in rampant self-dealing, improperly converting Shoplink's funds for his own personal use. There is a substantial likelihood that the claims against Mikhail Vorotyntsev will succeed, and thus he and

Elena face a substantial threat of personal liability. Mikhail Vorotyntsev is incapable of objectively assessing claims setting forth his wrongdoing and demanding that he and Elena return the misappropriated funds to the company. Mikhail Vorotyntsev therefore has a personal stake in the outcome of this lawsuit, and he cannot render an independent assessment of the lawsuit.

46. Furthermore, Plaintiff requested that Mikhail Vorotyntsev explain many suspicious transfers made from Shoplink's account. Mikhail Vorotyntsev has refused to provide an explanation, in order to conceal the full extent of his fraudulent scheme.

47. Second, the challenged transactions lacked business judgment for reasons including the following. Defendants converted hundreds of thousands of dollars of Shoplink's funds for their own personal use. Based on the Shoplink Bank Account statements, Defendants funded most, if not all, of their extravagant personal expenditures from the Shoplink Bank Account. These misappropriations include, but are not limited to, large expenditures at luxury retailers and department stores, $12,000 per month rent for Defendants' luxury apartment, car payments, personal insurance payments, large expenditures at high end home furnishing stores, and numerous purchases at restaurants, chocolatiers, wine stores, pastry shops, grocery stores, "smoke shops," doctors' offices, hair salons, dry cleaners, and drug stores. Mikhail Vorotyntsev also violated the Stipulation with Plaintiff by causing $100,000 of Shoplink funds to be transferred to Mikhail Vorotyntsev's personal attorney, in violation of the Stipulation's express prohibition on such a transfer. There was no legitimate purpose for these transactions, and they could only have harmed Shoplink. That is the opposite of business judgment. Any attempt to seek Mikhail Vorotyntsev's approval of a lawsuit challenging this scheme would clearly be futile.

### FIRST CAUSE OF ACTION
### (Against Mikhail Vorotyntsev for Violation of Section 10(b) and Rule 10b-5 Promulgated Thereunder)

48. Plaintiff repeats and realleges the preceding allegations as if fully set forth in this paragraph. This Count is asserted against Mikhail Vorotyntsev for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

49. Mikhail Vorotyntsev: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiff, in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

50. To induce Plaintiff's purchase of Shoplink shares and options, Mikhail Vorotyntsev made the materially false representations set forth above. Mikhail Vorotyntsev knew these representations were false or disregarded with severe recklessness that they were materially false and misleading. The misrepresentations include:

   a. As set forth in ¶¶ 26-27, Vorotyntsev assured Tatintsian that his investment would be used for a proper purpose. Among other representations, Vorotyntsev assured Tatintsian that "the net proceeds to the Company from the Shares will be used primarily for working capital to fund [Shoplink's] start-up operations, including the fees and expenses associated with the development of the Company's initial product offerings." As set forth in ¶¶ 29-39, Vorotyntsev knew these representations were false, or was reckless with respect to their falsity. Vorotyntsev regularly converted substantial funds from Shoplink and/or IT

       Adapter LLC before and after he assured Plaintiff he would not. He made substantial misappropriations soon after providing these assurances. He provided Elena Vorotyntsev a debit card for the Shoplink Bank Account, despite knowing that she had no operational role at Shoplink. And he did not make serious efforts to develop the very start-up operations that Plaintiff's investment was intended to support. At a minimum, Vorotyntsev had a duty to update Plaintiff when Vorotytnsev learned the inaccuracy of his prior representations.

  b. As set forth in ¶¶ 17, 22, Vorotentsev represented that Shoplink owned the technology underlying its business. As set forth in ¶ 18, Vorotentsev knew the representation was false, or was reckless with regard to its falsity. As the founder of Shoplink who had personal dealings with Khmaladze concerning the technology, Vorotyntsev knew that Khmaladze owned the technology.

  c. As set forth in ¶ 25, Vorotyntsev represented that, other than Plaintiff, Counter Capital LLC was Shoplink's only shareholder. As set forth in ¶ 25, Vorotyntsev knew the representation was false, or was reckless with regard to its falsity, because Vorotyntsev knew he had pledged Shoplink equity to a limited liability company controlled by one of Shoplink's lawyers.

51. Plaintiff relied on these misstatements to his detriment. Had Plaintiff known the truth, Plaintiff would not have purchased Shoplink stock or options; or, at a minimum, Plaintiff would not have purchased stock at the price he paid.

52. Plaintiff has been damaged in an amount to be determined at trial, and Vorotyntsev's misstatements were the proximate cause of Plaintiff's damages. Shoplink's operations have been severely damaged by Vorotyntsev's corporate looting. They have left

Shoplink with little cash, and will make raising additional funds impossible. Nor can Shoplink achieve its alleged business objectives without the technology required to achieve them. Shoplink does not own the technology, and the person who does own it has severed ties with Shoplink and Mikhail Vorotyntsev. Finally, the presence of the other, previously unknown shareholder harms Plaintiff. This shareholder has a personal relationship with Vorotyntsev and may be unable or unwilling to take appropriate action against him.

## SECOND CAUSE OF ACTION
### (Against Mikhail Vorotyntsev for Breach of Fiduciary Duty)

53. Plaintiff repeats and realleges the preceding allegations as if fully set forth in this paragraph.

54. Mikhail Vorotyntsev is and was the CEO and sole director of Shoplink during all times relevant to the conduct alleged herein. As CEO and director, he owed Shoplink a fiduciary duty of loyalty.

55. Mikhail Vorotyntsev breached his fiduciary duty to Shoplink in the manner set forth above including, without limitation, by misappropriating Shoplink funds for his own personal use and engaging in self-dealing.

56. As a direct result of the foregoing breaches of fiduciary duty, Shoplink was damaged in an amount to be proved at trial. In light of the gross, wanton, willful and/or morally culpable conduct alleged herein, these damages include, but are not limited to, punitive damages.

## THIRD CAUSE OF ACTION
### (Against Mikhail Vorotyntsev for Waste)

57. Plaintiff repeats and realleges the preceding allegations as if fully set forth in this paragraph.

58. By misappropriating Shoplink funds for his own personal use and providing no or nominal consideration to Shoplink, Mikhail Vorotyntsev engaged in waste of Shoplink's assets.

59. As a direct result of this waste, Shoplink was damaged in an amount to be proved at trial. In light of the gross, wanton, willful and/or morally culpable conduct alleged herein, these damages include, but are not limited to, punitive damages.

## FOURTH CAUSE OF ACTION
### (Against Elena Vorotyntsev for Aiding and Abetting Breach of Fiduciary Duty)

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth in this paragraph.

61. Mikhail Vorotyntsev is and was the CEO and sole director of Shoplink during all times relevant to the conduct alleged herein. As CEO and director, he owed Shoplink a fiduciary duty of loyalty.

62. Mikhail Vorotyntsev breached his fiduciary duty to Shoplink in the manner set forth above including, without limitation, by misappropriating Shoplink funds for his own personal and engaging in self-dealing.

63. At all times relevant to the conduct alleged herein, Elena Vorotyntsev is and was married to Vorotyntsev.

64. Elena Vorotyntsev knew that Mikhail Vorotyntsev, by virtue of his position, owed a fiduciary duty to Shoplink.

65. Elena Vorotyntsev knowingly participated in Mikhail Vorotyntsev's breach of his fiduciary duty to Shoplink by knowingly misappropriating Shoplink funds for her own and Mikhail Vorotyntsev's uses, which were unrelated to any legitimate Shoplink business.

66. Elena Vorotyntsev knowingly withdrew funds from the Shoplink Bank Account and personally used Shoplink funds through an ATM and debit card despite having no business or operational role at Shoplink.

67. As a direct result of Vorotyntsev's breach of his fiduciary duty and Elena's aiding and abetting of that breach, Shoplink has suffered financial damages in an amount to be proven at trial. In light of the gross, wanton, willful and/or morally culpable conduct alleged herein, these damages include, but are not limited to, punitive damages.

## FIFTH CAUSE OF ACTION
**(Against Mikhail Vorotyntsev and Elena Vorotyntsev for Unjust Enrichment)**

68. Plaintiff repeats and realleges the preceding allegations as if fully set forth in this paragraph.

69. Defendants have been unjustly enriched by receiving unauthorized and unjustified personal financial benefits as a result of their misappropriation and embezzlement of Shoplink funds for their own personal and family uses and in breach of Vorotyntsev's fiduciary duty of loyalty to Shoplink.

70. Shoplink has been impoverished as a result of Defendants' misappropriation and embezzlement of Shoplink funds.

71. It would be against fundamental principles of justice, equity, and good conscience for Defendants to retain the benefits they wrongfully obtained from Shoplink.

72. Defendants should be required to disgorge all benefits obtained from Shoplink as a result of their wrongful conduct.

73. Plaintiff and Shoplink have no adequate remedy at law.

## Prayer for Relief

WHEREFORE, Plaintiff prays for judgment as follows:

A. Awarding Plaintiff monetary damages, including interest;

B. Awarding Plaintiff's counsel reasonable costs and attorneys' fees;

C. Awarding Shoplink monetary damages, including interest and punitive damages;

  D. Insofar as Defendant is unable to satisfy damages awards to both Plaintiff and Shoplink, awarding Shoplink priority in the satisfaction of a judgment;

  E. Disgorgement of all benefits wrongfully obtained from Shoplink;

  F. Awarding such equitable/injunctive relief or other relief as the Court may deem just and proper.

## Jury Demand

Plaintiff demands a trial by jury.

Dated: September 15, 2016
    New York, New York

              Respectfully submitted,

              /s/ Eric S. Olney
              Eric S. Olney
              Fabien Thayamballi
              Shapiro Arato LLP
              500 Fifth Avenue, 40th Floor
              New York, New York 10110
              (212) 257-4880

              *Attorneys for Plaintiff Gary Tatintsian*