# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GARY TATINTSIAN, on his own behalf and for
the benefit of ShopLink Inc.,

                Plaintiff,

    -against-.

MIKHAIL VOROTYNTSEV and ELENA
VOROTYNTSEV,

                Defendants,
and,

SHOPLINK INC.,

             Nominal Defendant.

Case No. 16 Civ. 7203 (GHW)

**ANSWER AND**
**COUNTERCLAIMS OF**
**DEFENDANT-**
**COUNTERCLAIM PLAINTIFF**
**MIKHAIL VOROTYNTSEV**

JURY TRIAL DEMANDED

Defendant Mikhail Vorotyntsev ("Defendant" or "Counterclaim Plaintiff"), by and

through his undersigned attorneys, Sher Tremonte LLP, answers the Complaint dated September

15, 2016 (the "Complaint") and asserts counterclaims against Gary Tatintsian ("Plaintiff" or

"Counterclaim Defendant") as follows:

**<u>Preliminary Statement</u>**

    1.    Defendant denies the allegations contained in paragraph 1 of the Complaint

except admits that he is the CEO and sole board member of ShopLink Inc. ("ShopLink").

    2.    Defendant denies the allegations contained in paragraph 2 of the Complaint.

    3.    Defendant denies the allegations contained in paragraph 3 of the Complaint.

    4.    Paragraph 4 of the Complaint constitutes Plaintiff's description of his claim, as to

which no response is required.

## Jurisdiction and Venue

5.     Paragraph 5 of the Complaint purports to state a legal conclusion, as to which no response is required.

6.     The allegation in the first sentence of paragraph 6 of the Complaint purports to state a legal conclusion, as to which no response is required.  Defendant denies the allegations in the second sentence of paragraph 6 of the Complaint, except admits he resides in this District.

7.     The allegations contained in the first clause of paragraph 7 of the Complaint purport to state a legal conclusion, as to which no response is required.  Defendant denies the remaining allegations contained in paragraph 7 of the Complaint to the extent such allegations relate to Defendant, except admits that he has transacted business in New York.

8.     Defendant denies the allegations contained in paragraph 8 of the Complaint.

## Parties

9.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint.

10.     Defendant admits the allegations contained in paragraph 10 of the Complaint.

11.     Defendant denies the allegation in paragraph 11 of the Complaint, except admits that Elena Vorotyntsev is a Russian citizen who resides at 139 Wooster Street, New York, NY 10012.

12.     Defendant admits the allegation contained in the first sentence of paragraph 12 of the Complaint, admits that ShopLink maintains a mailing address of 511 Avenue of the Americas, Suite 372, New York, NY 10011, and otherwise denies the allegations contained in paragraph 12 of the Complaint.

## Factual Allegations

### A.  ShopLink

13.     Defendant avers that ShopLink is a start-up company that is developing software to help companies market and sell goods through social media and that IT Adapter LLC is an operational affiliate of ShopLink that was formed to deploy ShopLink's technology, and otherwise denies the remaining allegations contained in paragraph 13 of the Complaint.

14.     Defendant denies the allegations contained in paragraph 14 of the Complaint, except admits that ShopLink has not yet generated any revenue.

15.     Defendant admits the allegation contained in the first sentence of paragraph 15 of the Complaint, avers that Elena Vorotyntsev possessed a debit card associated with the ShopLink Bank Account, admits that IT Adapter LLC also has a bank account, and denies the remaining allegations in paragraph 15 of the Complaint.

16.     Defendant admits the allegations contained in paragraph 16 of the Complaint.

17.     Defendant denies the allegations in paragraph 17 of the Complaint except admits that he discussed ShopLink with Plaintiff in the summer of 2015.

18.     Defendant denies the allegations contained in paragraph 18 of the Complaint, except admits that Dmitriy Khmaladze has attempted to convert ShopLink's intellectual property and avers that Plaintiff has induced Dmitriy Khmaladze to engage in the aforementioned conduct.

19.     Defendant denies the allegations contained in paragraph 19 of the Complaint, except admits that between approximately May 2013 through approximately January 2016, ShopLink raised funds from approximately seven investors.

20.     Defend admits Plaintiff signed a Subscription Agreement on or about April 8, 2016.  The remaining allegations contained in paragraph 20 of the Complaint purport to describe a written document that speaks for itself and all characterizations thereof are denied accordingly.

21.     Defendant admits the parties entered a Letter Agreement on or about April 8, 2016.  The remaining allegations contained in paragraph 21 of the Complaint purport to describe a written document that speaks for itself and all characterizations thereof are denied accordingly.

22.     Defendant denies the allegations contained in paragraph 22 of the Complaint, except admits that he and Plaintiff met with ShopLink's prior counsel at Pryor Cashman on or about April 8, 2016.

23.     The allegations contained in paragraph 23 of the Complaint purport to describe a written document that speaks for itself and all characterizations thereof are denied accordingly.

24.     Defendant denies the allegations contained in paragraph 24 of the Complaint.

25.     Defendant denies the allegations contained in paragraph 25 of the Complaint.

26.     Defendant denies the allegations contained in paragraph 26 of the Complaint.

27.     The allegations contained in paragraph 27 of the Complaint purport to describe a written document that speaks for itself and all characterizations thereof are denied accordingly.

28.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint.

29.     Defendant denies the allegations contained in paragraph 29 of the Complaint.

30.     Defendant denies the allegations contained in paragraph 30 of the Complaint.

31.     Defendant denies the allegations contained in paragraph 31 of the Complaint.

32.     Defendant denies the allegations contained in paragraph 32 of the Complaint.

33.     Defendant denies the allegations contained paragraph 33 of the Complaint.

34.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 34 of the Complaint. The allegations contained in the second sentence of paragraph 34 purport to describe a written document that speaks for itself and all characterizations thereof are denied accordingly.

35.     Defendant denies the allegations contained in paragraph 35 of the Complaint.

36.     Defendant admits the allegation contained in the first sentence of paragraph 36 of the Complaint and denies the allegations contained in the second sentence of paragraph 36 of the Complaint.

37.     The allegations contained in paragraph 37 of the Complaint purport to describe a written document that speaks for itself and all characterizations thereof are denied accordingly.

38.     Defendant denies the allegations contained in paragraph 38 of the Complaint, except admits that ShopLink transferred $100,000 to Defendant's counsel in the ordinary course of business to comply with ShopLink's by-laws and admits that ShopLink's Bank Account balance was approximately $143,971 on September 7, 2016.

39.     Defendant denies the allegations contained in paragraph 39 of the Complaint.

40.     Paragraph 40 of the Complaint constitutes Plaintiff's description of his claim, as to which no response is required.

41.      Defendant denies the allegations contained in paragraph 41 of the Complaint.

42.     Defendant denies the allegations contained in paragraph 42 of the Complaint.

43.     Defendant admits the allegations contained in paragraph 43 of the Complaint.

44.     Defendant denies the allegations contained in paragraph 44 of the Complaint.

45.     Defendant denies the allegations contained in paragraph 45 of the Complaint.

46.     Defendant denies the allegations contained in paragraph 46 of the Complaint.

47.     Defendant denies the allegations contained in paragraph 47 of the Complaint.

### AS TO FIRST CAUSE OF ACTION

48.     With respect to the first sentence of paragraph 48 of the Complaint, Defendant incorporates and restates his responses in the foregoing paragraphs as if set forth fully herein. The second sentence of paragraph 48 of the Complaint constitutes Plaintiff's description of his claim, as to which no response is required.

49.     Defendant denies the allegations contained in paragraph 49 of the Complaint.

50.     Defendant denies the allegations contained in paragraph 50 of the Complaint.

51.     Defendant denies the allegations contained in paragraph 51 of the Complaint.

52.     Defendant denies the allegations contained in paragraph 52 of the Complaint.

### AS TO THE SECOND CAUSE OF ACTION

53.     With respect to the allegations contained in paragraph 53 of the Complaint, Defendant incorporates and restates his responses in the foregoing paragraphs as if set forth fully herein.

54.     Defendant admits the allegations contained in the first sentence of paragraph 54 of the Complaint.  The allegations contained in the second sentence of paragraph 54 purport to state a legal conclusion, as to which no response is required.

55.     Defendant denies the allegations contained in paragraph 55 of the Complaint.

56.     Defendant denies the allegations contained in paragraph 56 of the Complaint.

### AS TO THE THIRD CAUSE OF ACTION

57.     With respect to the allegations contained in paragraph 57 of the Complaint, Defendant incorporates and restates his responses in the foregoing paragraphs as if set forth fully herein.

58.     Defendant denies the allegations contained in paragraph 58 of the Complaint.

59.     Defendant denies the allegations contained in paragraph 59 of the Complaint.

## AS TO THE FOURTH CAUSE OF ACTION

60.     With respect to the allegations contained in paragraph 60 of the Complaint, Defendant incorporates and restates his responses in the foregoing paragraphs as if set forth fully herein.

61.     Defendant admits the allegations contained in the first sentence of paragraph 61 of the Complaint.  The allegations contained in the second sentence of paragraph 54 purport to state a legal conclusion, as to which no response is required.

62.     Defendant denies the allegations contained in paragraph 62 of the Complaint.

63.     Defendant admits the allegation in paragraph 63 of the Complaint.

64.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 64 of the Complaint.

65.     Defendant denies the allegations contained in paragraph 65 of the Complaint.

66.     Defendant denies the allegations contained in paragraph 66 of the Complaint, except admits that Elena Vorotyntsev was an authorized user of a debit card associated with the ShopLink Bank Account, which she used for certain expenditures.

67.     Defendant denies the allegations contained in paragraph 67 of the Complaint.

## AS TO THE FIFTH CAUSE OF ACTION

68.     With respect to the allegations contained in paragraph 68 of the Complaint, Defendant incorporates and restates his responses in the foregoing paragraphs as if set forth fully herein.

69.     Defendant denies the allegations contained in paragraph 69 of the Complaint.

70.     Defendant denies the allegations contained in paragraph 70 of the Complaint.

71.     Defendant denies the allegations contained in paragraph 71 of the Complaint.

72.     Defendant denies the allegations contained in paragraph 72 of the Complaint.

73.     Defendant denies the allegations contained in paragraph 73 of the Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

74.     The Complaint fails to state a claim for relief.

### Second Affirmative Defense

75.     Plaintiff's claims are barred by unclean hands.

### Third Affirmative Defense

76.     Plaintiff's claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

### Fourth Affirmative Defense

77.     Plaintiff's claims are barred, in whole or in part because if Plaintiff sustained any damages alleged in the Complaint, such damages were as a result of the negligent and/or culpable conduct of Plaintiff.

### Fifth Affirmative Defense

78.     Plaintiff's claims are barred, in whole or in part because if Plaintiff sustained any injuries and/or damages alleged in the Complaint, such injuries and/or damages were not legally or proximately caused by Defendant.

### Sixth Affirmative Defense

79.     Plaintiff's claims are barred, in whole or in part because Plaintiff assumed the risk that allegedly injured him.

### Seventh Affirmative Defense

80.     Plaintiff's claims are barred, in whole or in part by the doctrine of estoppel.

### Eighth Affirmative Defense

81.     Plaintiff's claims are barred, in whole or in part because of the availability of the remedy of rescission.

### Ninth Affirmative Defense

82.     Plaintiff's claims are barred, in whole or in part because of Plaintiff's failure to mitigate damages.

### Tenth Affirmative Defense

83.     Plaintiff's claims are barred because Plaintiff did not reasonably rely on any representation made by Defendant.

### RESERVATION OF RIGHTS

84.     By setting forth the foregoing affirmative defenses, Defendant does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff.  Nothing stated herein is intended to be or shall be construed as an admission that any particular issue or subject matter is relevant to Plaintiff's allegations. Defendant does not waive and expressly preserves its right to rely upon any other defenses that may become available in the course of the litigation and reserves the right to amend this Answer to assert further defenses or to modify its defenses.

## COUNTERCLAIMS AGAINST GARY TATINTSIAN

Counterclaim Plaintiff Mikhail Vorotyntsev, for his counterclaims against Counterclaim Defendant Gary Tatintsian, alleges as follows:

### Nature of the Action

1.      Vorotyntsev's counterclaims arise from a scheme by Tatintsian to usurp the valuable business plan Vorotyntsev devised and the technology he helped to develop.

2.      Tatintsian owns three percent of ShopLink.

3.      From May through August 2016, Tatintsian regularly expressed his enthusiasm for ShopLink's innovative business plan and enormous profit potential and urged Vorotyntsev to allow his associates to invest.

4.      Tatintsian set up a meeting in Miami, Florida in August to introduce the potential investors to Vorotyntsev.

5.      Concerned about the possible criminal affiliations of Tatintsian's proposed investors and the potentially illicit sources of their funds, Vorotyntsev declined to attend the meeting.

6.      Upon information and belief, after having promoted ShopLink to his associates, Tatintsian was embarrassed and enraged by Vorotyntsev's refusal to meet with Tatintsian's associates.  Tatintsian resolved to use his substantial resources to punish Vorotyntsev, take over ShopLink and usurp its technology.

7.      Tatintsian initiated this scheme by inducing Vorotyntsev's longtime trusted business adviser, Younis Zubchevich, to betray Vorotyntsev.  At Tatintsian's urging, Zubchevich used confidential information to malign Vorotyntsev to ShopLink's other investors.

8.      In furtherance of his scheme and with assistance from Zubchevich, Tatintsian crafted this lawsuit against Vorotyntsev.

9.      Together, Tatintsian and Zubchevich then disrupted Vorotyntsev's relationship with Dmitriy Khmaladze, the Chief Technology Officer of ShopLink and its affiliates.  They induced Khmaladze to break his ties to Vorotyntsev, steal ShopLink's source code, terminate ShopLink's programmers, and join Tatintsian and Zubchevich to launch a competing venture.

10.      To redress Tatintsian's vindictive and tortious conduct, Vorotyntsev brings counterclaims of aiding and abetting breach of fiduciary duty and civil conspiracy.

## Facts Common to All Counterclaims

### A.  Vorotyntsev Devises ShopLink to Revolutionize E-Commerce

11.      Mikhail Vorotyntsev is the founder and Chief Executive Officer of the start-up company, ShopLink Inc. ("ShopLink").  He founded ShopLink on or about May 31, 2012 to effectuate his vision for a novel e-commerce platform.

12.      Indeed, ShopLink has spent over three years developing technology that has the potential to revolutionize the e-commerce industry.  Conceived by Vorotyntsev, ShopLink's software is designed to allow consumers to introduce products to their friends and followers on social media and invite them to purchase with a single click.  Upon facilitating a sale, a consumer earns a commission.  The consumer's friends and followers then have the ability to introduce the products to their own friends and followers and earn commissions themselves.  Through its multi-tiered referral/reward program, consumers and, in turn, their friends and followers, are incentivized to generate word-of-mouth sales through social networks.

13.     By harnessing the reach of social networks to promote e-commerce, ShopLink's product is designed to help companies convert consumers into massive salesforces and to exponentially increase points of sale.

14.     ShopLink has the potential to earn billions in revenue.

**B. Vorotyntsev Entrusts Khmaladze to Develop Software for ShopLink and Its Affiliates**

15.     In or about January 2013, Vorotyntsev was introduced to Dmitriy Khmaladze ("Khmaladze").

16.     Khmaladze is an experienced software architect and computer programmer with special expertise in system frameworks that allow multiple servers to work together and run complex programs.

17.     Vorotyntsev disclosed his ideas for ShopLink to Khmaladze, and Khmaladze convinced Vorotyntsev that his special skills and expertise would be critical to developing key aspects of ShopLink's technology to render it efficient and scalable.

18.     In or about February 2013, Khmaladze began working for ShopLink as its Chief Technology Officer.

19.     Vorotyntsev subsequently established AUM Code LLC ("AUM Code") to develop and own source code and create the cluster system that would serve as ShopLink's back-end architecture.

20.     AUM Code is a limited liability company comprised of two members, Vorotyntsev, who owns 60 percent, and Khmaladze, who owns 40 percent.

21.     IT Adapter LLC is a wholly owned subsidiary of AUM Code.  IT Adapter oversees certain operations for AUM Code and ShopLink.

22.     Khmaladze became a managing member and the Chief Technology Officer of AUM Code.

23.     In connection with his employment by ShopLink and its affiliates, Khmaladze supervised and managed a team of software developers charged with developing the technology that would support ShopLink and its affiliates.

24.     Over the course of their working relationship, Vorotyntsev relied on Khmaladze's superior knowledge and expertise and entrusted him with confidential and proprietary information concerning his business plan for ShopLink and its affiliates.

25.      Vorotyntsev and Khmaladze conducted much of their work for ShopLink and AUM Code through email accounts under the IT Adapter domain name.  Khmaladze controlled access to those email accounts.

**C.  Vorotyntsev Entrusts Zubchevich to Provide Business Advice**

26.     Younis Zubchevich ("Zubchevich") is an investment banker and businessman with decades of experience.

27.     In or about 2014, Vorotyntsev engaged Zubchevich as a business advisor.  In this capacity, Zubchevich agreed, among other things, to work with other outside professionals and help Vorotyntsev establish a board of directors for ShopLink, organize the corporate structure for ShopLink and its affiliates, review and manage their contracts and create corporate governance policies and procedures to safeguard shareholders and employees.

28.     Vorotyntsev worked closely with Zubchevich over the course of several years. During this period, Vorotyntsev entrusted Zubchevich with proprietary and confidential information concerning his business plan and relied on Zubchevich to apply his superior expertise and knowledge to recommend and implement best practices.

**D. Tatintsian Devises a Scheme to Usurp ShopLink's Technology**

29.     Counterclaim Defendant Tatintsian is an art dealer who operates galleries in Moscow and New York.

30.     Vorotyntsev and Tatintsian have known each other for approximately 20 years.

31.     In or about June 2015, Vorotyntsev told Tatintsian about the novel e-commerce platform he had conceived and was working to launch through his company, ShopLink. Tatintsian expressed enthusiasm for ShopLink's innovative business plan and conveyed an interest in investing in ShopLink in or about September 2015.

32.     Vorotyntsev had introduced Tatintsian to Zubchevich in or about 2000 and reintroduced them in or about March 2016.  At that time, Vorotyntsev explained to Tatintsian that Zubchevich was his trusted advisor and was assisting him with corporate governance issues relating to ShopLink and its affiliates.

33.     Upon information and belief, Tatintsian spoke regularly with Zubchevich concerning Vorotyntsev and ShopLink.

34.     Tatintsian invested in ShopLink in or about April 2016.

35.     From May through August 2016, Tatintsian repeatedly urged Vorotyntsev to allow his associates to invest in ShopLink.

36.     Upon information and belief, Tatintsian told his associates about the enormous profit potential of ShopLink.

37.     Tatintsian organized a meeting in Miami, Florida to be held on August 26, 2016, where he planned to introduce his associates to Vorotyntsev.

38.    Vorotyntsev informed Tatintsian that he did not believe ShopLink needed Tatintsian's investors because ShopLink could attract capital from a reputable private equity firm.  Tatintsian scoffed at Vorotyntsev's suggestion.

39.    Vorotyntsev was also concerned that Tatintsian's associates were affiliated with organized crime and would be investing illicit funds.  Indeed, Tatintsian informed Vorotyntsev that a Swiss bank had frozen approximately $170 million belonging to one of the potential investors after the investor failed to provide information concerning the origin of the funds.

40.    Because of his belief that ShopLink could find other sources of capital and his concerns about Tatintsian's associates, Vorotyntsev refused to attend the meeting in Miami.

41.    Upon information and belief, Tatintsian was humiliated by Vorotyntsev's refusal to meet with his associates and angry that Vorotyntsev felt he did not need to rely on Tatintsian's network to launch ShopLink.

42.    In response, Tatintsian devised a scheme to use his resources to punish Vorotyntsev, take over ShopLink and usurp its technology.

43.    Upon information and belief, Tatintsian induced Zubchevich to sever ties with Vorotyntsev and participate in his scheme.

44.    Upon information and belief, Tatintsian paid Zubchevich a substantial salary and gave him the nominal title, "Director of Investments."

45.    Upon information and belief, Zubchevich shared with Tatintsian the confidential information he had obtained in the course of serving as Vorotyntsev's trusted business adviser, including information about how Tatintsian could exploit the relationship between Vorotyntsev and Khmaladze for his own benefit.

46. On or about August 30, 2016 – four days after Vorotyntsev refused to meet with Tatintsian's associates in Miami – Tatintsian, acting through counsel, demanded that ShopLink appoint a board of directors made up of directors selected exclusively by Tatintsian. As a three-percent shareholder, Tatintsian had no right to appoint any directors.

47. On or about September 1, 2016, Tatintsian, through his agent, Zubchevich, contacted Khmaladze by email to malign Vorotyntsev, ShopLink, and their affiliates and to propose reorganizing ShopLink under Tatintsian's direction.

48. Zubchevich represented that he could turn Khmaladze's work into a professional "demo" presentation that would bring in "big money" and that "Gary [Tatintsian] would very much like to work on that[.]"

49. Tatintsian, through his agent Zubchevich, offered Khmaladze an increased salary and additional benefits to sever ties with Vorotyntsev and work instead with Tatintsian and Zubchevich.

50. Zubchevich affirmed, "I am all in on this plan of Gary's" and invited Khmaladze to call him or Tatintsian "anytime . . . including in the middle of the night."

51. On or about September 6, 2016, Tatintsian received copies of ShopLink's bank statements pursuant to an agreement by which Tatintsian agreed to keep them strictly confidential. Upon information and belief, shortly after receiving the statements, Tatintsian sent the statements to Khmaladze and others in violation of his agreement.

52. In the days and weeks preceding the filing of his lawsuit, Tatintsian barraged Vorotyntsev with a string of insulting, threatening, and extortionate text messages and phone calls, in one instance calling Vorotyntsev and his wife "insects . . . Parasites which someone has to take care of" and promising "I will handle it."

53.     Telegraphing his plans to usurp ShopLink and its technology, Tatintsian wrote to Vorotyntsev, "U will see how easy you will loose [sic] Dmitry and all you Dreams."

54.     Upon information and belief, Tatintsian and Zubchevich communicated with Dmitriy Khmaladze on multiple occasions in an effort to induce him to (i) stop communicating with Vorotyntsev; (ii) prevent Vorotyntsev from accessing ShopLink and AUM Code's proprietary source code and his IT Adapter email account; and (iii) resign as an employee and Chief Technology Officer of ShopLink and its affiliates and work instead for Tatintsian and Zubchevich.

55.     On or about September 11, 2016, Khmaladze submitted his resignation letter to Vorotyntsev.

56.     On or about September 11, 2016, Khmaladze terminated Vorotyntsev's access to the Assembla code repository where ShopLink and AUM Code's proprietary source code was stored.

57.     Khmaladze also refused to release funds to pay software developers and other expenses necessary to complete the development of ShopLink and AUM Code's technology.

58.     On or about September 12, 2016, Khmaladze disavowed his association with AUM Code and IT Adapter and removed Vorotyntsev's access to his IT Adapter email account.

59.     Khmaladze subsequently agreed to provide Vorotyntsev with copies of certain source code and his archived email account.  However, to date, Khmaladze has refused to provide Vorotyntsev with access to the Assembla code repository.  Without such access, ShopLink cannot confirm that Khmaladze returned the complete and current source code and cannot launch its product.

60.     On or about September 15, 2016, Tatintsian filed this lawsuit.

17

61.     On or about October 13, 2016, Khmaladze filed a lawsuit against Vorotyntsev, ShopLink, AUM Code, and IT Adapter, seeking rescission of all agreements entered into by Khmaladze and a declaration that, among other things, ShopLink's technology belongs to Khmaladze rather than to ShopLink, AUM Code, or any of their affiliates.

62.     Upon information and belief, Khmaladze's lawsuit and his efforts to convert ShopLink and AUM Code's intellectual property and sever ties with Vorotyntsev have been instigated, orchestrated, and funded by Tatintsian.

## FIRST COUNTERCLAIM
### (Aiding and Abetting Khmaladze's Breach of Fiduciary Duty)

63.     Counterclaim Plaintiff repeats and realleges each of the foregoing allegations as if set forth fully herein.

64.     Dmitry Khmaladze was a managing member of AUM Code LLC during all times relevant to the conduct alleged herein.  As a managing member of a limited liability company, Khmaladze owed fiduciary duties, including the duty of loyalty and care to Counterclaim Plaintiff, the other member of that limited liability company.

65.     Dmitry Khmaladze owed fiduciary duties, including the duty of loyalty and care to Counterclaim Plaintiff, for the additional reason that he and Vorotyntsev had a special relationship of trust and confidence, pursuant to which Vorotyntsev reposed confidence in Khmaladze.  In particular, Vorotyntsev, reasonably relied on Khmaladze's superior knowledge and expertise in system frameworks for Internet servers and disclosed confidential and proprietary information to Khmaladze with the expectation that Khmaladze would use that information solely to benefit ShopLink and its affiliates.

66.     Khmaladze breached his fiduciary duties to Counterclaim Plaintiff by, among other things, blocking Vorotyntsev's access to the Assembla code repository for ShopLink and

AUM Code's proprietary source code, attempting to convert ShopLink and AUM Code's intellectual property for his own benefit, disabling Vorotyntsev's access to his IT Adapter email account, refusing to pay IT Adapter employees or pay third-party expenses for development and operation of the ShopLink and AUM Code product, abruptly severing ties without assisting in a professional transition of work, and upon information and belief, agreeing to assist Tatintsian and Zubchevich in their efforts to steal Vorotyntsev's valuable business plan for themselves.

67.     Counterclaim Defendant knew that Khmaladze, by virtue of his position and his relationship with Counterclaim Plaintiff, owed a fiduciary duty to Counterclaim Plaintiff.

68.     Counterclaim Defendant knowingly participated in Khmaladze's breaches of fiduciary duty to Counterclaim Plaintiff by, upon information and belief, knowingly inducing him to block Vorotyntsev's access to the Assembla code repository for ShopLink and AUM Code's proprietary source code, knowingly inducing him to convert ShopLink and AUM Code's intellectual property for his own benefit, knowingly inducing him to disable Vorotyntsev's access to his IT Adapter email account, knowingly inducing him to refuse to pay IT Adapter employees or third-party expenses for development and operation of ShopLink and AUM Code's products, knowingly inducing him to abruptly sever ties with Vorotyntsev, and upon information and belief, knowingly inducing him to assist Tatintsian and Zubchevich in their efforts to steal Vorotyntsev's valuable business plan for themselves.

69.     As a direct and proximate result of Tatintsian's aiding and abetting Khmaladze's breaches of fiduciary duty, Vorotyntsev has suffered damages in an amount to be proven at trial. In light of the gross, wanton, willful and/or morally culpable conduct alleged herein, these damages include, but are not limited to, punitive damages.

19

### SECOND COUNTERCLAIM
### (Aiding and Abetting Zubchevich's Breach of Fiduciary Duty)

70.    Counterclaim Plaintiff repeats and realleges each of the foregoing allegations as if set forth fully herein.

71.    Younis Zubchevich owed fiduciary duties, including the duty of loyalty and care to Counterclaim Plaintiff, because he and Vorotyntsev had a special relationship of trust and confidence, pursuant to which Vorotyntsev reposed confidence in Zubchevich.  In particular, Vorotyntsev, reasonably relying on Zubchevich's superior knowledge and expertise in investment consulting and management, disclosed confidential and proprietary information to Zubchevich with the expectation that Zubchevich would use that information to benefit ShopLink and its affiliates.

72.    Zubchevich breached his fiduciary duties to Counterclaim Plaintiff by, among other things, willfully neglecting to coordinate corporate records and protocols to support ShopLink's operation as promised and, instead, exploiting his special knowledge of ShopLink's operations to induce the departure of ShopLink and AUM Code's Chief Technology Officer and conspire with Counterclaim Defendant to oust Vorotyntsev and usurp ShopLink's technology for a competing venture.

73.    Counterclaim Defendant knew that Zubchevich, by virtue of his position and his relationship with Counterclaim Plaintiff, owed a fiduciary duty to Counterclaim Plaintiff.

74.    Counterclaim Defendant knowingly participated in Zubchevich's breaches of fiduciary duty by knowingly inducing him to break his commitment to improve the corporate governance and other practices and procedures at ShopLink and its affiliates, knowingly inducing him to exploit his special knowledge of ShopLink's operations to effect the departure of ShopLink and AUM Code's Chief Technology Officer, and knowingly inducing him to conspire

to oust Vorotyntsev and usurp ShopLink's technology for Counterclaim Defendant's competing venture.

75.     As a direct and proximate result of Counterclaim Defendant's aiding and abetting Zubchevich's breaches of fiduciary duty, Counterclaim Plaintiff has suffered damages in an amount to be proven at trial.  In light of the gross, wanton, willful and/or morally culpable conduct alleged herein, these damages include, but are not limited to, punitive damages.

### THIRD COUNTERCLAIM
**(Civil Conspiracy)**

76.     Counterclaim Plaintiff repeats and realleges each of the foregoing allegations as if set forth fully herein.

77.     As described above in the First and Second Counterclaims, Khmaladze and Zubchevich have breached their fiduciary duties to Counterclaim Plaintiff and Counterclaim Defendant has aided and abetted those breaches of fiduciary duty.

78.     Counterclaim Defendant, Khmaladze, and Zubchevich agreed to carry out a scheme to convert ShopLink and AUM Code's technology for their own benefit.  They agreed to effect this scheme by depriving Vorotyntsev of his access to and interest in ShopLink and AUM Code's technology in order to place ShopLink's technology and business model in the control of Counterclaim Defendant, Khmaladze, and Zubchevich.

79.     Counterclaim Defendant committed an overt act in furtherance of this agreement by, among other things, upon information and belief: disclosing ShopLink's confidential bank statements to Khmaladze and others in violation of the express terms of an agreement between Counterclaim Defendant and Vorotyntsev, directing Khmaladze to disable Vorotyntsev's access to ShopLink and AUM Code's proprietary source code and his IT Adapter email account, and

offering Khmaladze employment at an increased salary if he agreed to sever ties with Counterclaim Plaintiff and convert ShopLink's technology.

80.     Khmaladze committed an overt act in furtherance of this agreement by, among other things, disabling Vorotyntsev's access to ShopLink and AUM Code's proprietary source code and his IT Adapter email account and refusing to pay IT Adapter employees or pay third-party expenses necessary for ShopLink and AUM Code to continue to develop their product.

81.     Zubchevich committed an overt act in furtherance of this agreement by, among other things, emailing Khmaladze to malign Vorotyntsev, ShopLink, and their affiliates and to propose organizing ShopLink under Tatintsian's direction and offering Khmaladze employment under Tatintsian at an increased salary if he agreed to sever ties with Counterclaim Plaintiff and convert ShopLink's technology.

82.     Counterclaim Defendant, Khmaladze, and Zubchevich individually and in conspiracy with each other intentionally participated in the furtherance of this plan and purpose as detailed in the foregoing paragraphs.

83.      As a direct and proximate result of Counterclaim Defendant, Khmaladze, and Zubchevich's civil conspiracy and their overt acts in furtherance thereof, Counterclaim Plaintiff has suffered damages in an amount to be proven at trial.  In light of the gross, wanton, willful and/or morally culpable conduct alleged herein, these damages include, but are not limited to punitive damages.

**REQUEST FOR RELIEF**

Counterclaim Plaintiff respectfully requests that this Court enter judgment in his favor and against Counterclaim Defendant Gary Tatintsian, awarding Counterclaim Plaintiff the following relief:

(1) Dismissing the Complaint;

(2) On the Counterclaims, actual, compensatory, consequential, and/or incidental monetary damages, including interest, in an amount to be determined at trial;

(3) On the Counterclaims, exemplary, punitive, and/or multiple damages in an amount to be determined at trial;

(4) Reasonable expenses, including attorneys' fees and costs;

(5) Such additional relief, at law and in equity, to which Counterclaim Plaintiff is justly entitled and which the Court deems just and proper.

Dated:    New York, New York
          October 28, 2016

                  SHER TREMONTE LLP

                  By:   /s/ Justin M. Sher
                      Justin M. Sher
                      Erica A. Wolff
                  80 Broad Street, 13th Floor
                  New York, New York 10004
                  Tel: 212.202.2600
                  jsher@shertremonte.com

                  *Attorneys for Defendant Mikhail Vorotyntsev*