# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

GARY TATINTSIAN, on his own behalf and for the benefit of ShopLink Inc.,

                          Plaintiff, Counterclaim-Defendant,

       -against-

MIKHAIL VOROTYNTSEV and ELENA VOROTYNTSEV,

                          Defendants, Counterclaim-Plaintiff,

       and

SHOPLINK INC.,

                          Nominal Defendant, Counterclaim-Plaintiff.

No. 1:16-cv-7203-GHW

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO CLARIFY AND/OR MODIFY PRELIMINARY INJUNCTION**

**Oral argument requested**

---------------------------------------------------------------x

MIKHAIL VOROTYNTSEV,

                          Third-Party Plaintiff,

       -against-

DMITRIY KHMALADZE, IT ADAPTER CORPORATION, INC., YOUNIS ZUBCHEVICH and DIABETICA RESEARCH SOLUTIONS, INC.,

                          Third-Party Defendants.

---------------------------------------------------------------x

SHOPLINK INC.,

                          Cross-Claim-Plaintiff,

       -against-

YOUNIS ZUBCHEVICH,

                          Cross-Claim-Defendant.

SHAPIRO ARATO LLP
Eric S. Olney
Fabien Thayamballi
500 Fifth Avenue
40th Floor
New York, NY 10110
(212) 257-4880

*Attorneys for Plaintiff Gary Tatintsian*

---------------------------------------------------------------x

December 16, 2016

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND ............................................................................................... 3

  A.  Defendants Embezzle Plaintiff's Investment In ShopLink ........................ 3

  B.  Plaintiff Files This Action, And Defendants Continue To Misuse His Investment ........... 5

  C.  Indemnification And Advancement Under Delaware Law ......................... 8

ARGUMENT ..................................................................................................... 9

  I.  Vorotyntsev Should Be Enjoined From Using Any ShopLink Funds ............. 9

    A.  Vorotyntsev Has No Right To Use ShopLink Funds For His Defense ........ 10

      1.  Vorotyntsev cannot spend funds he stole from investors ................. 10

      2.  ShopLink's bylaws do not entitle Vorotyntsev to advancement ....... 11

      3.  Vorotyntsev's unclean hands defeat any entitlement to advancement ........... 15

      4.  Vorotyntsev cannot invoke ShopLink's separate existence to claim a right to advancement from ShopLink ........................................... 17

      5.  Vorotyntsev cannot use ShopLink funds to prosecute his own claims ........... 18

      6.  Vorotyntsev must return all funds improperly advanced thus far ...... 20

    B.  Plaintiff And ShopLink Are Suffering Irreparable Harm ....................... 20

  II.  The Vorotyntsevs Are Improperly Shifting The Cost Of Their Defense To ShopLink ... 21

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Active Asset Recovery, Inc. v. Real Estate Asset Recovery Servs., Inc.*,
    No. CIV. A. 15478, 1999 WL 743479 (Del. Ch. Sept. 10, 1999) ..................................... 13, 14

*Baker v. Impact Holding, Inc.*,
    No. CIV.A.5144-VCP, 2010 WL 2979050 (Del. Ch. July 30, 2010)............................... 10, 18

*Grunstein v. Silva*,
    No. CIV.A. 3932-VCN, 2014 WL 4473641 (Del. Ch. Sept. 5, 2014)................................... 15

*Havens v. Attar*,
    C.A. No. 15134, 1997 WL 55957 (Del. Ch. Jan. 30, 1997) .............................. 9, 10, 12, 13, 20

*Hermelin v. K-V Pharm. Co.*,
    54 A.3d 1093 (Del. Ch. 2012)........................................................................................ 8, 9, 20

*In re Adelphia Commc'ns Corp.*,
    323 B.R. 345, 376 (Bankr. S.D.N.Y. 2005)....................................................... 9, 12, 13, 15, 22

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) ............................................................................................. 21

*Jones v. Ford Motor Credit Co.*,
    358 F.3d 205 (2d Cir. 2004)................................................................................................ 19

*Marino v. Grupo Mundial Tenedora*, S.A.,
    No. 10-cv-4126, 2011 WL 1142887 (S.D.N.Y. Mar. 17, 2011)............................................. 6

*Marino v. Patriot Rail Co.*,
    131 A.3d 325 (Del. Ch. 2016)........................................................................................ 13, 20

*Meyer v. Fleming*,
    327 U.S. 161, 167 (1946)..................................................................................................... 21

*Nakahara v. NS 1991 Am. Trust*,
    739 A.2d 770 (Del. Ch. 1998)..................................................................................... 15, 16, 20

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
    537 F.3d 168 (2d Cir. 2008)........................................................................................... 17, 18

*Paolino v. Mace Sec. Int'l, Inc.*,
    985 A.2d 392 (Del. Ch. 2009).............................................................................................. 19

ii

*Pontone v. Milso Indus. Corp.*,
 100 A.3d 1023 (Del. Ch. 2014) ...................................................................... 18, 19

*Radiancy, Inc. v. Azar*,
 No. 1547-N, 2006 WL 4762868 (Del. Ch. Jan. 23, 2006) ......................................... 19

*Richards v. Mountain Capital Mgmt., L.L.C.*,
 No. 10-cv-2790 (RMB), 2010 WL 2473588 (S.D.N.Y. June 17, 2010) ....................... 10

*S.E.C. v. Cobalt Multifamily Inv'rs, I LLC*,
 No. 06-cv-2360 (KMW) (MHD), 2007 WL 1040309 (S.D.N.Y. Apr. 2, 2007) ............ 11

*S.E.C. v. Illarramendi*,
 No. 3:11CV78 JBA, 2014 WL 8019048 (D. Conn. Mar. 27, 2014) ..................... 15, 16

*S.E.C. v. Quinn*,
 997 F.2d 287 (7th Cir. 1993) ............................................................................... 10

*Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Holding Co., LLC*,
 853 A.2d 124 (Del. Ch. 2004) ............................................................................... 15

*Sobba v. Elmen*,
 462 F. Supp. 2d 944 (E.D. Ark. 2006) ................................................................... 22

*Sobba v. Elmen*,
 No. 4:06CV00941 JLH, 2007 WL 1174168 (E.D. Ark. Apr. 19, 2007) ..................... 22

*Sterling Fin. Servs. Co., v. Franklin*,
 259 F. App'x 367 (2d Cir. 2008) ........................................................................... 22

*Thorsen v. Sons of Norway*,
 996 F. Supp. 2d 143 (E.D.N.Y. 2014) ................................................................... 21

*Waltuch v. Conticommodity Servs., Inc.*,
 88 F.3d 87 (2d Cir. 1996) ....................................................................................... 9

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
 423 F.3d 137 (2d Cir. 2005) ................................................................................. 10

*Witco Corp. v. Beekhuis*,
 38 F.3d 682 (3d Cir. 1994) ................................................................................... 17

*Zaman v. Amedeo Holdings, Inc.*,
 No. CIV.A. 3115-VCS, 2008 WL 2168397 (Del. Ch. May 23, 2008) ................. 18, 19

**Statutes and Other Authorities**

8 Del. C. § 145 ...................................................................................................... 8, 9, 14

1 Fletcher Cyc. Corp. § 47 ........................................................................................ 17

13 Fletcher Cyc. Corp. § 5997 .................................................................................. 21

Black's Law Dictionary (10th ed. 2014) .................................................................... 15

## PRELIMINARY STATEMENT

Defendants Mikhail and Elena Vorotyntsev stole Plaintiff Gary Tatintsian's money. There is no serious dispute that the theft occurred. In a few short months, they drained hundreds of thousands of dollars (or more) from ShopLink's bank account to fund their lavish lifestyle. In August 2016 alone, they used the account to, *inter alia*, pay rent for their $12,000 luxury apartment, buy at least $40,000 of luxury goods at Chanel, spend no less than $50,000 at luxury department stores and home furnishers, withdraw over $200,000 in cash that remains unaccounted for, make car and car insurance payments, transfer $100,000 to their personal lawyer in violation of the express terms of an agreement with Plaintiff, and spend lavishly at upscale restaurants, grocery stores, pastry shops, bakeries, chocolatiers, hair salons, wine shops, health food stores, drug stores and "smoke shops." Meanwhile, during this same time period, practically nothing was spent on ShopLink's purported business, and ShopLink had no revenue because it had no marketable product. That is why, before this action was filed, Mikhail Vorotyntsev admitted his liability for the theft.

But now that Defendants believe they can use what remains of the money they stole to fund a "defense," they have changed their tune. They no longer concede liability. Now they frivolously claim that Michael Vorotyntsev was merely paying himself a "salary." Their true goal is to strong-arm an unfair settlement using the remaining stolen funds as leverage. They have repeatedly threatened to squander what remains of Plaintiff's investment on their frivolous litigation strategy, in an effort to convince Plaintiff to discontinue this lawsuit in exchange for some nominal amount. And Defendants have flaunted their continued ability to divert the stolen funds for their personal use, directing their attorneys to engage in far flung, meritless litigation, to sue companies that don't exist, to assert claims that the law does not recognize, to duplicate

tasks, to have ShopLink's lawyers do Defendants' personal bidding (at ShopLink's expense), and to engage in a host of other wasteful and dilatory tactics.

This must stop.  There are five independent reasons why this Court should prohibit ShopLink from using stolen funds to advance legal fees to the thief, Mikhail Vorotyntsev, and require funds previously advanced to be immediately repaid.

*First*, the courts have repeatedly confirmed that fraudsters cannot use the money they stole to pay for their defense.

*Second*, Vorotyntsev's purported reliance on the ShopLink bylaws to justify advancement amounts to an impermissible self-dealing transaction.  Because the bylaws do not require advancement, Vorotyntsev's decision (as sole director of ShopLink) to advance legal fees to himself is a breach of his fiduciary duties to ShopLink.

*Third*, Delaware law clearly prohibits advancement to a corporate official with unclean hands, and there is no real dispute that Mikhail Vorotyntsev's hands are unclean.

*Fourth*, Vorotyntsev abused ShopLink's corporate form.  Where, as here, an insider treats a corporation as his alter ego, he cannot rely on the legal distinction between the corporation and himself to obtain advancement.

*Finally*, at a minimum, Vorotyntsev cannot receive advancements for his personal claims.  Even if advancement were justified with respect to claims asserted against him (it is not), Vorotyntsev must fund his own claims on his own dime.

The Court should also prevent ShopLink itself from litigating Defendants' personal matters.  ShopLink is a mere nominal defendant in this action.  Yet ShopLink purports to defend, and has moved to dismiss, claims asserted against the individual Defendants.  The law does not allow Vorotyntsev to shift the cost of his defense to ShopLink, as he has done repeatedly, by

directing ShopLink to litigate matters that benefit only him and his wife.  This Court should require that those funds be repaid and confirm that any future cost-shifting is prohibited.

## BACKGROUND

**A.      Defendants Embezzle Plaintiff's Investment In ShopLink**

Plaintiff Gary Tatintsian is the victim of a fraudulent scheme perpetrated by Defendant Mikhail Vorotyntsev, the CEO and sole board member of a purported software startup called ShopLink, Inc.  In April 2016, Vorotyntsev induced Plaintiff to purchase $1.35 million worth of ShopLink shares by falsely assuring Plaintiff that, among other things, the investment would be used to fund ShopLink's operations and technology.  Instead, Mikhail Vorotyntsev and his wife, Defendant Elena Vorotyntsev, intended to and did embezzle the investment to fund their extravagant lifestyle.  (Verified Compl., Dkt. 1 ¶¶ 1-39).  ShopLink's bank statements reveal that Defendants spent vast sums of company money on luxury goods and other personal items. (Olney Aff. Exs. 1, 2).  By the time Plaintiff initiated litigation, approximately $100,000 remained in ShopLink's bank account.

Meanwhile, Mikhail Vorotyntsev spent next to nothing on the business he purportedly ran.  In the five months following Plaintiff's investment, ShopLink devoted at most $70,000 to developing the software—or approximately *one tenth* of what the Vorotyntsevs embezzled in August 2016 alone.

In August 2016, Plaintiff became concerned that Vorotyntsev had defrauded him.  On August 30, 2016, Plaintiff's counsel wrote ShopLink with a list of apparent wrongdoing.  (Dkt. 1 ¶ 34).  The very next day, Vorotyntsev covertly transferred or withdrew $460,000 from ShopLink's account.  (Olney Aff. Ex. 1).

Plaintiff and ShopLink subsequently entered into a standstill agreement in which Plaintiff agreed to forgo initiating legal action while the parties discussed a potential resolution.  (Olney Aff. Ex. 3 ¶ 11).  The agreement provided "that no funds w[ould] be withdrawn from the Company's bank account for purposes outside of Shop[L]ink's ordinary course of business, which [wa]s limited to, software development, contacting potential customers, establishing partners and business alliances, and exploring marketing opportunities."  (*Id.* ¶ 3).  The agreement expressly forbade any use of ShopLink funds "for the benefit of Mr. Vorotyntse[v]."  (*Id.*).  Nevertheless, the day after entering the standstill agreement, Vorotyntsev violated that agreement by transferring $100,000 from ShopLink's account to retain his personal defense lawyer.  (Answer of Mikhail Vorotyntsev, Dkt. 32 at 5 ¶ 38; *see also* 9/15/16 Conf. Tr., Dkt. 17 at 25, 29).

On September 11, 2016, Vorotyntsev conceded that he "d[id] not expect to oppose the ultimate form of relief [Tatintsian] w[ould] seek in any lawsuit," including "claims his investment was induced by fraud" or "repayment to the company by Mikhail [Vorotyntsev], if it takes the form of derivative relief for breach of fiduciary duty."  (Olney Aff. Ex. 4).  Vorotyntsev subsequently sought to "apologize" for his misconduct (Olney Aff. Ex. 5; Dkt. 27 at 2 n.1), and admitted he needed to "clean up" the company (Olney Aff. Ex. 6).  Indeed, if the Vorotyntsevs believed the transfers were proper, they certainly would not have returned nearly $57,000 worth of Chanel and Barneys merchandise mere days after Plaintiff initiated the litigation.  (Olney Aff. Ex. 7).

Vorotyntsev even offered to refund Plaintiff's entire investment before the litigation.  (Dkt. 17 at 13).  Yet, when pressed, it became apparent that Vorotyntsev would pay little, if anything, at the time of a settlement, and insisted on making deferred payments—without

4

explaining how such payments would be funded.  (Olney Aff. Exs. 5, 8).  Since then,

Vorotyntsev consistently ignored Plaintiff's request that he disclose what he would actually pay

Plaintiff.  In reality, Vorotyntsev never intended to make a meaningful payment.

**B.**     **Plaintiff Files This Action, And Defendants Continue To Misuse His Investment**

Plaintiff therefore filed suit on September 15, 2016.  In his Verified Complaint, Plaintiff

asserts federal securities-fraud claims against Mikhail Vorotyntsev for his fraudulent inducement

of Plaintiff's stock purchase, as well as derivative claims on behalf of ShopLink against Mikhail

and Elena Vorotyntsev for their self-dealing and theft of ShopLink's funds.  The same day he

filed suit, Plaintiff also filed a motion for a temporary restraining order and preliminary

injunction, seeking to prevent Defendants from further looting ShopLink's bank account and

dissipating their assets.  In response, Defendants raised no concerns about whether the

preliminary injunction would preclude advancement.  After reviewing the bank statements and

conducting a hearing, the Court granted the motion in part.  The Court observed that "plaintiff

ha[d] shown sufficient evidence that [ShopLink's] accounts ha[d] been misused to fund

[Defendants'] personal expenses," and it expressed "concern[] that in the absence of injunctive

relief that pattern will continue and what the plaintiff[] assert[s] as a corporate looting will

continue."  (Dkt. 17 at 33-34).  Accordingly, on September 22, 2016, the Court entered a

preliminary injunction forbidding all transfers of ShopLink funds "to or for the benefit of

Mikhail Vorotyntsev and/or Elena Vorotyntsev," without exception.  (Dkt. 13).

Since then, the Defendants have continued to use the money they stole to avoid liability

for stealing it.  That is itself egregious.  As egregious is how the money has been spent.  For

example, as explained above, Defendants have used the stolen funds to assert frivolous defenses.

One such "defense" is absurd on its face—that the embezzlement was really just a "salary" that

Mikhail paid to himself.  (11/30/16 Conf. Tr., Dkt. 79 at 14).  Another is that, according to Defendants, Plaintiff is totally unconcerned that they stole his money.  They falsely claim that Plaintiff initiated this litigation several days after receiving ShopLink bank statements not because the bank statements revealed a substantial fraud, but because Vorotyntsev supposedly declined to attend an alleged meeting with Plaintiff's associates almost a month before the complaint was filed.  (Dkt. 32 at 14-15 ¶¶ 37, 40-42).  That is absurd.  Among other reasons, *before* the supposed meeting, Tatintsian had already voiced his growing concerns about ShopLink, and demanded an explanation for "what [the] company did with [my] money" and the immediate disclosure of ShopLink's "bank account statements."  (Olney Aff. Ex. 6).

Vorotyntsev has also asserted a host of baseless counterclaims and third-party claims. For example, he asserts civil conspiracy counterclaims that require him to show that Plaintiff "independently owe[d]" Vorotyntsev a fiduciary duty.  *Marino v. Grupo Mundial Tenedora*, S.A., No. 10-cv-4126, 2011 WL 1142887, at *4-5 (S.D.N.Y. Mar. 17, 2011) (quotation marks omitted); *see also* Dkt. 67 at 3.  Plaintiff obviously owes no fiduciary obligations to Vorotyntsev. Vorotyntsev's third-party complaint, seeking contribution for liability arising from his misconduct, is equally meritless.  Vorotyntsev seeks contribution from third parties who were *unaware of* and *had nothing to do with* his misconduct.  (Dkt. 76).  Vorotyntsev also purports to assert claims against a company called Diabetica Research Solutions, Inc.  (Dkt. 40 at 1).  This company is nonexistent and therefore cannot be sued by Vorotyntsev under Delaware law.  *See* 8 Del. C. § 278; (Olney Aff. Ex. 9).

In addition, Vorotyntsev uses ShopLink's counsel to do his personal bidding.  At Vorotyntsev's direction, ShopLink purports to defend claims asserted not against ShopLink, but against Vorotyntsev personally.  (Answer of ShopLink, Inc., Dkt. 55 at 7-8).  He had ShopLink

lawyers prepare a motion to dismiss the derivative claims asserted against him and Elena, while their personal lawyers stood idly by.  (Dkts. 53, 82).  Vorotyntsev has also manipulated the structure of his shell companies to ensure that Plaintiff's stolen funds, and not Vorotyntsev, will pay their litigation expenses.  AUM Code LLC is one such company that Vorotyntsev formed in 2014.  (Olney Aff. Ex. 10).  AUM Code was never a subsidiary of ShopLink and, as with Vorotyntsev's other sham entities, he never supplied it with funding of his own.  (Dkt. 32 at 12 ¶¶ 19-20).  Thus, in 2015, it lost its standing as a Delaware company for failure to pay corporate taxes.  (Olney Aff. Ex. 10).  AUM Code was later joined as a party to the related action, *Khmaladze v. Vorotyntsev*, No. 16-cv-8029 (GHW) (S.D.N.Y.).  Shortly before its response deadline, AUM Code suddenly became a subsidiary of ShopLink.  *See Khmaladze*, No. 16-cv-8029, Dkt. 26.  This was Vorotyntsev's attempt to avoid the Court's preliminary injunction, which precludes transfers from ShopLink "for the benefit of Mikhail Vorotyntsev" (Dkt. 13), and have ShopLink pay AUM Code's legal fees.  ShopLink's counsel then appeared on AUM Code's behalf, and is now funding AUM Code's purported defenses and counterclaims using the money Vorotyntsev stole from Plaintiff.  *See Khmaladze*, No. 16-cv-8029, Dkts. 25, 28.

It does not end there.  Defendants and ShopLink have also misused Plaintiff's investment through wasteful litigation tactics.  For example, ShopLink has used no fewer than four different law firms since October 2016.  Its litigation counsel was originally Venable LLP, which was supposed to respond to Plaintiff's complaint by October 28, 2016, six weeks from service.  Several days before that deadline, Venable was replaced by Pohl LLP, and ShopLink sought an additional three weeks to respond so that Pohl could duplicate the work that Venable had already performed.  Plaintiff requested proof of compliance with the preliminary injunction in return.  ShopLink ignored this request and Plaintiff's other concerns, and immediately wrote the Court,

7

which resulted in four separate letters being sent to the Court.  (Dkts. 25, 27-29).  Then ShopLink voluntarily agreed to the exact same resolution Plaintiff had initially proposed—that ShopLink simply document its purported compliance with the preliminary injunction. (Dkt. 29).

At the initial pretrial conference, Elena Vorotyntsev created the impression that she is paying for her own defense.  (Dkt. 79 at 29).  We believe that discovery will disprove this claim. For example, in late August 2016, $200,000 in cash went missing from ShopLink's account, and this illicit withdrawal has never been accounted for.  Elena is likely funding her defense (among other personal expenditures) using these or other funds stolen from Plaintiff.

**C.**     **Indemnification And Advancement Under Delaware Law**

Over a month after this Court entered the preliminary injunction, Mikhail Vorotyntsev wrote the Court seeking permission for ShopLink to advance legal fees to him pursuant to its bylaws (Dkt. 26), which Plaintiff opposed (Dkt. 33).  At a teleconference held on November 7, 2016, the Court clarified that it had not framed the injunction with the intention of forbidding any advancement required under ShopLink's bylaws, as that issue was not raised prior to the preliminary injunction, but it invited Plaintiff to submit further briefing on the subject.  Until then, ShopLink was permitted to make payments "required" by its bylaws.  (Dkt. 37).

The Delaware General Corporation Law ("DGCL") permits corporations to indemnify any person sued "by reason of the fact" that the person is a director or officer of the corporation, but only if "the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation."  8 Del. C. § 145(a), (b).  Thus, "the statute *prohibits* a corporation from indemnifying a corporate official who was not successful in the underlying proceeding and has acted, essentially, in bad faith."  *Hermelin v. K-V Pharm. Co.*, 54 A.3d 1093, 1094 (Del. Ch. 2012).  Moreover, in a derivative action, the corporation ordinarily

may not indemnify an official who is found "liable to the corporation."  8 Del. C. § 145(b).

Thus, the indemnification determination must be made "after a final determination of the merits

of the claims asserted against th[e] officer or director."  *In re Adelphia Commc'ns Corp.*, 323

B.R. 345, 376 (Bankr. S.D.N.Y. 2005); *accord Hermelin*, 54 A.3d at 1107 n.51

("[I]ndemnification under any provision of the DGCL is improper pending the final disposition

of the underlying proceeding.").

The DGCL also permits corporations to pay their officials' legal expenses "in advance of

the final disposition of [the] action" upon receipt of an undertaking by the official to "repay such

amount" if it is ultimately determined that he or she is "not entitled to be indemnified."  8 Del. C.

§ 145(e).  In other words, the official must promise to repay the advanced legal fees if it is

determined that he or she engaged in misconduct or is liable to the corporation.

A corporation may adopt bylaws that give corporate officials a "contractual right" to

indemnification and/or advancement, rather than allowing the board to deny indemnification or

advancement at its discretion.  *Havens v. Attar*, C.A. No. 15134, 1997 WL 55957, at *13 (Del.

Ch. Jan. 30, 1997).[1]  But the fact that the bylaws "provid[e] for mandatory indemnification" does

not mean that they provide for "mandatory advancement of litigation expenses" as well.  *Id.* at

*12.  Instead, the bylaws "must be clearly worded to provide that result."  *Id.*

## ARGUMENT

### I.    Vorotyntsev Should Be Enjoined From Using Any ShopLink Funds

The Court should confirm that the preliminary injunction prohibits Vorotyntsev from

using any ShopLink funds to pay his personal legal expenses, or modify the preliminary

injunction to that effect.  In ruling on a motion to modify a preliminary injunction, the Court

---

[1]    Of course, a corporation may not indemnify an official or advance legal fees without satisfying the DGCL's prerequisites for indemnification and advancement.  *See Waltuch v. Conticommodity Servs., Inc.*, 88 F.3d 87, 93 (2d Cir. 1996).

exercises "the same discretion that [it] employs in an initial decision to grant or deny a preliminary injunction." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005); *see also id.* at 143 (considering "irreparable harm" and "likelihood of success on the merits"). Here, the only equitable exercise of discretion is to prevent Vorotyntsev from having ShopLink advance his legal fees.

### A.    Vorotyntsev Has No Right To Use ShopLink Funds For His Defense

#### 1.    Vorotyntsev cannot spend funds he stole from investors

Vorotyntsev cannot pay for his legal defense with ShopLink funds because those are the very funds that he stole from Plaintiff and other investors. Even under Vorotyntsev's erroneous interpretation of ShopLink's bylaws, he "merely" has a "contractual right" to advancement from ShopLink. *Baker v. Impact Holding, Inc.*, No. CIV.A. 5144-VCP, 2010 WL 2979050, at *3 & n.16 (Del. Ch. July 30, 2010) (quotation marks omitted); *accord Havens*, 1997 WL 55957, at *13. But a contract between ShopLink and Vorotyntsev cannot override federal law designed to protect ShopLink's investors from securities fraud.

"Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime." *S.E.C. v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993) (citations omitted). Fraudsters do not "have the right to use frozen investor funds to pay their counsel," whether they keep those funds in their own bank accounts or in the bank accounts of entities they control. *Richards v. Mountain Capital Mgmt., L.L.C.*, No. 10-cv-2790 (RMB), 2010 WL 2473588, at *2 (S.D.N.Y. June 17, 2010) (quotation marks omitted). Thus, "even if [Vorotyntsev is] otherwise entitled to corporate indemnification," he "is plainly not entitled" to pay for his legal defense with the investor funds he obtained by fraud. *S.E.C. v. Cobalt*

*Multifamily Inv'rs, I LLC*, No. 06-cv-2360 (KMW) (MHD), 2007 WL 1040309, at *3 (S.D.N.Y. Apr. 2, 2007).

Plaintiff has already demonstrated a strong likelihood that he will succeed on the merits. Plaintiff's memorandum in support of his original motion for preliminary relief explains in detail why Vorotyntsev is liable for fraudulently inducing Plaintiff's $1.35 million investment in ShopLink.  (Dkt. 22 at 6-9).  Vorotyntsev has never even attempted to contest Plaintiff's showing on the merits, whether at the preliminary injunction hearing (Dkt. 17) or in response to Plaintiff's repeated efforts to prevent Vorotyntsev from spending stolen funds (Dkt. 33 at 2; Dkt. 62 at 2). Vorotyntsev even admitted that he is liable before the action was filed.  *See supra* at 4.  Now he claims he was only paying himself a "salary."  In his view, while he devoted next to nothing to the business, which itself generated no revenue, he and his wife were allowed to spend nearly all of Plaintiff's investment on luxury shopping sprees.  No legitimate "salary" at a pre-revenue startup with $1.35 million in funding permits the CEO to covertly provide his wife with a debit card and allows them both to spend or withdraw between one-half and one million dollars in a single month.  This purported "defense" serves only to highlight the audacity and lawlessness of these two Defendants.

There is no legitimate dispute over Vorotyntsev's liability.  Unless this Court intervenes, Vorotyntsev will squander the proceeds of his fraud on a futile legal defense, and ShopLink's investors will lose everything.

## 2.  ShopLink's bylaws do not entitle Vorotyntsev to advancement

In addition, Vorotyntsev is not entitled to defend himself with ShopLink funds because ShopLink's bylaws do not give him any right to advancement.

The bylaws contain provisions for both indemnification and advancement.  To the maximum extent permitted by Delaware law, ShopLink's bylaws purport to indemnify directors and officers against legal expenses, judgments, and other amounts incurred in connection with proceedings arising by reason of the person's official position.  (Olney Aff. Ex. 11 at Art. VI § 1).  ShopLink is also permitted, but not required, to indemnify other employees and agents. (*Id.* at Art. VI § 2).  The bylaws further provide that "[e]xpenses incurred in defending any action or proceeding for which indemnification is required pursuant to Article VI, Section 1, or for which indemnification is permitted pursuant to Article VI, Section 2, *following authorization thereof by the Board of Directors*, shall be paid by the Corporation in advance of the final disposition of such action or proceeding upon receipt of an undertaking."  (*Id.* at Art. VI § 3 (emphasis added)).

Thus, any "[e]xpenses incurred" in proceedings for which indemnification is required or permitted "shall be paid" only after "authorization thereof by the Board."  Since the plain text of the bylaws provides that advancement payments require Board authorization, these payments are discretionary and not mandated by the bylaws.[2]  *See Havens*, 1997 WL 55957, at *13 (advancement decisions left to the "judgment of the Board" are not mandatory); *id.* at *12 ("mandatory advancement" requires bylaws with "explicit wording"); *In re Adelphia*, 323 B.R. at 366-67 (mandatory bylaws do not leave advancement to the "discretion" of the "board[] of directors").

Because ShopLink's bylaws do not require advancement payments, the preliminary injunction already entered in this action prohibits those payments.  Even as modified, the

---

[2]      Indeed, reading the advancement bylaw as mandatory would produce absurd results.  Under that reading, even though indemnification is not required for employees under Article VI § 2, ShopLink would be required to advance fees to those same employees.

injunction permits ShopLink to make only those payments that are "required" by its bylaws. (Dkt. 37).

In any event, the Court should not permit ShopLink's "Board" to advance Vorotyntsev's legal fees on a discretionary basis pursuant to Article VI § 3 of the bylaws.  Vorotyntsev is and always has been ShopLink's sole Board member.  (Dkt. 32 at 1 ¶ 1).  His unilateral decision to advance legal fees to himself is therefore improper self-dealing under Delaware law.

The "discretionary grant of advancements to currently serving directors" is "subject to fiduciary review."  *Marino v. Patriot Rail Co.*, 131 A.3d 325, 336 (Del. Ch. 2016).  "Where directors are voting on advancement to themselves, such a vote is a classic self-dealing transaction, and must satisfy the requirements of the 'entire fairness' doctrine."  *In re Adelphia*, 323 B.R. at 385; *accord Active Asset Recovery, Inc. v. Real Estate Asset Recovery Servs., Inc.*, No. CIV. A. 15478, 1999 WL 743479, at *18 (Del. Ch. Sept. 10, 1999) (a fiduciary "cannot advance fees to or indemnify itself or its affiliates unless it demonstrates that it is fair for it to do so").

The "entire fairness" standard is "so exacting that it ordinarily . . . results in a finding of liability."  *In re Adelphia*, 323 B.R. at 385 (quotation marks omitted).  It requires two inquiries. First is the "procedural" question of whether the directors "undertook due deliberation" and "evaluate[d] the *corporation's interest* with respect to advancement of expenses," *id.* at 386-87 (quotation marks omitted), including "the potential magnitude of expenses or damages [and] the ability of the defendant directors to repay any funds ultimately advanced," *Havens*, 1997 WL 55957, at *14.  Second is the "substantive" question of "whether the decision is defensible on the merits."  *In re Adelphia*, 323 B.R. at 386.

Vorotyntsev cannot satisfy this test.  As to the procedural prong, there is no indication that Vorotyntsev has ever considered ShopLink's interests before causing ShopLink to advance his legal fees.  The haste with which Vorotyntsev transferred $100,000 of ShopLink funds to his personal defense lawyer—after being confronted with wrongdoing, and in flagrant violation of the parties' standstill agreement—confirms that his only goal is self-preservation.  Moreover, *before* receiving advancement payments, Vorotyntsev was required to provide an undertaking to repay all funds advanced by ShopLink if he were ultimately found liable to Plaintiff for securities fraud and/or to ShopLink for the derivative claims.  *See* 8 Del. C. § 145(e) (advancement may be paid only "upon receipt of an undertaking"); *Active Asset Recovery*, 1999 WL 743479, at *19 (same); Olney Aff. Ex. 11 at Art. VI § 3 (same).  But Vorotyntsev provided the required undertaking only two months *after* he transferred $100,000 of ShopLink funds to his lawyer.  (Dkt. 83-4).  This was a clear violation of the DGCL and ShopLink's bylaws, and it further demonstrates that Vorotyntsev did not advance fees to himself with ShopLink's interests in mind.  *See Active Asset Recovery*, 1999 WL 743479, at *19 (fiduciary's advancement of legal fees to itself did not satisfy "entire fairness" standard where there was no "undertaking requiring repayment").

Even if Vorotyntsev had considered ShopLink's interests, his determination would have been substantively unreasonable.  As explained above, there is no real dispute that Vorotyntsev is liable for embezzling corporate funds and defrauding investors.  Though Vorotyntsev purports to have provided an undertaking, he has elsewhere conceded that he either cannot or will not repay the legal fees advanced by ShopLink.  (*See, e.g.*, Dkt. 26 at 3 (asserting that Vorotyntsev lacks personal funds); Dkt. 53 at 3 (conceding that Vorotyntsev will not fully satisfy judgment); Dkt. 83 ¶ 14 (same)).  Under these circumstances, any decision to advance legal fees to Vorotyntsev

would be unfair to ShopLink.  *See In re Adelphia*, 323 B.R. at 388-89 (finding decision to advance fees substantively unreasonable because "[n]o reasonable director could have found any realistic possibility of repayment" and advancement would therefore be "*antithetical* to [the corporation's] interest").  Any advancement payments to Vorotyntsev therefore constitute impermissible self-dealing, and the Court should enjoin them.

Separately, Plaintiff notes that Vorotyntsev's undertaking to repay ShopLink is fraudulent, because he admittedly has no intention of repaying ShopLink.  (*See, e.g.*, Dkt. 83 ¶ 14).  An undertaking is a "promise of repayment."  *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Holding Co., LLC*, 853 A.2d 124, 129 n.19 (Del. Ch. 2004); *see also* "Undertaking," Black's Law Dictionary (10th ed. 2014).  And in Delaware, a promise made "without the intention to perform" is considered "[p]romissory fraud."  *Grunstein v. Silva*, No. CIV.A. 3932-VCN, 2014 WL 4473641, at *37 (Del. Ch. Sept. 5, 2014), *aff'd*, 113 A.3d 1080 (Del. 2015).  Vorotyntsev has already defrauded Plaintiff; he should not be permitted to defraud ShopLink as well in order to defend the claims against him.

### 3.  Vorotyntsev's unclean hands defeat any entitlement to advancement

Even if ShopLink's bylaws entitled Vorotyntsev to advancement, Vorotyntsev's unclean hands would negate that entitlement.  Under Delaware law, advancement-related misconduct renders a corporate official's hands "unclean" and destroys any right to advancement he might otherwise have.  *Nakahara v. NS 1991 Am. Trust*, 739 A.2d 770, 791 (Del. Ch. 1998); *see also S.E.C. v. Illarramendi*, No. 3:11CV78 JBA, 2014 WL 8019048, at *7, *12 (D. Conn. Mar. 27, 2014) (advancement could be "barred due to . . . inequitable conduct" despite an official's "contractual right to receive advancement").

*Nakahara* is especially instructive.  There, the trustees of a business trust filed suit for advancement of their legal fees.  The court agreed that the trustees "satisfied all the contractual conditions prerequisite to obtaining advancement," but it nevertheless rejected their claim.  739 A.2d at 791.  The trustees had previously withdrawn money for legal fees in violation of a "standstill agreement" with their adversaries, "rendering [their] hands 'unclean' with respect to the judicial approval they [sought] of their right to advancement."  *Id.* at 792-93.  In light of this "inequitable conduct," the court declined to recognize the trustees' contractual entitlement to advancement.  *Id.* at 795; *see also Illarramendi*, 2014 WL 8019048, at *11 (refusing advancement in part because corporate officials "exploited ambiguities in the[ir] standstill agreement" with the party seeking injunctive relief).

Here, it is undisputed that Vorotyntsev funded his legal defense by withdrawing $100,000 from ShopLink on September 7, 2016.  (Dkt. 32 at 5 ¶ 38; Dkt. 17 at 25, 29).  This was a flagrant violation of the parties' standstill agreement, which permitted withdrawals from ShopLink's bank account only for "software development, contacting potential customers, establishing partners and business alliances, and exploring marketing opportunities," and expressly forbade transfers "for the benefit of Mr. Vorotyntse[v]."  (Olney Aff. Ex. 3 ¶ 3).  This violation, alone, is enough to bar Vorotyntsev's advancement claim.  *See Nakahara*, 739 A.2d at 792-93.

Moreover, Vorotyntsev made the illicit $100,000 transfer during the standstill period knowing that, once Plaintiff went to court, Plaintiff was likely to obtain an injunction precluding additional transfers from ShopLink.  Vorotyntsev did not even bother to provide ShopLink with an undertaking to repay the advanced fees—as required by the DGCL and ShopLink's bylaws— until instructed to do so by his lawyers several months *after* the transfer.  (Dkt. 83-4).  This, too, is decisive proof of bad faith.  *See Illarramendi*, 2014 WL 8019048, at *8-10 (denying

16

advancement to officers who "rushed to provide for their own personal legal defense" and "unilaterally" advanced funds to themselves without following "contractually required" procedures or "proper corporate governance").  Accordingly, Vorotyntsevs' hands are unclean, and he has no right to any additional advancements.

### 4.  Vorotyntsev cannot invoke ShopLink's separate existence to claim a right to advancement from ShopLink

Vorotyntsev is not entitled to advancement from ShopLink for the further reason that he has abused the corporate form.  Where a corporate insider uses the corporation as "a mere instrumentality or alter ego," he cannot benefit from the legal "distinction between the entity and [himself]."  *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) (quotation marks omitted).  Consistent with this principle, abuses of the corporate form might justify "disregard[ing] the corporate entity" in order to defeat a corporate official's "claim seeking indemnification" from that entity.  *Witco Corp. v. Beekhuis*, 38 F.3d 682, 693 (3d Cir. 1994).  After all, it would be the height of hypocrisy for a corporate official to treat the corporation as an extension of himself and then, when it becomes convenient, treat the corporation as a separate entity so that he can invoke its contractual obligations toward him.  *Cf.* 1 Fletcher Cyc. Corp. § 47 (noting that "the corporation cannot be inconsistently regarded and at the same time disregarded").

The evidence clearly shows that Vorotyntsev disregarded ShopLink's separate existence by treating its "bank account as one of his pockets," *NetJets Aviation*, 537 F.3d at 182, and using ShopLink funds to pay for everything from luxury goods and car payments to groceries and gym fees.  (Olney Aff. Exs. 1, 2).  And given that Vorotyntsev used his control over ShopLink to engage in "fraud" and the "unfair siphoning of [corporate] assets," it cannot seriously be disputed that there was "an overall element of injustice" in Vorotyntsev's operation of ShopLink.

17

*Id.* at 183-84.  Having unfairly disregarded ShopLink's separate existence, Vorotyntsev should

not now be allowed to switch course, treat ShopLink as a distinct entity, and invoke its purported

legal obligations to him as a justification for paying his legal fees.

### 5.  Vorotyntsev cannot use ShopLink funds to prosecute his own claims

At a minimum, Vorotyntsev should be enjoined from using any ShopLink funds to

litigate his counterclaims and third-party claims.  Even if ShopLink's bylaws required

advancement, and even if no other legal principles overrode those bylaws, the bylaws would not

permit advancement for the claims advanced by Vorotyntsev.

ShopLink's bylaws permit advancement only of expenses incurred "in defending" an

action or proceeding.  (Olney Aff. Ex. 11 at Art. VI § 3).  Under Delaware law, a counterclaim

"defends" against an action or proceeding only when it satisfies two conditions.  First, the

counterclaim must "qualify as a compulsory counterclaim[] under the traditional counterclaim

test used by both Delaware and federal civil procedure."  *Zaman v. Amedeo Holdings, Inc.*, No.

CIV.A. 3115-VCS, 2008 WL 2168397, at *35 (Del. Ch. May 23, 2008).  A "counterclaim is

compulsory" if it "bear[s] a logical relationship" to the plaintiff's claim, which is "informed by

considerations such as whether they share issues of fact and law in common or would involve

presentation of the same evidence."  *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1056-57

(Del. Ch. 2014).  Second, the compulsory counterclaim must "so directly relate[] to a claim

against a corporate official such that success on the counterclaim would operate to defeat the

affirmative claims against the corporate official."  *Zaman*, 2008 WL 2168397, at *35.  In other

words, the counterclaim must "directly respond[] to *and* negat[e] the affirmative claim."  *Id.*;

*accord Baker*, 2010 WL 2979050, at *6 (advancement extends to "compulsory counterclaims

directly responding to and negating an affirmative claim"); *see also Zaman*, 2008 WL 2168397, at *35 n.150 (noting that "[t]he defensive focus of the counterclaim is an important limitation").

Vorotyntsev's counterclaims fail both prongs of this test.[3]  All they allege is that Plaintiff induced ShopLink-affiliated personnel to breach their duties and start a competing venture. (Dkt. 32 at 10-23).  Plaintiff claims that, before any of that supposedly occurred, Vorotyntsev defrauded Plaintiff and looted ShopLink.  Vorotyntsev's counterclaims therefore are not compulsory.  Nor would the counterclaims somehow "negate" Plaintiff's claims.  Vorotyntsev stole Plaintiff's money, regardless of what Plaintiff supposedly did afterwards.  The counterclaims therefore do not "defend" against Plaintiff's claims within the meaning of ShopLink's bylaws.  *See, e.g.*, *Pontone*, 100 A.3d at 1057 (refusing advancement for counterclaim because most of its "elements [we]re wholly distinct from the elements at issue in the . . . affirmative claims"); *Radiancy, Inc. v. Azar*, No. 1547-N, 2006 WL 4762868, at *4 (Del. Ch. Jan. 23, 2006) (counterclaims "not subject to advancement" because the "issues involved" were "separable from the questions raised by the complaint"); *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209-10, 213-14 (2d Cir. 2004) (counterclaims not compulsory where the "essential facts for proving the counterclaims" were not "closely related" to the plaintiff's claim, even though they shared a "common nucleus" of fact and "originate[d]" from the same events).

Nor are Vorotyntsev's third-party claims subject to advancement, as Delaware cases treat "third-party claims" as "offensive as opposed to defensive actions."  *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 402 (Del. Ch. 2009) (quotation marks omitted)).  Accordingly, Vorotyntsev may not spend ShopLink funds to prosecute any of his claims.

---

[3]     Vorotyntsev has indicated that he plans to file amended counterclaims.  (Dkt. 70).  If necessary, Plaintiff intends to make additional arguments with respect to any amended pleading.

**6. Vorotyntsev must return all funds improperly advanced thus far**

Given that Vorotyntsev is not and has never been entitled to advancement, the Court should require him to return all funds improperly advanced, in addition to prohibiting future advancement payments. *See Hermelin*, 54 A.3d at 1105 (officer was "required to reimburse [the corporation] for any advancements made" because he was "precluded . . . from receiving advancement" for a particular matter); *Nakahara*, 739 A.2d at 775 n.22 (observing that law firm would return advanced funds "in light of [the court's] decision" prohibiting advancement). This includes any funds that Vorotyntsev has expended or will expend in litigating this motion. *See Hermelin*, 54 A.3d at 1105 (requiring reimbursement of "fees advanced" for the officer's "attempted enforcement of his advancement right"); *cf. Marino*, 131 A.3d at 350 (awarding officer only "a proportionate recovery of his fees and expenses" because he "prevailed in his request for advancement, but not on all points").

**B.      Plaintiff And ShopLink Are Suffering Irreparable Harm**

Unless this Court grants Plaintiff's requested relief, neither Plaintiff nor ShopLink will ever be able to recover the ShopLink funds that Vorotyntsev is improperly spending on his legal defense. As noted above, Vorotyntsev admits that he cannot or will not repay the legal fees advanced by ShopLink. (*See, e.g.*, Dkt. 26 at 3; Dkt. 53 at 3; Dkt. 83 ¶ 14). Indeed, until this Court entered the preliminary injunction, Vorotyntsev was dependent on ShopLink funds to subsidize his lifestyle. (Olney Aff. Exs. 1, 2). Therefore, absent this Court's intervention, Plaintiff and ShopLink will continue to suffer irreparable harm. Advancement under these circumstances must be enjoined. *See Havens*, 1997 WL 55957, at *14 (enjoining advancement of legal fees to defendants because plaintiffs "face[d] a significant threat of irreparable injury" if defendants proved "unable to repay the corporation for expenses previously advanced"); *Johnson*

*v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (enjoining advancement of defense costs in part because defendants alleged that they "would not be able to pay their legal bills without advancement of funds" and it was therefore clear they "w[ould] not have the resources to reimburse" the corporation).

Vorotyntsev has made it clear that he will not only continue to spend the money he stole, but he will do so indiscriminately.  He has directed both his personal and ShopLink's attorneys to assert meritless claims, to sue nonexistent companies, to assert claims that the law does not recognize, to duplicate tasks, to have ShopLink perform legal work on behalf of him personally, and to multiply these proceedings with dilatory and wasteful tactics.  And he has attempted to leverage his continued access to the stolen funds in order to strong-arm a settlement.  To state the obvious, a fraudster like Vorotyntsev simply cannot be trusted with the funds that he himself embezzled.

## II.    The Vorotyntsevs Are Improperly Shifting The Cost Of Their Defense To ShopLink

The Court should also prevent ShopLink from expending funds on litigating matters that are for the benefit of Defendants Mikhail and Elena Vorotyntsev, and require that all such prior expenses be immediately repaid.

ShopLink is joined in this action as a mere nominal defendant because Plaintiff brings claims derivatively on its behalf against the actual defendants, Mikhail and Elena Vorotyntsev. *See Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 152 n.3 (E.D.N.Y. 2014) ("In derivative actions, the corporation must be named as a necessary nominal defendant." (citing *Meyer v. Fleming*, 327 U.S. 161, 167 (1946))).  The nominal defendant in a derivative suit generally "cannot participate in the defense on the merits."  13 Fletcher Cyc. Corp. § 5997.  "Allowing the nominal defendant[] to defend on the merits in effect would allow [the actual defendant] to shift

21

the cost of his defense of the derivative suit to the corporation[]  against which he has allegedly committed tortious conduct."  *Sobba v. Elmen*, 462 F. Supp. 2d 944, 950 (E.D. Ark. 2006).

Accordingly, courts have policed the payments made by nominal defendants, since those entities "have no interest whatever" in being "used as a back-door means" to "defend claims principally or entirely for the benefit of" other parties.  *In re Adelphia*, 323 B.R. at 392; *see also Sobba v. Elmen*, No. 4:06CV00941 JLH, 2007 WL 1174168, at *2 (E.D. Ark. Apr. 19, 2007) (permitting discovery into whether the defendant "directed corporate counsel to do work that was for his benefit, not for the benefit of [the nominal defendant corporations], and then paid corporate counsel from the [corporations'] funds").  This concern is especially acute here, since Mikhail Vorotyntsev is the *sole* director of ShopLink, and therefore the only person with control over ShopLink's legal expenditures and litigation objectives.

The Vorotyntsevs have already caused ShopLink to waste funds litigating matters that serve only to advance their personal interests.  *First*, ShopLink's answer asserts ten "affirmative defenses" (Dkt. 55 at 7-8), even though ShopLink has nothing to defend against, since Plaintiff asserts no claims against it.  These defenses are ineffectual because ShopLink has no standing to raise defenses to claims brought only against the Vorotyntsevs.  *Cf. Sterling Fin. Servs. Co., v. Franklin*, 259 F. App'x 367, 369 (2d Cir. 2008) (defendant lacks standing to raise defense that "properly belongs to" another party).  They are also inappropriate, since if ShopLink were permitted to litigate defenses to claims against the Vorotyntsevs, the Vorotyntsevs could "shift the cost of [their] defense to the corporation[]."  *Sobba*, 462 F. Supp. 2d at 950 (striking nominal defendants' answer).  And ShopLink violated the preliminary injunction by transferring funds to its attorney to assert these defenses "for the benefit of Mikhail Vorotyntsev and/or Elena Vorotyntsev."  (Dkt. 13).

22

*Second*, ShopLink has filed a motion to dismiss the derivative claims.  (Dkt. 82).  The Vorotyntsevs could have filed the same motion themselves seven weeks ago, but instead they chose only to answer the complaint.  (Dkts. 31, 32).  That is because they knew that Mikhail Vorotyntsev, as sole director of ShopLink, could direct ShopLink's counsel to litigate the motion using ShopLink's funds.  Funds transferred to ShopLink's attorney for this motion also violate the preliminary injunction.

*Third*, Vorotyntsev is using ShopLink funds to litigate claims on behalf of Vorotyntsev's other companies.  Until recently, Vorotyntsev controlled Aum Code LLC and its wholly owned subsidiary IT Adapter LLC.  (Dkt. 32 at 12 ¶¶ 19-21).  In late November or early December, Vorotyntsev conveyed his interest in these entities to ShopLink.  (Olney Aff. Ex. 12); *see also Khmaladze*, No. 16-cv-8029, Dkts. 26, 27.  Although Vorotyntsev's counsel denied that the purpose of the conveyance was to "cause ShopLink to expend more in legal fees for Aum Code and IT Adapter" (Olney Aff. Ex. 12), counsel for ShopLink subsequently filed an answer and counterclaims on behalf of these entities in the related action filed by Dmitriy Khmaladze.  *See* No. 16-cv-8029, Dkt. 28.  Plainly, the sole purpose of the transfer was to create an ownership relationship between these entities and ShopLink, another company controlled by Vorotyntsev, so that Vorotyntsev could evade the preliminary injunction and spend ShopLink funds litigating their defenses and counterclaims.  Regardless, these payments still violate the preliminary injunction, because they are "indirectly" "for the benefit of Mikhail Vorotyntsev."  (Dkt. 13).

These are just the most egregious examples of the illicit cost-shifting undertaken by Vorotyntsev.  It has become apparent that counsel for ShopLink is performing other tasks that should be handled by the Vorotyntsevs' personal attorney.  (*See, e.g.*, Olney Decl. Ex. 13 (ShopLink counsel conducting settlement discussions on behalf of Vorotyntsev)).  Indeed,

ShopLink's attorney estimates that he intends to charge Shoplink "approximately $300,000" to litigate this action against Plaintiff, even though Plaintiff is bringing claims *on behalf of ShopLink*.  (Dkt. 84 ¶ 14).

If left unchecked, the Vorotyntsevs will continue to exploit ShopLink as a source of funds and as a proxy to assert arguments against Plaintiff.  The Court should therefore confirm that ShopLink's funds may not be used to litigate (1) ShopLink's affirmative defenses, (2) ShopLink's motion to dismiss, and (3) the defenses and counterclaims of Aum Code LLC and IT Adapter LLC in the related action, all of which were filed by ShopLink's counsel at the behest of Mikhail Vorotyntsev.  In addition, Plaintiff requests that the Court instruct counsel for ShopLink to cease performing work that should be handled by the Vorotyntsevs' counsel, and to require that all amounts improperly expended be reimbursed to ShopLink.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court (i) prevent

Mikhail Vorotyntsev from spending ShopLink funds on his legal defense, and prevent ShopLink

from expending its funds on litigation for the benefit of the Vorotyntsevs, and (ii) require that all

improper expenditures be immediately reimbursed.

Dated:      December 16, 2016
            New York, New York

                                        Respectfully submitted,

                                        /s/ Eric S. Olney
                                        Eric S. Olney
                                        Fabien Thayamballi
                                        Shapiro Arato LLP
                                        500 Fifth Avenue, 40th Floor
                                        New York, New York 10110
                                        (212) 257-4880

                                        *Attorneys for Plaintiff Gary
                                        Tatintsian*