```
                                                                    USDC SDNY
                                                                    DOCUMENT
                                                                    ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                                        DOC #: _____
SOUTHERN DISTRICT OF NEW YORK                                       DATE FILED: 05/22/2018
-------------------------------------------------------------X
GARY TATINTSIAN, on his own behalf and for the       :
benefit of ShopLink, Inc.                            :
                                                     :
                                Plaintiff,           :      1:16-cv-7203-GHW
                                                     :
                -against-                            :      MEMORANDUM
                                                     :      OPINION AND ORDER
MIKHAIL VOROTYNTSEV, and ELENA                       :
VOROTYNTSEV,                                         :
                                                     :
                                Defendants.          :
                                                     :
        and,                                         :
                                                     :
SHOPLINK, Inc.                                       :
                                                     :
                                Nominal Defendant.   :
-------------------------------------------------------------X
```

GREGORY H. WOODS, United States District Judge:

## I.  INTRODUCTION

On September 22, 2016, the Court granted in part Plaintiff Gary Tatintsian's motion for a preliminary injunction enjoining Defendants Mikhail Vorotyntsev and Elena Vorotyntsev "from withdrawing, spending, or transferring any funds or other assets from ShopLink, Inc. ["ShopLink"] or causing ShopLink[] to withdraw, spend, or transfer any funds or other assets, to the extent that such withdrawals, payments, or transfers are to or for the benefit of Mikhail Vorotyntsev and/or Elena Vorotyntsev, whether directly or indirectly."  Dkt. No. 13.

During a teleconference held on November 7, 2016, counsel for the Vorotyntsevs raised a question concerning the scope of the preliminary injunction; namely, whether the mandatory advancement of legal fees, as required under ShopLink's by-laws, were enjoined.  The Court explained, "I did not expect to be limiting the payment of legally binding obligations of the company pursuant to my September order, and as a result, having seen the consequences of that expansive order, I'm going to carve this out."  Tr. 9:20-23.  By order dated November 9, 2016, the Court

modified the scope of preliminary injunction to "exclude from the scope of that order any payments required pursuant to, and in compliance with, ShopLink Inc.'s By-Laws, Article VI, § 1." Dkt. No. 37.

The Court invited the parties to submit further briefing on this issue. Plaintiff submitted a motion seeking to modify the temporary restraining order to prohibit the advancement of funds to Mr. Vorotyntsev. Because Mr. Vorotyntsev is entitled to mandatory advancement under ShopLink's By-Laws, and because the Court does not have a basis for impinging upon that contractual obligation, Plaintiff's motion is DENIED.

## II. BACKGROUND

Mikhail Vorotyntsev is the sole officer and board member of ShopLink, a technology company founded by Mr. Vorotyntsev to develop software for selling and marketing goods on social media. *Tatintsian v. Vorotyntsev*, No. 16-cv-7203 (the "*Tatintsian* litigation"), Dkt. No. 1, Verified Complaint ("Compl.") ¶¶ 12-13. In 2014, Mr. Vorotyntsev began raising funds for the company and, over the course of the following two years, he convinced six or seven investors to purchase approximately $1.83 million worth of convertible notes. *Id.* ¶ 19. In addition to these investors, Mr. Vorotyntsev also pitched ShopLink to his longtime acquaintance, Mr. Tatintsian. *Id.* ¶ 17. The complaint alleges that, in soliciting his investment, Mr. Vorotyntsev told Mr. Tatintsian that ShopLink owned the intellectual property rights to the technology underlying the business. *Id.* Mr. Tatintsian alleges he was also told that ShopLink was in good standing in the State of Delaware. *Id.* ¶¶ 23-24. Believing these representations to be true, Mr. Tatintsian purchased shares of ShopLink for $1,348,200 in two payments, first in April 2016 and again in August 2016, giving him a 2.8% share of the company. *Id.* ¶¶ 20-21, 28. Mr. Vorotyntsev represented in Mr. Tatintsian's purchase agreement that "most of [ShopLink's] limited resources have and will continue to be spent on startup activities." *Id.* ¶ 27 (internal quotation marks omitted).

2

Soon after completing this investment, Mr. Tatintsian began to suspect that Mr. Vorotyntsev was misusing company money. *Id.* ¶ 34. In early September, Mr. Vorotyntsev and Mr. Tatintsian negotiated an agreement whereby Mr. Vorotyntsev would provide Mr. Tatintsian with copies of ShopLink's bank statements in exchange for Tatintsian's promise to forgo initiating legal action before September 9, 2016. *Id.* ¶ 37. As part of their agreement, Mr. Vorotyntsev also promised that ShopLink's funds would only be used for purposes related to the "ordinary course of business" until that date. *Id.* The complaint alleges that ShopLink's bank statements revealed that Mr. Vorotyntsev and his wife, Defendant Elena Vorotyntsev, had taken hundreds of thousands of dollars from ShopLink's coffers to pay for lavish personal expenses. *Id.* ¶ 2. Mr. Tatintsian alleges, for instance, that the Vorotyntsevs used company funds to pay rent for a luxury apartment, and that they spent tens of thousands of dollars at department stores, high-end home furnishing stores, and "restaurants, chocolatiers, wine stores, pastry shops, 'smoke shops,' doctors' offices, hair salons, dry cleaners and drug stores." *Id.* ¶ 31.

In the *Tatinsian* litigation, Mr. Vorotyntsev has brought a third-party complaint against Dimitry Khmaladze, Younis Zubchevich, and other ShopLink-affiliated companies, relating to an alleged scheme between Mr. Khmaladze, Mr. Zubchevich, and Mr. Tatintsian to usurp the ShopLink business plan and to steal the technology developed to operate the company. Dkt. No. 40 ("Third Party Complaint"). Mr. Vorotyntsev has also brought counterclaims against Mr. Tatintsian for aiding and abetting Mr. Khmaladze and Mr. Zubchevich in breaching their fiduciary duties to Mr. Vorotyntsev. Dkt. No. 89 ("Amended Answer and Counterclaim").

In the related action, Mr. Khmaladze and his company IT Adapter Corporation, Inc. bring claims against Mr. Vorotyntsev, ShopLink, and a number companies Mr. Vorotyntsev created to develop the intellectual property associated with the ShopLink project. *Khmaladze v. Vorotyntsev et al.*, No. 16-cv-8029 (the "*Khmaladze* litigation"), Dkt. No. 1 ("Khmaladze Compl."). Mr. Khmaladze, an

3

experienced computer programmer, worked with Mr. Vorotyntsev to develop the software that would be used to operate ShopLink. *Id.* ¶¶ 14, 20. The complaint alleges that Mr. Vorotyntsev fraudulently induced Mr. Khmaladze to enter into various agreements to do business through lies and deceit concerning the strength of the company and its sources of funding. *Id.* ¶¶ 22-24. The complaint further alleges that Mr. Vorotyntsev endeavored to steal Mr. Khmaladze's software ideas by forcing him to enter various business agreements. *Id.* ¶ 31. Mr. Khmaladze seeks rescission of the various business agreements that he alleges he was fraudulently induced into entering. *Id.* ¶¶ 47-106. In answering the complaint in the *Khmaladze* litigation, Mr. Vorotyntsev asserts counterclaims against Mr. Khmaladze for breach of fiduciary duties owed to Mr. Vorotyntsev by virtue of Mr. Khmaladze's alleged role as a member and manager of various ShopLink-affiliated companies.

## III.    DISCUSSION

### A.    ShopLink's Bylaws Mandate Advancement to Mr. Vorotyntsev

As described below, ShopLink's bylaws provide for mandatory advancement of expenses incurred by officers and directors of the company, provided that the expenses are incurred in defending an action or proceeding that arises out of the fact that the officer or director is an agent of ShopLink. Accordingly, Mr. Vorotyntsev is entitled to the advancement of expenses incurred in defending this action.

Section 145(e) of the Delaware General Corporation Law ("DGCL") permits a corporation to advance expenses, including attorneys' fees, incurred "in defending" a proceeding. 8 DGCL § 145(e). The DGCL provides that a corporation "may" pay the defensive expenses in advance, but does not require advancement. *Id.* However, as the Delaware Chancery Court has explained, a corporation can make the right to advancement mandatory through a provision in its bylaws or by contract. *Gentile v. SinglePoint Fin., Inc.*, 787 A.2d 102, 106 (Del. Ch.), *aff'd*, 788 A.2d 111 (Del. 2001). An advancement provision will not be considered mandatory "absent a clearly worded by-law or contract making it mandatory." *Thompson v. The Williams Companies, Inc.*, No. 2716-VCS, 2007 WL

4

3326007, at *3 (Del. Ch. 2007) (citing *Havens v. Attar,* No. CIV.A. 15134, 1997 WL 695579, at *1 (Del. Ch. Nov. 5, 1997)); *see also Advanced Mining Systems v. Fricke,* 623 A.2d 82, 84 (Del. Ch. 1992) (holding that any mandatory bylaw must "expressly state its intention to mandate the advancement by the corporation of arguably indemnifiable expenses under subsection (e)").

Because "advancement bylaws are strictly construed according to their terms," *Thompson*, 2007 WL 3326007 at *3, in order to determine whether a director or officer has a right to advancement under a corporation's bylaws, the Court must look at the language of the provision as it would in interpreting any contract. As the Delaware Chancery Court has explained,

> When interpreting a contract, the court's ultimate goal is to determine the parties' shared intent. Because Delaware adheres to the objective theory of contract interpretation, the court looks to the most objective indicia of that intent: the words found in the written instrument. As part of this initial review, the court ascribes to the words their common or ordinary meaning, and interprets them as would an objectively reasonable third-party observer. When the plain, common, and ordinary meaning of the words lends itself to only one reasonable interpretation, that interpretation controls the litigation.

*Sassano v. CIBC World Markets Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008) (internal citations and quotation marks omitted).

The advancement provision of ShopLink's By-Laws, Article VI, Section 3, provides that:

> Expenses incurred in defending any action or proceeding for which indemnification is required pursuant to Article VI, Section 1, or for which indemnification is permitted pursuant to Article VI, Section 2, following authorization thereof by the Board of Directors, shall be paid by the Corporation in advance of the final disposition of such action or proceeding upon receipt of an undertaking by or on behalf of the indemnified party to repay such amount if it shall ultimately be determined by final judicial decision from which there is no further right to appeal that the indemnified party is not entitled to be indemnified as authorized in this Article.

Plaintiff contends that the clause "following authorization thereof by the Board of Directors" modifies both advancements required under Article VI, Section 1, as well as those permitted under Article VI, Section 2, and therefore that the bylaws only provide for discretionary advancement. Strictly construing the words used in this provision, however, the only reasonable interpretation of

5

ShopLink's advancement provision is that advancement for directors and officers is mandatory.

The other provisions referenced in Section 3 provide clear support for the Court's conclusion that the advancement of costs to officers and directors is not within the discretion of the Board of Directors. Article VI, Section 1 of the bylaws provides that:

> The Corporation shall, to the maximum extent and in the manner permitted by the DGCL . . . indemnify each of its directors and officers against expenses (including attorneys' fees), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any proceeding, arising by reason of the fact that such person is or was an agent of the Corporation.

This provision unambiguously provides for mandatory indemnification of officers and directors of the company, provided that the expenses are incurred in connection with the officer or director's role as an agent of ShopLink. *See Paolino Mace Sec. Int'l, Inc.*, No. Civ 4462, 2009 WL 3652894, at 6 (Del. Ch. Dec. 8, 2009) (holding that indemnification and advancement provisions at issue were mandatory where the provisions stated that the corporation "shall" indemnify a director "to the fullest extent authorized by the [DGCL]."). Article VI, Section 2 of ShopLink's By-Laws, by contrast, states that:

> The Corporation *shall have the power*, to the maximum extent and in the manner permitted by the DGCL . . . to indemnify each of its employees and agents (other than directors and officers) against expenses (including attorneys' fees), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any proceeding, arising by reason of the fact that such person is or was an agent of the Corporation.

(emphasis added). This provision permits the Board of Directors to choose whether the company will indemnify employees and agents of ShopLink, but does not require the company to do so.

Reading the advancement provision in context with these two provisions, the only reasonable interpretation is that advancement of expenses for officers and directors is required. That the advancement provision separately references both mandatory indemnification for officers and permissive indemnification for other employees shows that the right to advancement is similarly delineated, and like indemnification, the right to advancement is dependent on the nature of the

6

potential recipient's relationship to the corporation. If—as Plaintiff argues—the advancement provision were entirely discretionary irrespective of whether the recipient of the advancement was an officer of the company or an ordinary employee of the company, the provision would not need to draw any distinction between the two types of indemnification contemplated by the By-Laws. The plain reading of the advancement provision is thus that advancement of expenses for officers and directors is mandatory, and that advancement of expenses for other employees of the company is at the discretion of the Board of Directors.

As Mr. Vorotyntsev is an officer and a director of ShopLink, advancement of his expenses is mandatory under ShopLink's By-Laws, subject only to the receipt of an undertaking. Mr. Vorotyntsev has provided an undertaking "to repay ShopLink any amounts advanced to pay my expenses in defending the actions brought by Gary Tatintsian and Dimitriy Khmaladze in the event there is a final judicial decision that I am not entitled to indemnification." Dkt. No. 83, Ex. D (Email from M. Vorotyntsev to D. Pohl); *see also* Dkt. No. 107, Affidavit of Erica Wolff ("Wolff Aff"), Ex. 2. The adequacy and effectiveness of this undertaking is not disputed. As a result, the Court's November 9, 2016 order excluded payment of that advancement from the scope of the preliminary injunction.[1]

> B. <u>The Court Will Not Modify the Preliminary Injunction to Restrict the Mandatory Advancement of Expenses</u>

Delaware law requires that mandatory advancement provisions be enforced, even when there are considerations that would caution against permitting advancement. As one Delaware court explained,

> Mandatory advances, like indemnification, serve the salutary purpose of
> encouraging qualified persons to become or remain as directors of Delaware

---

[1] ShopLink's By-Laws provide for mandatory advancement only for directors or officers of ShopLink. As a result, Defendant Elena Vorotyntsev, who is not an employee of ShopLink, is not entitled to the advancement of expenses. During a teleconference held on June 9, 2017, former counsel for Mr. and Ms. Vorotyntsev proffered that company funds have not been used to pay for Ms. Vorotyntsev's defense. Accepting that proffer as true, the Court only addresses advancement as it pertains to Mr. Vorotyntsev.

7

> corporations, by assuring them, *ex ante,* that they may resist lawsuits that they
> consider meritless, free of the burden of financing (at least initially) their own
> legal defense.

*See In re Cent. Banking Sys., Inc.*, No. C.A. 12497, 1993 WL 183692, at *3 (Del. Ch. May 11, 1993) (enforcing mandatory advancement provision despite demonstrated risk that the corporation would not be reimbursed). Despite Plaintiff's arguments to the contrary, there is no legal basis for the Court to contravene ShopLink's established contractual obligation.

Neither allegations of fraud or self-dealing, nor allegations that a corporate officer has abused the corporate form, require the Court to prohibit advancement to Mr. Vorotyntsev. As the Delaware Chancery Court has explained,

> It is not uncommon for corporate directors, officers, and employees to be
> sued for breach of the fiduciary duty of loyalty, and to have to defend claims
> that they took official action for the primary purpose of diverting corporate
> resources to their own pocketbooks . . . . Therefore, it is highly problematic
> to make the advancement right of such officials dependent on the motivation
> ascribed to their conduct by the suing parties. To do so would be to largely
> vitiate the protections afforded by § 145 and contractual advancement rights.

*Reddy v. Elec. Data Sys. Corp.*, No. CIV.A. 19467, 2002 WL 1358761, at *5 (Del. Ch. June 18, 2002). In *Reddy*, the court observed that it "has often been required to uphold the indemnification and advancement rights of corporate officials accused of serious misconduct, because to do otherwise would undermine the salutory [sic] public policies served by § 145." *Id.*; *see also Imbert v. LCM Interest Holding LLC*, No. CIV.A. 7845-ML, 2013 WL 1934563, at *4 (Del. Ch. May 7, 2013) (enforcing a mandatory advancement provision where the complaint alleged that the company officer breached his fiduciary duties by "scheming with his personal accountant to withdraw millions of dollars in unnecessary distributions"); *Zaman v. Amedeo Holdings, Inc.*, No. CIV.A. 3115-VCS, 2008 WL 2168397, at *2 (Del. Ch. May 23, 2008) (upholding advancement and indemnification provisions where former directors were alleged to have "exploited their power over the corporations' assets, by siphoning off funds to pay themselves excessive fees, using credit cards for improper personal expenses, and causing the corporations to enter into sweetheart contracts that unduly benefited

8

themselves"); *Marino v. Patriot Rail Co.*, 131 A.3d 325, 347 (Del. Ch. 2016) (holding that allegations that a company was the alter ego of a senior officer did not preclude advancement of expenses to that officer, as such allegations "necessarily invoke[d Plaintiff's] corporate authority as the senior officer of the Company").

Accordingly, the allegations against Mr. Vorotyntsev here do not provide a basis for restricting expenses contractually owed to him as an officer and director of ShopLink. None of the cases Plaintiff relies on involve the advancement of litigation expenses as required by a company's bylaws or any other contractual arrangement. In *Richards v. Mountain Capital Management*, the receiver of a fund whose operator had pleaded guilty to orchestrating a Ponzi scheme presented evidence that defendants had received over $25 million from the scheme. No. 10 Civ. 2790 RMB JCF, 2010 WL 2473588, at *1-2 (S.D.N.Y. June 17, 2010). In that case, the court had frozen the defendants' assets, and refused to lift that freeze to permit the defendants' attorneys to be paid. The court's decision was based largely on the need to "ensure that appropriate compensation can be paid to the victims" of the Ponzi scheme; as the court noted, there were over 400 defrauded investors whose losses totaled tens of millions of dollars. *Id.* at *2-3. There has been no similar finding of liability here; the Court has not been presented with evidence that ShopLink's funds are entirely fraudulent, as the *Richards* court found in relation to the funds received from a convicted Ponzi schemer.

Furthermore, Plaintiff's attempt to analogize the facts of this case to cases brought as S.E.C. enforcement actions is inapt, because in those cases, the person requesting funds was either facing or had already been found guilty of fraud-related charges. In *S.E.C. v. Quinn,* the request for attorneys' fees came from an imprisoned securities fraudster. 997 F.2d 287, 288 (7th Cir. 1993). In *S.E.C. v. Cobalt Multifamily Investors, I LLC*, the request for fees came from an individual who was facing criminal charges for engaging in fraud, and the funds in question would have come from the accounts held for the allegedly fraudulent scheme at issue in the criminal case. No. 06-cv-2360, 2007 WL 1040309, at *2-3 (S.D.N.Y. Apr. 2, 2007). While this Court found that Plaintiff is likely to

succeed on the merits of his claims in granting the preliminary injunction, there are no findings of criminal fraud as in the cases Plaintiff relies upon. Moreover, as a court in this district has explained in discussing the unique nature of S.E.C. enforcement actions,

> The SEC is not an ordinary litigant, but a statutory guardian charged with safeguarding the public interest in enforcing the securities laws. By making a showing required by statute that the defendant "is engaged or about to engage in illegal acts, the [SEC] is seeking to protect the public interest, and the standards of the public interest, not the requirements of private litigation, measure the propriety and need for injunctive relief."

*S.E.C. v. Credit Bancorp Ltd.*, No. 99 Civ. 11395, 2010 WL 768944, at *2 (S.D.N.Y. Mar. 8, 2010) (quoting *SEC v. Managements Dynamics, Inc.,* 515 F.2d 801, 808-09 (2d Cir. 1975) (internal punctuation omitted)). The cases Plaintiff relies on for the contention that Mr. Vorotyntsev cannot seek advancement because he is alleged to have engaged in fraud are therefore inapposite to this case. Instead, the circumstances of this case more closely mirror the Delaware court decisions in which mandatory advancement provisions were enforced despite allegations of fraud or allegations that a defendant abused the corporate form. *See e.g.*, *Reddy*, 2002 WL 1358761, at *5; *Imbert*, 2013 WL 1934563, at *4; *Zaman*, 2008 WL 2168397, at *2; *Marino,* 131 A.3d at 347.

In addition, the doctrine of "unclean hands" does not defeat Mr. Vorotyntsev's entitlement to advancement. The doctrine of "unclean hands" is an equitable *defense*—it bars a litigant who comes to the Court seeking equitable relief from having his claim heard when he himself engaged in reprehensible conduct. *See* Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2946 (3d ed.); *see also* 1-11 Corp & Commercial Practice in DE Court of Chancery § 11.07 (2017) ("The doctrine of unclean hands permits a court of equity to close its doors *to applicants for equitable relief* who have acted in violation of any fundamental concept of equity in connection with the matter in controversy." (emphasis added)). As the court explained in one of the cases cited by Plaintiff in support of his argument as to why this doctrine should be applied against Mr. Vorotyntsev—who is not the party applying for equitable relief—"[t]he overall purpose of the unclean hands doctrine is to secure

10

justice and equity and avoid rewarding inequitable conduct; it is not intended as punishment for wrongful conduct." *S.E.C. v. Illarranemdi*, No 3:11cv78 (JBA), 2014 WL 8019048, at *7 (D. Conn. Mar. 27, 2014). Here, Plaintiff's request that the Court apply this defense as an affirmative argument against advancement amounts to punishing Mr. Vorotyntsev for his alleged wrongful conduct. Ultimately, it is Plaintiff who is seeking equitable relief, not Defendant. As such, the doctrine of unclean hands is not appropriately applied here.

Plaintiff contends that Mr. Vorotyntsev's September 7, 2016 withdrawal of $100,000 for his legal defense violated the parties' standstill agreement, and argues that this violation should be sufficient to bar Defendant's entitlement to advancement.[2] Pls.' Mot. at 15-16. For support, Plaintiff cites *Nakahara v. NS 1991 Am. Trust*, but the facts of that case are distinguishable from the circumstances present here. 739 A.2d 770, 791 (Del. Ch. 1998). In *Nakahara*, the trustees of a business applied to the court for advancement pursuant to a trust agreement. Although the trustees had satisfied the contractual requirements for advancement, they had withdrawn money for legal fees in violation of an agreement between the parties, as well as in violation a petition pending before another court. *Id.* The court in that case held that the trustees "approach[ed] the court with unclean hands" because of both the standstill agreement violation and the trustees' "utter disregard of ongoing judicial proceedings." *Id.* at 792.

Here, Defendant is not the party approaching the Court seeking equitable relief; as explained above, the doctrine of unclean hands applies to the party that approaches the court. In addition, the alleged violation of the standstill agreement here does not amount to the same degree of "misconduct" that caused the *Nakahara* court to restrict advancement. There, the plaintiffs' withdrawals were done "in a manner designed to preempt any judicial determination" concerning their entitlement to advancement. *Id.* at 793. Mr. Vorotyntsev's withdrawal of funds to which he is

---

[2] Breach of contract with respect to this standstill agreement is not a cause of action asserted in the Complaint. The argument is raised only in support of Plaintiff's claim for equitable relief.

11

contractually entitled does not present concerns of that magnitude. This is particularly true because, far from trying to hide this advancement of funds, the transfer was disclosed to the other parties very soon after it was made. *See* Wolff Aff., Ex. 3. The Court therefore declines to apply the doctrine of unclean hands given the circumstances presented here.

### C. Mr. Vorotynstev is Entitled to Advancement of Fees Relating to his Counterclaims and Third-Party Claims

As described above, DGCL § 145(e) provides that advancement may be paid to an officer or director "in defending any civil, criminal, administrative or investigative action, suit or proceeding," and ShopLink's By-Laws provide that "[e]xpenses incurred in defending any action or proceeding" must be paid by the corporation. Article VI, Section 3. Delaware courts have "adopt[ed] a broad reading of the phrase 'in defense' in the litigation context." *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1054-55 (Del. Ch. 2014) (citing *Citadel Holding Corp. v. Roven*, 603 A.2d 818 (Del. 1992)). To determine whether a counterclaim will be considered to be "defending" and therefore be entitled to advancement, it must be: "(1) 'necessarily part of the same dispute,' in the sense that it qualifies as a compulsory counterclaim under the prevailing Delaware and federal procedural standard, and (2) 'advanced to defeat, or offset' the affirmative claims." *Id.* (citing *Roven*, 603 A.2d at 824). "In other words, a counterclaim fits within the 'in defending' language if it defends the corporate official by directly responding to *and* negating the affirmative claim." *Zaman*, 2008 WL 2168397, at *35.

Under Federal Rule of Civil Procedure 13, a counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). The Delaware analog to Rule 13 contains the same requirement. *Pontone*, 100 A.3d at 1055. "The test used to determine whether a claim and counterclaim arise out of the same 'transaction or occurrence' is whether the two bear a 'logical relationship.' Whether two claims bear a logical relationship to one another may be informed by considerations such as whether they share issues of fact and law in common or would involve presentation of the same evidence." *Id.* at 1056-

12

57 (citing *Mott v. State*, 49 A.3d 1186, 1188-89 & n.8 (Del. 2012)). As the Second Circuit has explained, "[a]lthough the 'logical relationship' test does not require an absolute identity of factual backgrounds, the essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004) (citing *Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 699 (2d Cir. 2000)) (internal quotations and citations omitted).

Here, in the *Tatintsian* litigation, Mr. Tatintsian brings claims against Mr. Vorotyntsev for fraudulently inducing Mr. Tatintsian to invest in ShopLink. Mr. Vorotyntsev brings counterclaims against Mr. Tatintsian for inducing Mr. Khmaladze and Mr. Zubchevich—two individuals involved in the ShopLink venture—to breach their fiduciary duties to Mr. Vorotyntsev. Mr. Vorotyntsev has also brought a third-party complaint against Mr. Khmaladze, Mr. Zubchevich, and other ShopLink-affiliated companies, relating to an alleged scheme between Mr. Khmaladze, Mr. Zubchevich, and Mr. Tatintsian to usurp the ShopLink business plan and to steal the technology developed to operate the company. In the related *Khmaladze* litigation, Mr. Khmaladze brings claims seeking rescission of various agreements and patent applications related to the development of the technology underlying the ShopLink project. Mr. Khmaladze alleges, among other things, that Mr. Vorotyntsev fraudulently induced him to enter into these agreements. Mr. Vorotyntsev brings a counterclaim against Mr. Khmaladze for breaching his fiduciary duties as a member of the companies created to develop the technology for ShopLink.

Mr. Vorotyntsev's counterclaims and third-party claims bear a sufficient "logical relationship" to the Plaintiffs' claims in the two related litigations, and are advanced to offset those affirmative claims. Although the claims do not concern the exact same facts, there are significant points of overlap, and resolution of all claims in the currently pending cases is therefore in the interest of judicial economy. All of Mr. Vorotyntsev's counterclaims and third-party claims concern the same parties as those involved in the affirmative claims. The counterclaims and third-party

13

claims also concern the same events: the circumstances surrounding the creation of ShopLink, the basis for the parties' investments in the company, and the obligations the parties may have had to one another as business partners in the ShopLink venture. Additionally, determination of the rightful owner of the intellectual property underlying the ShopLink project will also be crucial to ascertaining the truth or falsity of the representations Mr. Vorotyntsev made to Mr. Tatintsian, as well as to ascertaining the import of the various business agreements made between Mr. Vorotyntsev and Mr. Khmaladze.

In particular, questions as to the viability of ShopLink will bear on all of the claims, as will the nature of ShopLink's relationship with affiliated entities like AUM Code and IT Adapter Corp. All of the claims may well call for the development of evidence concerning the communications between these parties and the chronology of events in the creation of ShopLink. *See, e.g., Harrison v. Grass*, 304 F. Supp. 2d 710, 714 (D. Md. 2004) (holding that counterclaims were compulsory even though the "legal and factual issues may not be largely the same" because both sets of claims would require substantial evidence regarding an individual's role in businesses and his success in managing those businesses). Finally, the Plaintiff's claims and Mr. Vorotyntsev's counterclaims and third-party claims involve conflicting accounts of the same events, and therefore determining the truth or falsity of counterclaims and third-party claims may have the effect of offsetting a finding of liability in favor of Plaintiffs. Accordingly, Mr. Vorotyntsev's counterclaims and third-party claims fall under the broad reading of the term "defending" for purposes of ShopLink's advancement provision, and Mr. Vorotyntsev is therefore entitled to advancement in pursuing these claims.

## IV. CONCLUSION

Because Mr. Vorotyntsev is entitled to mandatory advancement of expenses under Article VI, Section 3 of ShopLink's By-Laws, Plaintiff's motion to modify the temporary restraining order is DENIED.

14

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 86.

SO ORDERED.

Dated: May 22, 2018
New York, New York

_____
GREGORY H. WOODS
United States District Judge