USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/22/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GARY TATINTSIAN, *on his own behalf and for the benefit of Shoplink, Inc.*

                              Plaintiff,

    -against-

MIKHAIL VOROTYNTSEV, and ELENA VOROTYNTSEV,

                             Defendants

  and,

SHOPLINK, Inc.

                       Nominal Defendant.
------------------------------------------------------------------X

1:16-cv-7203-GHW

MEMORANDUM ORDER
AND OPINION

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

    Defendant Mikhail Vorotyntsev ("Vorotyntsev")[1] and Plaintiff Gary Tatintsian ("Tatintsian") have known each other for over twenty years. Shortly after Vorotyntsev convinced Tatintsian to invest in Vorotyntsev's software start-up, ShopLink Inc. ("ShopLink"), Tatintsian began to suspect that Vorotyntsev was up to no good. Tatintsian's suspicions were confirmed by ShopLink's bank statements, which revealed that Vorotyntsev and his wife had misappropriated hundreds of thousands of dollars from the company to fund their "lavish lifestyle." The Vorotyntsevs allegedly used company funds for rental payments on their luxury apartment and for car insurance payments, and also spent tens of thousands of dollars on high-end goods from stores like Barneys and Chanel. Upon making this discovery, Tatintsian did not waste time filing a

---

[1] Elena Vorotyntsev is also a Defendant in this lawsuit, however, for the purposes of this opinion, "Vorotyntsev" will refer to Mikhail Vorotyntsev.

complaint against the Vorotyntsevs. He brings claims both directly against Vorotyntsev for misrepresenting the company's condition at the time of his investment, and derivatively as a shareholder on behalf of ShopLink for breach of fiduciary duty, waste, and unjust enrichment. Because pursuing direct and derivative claims simultaneously in this action presents an impermissible conflict of interest that may prevent Tatintsian from fairly and adequately representing the interests of Shoplink, Tatintsian's derivative claims must be dismissed.

II.     BACKGROUND

Vorotyntsev founded ShopLink in 2012 to develop software for selling and marketing goods on social media. Dkt. No. 1, Complaint ("Compl.") ¶¶ 12-13. In January 2014, he began raising funds for the company and, over the course of the following two years, he convinced six or seven investors to purchase approximately $1.83 million worth of convertible notes. *Id.* ¶ 19. In addition to those investors, Vorotyntsev also pitched ShopLink to his longtime acquaintance, Tatintsian. *Id.* ¶ 17. Tatintsian alleges that, in soliciting his investment, Vorotyntsev told Tatintsian that ShopLink owned the intellectual property rights to the technology underlying the business.[2] *Id.* Tatintsian also alleges that he was told that ShopLink was in good standing in the State of Delaware. *Id.* ¶¶ 23-24. Believing these representations to be true, Tatintsian purchased shares of ShopLink for $1,348,200 in two payments, first in April 2016, and again in August 2016, giving him a 2.8% share of the company. *Id.* ¶¶ 20-21, 28. Vorotyntsev represented in Tatintsian's purchase agreement that "most of [ShopLink's] limited resources have and will continue to be spent on startup activities." *Id.* ¶ 27 (internal quotation marks omitted).

Soon after completing this investment, Tatintsian began to suspect Vorotyntsev was misusing company money. *Id.* ¶ 34. In early September 2016, Vorotyntsev and Tatintsian

---

[2] The ownership of the intellectual property is disputed, and is the subject of a related action proceeding before this Court. *See Khmaladze v. Vorotyntsev et al.*, 16-cv-8029-GHW.

2

negotiated an agreement whereby Vorotyntsev would provide Tatintsian with copies of ShopLink's bank statements in exchange for Tatintsian's promise to forgo initiating legal action before September 9, 2016. *Id.* ¶ 37. As part of their agreement, Vorotyntsev also promised that ShopLink's funds would only be used in the "ordinary course of business" until that date. *Id.* ¶ 37.

ShopLink's bank statements revealed that Vorotyntsev and his wife, Defendant Elena Vorotyntsev, had taken hundreds of thousands of dollars from ShopLink's coffers to pay for lavish personal expenses. *Id.* ¶ 2. Tatintsian alleges, for instance, that the Vorotyntsevs used company funds to pay rent for a luxury apartment, and that they spent tens of thousands of dollars at department stores, high-end home furnishing stores, and "restaurants, chocolatiers, wine stores, pastry shops, 'smoke shops,' doctors' offices, hair salons, dry cleaners and drug stores." *Id.* ¶ 31. Despite the parties' agreement to only use company funds for legitimate business purposes, Tatintsian alleges that even after entering that agreement, the Vorotyntsevs continued to withdraw company funds for their personal use. *Id.* ¶ 38.

## III.　PROCEDURAL HISTORY

Tatintsian initiated this lawsuit on September 15, 2016 against Defendants Mikhail and Elena Vorotyntsev, and Nominal Defendant ShopLink, Inc. *See* Compl. The Complaint contains five claims: (1) a direct claim against Mikhail Vorotyntsev for committing securities fraud in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5; (2) a derivative claim against Mikhail Vorotyntsev for breach of fiduciary duty; (3) a derivative claim against Mikhail Vorotyntsev for committing waste; (4) a derivative claim against Elena Vorotyntsev for aiding and abetting breach of fiduciary duty; and (5) a derivative claim against both Mikhail and Elena Vorotyntsev for unjust enrichment. Compl. ¶¶ 48-73.

Defendants moved to dismiss Tatintsian's derivative claims on the grounds that Federal Rule of Civil Procedure 23.1 bars a plaintiff from bringing direct claims and derivative claims in the same

action when it creates a conflict of interest.  Dkt. No. 81, Mot. to Dismiss; Dkt. No. 82, Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.").  Alternatively, Defendants contend that if Tatintsian is permitted to proceed on his derivative claims, then he must post security for ShopLink pursuant to New York Business Corporation Law § 627, which requires a shareholder with less than a 5% share in a company to post security for a company's expenses related to any derivative action brought by that shareholder, including attorneys' fees.  Defs.' Mem. at 2.  Tatintsian filed his opposition thereafter.  Dkt. No. 115, Mem. of Law in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n").  Defendants' reply followed.  Dkt. No. 128, Reply Mem. in Supp. of Mot. to Dismiss ("Defs.' Reply").

IV. **LEGAL STANDARD**

Federal Rule of Civil Procedure 23.1, which governs shareholder derivative actions, provides that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association."  Although the Second Circuit has not held that there is a *per se* rule against bringing derivative and direct claims simultaneously, *see Abrams v. Life Med. Techs., Inc.*, 135 F. Supp. 3d 185, 194 (S.D.N.Y. 2015), "courts in this District have applied a strict standard in scrutinizing simultaneous direct and derivative actions for signs of conflict," *Ryan v. Aetna Life Ins. Co.*, 765 F. Supp. 133, 135 (S.D.N.Y. 1991) (citations omitted).  "While there is always a theoretical conflict of interest in situations where a plaintiff in a single lawsuit seeks redress on behalf of the [corporation] and from the [corporation], it is indisputable that the existence of an actual conflict disqualifies a plaintiff from acting as representative in these dual capacities." *Cordts-Auth v. Crunk, LLC*, 815 F. Supp. 2d 778, 794 (S.D.N.Y. 2011), *aff'd*, 479 F. App'x 375 (2d Cir. 2012) (internal quotations marks and citations omitted).

An actual conflict may exist where "substantial recovery on the [direct] claim may reduce the potential recovery on behalf of the corporation on the derivative claim." *Brickman v. Tyco Toys, Inc.*, 731 F. Supp. 101, 108-109 (S.D.N.Y. 1990). When the potential for such a conflict is presented, both types of claims can only survive in one action if specific circumstances exist. Direct and derivative claims can be brought in the same action, for example, when the company at issue in the litigation "has been dissolved, or is otherwise no longer in existence." *Cordts-Auth*, 815 F. Supp. 2d at 794. That is because when a company has ceased to exist, the plaintiff no longer has an equity interest in the corporation that he is suing, so his direct and derivative claims do not present a conflict of interest. *Id.* This reasoning has not been extended, however, to situations in which both sets of claims are brought against a company that is merely facing financial difficulties or appears on the verge of collapse. *See Ryan*, 765 F. Supp. at 136 (finding a conflict of interest "where the corporation, whether healthy or not, remains in existence and can benefit from a recovery in the derivative action"). Direct and derivative claims have also been allowed to move forward simultaneously where the plaintiffs and the defendants were the only shareholders of the company, such that recovery on either the direct or the derivative claim would inure to the benefit of the same individuals. *See Grgurev v. Licul*, No. 15-cv-9805, 2017 WL 377937, at *20 (S.D.N.Y. Jan. 26, 2017).

Courts can allow both sets of claims to move forward if the existence of a conflict is unclear, and then use "their powers to fashion a proper remedy" if a conflict arises. *Ryan*, 765 F. Supp. at 136. However, "early intervention" is the "more prudent, and, ultimately, the more efficient course." *Id.*

V.      DISCUSSION

Tatintsian brings a direct claim against Vorotyntsev alleging violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, and derivative claims on behalf of ShopLink and its shareholders against both Defendants for breach of fiduciary

5

duty, committing waste, aiding and abetting breach of fiduciary duty, and unjust enrichment. Compl. ¶¶ 48-73. Because Tatintsian brings both direct and derivative claims, there is at least a theoretical conflict of interest between these two sets of claims, and the Court must determine if there is an actual conflict of interest requiring Tatintsian's derivative claims to be dismissed.

Here, an actual conflict of interest exists because any recovery for Tatintsian on the direct claim might reduce the recovery for the company and its shareholders on the derivative claims. Although Tatintsian brings the direct claim against the Vorotyntsevs, and ShopLink is a nominal defendant in this action, any recovery on the direct claim could still come from ShopLink because of a mandatory indemnification clause in the company's bylaws. Dkt. No. 83, Decl. of Mikhail Vorotynstev in Supp. of Defs.' Mot. to Dismiss, Ex. C ("By-Laws of ShopLink Inc."), Art. IV § 1.[3] As an officer and board member of ShopLink, Vorotyntsev is indemnified by ShopLink "against expenses (including attorneys' fees), judgment, fines, settlements, and other amounts actually and reasonably incurred in connection with any proceeding, arising by reason of the fact that such person is or was an agent of the corporation." *Id.* Because Vorotyntsev must be indemnified pursuant to these bylaws, recovery for the direct and derivative claims could ultimately come from the same pool of money. Accordingly, an actual conflict of interest exists between Tatintsian's direct and derivative claims.

Furthermore, none of the circumstances where courts have allowed both direct and derivative claims to proceed in tandem exist here. Tatintsian alleges that ShopLink has been looted,

---

[3] Because the By-Laws of Shoplink Inc. are integral to the complaint, the Court may consider their contents in deciding this motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In addition, there is no dispute regarding the authenticity or accuracy of the By-Laws that Defendants attached to their motion to dismiss. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."). Indeed, Plaintiff cites the By-Laws without protest or objection in its opposition. Pl.'s Opp'n at 8 n.3, 11.

but there is no allegation that ShopLink has been liquidated or dissolved.  Neither are Tatintsian and Vorotyntsev the sole shareholders of the company.

Tatintsian makes a number of arguments why, nevertheless, there is no conflict between his direct and derivative claims.  First, he cites *Kane Ass'n v. Clifford* for the proposition that there is no conflict where "all claims have a common interest arising out of the same nucleus of facts."  Pl.'s Opp'n at 4 (internal quotations marks and citations omitted) (citing *Kane Ass'n v. Clifford*, 80 F.R.D. 402, 408 (E.D.N.Y. 1978)).  First, while *Kane* is an example of a case where the court allowed both sets of claims to move forward, the holding in that case turned on the fact that the company had sold all of its assets and been dissolved.  *Kane*, 80 F.R.D. at 408.  Second, the existence of a conflict is not determined by the extent to which the facts underlying the claims overlap, but instead requires an analysis of whether there is a conflict between the potential recovery for each set of claims.  *Brickman*, 731 F. Supp. at 108-09.  Indeed, it is difficult to imagine a situation in which a plaintiff would bring derivative and direct claims in one lawsuit when both sets of claims did not arise from the same set of facts; the *Kane* court's statement concerning the "common interest" between the claims was in reference to the lack of a conflict of interest, not merely common facts.

Tatintsian also contends that there is no conflict of interest because his direct claim is not brought against ShopLink, and thus it will not reduce the potential recovery the company may receive from success on the derivative claims.  Pl.'s Opp'n at 5.  For support, Tatintsian cites *Transeo S.A.R.L v. Bessemer Venture Partners VI L.P.*, in which the court theorized—without deciding—that there would be no conflict of interest where the plaintiff brought derivative claims on behalf of a company and direct claims against that company's majority shareholders.  936 F. Supp. 2d 376, 394 n.6 (S.D.N.Y. 2013).  This argument is not applicable here because, as discussed above, Vorotyntsev is entitled to indemnification from ShopLink pursuant to the company bylaws, so any recovery on

7

Tatintsian's direct claim may ultimately come from the company. Accordingly, bringing his direct claim against Vorotyntsev instead of ShopLink does not neutralize the conflict.

Finally, Tatintsian argues that he has eliminated any potential conflict of interest in his Prayer for Relief, in which he states that ShopLink will be awarded any priority in the judgement. Pl.'s Opp'ns at 5-6; Compl. at 18-19. Courts have held that such a "mere assertion" that there is no conflict of interest is an insufficient basis for permitting direct and derivative claims in one action. *Kamerman v. Steinberg*, 113 F.R.D. 511, 516 (S.D.N.Y. 1986) (holding that the plaintiff's argument that the defendant had sufficient assets to cover damages for both claims was "insufficient to dispel the doubt that recovery in the class action may reduce potential recovery in the derivative action"). Here, Tatintsian's pledge to prioritize recovery on the derivative claims does not eliminate the actual conflict of interest between his direct and derivative claims, nor does it constitute an exception to Rule 23.1.

## VI. CONCLUSION

Because there is an actual conflict of interest between Plaintiff's direct claim and his derivative claims, the Court need not reach Defendants' alternative argument concerning the need for Plaintiff to post security for his derivative claims. Accordingly, Defendants' motion to dismiss, Dkt. No. 81, is GRANTED, and Plaintiff's derivative claims—Counts Two, Three, Four, and Five of the Complaint—are DISMISSED. The Clerk of Court is directed to close the motion pending at Dkt. No. 81.

SO ORDERED.

Dated: May 22, 2018  
New York, New York  

_____  
GREGORY H. WOODS  
United States District Judge