USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/25/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

GARY TATINTSIAN, *on his own behalf and for the benefit of Shoplink, Inc.*

           Plaintiff,

-against-

MIKHAIL VOROTYNTSEV, and ELENA VOROTYNTSEV,

           Defendants

and,

SHOPLINK, Inc.

           Nominal Defendant.

-------------------------------------------------------------

MIKHAIL VOROTYNTSEV

           Third-Party Plaintiff,

-against-

DMITRIY KHMALADZE, ITADAPTER CORPORATION, INC., YOUNIS ZUBCHEVICH, and DIABETICA RESEARCH SOLUTIONS, INC.

           Third-Party Defendants.

------------------------------------------------------------------X

1:16-cv-7203-GHW

MEMORANDUM OPINION AND ORDER

GREGORY H. WOODS, United States District Judge:

## I.  INTRODUCTION

  Plaintiff Gary Tatintsian ("Tatintsian") filed this lawsuit against Defendant and Third-Party Plaintiff Mikhail Vorotyntsev ("Vorotyntsev") and his wife[1] for allegedly misappropriating hundreds

---

[1] Elena Vorotyntsev is also a party in this lawsuit, however, for the purposes of this opinion, "Vorotyntsev" will refer to Mikhail Vorotyntsev.

of thousands of dollars from nominal defendant ShopLink Inc. to fund their "lavish lifestyle." After he discovered the misappropriation, Tatintsian filed a complaint against the Vorotyntsevs, bringing claims both directly against Vorotyntsev for misrepresenting the company's condition at the time of his investment, and derivatively as a shareholder on behalf of ShopLink for breach of fiduciary duty, waste, and unjust enrichment.

Shortly after Tatintsian filed suit, Vorotyntsev brought this third-party complaint against Dmitriy Khmaladze, ITAdapter Corporation, Inc., Younis Zubchevich, and Diabetica Research Solutions, Inc. (together, the "Third-Party Defendants"). Third-Party Complaint ("TPC"), Dkt. No. 40. Vorotyntsev alleges that the Third-Party Defendants schemed, together with Tatintsian, to usurp ShopLink's technology and business plan. *Id.* ¶ 1. Because Vorotyntsev's contribution claim is not adequately pleaded, and because allowing his unjust enrichment claim to proceed would not be a sound exercise of the Court's discretion under Federal Rule of Civil Procedure 14, the motion to dismiss brought by Third-Party Defendants Khmaladze and ITAdapter Corporation, Inc. is granted.

## II. BACKGROUND

The Court assumes familiarity with the facts underlying this case, which were fully set forth in this Court's earlier opinions, *see* Dkt. Nos. 179, 180, and are referred to herein only as necessary. Vorotyntsev founded ShopLink in 2012 to develop software to sell and market goods on social media. Dkt. No. 1, Complaint ("Compl.") ¶¶ 12-13. In January 2013, Vorotyntsev was introduced to Khmaladze, an experienced software architect and computer programmer. TPC ¶¶ 30, 31. Vorotyntsev told Khmaladze about his ideas for ShopLink, and by February 2013, Khmaladze began working for ShopLink as its Chief Technology Officer. *Id.* ¶¶ 32-33. Later, Vorotyntsev formed AUM Code LLC ("AUM Code") with Khmaladze to develop source code and ShopLink's "back-end architecture." *Id.* ¶ 34. AUM Code has two members—Vorotyntsev, who owns 60 percent,

and Khmaladze, who owns 40 percent. *Id.* ¶ 35. AUM Code, in turn, has a wholly owned subsidiary, IT Adapter LLC, which oversees certain operations for AUM Code and ShopLink. *Id.* ¶¶ 36, 37. Khmaladze became the Chief Technology Officer, and managing member, of AUM Code. *Id.* ¶ 39. From approximately May 2013 to August 2016, Vorotyntsev caused ShopLink to pay over $300,000 to Khmaladze and his company, ITAdapter Corporation, Inc.,[2] to compensate Khmaladze for the work that he promised to perform for ShopLink. *Id.* ¶ 42.[3]

In 2014, Vorotyntsev hired Zubchevich, an investment banker and businessman, as a business advisor to ShopLink. *Id.* ¶¶ 45-47. In that capacity, Zubchevich learned proprietary and confidential information about ShopLink. *Id.* ¶ 48. Zubchevich owned his own company at the time, third-party defendant Diabetica Research Solutions, Inc. *Id.* ¶ 49. In June 2015—as set forth more fully in the Court's earlier opinions—Vorotyntsev told his old friend Tatintsian about ShopLink, and in September 2015, Tatintsian expressed an interest in investing in ShopLink. *Id.* ¶ 52. Ultimately, in April 2016, Tatintsian purchased a three-percent stake in the company. *Id.* ¶ 55. Vorotyntsev alleges that Tatintsian "devised a scheme to use his resources to punish Vorotyntsev," take over ShopLink and usurp its technology" because Vorotyntsev declined to accept additional investments from Tatintsian's associates. *Id.* ¶¶ 56-63. In furtherance of this scheme, Tatintsian allegedly mined confidential business information from Zubchevich. *Id.* ¶ 65, 66. Then, in September 2016, Zubchevich and Tatintsian emailed Khmaladze to malign Vorotyntsev and attempt to reorganize ShopLink under Tatintsian's direction. *Id.* ¶ 68.

In the months that followed, Vorotyntsev alleges that Tatintsian received copies of ShopLink's bank statements on the condition that he keep them confidential, and that Tatintsian

---

[2] ITAdapter Corporation Inc. is wholly owned by Khmaladze, and while it has a similar name, is a separate corporate entity from IT Adapter LLC. TPC ¶ 36.
[3] Many of the payments made to Khmaladze were made from the ShopLink bank account through the IT Adapter LLC bank account, which Tatintsian identified in the complaint as a recipient of allegedly embezzled and misappropriated funds. TPC ¶ 44; Compl. ¶ 35.

nonetheless shared them with Khmaladze and Zubchevich. *Id.* ¶ 72. Tatintsian contacted ShopLink investors, telling them that ShopLink was a scam and that Vorotyntsev had lied about ShopLink's ownership of the underlying technology. *Id.* ¶ 73. Tatintsian and Zubchevich tried to induce Khmaladze to stop communicating with Vorotyntsev, to prevent Vorotyntsev from accessing ShopLink and AUM Code's proprietary source code and his IT Adapter email account, and to resign as CTO of ShopLink and work for Zubchevich and Tatintsian instead. *Id.* ¶ 76. Khmaladze did in fact resign on September 11, 2016, and terminated Vorotyntsev's access to ShopLink and AUM Code's proprietary source code. *Id.* ¶ 77. The next day, Khmaladze "disavowed his association with AUM Code and IT Adapter," and removed Vorotyntsev's access to his IT Adapter email account. *Id.* ¶ 79. Khmaladze also refused to release funds to pay software developers and to pay other expenses necessary to complete the development of ShopLink and AUM Code's technology. *Id.* ¶ 78. To date, Khmaladze has refused to provide Vorotyntsev access to the "Assembla code repository" where ShopLink's source code is stored. *Id.* ¶ 80.

### III. PROCEDURAL HISTORY

Vorotyntsev filed the Third-Party Complaint on November 11, 2016 against Khmaladze and ITAdapter (together, the "Moving Defendants"), and Zubchevich and Diabetica. *See* Third-Party Compl. The Complaint contains four claims: (1) a claim against all Third-Party Defendants for contribution arising out of Vorotyntsev's alleged violations of the federal securities laws and alleged breach of fidcuairy duty, waste, and unjust enrichment; (2) a claim against all Third-Party Defendants for unjust enrichment; (3) a claim against Zubchevich for breach of fiduciary duty; and (4) a claim against Zubchevich for civil conspiracy. *Id.* ¶¶ 84-108.

The Moving Defendants moved to dismiss the Third-Party Complaint on the grounds that, *inter alia*, impleader was improper under Fed. R. Civ. P. 14 and Vorotyntsev had not sufficiently pleaded a claim for securities fraud. Dkt. No. 106, Mem. of Law in Supp. of Mot. to Dismiss

4

("Defs.' Mem."). Vorotyntsev filed an opposition to the Moving Defendants' motion to dismiss. Dkt. No. 127, Mem. of Law in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"). The Moving Defendants filed a reply thereafter. Dkt. No. 135, Reply Mem. in Supp. of Mot. to Dismiss ("Defs.' Reply").

On May 22, 2018, the Court dismissed Tatintsian's derivative claims for breach of fiduciary duty, waste, aiding and abetting breach of fiduciary duty, and unjust enrichment, leaving only Tatintsian's first cause of action for securities fraud under Section 10b-5. Dkt. No. 180. As a result, Vorotyntsev's claim for contribution arising out of Tatintsian's derivative claims for breach of fiduciary duty, waste, and unjust enrichment, TPC ¶ 85, is also dismissed; only the portion of the contribution claim arising out of Vorotyntsev's alleged violation of the federal securities laws remains in Count One. In addition, because Zubchevich and Diabetica Research Solutions, Inc. have not moved to dismiss the Third Party Complaint, the Court will not evaluate Counts Three and Four of the Third Party Complaint, which are asserted only against Zubchevich and Diabetica.

## IV. LEGAL STANDARD

### A. Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). To determine plausibility, courts follow a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010)

5

(quoting *Iqbal*, 556 U.S. at 679). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Because claims under Section 10(b) of the Securities Exchange Act ("Exchange Act") and Rule 10b-5 thereunder sound in fraud, they are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA. *Novak v. Kasaks*, 216 F.3d 300, 306-07 (2d Cir. 2000). Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy that requirement, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (citing *Novak*, 216 F.3d at 306). The PSLRA imposes similar requirements on claims brought under the Exchange Act: "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The PSLRA further requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" with respect to each alleged misstatement or omission. 15 U.S.C. § 78u-4(b)(2)(A). A complaint will survive under that heightened standard "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

B. Impleader

"Generally, Rule 14(a) permits a defending party to implead another 'who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.'"

6

*Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 437-38 (2d Cir. 2000) (citations omitted). "To sustain an impleader action, the third-party defendant . . . 'must be liable secondarily to the original defendant, or the third party . . . must necessarily be liable over to the defendant . . . for all or part of the plaintiff's . . . recovery, or the defendant . . . must attempt to pass on to the third party . . . all or part of the liability asserted against the defendant. . . . This means that the impleader action must be dependent on, or derivative of, the main or third-party claim." *Id.* at 438 (citations omitted). "[A] third-party claim is not permissible simply because it arises out of the same nucleus of facts as the main claim." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 380 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "The decision whether to permit a defendant to implead a third-party defendant rests in the trial court's discretion." *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984) (citation omitted).

"[I]t is well settled that Rule 14(a) provides only the procedural mechanism for impleader; the substantive merit of the action depends on the federal or state theory of contribution, indemnity or subrogation, or any other theory asserted in the third-party complaint. Accordingly, Rule 14(a) does not control the Court's substantive analysis on a motion to dismiss." *Perkins Eastman Architects, P.C. v. Thor Engineers, P.A.*, 769 F. Supp. 2d 322, 325 (S.D.N.Y. 2011) (citation omitted).

## V.    DISCUSSION

### A. <u>Contribution Claim for Securities Fraud</u>

Because Vorotyntsev failed to allege that any of the Third-Party Defendants violated the federal securities laws, his contribution claim arising out of his alleged violation of the federal securities laws is dismissed. "In order to state a viable claim for contribution under the federal securities laws, a third-party plaintiff must set forth sufficient allegations in the third-party complaint to demonstrate that the third-party defendant itself violated the federal securities laws." *Steed Fin. LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272, 277 (S.D.N.Y. 2003) (citation omitted).

"Consequently, the third-party plaintiff must allege each and every element of a primary securities fraud violation in order to prevail on a claim for contribution." *Id.* (citation omitted). "For a plaintiff to state a viable cause of action for securities fraud under § 10(b), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5(b), the complaint must allege that in connection with the purchase or sale of securities, defendant, acting with scienter, either made a false material representation or omitted to disclose material information." *In re Scholastic Corp. Secs. Litig.*, 252 F.3d 63, 69 (2d Cir. 2001). Therefore, to state a claim for contribution under § 10(b), the third-party plaintiff must allege that the third-party defendant, acting with scienter, made a false material misrepresentation or omission in connection with the purchase or sale of securities. *See Steed Fin. LDC*, 258 F. Supp. 2d at 278 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201 (1976)).

Vorotyntsev has failed to plead a contribution claim for securities fraud against the Third-Party Defendants. Vorotyntsev does not allege that any of the Third-Party Defendants made a false representation or omission in connection with the purchase or sale of securities, or that any of the Third-Party Defendants purchased or sold any securities. In fact, the only allegations that Vorotyntsev makes about the purchase or sale of securities at all are that Tatintsian—who, importantly, is not a Third-Party Defendant—invested in ShopLink, and that Tatintsian unsuccessfully attempted to convince Vorotyntsev to accept investments from his associates. TPC ¶¶ 55, 57-61.

Vorotyntsev purports to "incorporate . . . by reference the existence of [the] allegations" of the underlying complaint in this action, TPC ¶ 87, but that does not salvage his contribution claim. In the complaint, Tatintsian alleges that Vorotyntsev made materially false representations regarding ShopLink to induce Tatintsian to purchase ShopLink stock. *See* Compl. ¶¶ 48-52. Tatintsian does not, however, allege that any of the Third-Party Defendants made any false statements or omissions in connection with the purchase of securities.

8

Accordingly, because Vorotyntsev failed to plead that any of the Third-Party Defendants violated the federal securities laws, the contribution claim arising out of Vorotyntsev's alleged violation of the federal securities laws is dismissed.[4]

B. <u>Impleader of the Unjust Enrichment Claim Is Not Warranted</u>

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citing *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir. 1983)); *see also Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012). "'The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.'" *GFRE, Inc. v. U.S. Bank, N.A.*, 13 N.Y.S.3d 452, 454 (2d Dep't 2015) (quoting *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (1972)).

Here, Vorotyntsev alleges that he paid the Third-Party Defendants to perform services, but they did not perform those services. TPC ¶¶ 90-92. However, because this unjust enrichment claim is not dependent on or derivative of the claims in the complaint, the Court concludes that it would not be an appropriate exercise of its discretion to allow Vorotyntsev to implead this claim under Fed. R. Civ. P. 14.

Although Tatintsian's claims and Vorotyntsev's claims in the Third-Party Complaint both arise out of conduct relating to ShopLink, that is where the similarities end. "[A] third-party claim is not permissible simply because it arises out of the same nucleus of facts as the main claim." *Fed. Ins. Co.*, 422 F. Supp. 2d at 380 (citation and internal quotation marks omitted). "To sustain an

---

[4] In the Third-Party Defendants' memorandum of law in support of their motion to dismiss, the Third-Party Defendants asserted that Vorotyntsev's contribution claim must be dismissed because Vorotyntsev failed to allege that any of the Third-Party Defendants had violated the federal securities laws. Defs.' Mem. at 5-7. Vorotyntsev failed to address this argument in his opposition and therefore effectively conceded it. *See, e.g.*, *Turner v. Sidorowicz*, No. 12-cv-7048, 2014 WL 641454, at *3 n.4 (S.D.N.Y. Feb. 18, 2014).

impleader action, the third-party defendant . . . 'must be liable secondarily to the original defendant, or the third party . . . must necessarily be liable over to the defendant . . . for all or part of the plaintiff's . . . recovery, or the defendant . . . must attempt to pass on to the third party . . . all or part of the liability asserted against the defendant. . . . This means that the impleader action must be dependent on, or derivative of, the main or third-party claim." *Bank of India*, 239 F.3d at 437-38 (citations omitted). If the Third-Party Defendants are liable to Vorotyntsev for retaining funds paid to them for services they failed to render, they would be liable irrespective of Vorotyntsev's liability to Tatintsian. Whether the Third-Party Defendants are liable to Vorotyntsev for failing to perform services does not depend on whether Vorotyntsev is liable to Tatintsian for misappropriating ShopLink funds for personal purposes, even if the same bank accounts, or the same parties, are involved in each claim.

In support of his assertion that his claims are sufficiently dependent on, or derivative of, Tatintsian's claims, Vorotyntsev points out that one of the payments specifically identified by Tatintsian as "not made for a valid business purpose" is a $290,000 transfer of funds from ShopLink to the IT Adapter bank account, and Khmaladze was allegedly often paid through the IT Adapter bank account. Pl.'s Opp'n at 6. However, although Khmaladze was often paid out of the IT Adapter account, neither the complaint nor the Third-Party Complaint alleges that the $290,000 transfer that Tatintsian identified was made to the Third-Party Defendants. Indeed, Tatintsian does not seek damages for ShopLink's legitimate investments in personnel and intellectual property. In point of fact, Tatintsian alleged that he was defrauded because he believed his investment *would* be used to fund ShopLink's operations and help ShopLink exploit valuable technology. Compl. ¶ 1. Tatintsian brought this action because Vorotyntsev and his wife instead used Tatintsian's investment and ShopLink's money to "fund their lavish lifestyle," misappropriating funds to pay rent for a luxury apartment and buy luxury goods. Compl. ¶ 2. The mere allegation that Vorotyntsev paid the

10

Third-Party Defendants out of the same bank account that Tatintsian alleged made an improper transfer does not make Vorotyntsev's unjust enrichment claim dependent on or derivative of Tatintsian's claims.

In addition, in exercising its discretion, the Court also considers that Vorotyntsev and Third-Party Defendants Khmaladze and ITAdapter Corporation, Inc.—among others—are parties in related case *Khmaladze et al. v. Vorotyntsev et al.*, 16-cv-8029-GHW, in which Vorotyntsev has asserted similar claims against third-party defendants Khmaladze and ITAdapter Corporation, Inc. *See generally* Amended Answer and Counterclaims of ShopLink Inc., Dkt. No. 36; Amended Answer and Counterclaims of Aum Code LLC and IT Adapter LLC, Dkt. No. 37; Amended Answer and Counterclaims of Mikhail Vorotyntsev, Dkt. No. 38.

For these reasons, the Court concludes that it would not be a prudent exercise of its discretion to allow Vorotyntsev to implead the Third Party Defendants under Count Two of the Third Party Complaint in this case.

## VI. CONCLUSION

For the foregoing reasons, Third-Party Defendants' motion to dismiss, Dkt. No. 105, is GRANTED, and Counts One and Two of the Third Party Complaint are dismissed in their entirety. Counts Three and Four of the Third Party Complaint proceed, as there has been no motion to dismiss those counts. The Clerk of Court is directed to close the motion pending at Dkt. No. 105.

SO ORDERED.

Dated: June 25, 2018  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge