USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/18/19

-------------------------------------------------------------------X

GARY TATINTSIAN, *on his own behalf and for the benefit of ShopLink, Inc.*

                              Plaintiff,

          -against-

MIKHAIL VOROTYNTSEV, and ELENA VOROTYNTSEV,

                              Defendants

     and,

SHOPLINK, Inc.

                         Nominal Defendant.

---------------------------------------------------------------

MIKHAIL VOROTYNTSEV

                       Third-Party Plaintiff,

          -against-

YOUNIS ZUBCHEVICH, and DIABETICA RESEARCH SOLUTIONS, INC.

                    Third-Party Defendants.

-------------------------------------------------------------------X

1:16-cv-7203-GHW

<u>MEMORANDUM OPINION
AND ORDER</u>

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

      Plaintiff Gary Tatintsian filed this lawsuit against Mikhail Vorotyntsev and his wife[1] for

allegedly misappropriating hundreds of thousands of dollars from nominal defendant ShopLink Inc.

("ShopLink") to fund their "lavish lifestyle." After he discovered the misappropriation, Tatintsian

---

[1] Elena Vorotyntsev is also a party in this lawsuit; however, for the purposes of this opinion, "Vorotyntsev" will refer to Mikhail Vorotyntsev.

filed a complaint against the Vorotyntsevs, bringing claims both directly against Vorotyntsev for misrepresenting the company's condition at the time of his investment, and derivatively as a shareholder on behalf of ShopLink for breach of fiduciary duty, waste, and unjust enrichment.

After Tatintsian filed suit, ShopLink answered the complaint and asserted eleven counterclaims against Tatintsian arising out of his alleged plan to usurp ShopLink's business model and employees. Vorotyntsev also answered and asserted counterclaims against Tatintsian. For the reasons that follow, Tatintsian's motion to dismiss ShopLink's counterclaims is GRANTED IN PART and DENIED IN PART and Tatintsian's motion to dismiss Vorotyntsev's counterclaims is GRANTED.

## II.     BACKGROUND[2]

The Court assumes familiarity with the facts underlying this case, which were fully set forth in this Court's earlier opinions, *see* ECF Nos. 179-81, and are referred to herein only as necessary. Mikhail Vorotyntsev founded ShopLink in 2012 to develop software to sell and market goods on social media. ShopLink's Answer, Cross-Claims, and Amended Counterclaims (ECF No. 117) ("CC") ¶ 40. In January 2013, Vorotyntsev was introduced to Dimitriy Khmaladze, an experienced software engineer with "special expertise in system frameworks." *Id.* ¶¶ 44, 45. Vorotyntsev told Khmaladze about his ideas for ShopLink, and by February 2013, Khmaladze began working for ShopLink as its Chief Technology Officer. *Id.* ¶¶ 46, 48. Later, Vorotyntsev formed AUM Code LLC ("AUM Code") with Khmaladze to develop source code and ShopLink's "back-end architecture." *Id.* ¶ 49. AUM Code has two members—Vorotyntsev, who owns 60 percent of the company, and Khmaladze, who owns 40 percent. *Id.* ¶ 50. AUM Code, in turn, has a wholly owned

---

[2] Unless otherwise noted, the facts are taken from ShopLink or Vorotyntsev's Amended Counterclaims, and are accepted as true for the purposes of this motion. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

subsidiary, IT Adapter LLC, which oversees certain operations for AUM Code and ShopLink. *Id.* ¶ 51. Khmaladze became the Chief Technology Officer and managing member of AUM Code. *Id.* ¶ 52. "Over the course of their working relationship, Vorotyntsev and ShopLink relied on Khmaladze's superior knowledge and expertise and entrusted him with confidential and proprietary information concerning his business plan for ShopLink and its affiliates." *Id.* ¶ 56.

In 2014, Vorotyntsev hired Younis Zubchevich, an investment banker and businessman, as a business advisor to ShopLink. *Id.* ¶¶ 58, 60. In that capacity, Zubchevich learned proprietary and confidential information about ShopLink. *Id.* ¶ 61. In June 2015—as set forth more fully in the Court's earlier opinions—Vorotyntsev told his old friend Tatintsian about ShopLink, and in September 2015, Tatintsian expressed an interest in investing in ShopLink. *Id.* ¶ 63. Ultimately, in April 2016, Tatintsian purchased a 2.8 percent stake in the company. *Id.* ¶ 67. ShopLink alleges that Tatintsian ultimately "devised a scheme to use his resources to punish Vorotyntsev, take ShopLink's business plan and usurp its technology" because Vorotyntsev declined to accept additional investments from Tatintsian's associates. *Id.* ¶¶ 68, 71, 74-75. In furtherance of this scheme, Tatintsian allegedly induced Zubchevich and Khmaladze to leave ShopLink and help Tatintsian develop a competing business. *Id.* ¶ 78.

In the months following Tatintsian's investment in the company, Tatintsian allegedly received copies of ShopLink's bank statements on the condition that he keep them confidential; Tatintsian nonetheless shared them with Khmaladze and Zubchevich. *Id.* ¶ 86. Tatintsian contacted ShopLink investors, telling them that ShopLink was a scam and that Vorotyntsev had lied about ShopLink's ownership of the underlying technology. *Id.* ¶ 87. Tatintsian and Zubchevich tried to induce Khmaladze to stop communicating with Vorotyntsev and to prevent Vorotyntsev from accessing ShopLink and AUM Code's code base and his IT Adapter email account. *Id.* ¶ 92. They

also tried to convince Khmaladze to resign as CTO of ShopLink and to work for Zubchevich and Tatintsian instead. *Id.*

Khmaladze did in fact resign on September 11, 2016, and he terminated Vorotyntsev's access to ShopLink and AUM Code's proprietary source code. *Id.* ¶ 93. The next day, Khmaladze "disavowed his association with AUM Code and IT Adapter," and rescinded Vorotyntsev's access to his IT Adapter email account. *Id.* ¶ 95. Khmaladze also refused to release funds to pay software developers and to pay other expenses necessary to complete the development of ShopLink and AUM Code's technology. *Id.* ¶ 94. To date, Khmaladze has refused to provide Vorotyntsev access to the "Assembla code repository" where ShopLink's source code is stored. *Id.* ¶ 96.

## III.    PROCEDURAL HISTORY

ShopLink filed Cross-Claims and Amended Counterclaims against Tatintsian and Zubchevich. The Counterclaims contain claims against Tatintsian for: (1) tortious interference with existing contractual relations with Zubchevich; (2) tortious interference with prospective business relations with Zubchevich; (3) tortious interference with existing contractual relations with Khmaladze; (4) tortious interference with prospective business relations with Khmaladze; (5) tortious interference with prospective business relations with investors; (6) breach of contract premised on a breach of the duty of good faith and fair dealing; (7) aiding and abetting Khmaladze's breach of fiduciary duty; (8) aiding and abetting Zubchevich's breach of fiduciary duty; (9) unfair competition perpetrated by civil conspiracy; (10) conversion perpetrated by civil conspiracy; and (11) breach of fiduciary duty perpetrated by civil conspiracy.

Tatintsian moved to dismiss ShopLink's counterclaims. Mem. of Law in Supp. of Mot. to Dismiss (ECF No. 167) ("Tatintsian Mem."). ShopLink filed an opposition to Tatintsian's motion to dismiss. Mem. of Law in Opp'n to Mot. to Dismiss (ECF No. 174) ("ShopLink Opp'n"). Tatintsian filed a reply thereafter. Reply Mem. in Supp. of Mot. to Dismiss (ECF No. 177)

("Tatintsian Reply"). In its opposition to Tatintsian's motion to dismiss, ShopLink voluntarily withdrew Count 11, a claim for breach of fiduciary duty perpetrated by civil conspiracy. ShopLink Opp'n at 25 n.9.

ShopLink also asserted a number of cross-claims against Zubchevich, but Zubchevich has not moved to dismiss those cross-claims.

Vorotyntsev filed an Amended Answer and Counterclaims against Tatintsian. Vorotyntsev's Amended Answer and Counterclaims (ECF No. 89) ("Vorotyntsev CC"). Vorotyntsev's Counterclaims contain claims against Tatintsian for: (1) aiding and abetting Khmaladze and ITAdapter Corporation Inc.'s breach of fiduciary duty; (2) aiding and abetting Zubchevich's breach of fiduciary duty; and (3) civil conspiracy.

Tatintsian moved to dismiss Vorotyntsev's counterclaims. Mem. of Law in Supp. of Mot. to Dismiss (ECF No. 143) ("Tatintsian Mem. II"). Vorotyntsev filed an opposition to Tatintsian's motion to dismiss. Mem. of Law in Opp'n to Mot. to Dismiss (ECF No. 176) ("Vorotyntsev Opp'n"). Tatintsian filed a reply thereafter. Reply Mem. in Supp. of Mot. to Dismiss (ECF No. 178) ("Tatintsian Reply II").

## IV.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual

allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked assertion[s] devoid of further factual enhancement." Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678-79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

## V.     SHOPLINK'S COUNTERCLAIMS

### a.     *Tortious Interference with Existing Contractual Relations (Counts One and Three)*

ShopLink's First and Third Counterclaims for tortious interference with existing contractual relations with Zubchevich and Khmaladze fail to state a claim because ShopLink failed to allege that the relationships between ShopLink and each of Zubchevich and Khmaladze were anything other than at-will employment relationships. "Under New York law, the elements of tortious interference with [an existing contractual relationship] are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d

6

388, 401 (2d Cir. 2006) (internal quotation marks omitted) (citing *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996)). "It is well-settled in New York that '[a] contract terminable at will cannot be the basis for a tortious interference with contract claim' because 'there can be no breach of contract, a necessary element for tortious interference with contract, when the contract may be terminated at will.'" *Discover Grp., Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78, 83-84 (E.D.N.Y. 2004) (quoting *AIM Int'l Trading, L.L.C. v. Valcucine S.P.A.*, No. 02 CIV. 1363 (PKL), 2003 WL 21203503, at *5 (S.D.N.Y. May 22, 2003) (collecting cases)).

ShopLink's First and Third Counterclaims for tortious interference with existing contractual relations with Zubchevich and Khmaladze fail to state a claim because ShopLink failed to allege that the relationships between ShopLink and Zubchevich or Khmaladze were anything other than at-will employment relationships. "It is . . . settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Arledge v. Stratmar Sys., Inc.*, 948 F.2d 845, 847-48 (2d Cir. 1991) (internal quotation marks omitted) (quoting *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333 (1987)). With respect to its first counterclaim, ShopLink merely alleges that it "engaged" Zubchevich to provide business advice and that ShopLink and Zubchevich "intended to conclude a binding agreement." CC ¶¶ 60-62, 105. To translate this pleading, ShopLink concedes that it did not conclude a binding agreement—it only intended to do so. Because there was no binding agreement, there is no basis to conclude that the alleged "engagement" was any more than an at-will employment relationship.

With respect to its third counterclaim, ShopLink alleges that Khmaladze agreed to develop ShopLink software and, in return, ShopLink would "make cash payments to Khmaladze as necessary to meet his and his family's financial needs." *Id.* ¶ 124. These allegations do not support an inference that the relationship between ShopLink and Zubchevich or ShopLink and Khmaladze could be classified as anything other than an at-will relationship.

In response to Tatintsian's assertion that ShopLink's claim must fail because the underlying agreements were terminable at will, ShopLink does not point to allegations showing that the contracts were for a fixed duration, but rather asserts that "whether ShopLink's claims are styled as tortious interference with 'existing' contracts or with 'prospective' business relations does not matter." ShopLink Opp'n at 9. To the contrary, the New York Court of Appeals has made clear that "inducing breach of a binding agreement and interfering with a nonbinding 'economic relation' can both be torts, but that the elements of the two torts are not the same." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189 (2004). Indeed, "a claim for interference with a contract terminable at will is actually a claim for tortious interference with prospective contractual relations." *AIM Int'l Trading, L.L.C.*, 2003 WL 21203503, at *5 n.12 (citing *Waste Serv., Inc. v. Jamaica Ash & Rubbish Removal Co., Inc.*, 691 N.Y.S.2d 150, 151 (App. Div. 2d Dep't 1999)).

As a result, because "[a] contract terminable at will cannot be the basis for a tortious interference with contract claim," *Discover Grp., Inc.*, 333 F. Supp. 2d at 84 (citation omitted), and because ShopLink has not alleged any facts suggesting its relationships with Khmaladze and Zubchevich were anything other than at will, ShopLink's counterclaims against Tatintsian for tortious interference with existing contractual relations—Counterclaims One and Three—are dismissed.

   *b.   Tortious Interference with Prospective Business Relations (Counts Two, Four, and Five)*

ShopLink's counterclaims for tortious interference with prospective business relations fail as to their allegations regarding Zubchevich and Khmaladze because ShopLink failed to allege that Tatintsian's alleged scheme involved wrongful conduct directed at Zubchevich and Khmaladze; however, the counterclaims directed at interference with one or more investors are adequately pleaded because ShopLink has sufficiently alleged a particular business relationship with which Tatintsian allegedly interfered. To state a claim for tortious interference with prospective business

relations, a plaintiff must allege that: "(1) there was a business relationship with a third party; (2) defendant knew of that relationship and intentionally interfered with it; (3) defendant either acted solely out of malice or used wrongful means; and (4) defendant's interference caused injury to the relationship with the third party." *Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 434 (S.D.N.Y. 2007) (internal citation omitted).

"'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone. . . ." *Guard-Life Corp. v. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980) (citation omitted).

> [T]he plaintiff must show that defendant's conduct was not "lawful" but "more culpable." The implication is that, as a general rule, the defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be "lawful" and thus insufficiently "culpable" to create liability for interference with prospective contracts or other nonbinding economic relations.

*Carvel Corp.*, 3 N.Y.3d at 190. "While New York law recognizes the tort of interference with both prospective and existing contracts, 'greater protection is accorded an interest in an existing contract . . . than to the less substantive, more speculative interest in a prospective relationship (as to which liability will be imposed only on proof of more culpable conduct on the part of the interferer).'" *White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 425-26 (2007) (quoting *Guard-Life Corp.* 50 N.Y.2d at 191). The New York Court of Appeals has recognized that one exception to the rule that the defendant's conduct must be criminal or independently tortious is "where a defendant engages in conduct 'for the sole purpose of inflicting intentional harm on plaintiffs.'" *Carvel Corp.*, 3 N.Y.3d at 190 (quoting *NBT Bancorp, Inc. v Fleet/Norstar Fin. Group, Inc.*, 628 N.Y.S.2d 408 (3d Dep't 1995), *aff'd*, 87 N.Y.2d 614 (1996)). "[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F.

Supp. 3d 179, 187 (E.D.N.Y. 2016) (internal quotation marks omitted) (citing *Carvel Corp.*, 3 N.Y.3d at 192).

Here, ShopLink failed to allege that Tatintsian's alleged scheme involved "culpable" conduct directed at Zubchevich and Khmaladze.[3] ShopLink alleged that Tatintsian personally threatened Vorotyntsev and his wife and breached contractual obligations to them by distributing ShopLink's confidential bank statements. *E.g.*, CC ¶¶ 119, 141. However, these threats and breaches of contractual obligations were directed at, and allegedly harmed, Vorotyntsev and his wife. They were not directed at the parties with whom ShopLink sought to have a relationship—Zubchevich and Khmaladze. Because a claim for tortious interference with prospective business relations must rest on conduct directed at the parties with whom the plaintiff seeks to have a relationship, ShopLink— with respect to its allegations involving Tatintsian's conduct directed at the Vorotyntsevs—does not adequately plead a claim for tortious interference with prospective business relations with Zubchevich and Khmaladze.

ShopLink's claim for tortious interference with prospective business relations with respect to one or more unidentified investors, however, is adequately pleaded. Tatintsian argues that the claim must be dismissed because ShopLink does not sufficiently allege any particular, existing business relationships with which Tatintsian allegedly interfered. ShopLink alleges that Tatintsian interfered with "several investors" with whom ShopLink has business relations. In particular, ShopLink alleges

---

[3] Vorotyntsev pled facts which could support ShopLink's claim of tortious interference with prospective business relations with respect to Khmaladze. *See* Vorotyntsev CC ¶ 47 ("Upon information and belief, Zubchevich told Khmaladze that Tatintsian was going to sue Vorotyntsev and ShopLink and that he might name Khmaladze as well.") This pleading seems to support an inference of an improper threat of civil litigation directed at Khmaladze. However, this fact was not considered in the adjudication of ShopLink's claim as it only appears in Vorotyntsev's personal counterclaims and was not referenced in any of ShopLink's pleadings or subsequent materials. *See, e.g., McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) ("In general, our review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.").

that Tatintsian "falsely and tortiously told one or more investors that ShopLink is a 'fraud.'" CC ¶ 149. It further alleges that, Tatintsian falsely told one investor that ShopLink had no existing software "at all." CC ¶ 150. ShopLink also alleged that these false statements had consequences: there was "at least one specific investor who, as a result of Tatintsian's wrongful conduct, severed his business relations with ShopLink." *Id.* ¶¶ 146, 148, 151.

These pleaded facts are adequate to state a claim. ShopLink has identified a specific relationship, the nature of the relationship, and pleaded that it was affected by independently tortious conduct. Tatintsian argues that ShopLink's claim should fail because it chose not to identify the name of the specific investor—but the investor is specifically identified for purposes of notice pleading; and, indeed, ShopLink has offered to provide the name of the investor referenced anonymously in the complaint.

### c. *Breach of Contract Based on a Breach of the Implied Duty of Good Faith and Fair Dealing (Count Six)*

ShopLink has failed to state a claim for breach of contract based on a breach of the implied duty of good faith and fair dealing because there is no basis for the Court to conclude that Tatintsian had an implied contractual duty not to engage in conduct harmful to ShopLink. "Under New York law, a covenant of good faith and fair dealing is implied in all contracts." *Matana v. Merkin*, 957 F. Supp. 2d 473, 493 (S.D.N.Y. 2013) (quoting *State Street Bank & Trust Co. v. Inversiones Errazuriz Ltd.*, 374 F.3d 158, 169 (2d Cir. 2004)). "Encompassed within the implied obligation of each promisor to exercise good faith are any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Matana*, 957 F. Supp. 2d at 493 (quoting *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995)). Furthermore, the "covenant embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) (citing *Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 389 (1995)).

However, "the obligation of good faith does not create obligations that go beyond those intended and stated in the language of the contract." *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 497 (S.D.N.Y. 2002) (citation omitted), *aff'd*, 65 F. App'x 736 (2d Cir. 2003); *see also* 22A N.Y. Jur. 2d Contracts § 423 ("The implied covenant of good faith and fair dealing cannot contradict explicit and unambiguous terms of parties' agreement, render contract provisions ineffective, or create additional obligations not contained in the agreement.").

Here, ShopLink alleges that Tatintsian bought a 2.8% stake in ShopLink pursuant to a Subscription Agreement (the "Agreement"). CC ¶¶ 67, 161. ShopLink concedes that the Agreement "does not contain an express provision requiring [Tatintsian] to refrain from engaging in conduct detrimental to ShopLink," but asserts that Tatintsian nonetheless "had an implied duty to refrain from engaging" in such conduct. *Id.* ¶ 161, 162. However, as explained above, "the obligation of good faith does not create obligations that go beyond those intended and stated in the language of the contract," *Wolff*, 210 F. Supp. 2d at 497, and ShopLink points to nothing in the Agreement, nor any law, in support of its position that such an "implied duty" exists for a 2.8% shareholder. In point of fact, as a general matter, "a stockholder of a corporation is not precluded from engaging in a business similar to, or in competition with, that conducted by the company." 14A N.Y. Jur. 2d Business Relationships § 842. Because the Court has no basis to read into the Agreement an implied duty to refrain from engaging in conduct detrimental to ShopLink, this claim is dismissed. *See Mandelkow v. Child & Family Servs. of Erie Cty.*, 859 N.Y.S.2d 321, 323 (2008) (affirming grant of summary judgment on claim for breach of the implied duty of good faith and fair dealing where there was no provision in the relevant agreement that expressly prohibited plaintiffs from engaging in the conduct at issue because "no obligation may be implied because the record contains no evidence that plaintiffs' actions were inconsistent with other terms of the contractual

relationship." (citing *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983); *Aventine Inv. Mgt. v. Canadian Imperial Bank of Commerce*, 697 N.Y.S.2d 128 (App. Div. 2d Dep't 1999))).

### d. Aiding and Abetting Breach of Fiduciary Duty (Counts Seven and Eight)

ShopLink has stated a claim for aiding and abetting a breach of fiduciary duty as to Khmaladze, but not as to Zubchevich. At the outset, the Court notes that the parties dispute whether Delaware or New York law applies to ShopLink's breach of fiduciary duty claims. "Because a choice of law analysis is fact intensive, courts often decline to make a choice of law determination at the motion to dismiss stage." *Smith v. Railworks Corp.*, No. 10-cv-3980 (NRB), 2011 WL 2016293, at * 6 n.12 (S.D.N.Y. May 17, 2011). So too here. The Court need not resolve this dispute at this stage of the case, because the outcome is the same under the law of either state.

Under Delaware law, "[a] fiduciary relationship is a situation where one person reposes special trust in another or where a special duty exists on the part of one person to protect the interests of another." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 113 (Del. 2006) (citation omitted). "Under New York law, a fiduciary duty arises if 'confidence is reposed on one side and there is resulting superiority and influence on the other.'" *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 503 (S.D.N.Y. 2011) (citing *United States v. Chestman*, 947 F.2d 551, 568 (2d Cir.1991)); *see also Daly v. Metropolitan Life Ins. Co.*, 782 N.Y.S.2d 530, 535 (Sup. Ct. N.Y. Cnty. 1992) ("[A] fiduciary duty arises, even in a commercial transaction, where one party reposed trust and confidence in another who exercises discretionary functions for the party's benefit or possesses superior expertise on which the party relied.").

"Under Delaware law, a claim of aiding and abetting a breach of fiduciary duty (sometimes referred to as a claim of civil conspiracy) requires: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, and (3) a knowing participation in that breach by the non-fiduciary." *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123, 129-30 (S.D.N.Y. 1999) (citing *In re Santa*

*Fe Pacific Corp. Shareholder Litig.*, 669 A.2d 59, 72 (Del. 1995)), *aff'd*, 205 F.3d 1321 (2d Cir. 2000).

"The New York law governing a claim of aiding and abetting is not materially different." *Raccolta*, 60

F. Supp. 2d at 130. "Under New York law, third party liability for participation in a breach of

fiduciary duty is established by showing: (1) a breach by a fiduciary, (2) that the defendant

knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a

result of the breach." *Id.* at 130 n.2 (citing *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843 (2d Cir. 1987)).

ShopLink has adequately pleaded that Khmaladze owed fiduciary duties to ShopLink, and

that he breached those duties. The counterclaims allege, among other things, that he was the Chief

Technology Officer of ShopLink from 2013. CC ¶ 48. Khmaladze resigned from ShopLink on

September 11, 2016, and on the same day terminated the access of ShopLink's CEO to ShopLink's

code repository. *Id.* ¶ 94. He also refused to release funds necessary to permit ShopLink to

continue the development of its technology. *Id.* Those actions were against the interests of

ShopLink, and harmed the company, the counterclaims allege.

Tatintsian argues that ShopLink's claims involving Khmaladze should be dismissed because

any fiduciary relationship that he had with ShopLink ended when he stopped working for ShopLink.

*See* ShopLink Mem. at 16, 19. However, a fiduciary duty may continue after the termination of an

employment relationship. *See Am. Fed. Grp., Ltd. v. Rothenberg*, 136 F.3d 897, 914 (2d Cir. 1998)

(citing *Abbott Redmont Thinlite Corp. v. Redmont*, 475 F.2d 85, 88 (2d Cir. 1973); Restatement (Second)

of Agency § 396); *see also Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC*, No. CIV.A. 7866-VCP,

2014 WL 897223, at *22 (Del. Ch. Mar. 5, 2014), *judgment entered*, (Del. Ch. 2014). And here, some of

the alleged improper conduct by Khmaladze took place on the same day that he submitted his letter

of resignation. On these facts, the Court cannot conclude as a matter of law that Khmaladze did not

have continuing fiduciary duties at the time of his alleged breach.

ShopLink also sufficiently pleaded that Tatintsian participated in Khamaladze's alleged breach of his fiduciary duty. *See, e.g.*, CC ¶ 99 ("Upon information and belief, Khmaladze's lawsuit and his efforts to convert ShopLink and AUM Code's intellectual property and sever ties with ShopLink and Vorotyntsev have been instigated, orchestrated, and funded by Tatintsian."); *see also id.* ¶¶ 92-96. As a result, the aiding and abetting claim is adequately pleaded as to Tatintsian's acts involving Khmaladze.

The same is not true of Count Eight—ShopLink's claim regarding Zubchevich's alleged breach of fiduciary duty—because the counterclaims do not adequately plead that Zubchevich owed a fiduciary duty to ShopLink. ShopLink alleges that the company engaged Zubchevich "as a business advisor, including to create corporate governance policies and procedures." *Id.* ¶¶ 60, 102. ShopLink never alleged that Zubchevich was an employee or an officer of ShopLink; payments were made to him and his company in exchange for his services. *Id.* ¶¶ 62, 105. ShopLink "worked closely with Zubchevich over the course of several years." *Id.* ¶ 61. The counterclaims allege that Zubchevich breached a contractual relationship to provide the requested services. *Id.* ¶ 108. Beyond these specific facts, ShopLink only makes a series of conclusory allegations regarding the nature of the relationship between Zubchevich, which broadly track the legal definition of a fiduciary—such as that they "entrusted [him] with proprietary and confidential information concerning ShopLink's business plan and relied on [him] to apply his superior expertise and knowledge to recommend and implement best practices." *Id.* ¶¶ 61, 81. These naked assertions are insufficient to support this claim and the specific facts that have been pleaded—that Zubchevich was paid to provide specific advice to the company as a business advisor—suggest that Zubchevich did not owe fiduciary duties to the company. As a result, Count Eight must be dismissed.

### e. *Unfair Competition by Civil Conspiracy (Count Nine)*

ShopLink's unfair competition by civil conspiracy claim is adequately pleaded. "The elements of a civil conspiracy under New York law are (1) the corrupt agreement between two or more persons, (2) an overt act, (3) their intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage." *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 173 (S.D.N.Y. 1998) (citation and internal quotation marks omitted). Tatintsian challenges the sufficiency of this claim on the basis of his contention that the counter claims do not adequately plead unfair competition. But the facts alleged fall within the broad range of unfair practices encompassed within that cause of action.

To sustain an unfair competition claim involving misappropriation, a plaintiff must "establish that the defendant: (1) misappropriated the plaintiff's labors, skills, expenditures, or good will; and (2) displayed some element of bad faith in doing so." *Apple Mortg. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 284 (S.D.N.Y. 2016) (citing *Barbagallo v. Marcum LLP*, 820 F. Supp. 429, 446 (E.D.N.Y. 2011)). Additionally, a claim for unfair competition requires "competition in the marketplace or similar actions designed for commercial benefit." *Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540, 563 (2005) (citations omitted); *see also Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 437 (S.D.N.Y. 2011) (describing one of the elements of unfair competition claim as "competition in the marketplace or similar actions designed for commercial benefit." (citing *Capitol Records, Inc. v. City Hll Records, Inc.,* 2008 WL 2811481, at *4 (S.D.N.Y. July 18, 2008)). "Under New York law, an unfair competition claim encompasses a broad range of unfair practices." *MCM Prod. USA, Inc. v. Botton*, No. 16 CIV. 1616, 2016 WL 5107044, at *7 (S.D.N.Y. Sept. 19, 2016) (citing *American Footwear Corp. v. Gen'l Footwear Co.*, 609 F.2d 655, 662 (2d Cir. 1979)).

> New York courts have noted the "incalculable variety" of illegal practices falling within
> the unfair competition rubric, calling it a "broad and flexible doctrine" that depends
> "more upon the facts set forth . . . than in most causes of action[.]" . . . It has been
> broadly described as encompassing "any form of commercial immorality," or simply

as "endeavoring to reap where (one) has not sown," . . . ; it is taking "the skill, expenditures and labors of a competitor," and "misappropriati(ng) for the commercial advantage of one person . . . a benefit or 'property' right belonging to another."

*Roy Exp. Co. Establishment v. CBS*, 672 F.2d 1095, 1105 (2d Cir. 1982) (internal citations omitted).[4]

"Although the law of unfair competition is 'a broad and flexible doctrine,' . . . its reach is not without limits." *MCM Prod. USA*, 2016 WL 5107044, at *7 (quoting *Roy Export*, 672 F.2d at 1105). "'[T]he essence of an unfair competition claim is that the defendant has misappropriated the labors and expenditures of another and has done so in bad faith.'" *MCM Prod. USA*, 2016 WL 5107044, at *7 (quoting *Coca-Cola North America v. Crawley Juice, Inc.*, Nos. 09 CV 3259 (JG) (RML), 09 CV 3260 (KAM) (RML), 09 CV 3279 (ERK)(RML), 2011 WL 1882845 (E.D.N.Y. May 17, 2011)).

Shoplink's pleadings clearly meet this standard. ShopLink alleges that Tatintsian worked with others to steal the company's technology and business plan, CC ¶¶ 78, 93, 94, 96, 187-190. The purpose of that effort, as alleged, was to pursue the company's concept and business plan "under the auspices of a new entity owned and/or operated by Tatintsian, Zubchevich and Khmaladze." *Id.* ¶ 189. As alleged, Tatintsian engaged in threatening and coercive activities in order to achieve those ends. *See, e.g., id.* ¶¶ 88-91, 188. As a result, the motion to dismiss this claim is denied.

> f. *Conversion by Civil Conspiracy (Count Ten)*

ShopLink's claim for conversion by civil conspiracy is adequately pleaded. "To withstand a motion to dismiss in a conversion claim, a plaintiff must allege: (1) the property subject to

---

[4] In *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, the Second Circuit stated that the "essence of unfair competition under New York common law is 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'" 58 F.3d 27, 34 (2d Cir.1995) (quoting *Rosenfeld v. W.B. Saunders*, 728 F. Supp. 236, 249-50 (S.D.N.Y.1990)). While one district court has relied on that statement to limit the New York common law tort of unfair competition only to actions "likely to cause confusion or to deceive purchasers as to the origin of the goods," *Applied Info. Mgmt., Inc. v. Icart*, 976 F. Supp. 149, 156 (E.D.N.Y. 1997), the Court does not believe that the Second Circuit's statement in *Jeffrey Milstein* should be read to so constrain the broad scope of New York common law unfair competition claims, but rather should be interpreted as a focused statement regarding the application of the broad doctrine in the context of a case involving the scope of protection for trade dress.

conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) (citation omitted).

Here, ShopLink has pleaded that it had ownership rights in a specific identifiable thing— proprietary software developed by Khmaladze for ShopLink when Khmaladze was ShopLink's Chief Technology Officer. *See* CC ¶¶ 196-98. Although ShopLink's allegation that it had "certain rights" to ShopLink software is vague and the counterclaims do not make clear to what extent those assets are owned by ShopLink as opposed to AUM Code, drawing all reasonable inferences in ShopLink's favor, the Court concludes that ShopLink has sufficiently pleaded that it had ownership, possession, or control over the ShopLink software in question.

ShopLink has also sufficiently pleaded that Tatintsian conspired with Khmaladze to exercise an unauthorized dominion over ShopLink's software. ShopLink alleged that Tatintsian agreed with Khmaladze and Zubchevich to usurp, among other things, ShopLink's software in order to benefit Tatintsian's new company. *See, e.g.*, CC ¶ 200. ShopLink also alleged that, in furtherance of the agreement, Tatintsian offered to pay and otherwise induce Khmaladze to steal the software, and that Khmaladze did ultimately steal the software. *See, e.g., id.*; *see also id.* ¶ 201. Finally, ShopLink alleged that it was damaged as a result of losing access to its code base. *See id.* ¶ 205.

### g. *ShopLink's Affirmative Defenses Are Dismissed*

The affirmative defenses asserted by ShopLink to the claims brought derivatively on its behalf are dismissed. Here, Tatintsian asserts that ShopLink's affirmative defenses should be dismissed because ShopLink is a nominal defendant, because Tatintsian has not requested any relief from ShopLink, and because ShopLink only stands to benefit from Tatintsian's derivative claims on its behalf. Tatintsian Mem. at 24 (citing *Sobba v. Elmen*, 462 F. Supp 944, 947 (E.D. Ark. 2006)

for the proposition that "the 'overwhelming weight of authority' supports 'the general rule for corporate participation in a derivative action' that 'unless the derivative action threatens rather than advances corporate interests, the corporation cannot participate in the defense on the merits'"). ShopLink concedes that Tatintsian has not requested any relief from ShopLink and further states that "affirmative defenses may be unnecessary" and that its affirmative defenses are merely "a further expression of its disavowal of Tatintsian's claimed representation of the company, its shareholders, and their interests." ShopLink Opp'n at 25. Because ShopLink does not meaningfully oppose Tatintsian's motion to dismiss the affirmative defenses, Tatintsian's motion to dismiss ShopLink's affirmative defenses is granted. *See, e.g.*, *Scott v. JPMorgan Chase & Co.*, No. 13 CIV. 646 KPF, 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014) (collecting cases in support of the proposition that a party may be deemed to have conceded an argument by failing to address it in its briefing), *aff'd*, 603 F. App'x 33 (2d Cir. 2015).

## VI.     VOROTYNTSEV'S COUNTERCLAIMS

### a.    *Aiding and Abetting Breach of Fiduciary Duty (Counts One and Two)*[5]

Vorotyntsev's counterclaims for aiding and abetting breach of fiduciary duty are dismissed because Vorotyntsev does not have standing to bring them as direct claims. "Under New York law, a claim is considered derivative where 'the remedy sought is for the wrong done to the [business entity].'" *Cordts-Auth v. Crunk, LLC*, 815 F. Supp. 2d 778, 786 (S.D.N.Y. 2011) (alteration in original) (citing *Billings v. Bridgepoint Partners, LLC*, 863 N.Y.S.2d 591, 593 (Sup. Ct. 2008)), *aff'd*, 479 F. App'x 375 (2d Cir. 2012). "The primary cause of action belongs to the [business entity], and

---

[5] For purposes of this motion, the Court assumes, without holding, that the law of New York applies to Vorotyntsev's breach of fiduciary duty claims. The parties have agreed that the Court may apply New York law to the resolution of this dispute in connection with this motion. *See* Tatintsian Reply II, at 3. Where "the parties' briefs assume that New York substantive law governs the issues . . . such implied consent is . . . sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (*quoting Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)).

recovery must inure to the benefit of the [business entity]." *Cordts-Auth*, 815 F. Supp. 2d at 786 (internal citation and quotation marks omitted). "Accordingly, the determination of whether a claim is direct or derivative turns on who was harmed first, the member or the entity." *Id.* (quoting *Billings*, 863 N.Y.S.2d at 593) (citing *Bischoff v. Boar's Head Provisions Co.*, 436 F. Supp. 2d 626, 633 (S.D.N.Y. 2006)). Members of an LLC may sue derivatively, and must be members of the LLC at the time of the offending conduct to bring a derivative action. *See, e.g.*, *Billings*, 863 N.Y.S.2d at 595.

Here, Vorotyntsev alleges that because Khmaladze, through ITAdapter Corporation, was a managing member of AUM Code, both Khmaladze and ITAdapter Corporation owed fiduciary duties to Vorotyntsev.[6] Vorotyntsev CC ¶ 66. Vorotyntsev's theory as to the claims relating to Khmaladze and ITAdapter Corporation's breaches of fiduciary duties is that Khmaladze and ITAdapter Corporation breached their duties by, among other things, "attempting to convert ShopLink and AUM Code's intellectual property for [their] own benefit," "refusing to pay IT Adapter employees or pay third-party expenses for development and operation of the ShopLink and AUM Code product," and "abruptly severing ties without assisting in a professional transition of work and upon information and belief, agreeing to assist Tatintsian and Zubchevich in their efforts to steal Vorotyntsev's valuable business plan for themselves." Vorotyntsev CC ¶ 68; *see also* Vorotyntsev Opp'n at 9 ("[Zubchevich and Khmaladze's] actions in leaving ShopLink, taking the ShopLink code, revealing confidential information to Tatintsian and participating in the creation of a competing enterprise using codes [sic] and information developed for ShopLink amount to a breach of fiduciary duties. . . .").

Vorotyntsev alleges that Zubchevich breached his fiduciary duties to him "by, among other things, willfully neglecting to coordinate corporate records and protocols to support ShopLink's

---

[6] Here, the Court need not decide whether Khmaladze did in fact owe fiduciary duties to Vorotyntsev by virtue of his alleged position as a managing member of AUM Code because the issue was not raised by the parties. However, the Court notes that it did reach this issue in the related case of *Khmaladze v. Vorotyntsev*, 16-cv-8029-GHW.

operation as promised and, instead, exploiting his special knowledge of ShopLink's operations to induce the departure of [Khmaladze] and conspire with [Tatintsian] to oust Vorotyntsev and usurp ShopLink's technology for a competing venture." Vorotyntsev CC ¶ 74 (emphasis added).

These claims regarding the alleged theft of AUM Code and ShopLink's property, ceasing payment for AUM Code and ShopLink expenses, and usurping AUM Code and ShopLink's business plan all fundamentally seek remedies for wrongs done to AUM Code and ShopLink, and as a result are derivative in nature. *See, e.g.*, *In re Stillwater Capital Partners Inc. Litig.*, 851 F. Supp. 2d 556, 567-68 (S.D.N.Y. 2012) ("Under New York law, a claim is direct if the wrongdoer has breached a duty owed to the shareholder independent of any duty owing to the corporation wronged. Allegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually." (internal quotation marks and citations omitted)); *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985) ("Allegations of mismanagement or diversion of assets by officers or directors to their own enrichment without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually."). Accordingly, under New York law, because these claims are derivative, Vorotyntsev lacks standing to bring them directly.

Vorotyntsev argues that because he owns over 95% of the stock in ShopLink that his claim "amounts to a direct injury suffered by [Vorotytnsev]." Vorotytnsev Opp'n at 12. But he cites no law for this proposition, which runs in the face of the basic legal principles described above. The Court also finds unpersuasive Vorotyntsev's claim that "[a]s the inventor of the ShopLink idea, he has standing to pursue claims which seek to seize this idea from [Vorotyntsev]." *Id.* Vorotyntsev has not brought such a direct claim here; instead, these claims are based on alleged breaches by Zubchevich and Khmaladze of their fiduciary duties—which were owed to the company, if anyone, not to Vorotyntsev individually.

*b. Civil Conspiracy (Count Three)*

Vorotyntsev's conspiracy claim arises out of precisely the same conduct as his aiding and abetting claims—alleged breaches of fiduciary duty by Khmaladze and Zubchevich. Indeed, the allegations pertaining to the conspiracy claim provide that "[a]s described above in the First and Second Counterclaims"—the counterclaims for aiding and abetting breach of fiduciary duty— "Khmaladze and Zubchevich have breached their fiduciary duties to Counterclaim Plaintiff and Counterclaim Defendant has aided and abetted those breaches of fiduciary duty." Vorotyntsev CC ¶ 79. Accordingly, Vorotyntsev's conspiracy claim is dismissed. *See, e.g.*, *Kew Gardens Hills Apartment Owners, Inc. v. Horing Welikson & Rosen, P.C.*, 828 N.Y.S.2d 98, 101 (2006) ("[T]he seventh cause of action alleging conspiracy to breach a fiduciary duty should have been dismissed . . . because it is duplicative of the aiding and abetting cause of action."); *Am. Baptist Churches of Metro. New York v. Galloway*, 710 N.Y.S.2d 12, 18 (2000) ("Finally, the seventeenth cause of action for civil conspiracy was properly dismissed because it was redundant. While in New York there is no separate tort of conspiracy, allegations of conspiracy are permitted to connect the actions of separate defendants with an otherwise actionable tort. Here, ABC Metro's other claims have already pleaded these torts and defendants' alleged collusion to commit them." (internal quotation marks and citation omitted)); *Durante Bros. & Sons v. Flushing Nat. Bank*, 755 F.2d 239, 251 (2d Cir. 1985) ("Count 7 added no new allegations to those of counts 1–6 except to reiterate that Farber and Gelman had conspired to commit the acts heretofore described. Count 7 was properly dismissed, either as duplicative of counts 1–6, or as failing to state a claim on which relief may be granted since New York law does not recognize a substantive tort of conspiracy." (internal citation omitted)); *see also Briarpatch Ltd. LP v. Phoenix Pictures, Inc.*, 312 F. App'x 433, 434 (2d Cir. 2009) ("The claim of conspiracy to breach fiduciary duties fails as well, since it is merely duplicative of the aiding and abetting count.").

## VII.  LEAVE TO AMEND

In this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  Accordingly, the Court grants ShopLink and Vorotyntsev leave to amend their respective counterclaims, with respect to those claims that were dismissed, to correct the deficiencies identified in this opinion. Any amended complaint must be filed no later than 30 days after the date of this order.

## VIII.  CONCLUSION

For the foregoing reasons, Tatintsian's motion to dismiss ShopLink's counterclaims, ECF No. 166, is GRANTED IN PART and DENIED IN PART, and Tatintsian's motion to dismiss Vorotyntsev's counterclaims, ECF No. 142, is GRANTED.  ShopLink's cross-claims against Zubchevich proceed, as there has been no motion to dismiss those claims.

The Clerk of Court is directed to close the motions pending at ECF Nos. 142 and 166.

SO ORDERED.

Dated: April 18, 2019  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge