USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/1/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
GARY TATINTSIAN, *on his own behalf and for the benefit of Shoplink, Inc.*

                                  Plaintiff,

             -against-

MIKHAIL VOROTYNTSEV, and ELENA VOROTYNTSEV,

                                Defendants.

        and,

  SHOPLINK, Inc.

                          Nominal Defendant.
-----------------------------------------------------------------X

-----------------------------------------------------------------X
DIMITRY KHMALADZE, and ITADAPTER CORPORATION, INC.,

                               Plaintiffs,

             -against-

MIKHAIL VOROTYNTSEV, AUM CODE LLC, IT ADAPTER, LLC, and, SHOPLINK, INC.

                                Defendants.
-----------------------------------------------------------------X

1:16-cv-7203-GHW

1:16-cv-8029-GHW

MEMORANDUM OPINION AND ORDER

GREGORY H. WOODS, District Judge:

      In November 2019, counsel for Defendants Shoplink, Inc., Aum Code LLC, and IT Adapter LLC (together, the "Corporate Defendants") withdrew from this case. When, after multiple extensions of time, the Corporate Defendants still did not retain counsel, Plaintiffs initiated default judgment proceedings. Only then did the Corporate Defendants retain counsel and move for

vacatur of the default. Notwithstanding what the Court found to be the Corporate Defendants' willful default, the Court granted the Corporate Defendants' motions for vacatur. However, the vacatur was conditioned on the payment of Plaintiffs' reasonable attorneys' fees accrued in connection with the default judgment and vacatur proceedings. The only issue now before the Court is the amount of attorneys' fees and costs the Corporate Defendants must pay in order to vacate the default. Plaintiffs' fee applications are GRANTED and the Court finds that the Corporate Defendants must make separate payments of $14,738.00 and $10,640.62 in order to vacate the defaults entered against them.

I.        PROCEDURAL HISTORY

This opinion concerns applications for attorneys' fees in connection with defaults that were entered in two related litigations, *Tatintsian v. Vorotyntsev* (the "*Tatintsian* Action"), Case No. 1:16-cv-7203-GHW, and *Khmaladze v. Vorotyntsev* (the "*Khmaladze* Action"), 1:16-cv-8029-GHW. These applications for attorneys' fees arise out of the entry and subsequent vacatur of defaults against the Corporate Defendants in the *Khmaladze* Action, and against Shoplink, Inc. in the *Tatintsian* Action.

On November 25, 2019, the Court entered an order granting David M. Pohl's motion to withdraw as counsel for Shoplink, Inc. in the *Tatintsian* Action and as counsel for all Corporate Defendants in the *Khmaladze* Action. Tatintsian Dkt. No. 218; Khmaladze Dkt. No. 103. The Court noted that corporate entities, such as the Corporate Defendants, must appear before the Court through counsel. *Id.* (citing *Rowland v. California Men's Colony*, 506 U.S. 194, 201–02 (1993)). That order directed replacement counsel for Aum Code LLC, IT Adapter LLC, and Shoplink Inc. to enter a notice of appearance in both cases by no later than January 6, 2020, and noted that if no attorney entered an appearance on behalf of Aum Code LLC, IT Adapter LLC, and Shoplink Inc. by that date, the Court might enter a default against those entities. *Id.* (citing *Sec. & Exch. Comm'n v. Research Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975) ("It is settled law that a corporation may

2

not appear in a lawsuit against it except through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55[.]")).

On January 6, 2020, the deadline to retain counsel, Defendant Mikhail Vorotyntsev filed a letter with the Court requesting a 30-day extension of time to retain new counsel for the Corporate Defendants.  Tatintsian Dkt. No. 222; Khmaladze, Dkt. No. 104.  The Court granted an extension until January 24, 2020.  Tatintsian Dkt. No. 223; Khmaladze Dkt. No. 105.  Despite the extension, the Corporate Defendants did not timely retain counsel.  As a result, when they still had not retained counsel by February 3, 2020, the Court found the Corporate Defendants in default.  Tatintsian Dkt. No. 224; Khmaladze Dkt. No. 106.  Only after the Court found the Corporate Defendants in default did Mr. Vorotyntsev seek an extension via email, on February 4, 2020.  Tatintsian Dkt. No. 225; Khmaladze Dkt. No. 107.  On February 6, 2020, the Clerk of Court entered a certificate of default against Shoplink, Inc. in the *Tatintsian* Action, and against Aum Code LLC, IT Adapter LLC, and Shoplink, Inc. in the *Khmaladze* Action.  Tatintsian Dkt. No. 226; Khmaladze Dkt. No. 108.

On February 14, 2020, the Court held a hearing, at which Mr. and Mrs. Vorotyntsev appeared on their own behalf.  Mr. Vorotyntsev reported that they had not yet retained counsel for the Corporate Defendants, but that they were close to doing so.  Mr. Thomas, who was eventually retained to represent the Corporate Defendants, sat in the gallery.  Because no counsel appeared on behalf of the Corporate Defendants, the Court set a schedule for default judgment proceedings.  On February 19, 2020, Plaintiffs in both cases proposed, and the Court entered, orders to show cause for default judgments dismissing the Corporate Defendants' counterclaims.  Tatintsian Dkt. No. 235; Khmaladze Dkt. No. 116.

Nearly two weeks after he sat in the gallery during the February 14 hearing, Mr. Thomas appeared as counsel for the Corporate Defendants in both actions on February 27, 2020.  Tatintsian

Dkt. No. 237; Khmaladze Dkt. No. 120.  This was one day before the deadline for the Corporate Defendants to submit their oppositions to the orders to show cause for default judgment, and Mr. Thomas immediately requested and received an extension for his oppositions.  Tatintsian Dkt. No. 239; Khmaladze Dkt. No. 122.  Following the extension, Corporate Defendants proposed, and the Court entered, orders to show cause why an order should not be issued pursuant to Federal Rule of Civil Procedure 55(c) ("Rule 55(c)") vacating the defaults.  Tatintsian Dkt. No. 242; Khmaladze Dkt. No. 127.  The Corporate Defendants did not file a memorandum of law in support of the orders to show cause, but they did submit oppositions to the February 19, 2020 orders to show cause for default judgment, in which they argued for vacatur.  Tatintsian Dkt. No. 246; Khmaladze Dkt. No. 131.

On March 16, 2020, Plaintiffs filed their replies in further support of default judgment and oppositions to vacatur.  Tatintsian Dkt. No. 247; Khmaladze Dkt. No. 132.  The Corporate Defendants submitted no reply memorandum of law in further support of vacatur, instead filing only affidavits by Mr. Vorotyntsev.  Tatintsian Dkt. No. 249; Khmaladze Dkt. No. 135.

During a hearing held on March 25, 2020, the Court vacated the defaults under Rule 55(c).  During the hearing, the Court reviewed the applicable legal standards, which are summarized briefly here.  "A party may move pursuant to Rule 55(c) to set aside the entry of default for 'good cause[.]'" *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993).  The decision to vacate an entry of default is left "to the sound discretion of a district court."  *Id.*  However, "[s]uch discretion is nonetheless not unlimited" and the Second Circuit has a "preference for resolving disputes on the merits."  *Id.*  The "widely accepted factors" used to determine whether good cause exists to relieve a party from default are:  "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented."  *Id.* at 96.

Applying these factors, the Court found that the Corporate Defendants' default was willful:

> Here, the [C]orporate [D]efendants were without counsel for over three months, missing multiple deadlines to obtain counsel. Their proffered excuse is not viable. . . . Mr. Thomas appeared at the February 14, 2020 conference during which the Court set the briefing schedule for an order to show cause for default judgment—and Mr. Vorotyntsev and Mr. Thomas made representations during the hearing regarding the likelihood of his retention. But no appearance was entered until after the deadline established by the Court for the remaining parties to initiate the order to show cause. Simply put, had the corporations and Mr. Thomas accelerated his retention by just eight days, we could have avoided the need for this spate of briefing. No explanation has been provided for the dilatory nature of the corporate defendants' efforts to retain counsel within the extended period provided by the Court. The delay in obtaining counsel has not been adequately explained and the failure to obtain counsel was "more than merely negligent or careless." The Court therefore finds the default willful.

Mar. 25, 2020 Hearing Tr., Tatintsian Dkt. No. 259; Khmaladze Dkt. No. 146, at 14:7–15:12.

Despite the Corporate Defendants' willful default, the Court found good cause to vacate the default:

> While the Corporate Defendants' conduct was willful, [P]laintiffs and the other parties will not be substantially prejudiced by vacatur, after giving effect to an award of their fees associated with the application, and the [C]orporate [D]efendants have made a sufficient, which is a very modest[,] showing regarding the merit of their claims. On balance, the Court finds good cause to vacate the default, particularly in light of this circuit's preference for resolution of disputes on the merits.

Mar. 25, 2020 Hearing Tr. at 19:19–20:2.

During the hearing, and memorialized by order dated March 30, 2020, the Court imposed the following condition on the vacatur of the defaults: "In each action, the vacatur of default is conditioned upon the reimbursement by the Corporate Defendants of the reasonable attorneys' fees and costs accrued in connection with the default judgment and vacatur proceedings by the [P]laintiffs." Tatintsian Dkt. No. 253; Khmaladze Dkt. No. 138. As the Court observed during the hearing, the Court has "inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party." *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 515 (2d Cir. 2001). One such condition that may be imposed is the requirement that the defaulting party reimburse the plaintiff its reasonable attorneys' fees and costs incurred as a result of the default. *See Knox v. PLO*, 248 F.R.D. 420, 429 (S.D.N.Y. 2008) (conditioning vacatur of default on payment of plaintiff's

5

"reasonable costs and expenses incurred as a result of defendant's default"); *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 52 (E.D.N.Y. 2008) ("[C]ourts in this Circuit have 'consistently' permitted an 'award of attorney's fees incurred in bringing the default motion as a condition to vacating a default judgment.'") (quoting *Richardson v. Nassau County*, 184 F.R.D. 497, 503 (E.D.N.Y. 1999)); *Mingoia v. Giamboi Bros.*, No. 02 Civ. 6732 (DLC), 2003 WL 22137987, at *3 (S.D.N.Y. Sept. 17, 2003) (vacating default judgment on condition that defendant pay the reasonable attorneys' fees and costs of plaintiffs associated with the vacatur motion).

The Court found the reimbursement of Plaintiffs' fees and costs to be an appropriate condition because:

> [I]t was the [C]orporate [D]efendants' dilatory conduct which resulted in this motion practice and imposed the expense associated with it on the other parties. . . . This is an appropriate condition to address the prejudice to the other parties resulting from the [C]orporate [D]efendants' failure to retain counsel for three months following the departure of their prior counsel, and—importantly, their failure to retain counsel even knowing that their adversaries were on the verge of expending the resources necessary to bring this application.

Mar. 25, 2020 Hearing Tr. at 22:7–20. Therefore, the Court has already determined that the Corporate Defendants must pay fees and costs in order to dissipate the prejudice associated with their willful default. The only issue left for the Court to decide in connection with the default and vacatur proceedings is the amount of attorneys' fees and costs that they must pay.

On April 8, 2020, Plaintiffs filed their applications for attorneys' fees. Tatintsian Dkt. No. 254; Khmaladze Dkt. No. 139. The Corporate Defendants filed their oppositions on April 29, 2020. Tatintsian Dkt. No. 257 ("Tatintsian Opp."); Khmaladze Dkt. No. 145 ("Khmaladze Opp."). Mr. Tatintsian filed a reply on May 12, 2020. Tatinsian Dkt. No. 258.

## II.   ANALYSIS

### a. Legal Standard

Second Circuit precedent requires a party seeking an award of attorneys' fees to support its request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983). District courts have "considerable discretion" in determining what constitutes a reasonable award of attorneys' fees. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The Second Circuit has directed that district "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). Those hourly rates "are the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

In determining a reasonable hourly fee, the Second Circuit has also instructed district courts to consider "all of the case-specific variables." *Arbor Hill*, 522 F.3d at 190. The touchstone inquiry is "what a reasonable, paying client would be willing to pay." *Id.* at 184; *see id.* at 191 ("By asking what a reasonable, paying client would do, a district court best approximates the workings of today's market for legal services."). The court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively" and "should also consider that [a client] might be able to negotiate with his or her attorneys." *Id.* at 190. A district court may additionally factor into its determination "the difficulty of the questions involved[,] the skill required to handle the problem[,] the time and labor required[,] the lawyer's experience, ability and reputation[,] the customary fee charged by the Bar for similar services[,] and the amount involved."

*OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, No. 09 Civ. 8665 (JGK) (FM), 2010 WL 5538552, at *2 (S.D.N.Y. Dec. 6, 2010) (alterations in original) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)), *report and recommendation adopted*, No. 09-cv-8665 (JGK), 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011).

The plaintiff bears "the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise 'billing judgment' with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (footnote omitted). "The critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Flores v. J&B Club House Tavern, Inc.*, No. 10-Civ-4332 (GAY), 2012 WL 4891888, at *5 (S.D.N.Y. Oct. 16, 2012) (internal quotation marks and citation omitted). "A district court should reduce the number of hours included in the fee calculation if the claimed time is 'excessive, redundant, or otherwise unnecessary.'" *Luessenhop v. Clinton County, N.Y.*, 324 F. App'x 125, 126-27 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). In the event a district court reduces the number of hours included in the calculation of fees, it "must ordinarily state its reasons for excluding those hours 'as specifically as possible' in order to permit meaningful appellate review." *Gierlinger*, 160 F.3d at 876 (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998)).

      b. **The *Tatintsian* Action**

Here, Plaintiff Tatintsian has submitted timesheets that reflect the date of each entry, a description of the work performed, the identity of the attorney billing for each entry, the hours worked, and the applicable rate and total fee charged. *See* Declaration of Kristen M. Santillo, Tatintsian Dkt. No. 254 ("Santillo Decl."), Ex. A. Plaintiff Tatintsian seeks a total of $15,176.85 in fees and costs. Santillo Decl. ¶ 12.

Mr. Tatintsian is represented by Kristen Santillo and Fern Mechlowitz. Ms. Santillo is a founding partner Gelber & Santillo PLLC. *See* Santillo Decl., Ex. B. She graduated from Columbia Law School in 2003. *Id.* Ms. Santillo's standard rate for litigation matters is $650 per hour. Santillo Decl. ¶ 9. However, she has billed Mr. Tatintsian at the drastically reduced rate of $375 hourly because "Mr. Tatintsian is a long-term client and years ago at another firm received a discounted rate of $375 per hour for partners and $300 per hour for associates that continues through today." *Id.* Ms. Mechlowitz, a senior associate, took the lead on many aspects of this matter. *Id.* ¶¶ 8, 10. Her standard rate is "usually between $475-$575 per hour," but Mr. Tatintsian was billed at $300 per hour. *Id.* ¶ 9. Ms. Mechlowitz graduated from the University of Virginia School of Law in 2004. Santillo Decl., Ex. C. Mr. Tatintsian has regularly paid both of these rates. Santillo Decl. ¶ 11. The only other person to bill time to this matter during the relevant time period was Kathleen McPolin, a paralegal who was billed out at $150 per hour. *Id.* ¶ 5; Santillo Decl., Ex. A.

After considering all of the relevant factors, the Court concludes that $375 for Ms. Santillo, $300 for Ms. Mechlowitz, and $150 for Ms. McPolin are reasonable hourly rates for this case. Defendant Shoplink does not contest the reasonableness of these rates. *See generally* Tatintsian Opp. Ms. Santillo and Ms. Mechlowitz each have nearly 20 years of experience, and they are billing at discounts of approximately 42% and 37%, respectively. Mr. Tatintsian has long paid these negotiated rates, which confirms that these rates are reasonable. *See Arbor Hill*, 522 F.3d at 191. These rates are also reasonable rates in this district. Ms. Santillo's rate is below the range of hourly fees that other courts in this district have found reasonable for partners in complex commercial litigation matters. *Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13 Civ. 2493 (KBF), 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014) ("In recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour."). Likewise, Ms. Mechlowitz's rate is well within the realm of the reasonable. *See, e.g.,*

*Demonchaux v. Unitedhealthcare Oxford*, No. 10 Civ. 4491 (DAB), 2014 WL 1273772, at *7 (S.D.N.Y. Mar. 27, 2014) ("Courts within this district have regularly found $500.00 or more to be a reasonable hourly rate for a senior associate attorney, particularly one with . . . twenty-two years of legal experience."). Ms. McPolin's rate of $150 per hour is reasonable for a paralegal in a complex commercial litigation matter. *See TufAmerica Inc. v. Diamond*, No. 12-CV-3529 (AJN), 2016 WL 1029553, at *6 (S.D.N.Y. Mar. 9, 2016) ("Recent cases in this district suggest that the prevailing rate for paralegals is between $100 and $200 per hour."), *on reconsideration in part*, No. 12-CV-3529 (AJN), 2018 WL 401510 (S.D.N.Y. Jan. 12, 2018).

Turning to the reasonable number of hours for which fees should be paid in connection with counsel's work, Mr. Tatintsian seeks reimbursement for 47.50 hours of work. The Court finds that all of this time was "accrued in connection with the default judgment and vacatur proceedings by the plaintiffs" within the meaning of the Court's March 29, 2020 order.[1] Tatintsian Dkt. No. 253. After reviewing the detailed entries, the Court concludes that the hours expended on each itemized entry were reasonable,[2] with the following exceptions.[3]

---

[1] Defendant Shoplink argues that certain "entries are for work outside the scope of the Court's April 8, 2020 Order limiting [Plaintiffs'] recoverable fees to those 'that accrued in connection with the default judgment and vacatur proceedings.'" Tatintsian Opp. ¶ 3. Shoplink does not specify what entries it believes are outside the scope of the order, but the Court has not identified any entries that do not fall within the scope of the March 30, 2020 order—there was no April 8, 2020 order.

[2] 47.50 hours is in line with the time expended in similar proceedings regarding vacatur of default judgments. *See Filo Promotions, Inc. v. Bathtub Gins, Inc.*, 311 F.Supp.3d 645, 651 (S.D.N.Y. 2018) (holding that 39.75 hours was a reasonable amount of time billed where "the Court [found] it appropriate to impose on its vacatur of the default the condition that Defendant pay Plaintiff's reasonable attorneys' fees incurred as a result of its default").

[3] Shoplink contests the reasonableness of spending a combined 16.4 hours on drafting and preparing order to show cause papers in connection with the default judgment, referring to work performed on January 28, January 30, January 31, February 18, and February 19. Tatintsian Opp. ¶ 3; Santillo Decl., Ex. A at 2–3. The principal basis for this objection seems to be that the 16.4 hours of work expended should have yielded more than the eleven or so pages of briefing. But the 16.4 hours billed on these days was not only spent drafting. *See* Declaration of Kristen M. Santillo in Further Support of Application for Reasonable Fees and Costs ("Santillo Reply Decl."), Dkt. No. 258, ¶ 6 ("The time spent included: (1) legal research, (2) drafting the Memorandum of Law, (3) drafting a supporting declaration which outlined the procedural history of this dispute as well as the details regarding the events leading up to the default, with extensive citations to the docket, (4) drafting a proposed order which cited the law and the facts, (5) drafting the order to show cause, (6) gathering, reviewing and preparing the six accompanying exhibits, and (7) reviewing and cross-checking the Court's individual rules against all the papers to make sure that every item required by the rules was included in the papers."). Ms. Mechlowitz also spent some of her time on these days communicating with other parties or Chambers and traveling to the courthouse to present the order to show cause to the Court. Santillo Decl., Ex. A at 2–3.

On March 24, 2020, Ms. Mechlowitz spent 1.2 hours on various tasks related to the preparation of an appearance sheet for a court conference. Santillo Decl., Ex. A at 4. The Court finds this to be excessive for the preparation of an appearance sheet. Instead, the Court considers a half-hour to be appropriate for completion of this task. On March 25, 2020, Ms. Mechlowitz billed a block entry that listed 2.7 hours for a combination of substantive tasks such as preparing for and attending the vacatur hearing and clerical tasks such as "assist[ing] Ms. McPolin in the creation of an e-folder" and "draft[ing] and fil[ing] a notice of appearance." *Id.* Tasks that are clerical in nature should not be billed at the rate of an associate attorney. *See Harty v. Par Builders, Inc.*, No. 12-CV-2246 (CS), 2016 WL 616397, at *5 (S.D.N.Y. Feb. 16, 2016) (finding that hours billed on non-legal or ministerial tasks should be billed at paralegal rate rather than attorney rate). Because the Court cannot determine how much of this work was clerical, the Court will assess half of the 2.7 hours at a legal assistant's rate of $150 per hour. The Court therefore finds a fee reduction of $412.50 to be appropriate.

Mr. Tatintsian also seeks reimbursement for $139.35 in expenses. Santillo Decl., Ex. A at 4. The $11.80 postage charge on February 20, 2020 for certified mail to Mr. Vorotyntsev is reasonable because the Court's February 19, 2020 order directed Plaintiffs to mail a copy of the order to the Vorotyntsevs. Tatintsian Dkt. No. 235. However, the March 19, 2020 postage charge in the amount of $26.35 is unreasonable because the Court's March 18, 2020 order, Tatintsian Dkt. No. 248, directed the Clerk of Court to mail the order to the Vorotyntsevs, and no other explanation of this charge has been provided. The final expense Mr. Tatintsian seeks is $101.20 in "PACER fees for access to docket report and filed documents from 2/14/20-3/25/20." Santillo Decl., Ex. A at 4. In that date range, there were 28 docket entries in the *Tatintsian* Action and 33 docket entries in the *Khmaladze* Action, which justifies the PACER fees accrued.

11

In sum, the Court reduces Mr. Tatintsian's requested fees and costs by a total of $438.85. The Court finds that the Corporate Defendants must pay Mr. Tatintsian a total of $14,738.00 in attorneys' fees and costs in connection with default judgment and vacatur proceedings.

### c. The *Khmaladze* Action

Plaintiffs in the *Khmaladze* Action have also submitted timesheets that reflect the date of each entry, a description of the work performed, the identity of the attorney billing for each entry, the hours worked, and the applicable rate and total fee charged. *See* Declaration of Partha P. Chattoraj ("Chattoraj Decl."), Khmaladze Dkt. No. 140, Ex. A. They seek a total of $11,062.50 in attorneys' fees. *See* Notice of Motion of Plaintiffs-Counterclaim Defendants for Reimbursement of Attorneys' Fees and Costs, Khmaladze Dkt. No. 139.

Mr. Khmaladze's lead counsel is Partha Chattoraj, who is a partner at Allegaert Berger & Vogel LLP ("ABV"). Chattoraj Decl. ¶ 8. He graduated from Yale Law School, after which he clerked for the Honorable Jon O. Newman of the United States Court of Appeals for the Second Circuit. *Id.* ¶¶ 6–7. He worked at multiple high-profile law firms, then started his own firm before joining ABV as a partner. *Id.* ¶ 8. When this matter began in October 2016, Mr. Chattoraj's standard rate was $575, which has since risen to $675 per hour. *Id.* ¶ 4. Throughout this matter, he has billed Plaintiffs at a rate of $525 per hour. *Id.* Rachel Briant is the only other attorney to have worked on the default judgment and vacatur proceedings. *See* Chattoraj Decl., Ex. A. She joined ABV in May 2019. Chattoraj Decl. ¶ 10. For purposes of this action, Ms. Briant is being billed as a "law clerk." *Id.* ¶ 12. However, she was admitted to practice in New Jersey in December 2019 and the United States District Court for the District of New Jersey in February 2020. Chattoraj Decl. ¶ 11. She has passed the New York bar, but her swearing in was cancelled due to the coronavirus pandemic. *Id.* Prior to her December admission in New Jersey, her customary hourly rate was $275. That has since risen to $350, but she is still being billed at the lower "law clerk" rate of $275. *Id.*

¶ 12. Plaintiffs in the *Khmaladze* Action seek reimbursement only for time billed by Mr. Chattoraj and Ms. Briant. Their rates have been discounted as a result of negotiations with their clients. *Id.* ¶¶ 4, 12.

After considering all of the relevant factors, the Court concludes that $525 for Mr. Chattoraj and $275 for Ms. Briant are reasonable hourly rates for this case. Again, the Corporate Defendants do not contest the reasonableness of these rates. *See generally* Khmaladze Opp. These rates represent roughly 20% discounts to their current standard rates. They are the result of negotiations with Mr. Khmaladze, and Mr. Khmaladze has indicated that he intends to pay the invoice in full. Chattoraj Decl. ¶ 36; *see Arbor Hill*, 522 F.3d at 191. These rates are also reasonable rates. While Mr. Chattoraj's rate of $525 is significantly higher than the $375 charged by Ms. Santillo, he should not be penalized for the highly discounted legacy rates that Mr. Tatintsian received. Moreover, Mr. Chattoraj is highly qualified. Finally, his rate, though higher than the discounted rate charged by Ms. Santillo, is still well within the range of normal rates charged by experienced law firm partners. *See, e.g., Regulatory Fundamentals Grp. LLC*, 2014 WL 4792082, at *2. Ms. Briant's hourly rate is also within the range of reasonable rates for junior associates in complex commercial litigation.[4] *See, e.g., Merck Eprova AG v. Gnosis S.P.A.*, No. 07 Civ. 5898 (RJS), 2013 WL 12326753, at *1 (S.D.N.Y. Aug. 19, 2013) (finding $300 per hour appropriate for a first-year associate).

Turning to the reasonable number of hours for which fees should be reimbursed, Plaintiffs in the *Khmaladze* Action seek reimbursement for only 27.5 hours of work, having written off over 50 hours. Chattoraj Decl., Ex. A. They do not seek reimbursement for any costs. *Id.* 27.5 hours is well under the amount of time expended in the *Tatintsian* Action. *See* Santillo Decl., Ex. A. The Corporate Defendants do not argue that any of this time was unreasonably billed. *See* Khmaladze Opp. Having reviewed the itemized time entries, the Court concludes that, with one exception, the

---

[4] The Court treats Ms. Briant as an associate, even though she is still being billed out at law clerk rates.

hours billed were reasonable, particularly in light of the dramatic write-offs.  On February 19, 2020, Mr. Chattoraj block-billed 2.25 hours of time that was largely clerical but also included substantive work such as "review[ing] and revis[ing] draft default motion papers [and] legal research [regarding] same."[5]  Chattoraj Decl., Ex. A at 4.  The Court treats this entry in the same way as Ms. Mechlowitz's March 25, 2020 entry:  half of these 2.25 hours will be counted as paralegal time billed at $150 per hour because the Court is unable to determine how much of this time was clerical.

The Corporate Defendants' only argument in opposition to the fee application in the *Khmaladze* Action does not concern the reasonableness of the fees sought.  Instead, they mischaracterize the Court's ruling as to willfulness as based solely on "failure to retain counsel until after plaintiffs had filed their default motion." Khmaladze Opp. ¶ 2.  Shoplink also makes this argument in connection with the fee application in the *Tatintsian* Action.  Tatintsian Opp. ¶ 2.  As a result, they ask the Court to deny the fee applications or limit the applications to work occurring after March 3, 2020.  Tatintsian Opp. ¶ 4; Khmaladze Opp. ¶ 4.  But the Court has already found a payment of fees to be appropriate.  Moreover, the Court did not find "that the willfulness of the default arose only following the making of plaintiff's motion," as the Corporate Defendants argue.  Tatintsian Dkt. Opp. ¶ 2; Khmaladze Opp. ¶ 2.  Rather, the court determined default was willful because "the [C]orporate [D]efendants were without counsel for over three months, missing multiple deadlines to obtain counsel[,]" "[t]heir proffered excuse is not viable," and "[n]o explanation has been provided for the dilatory nature of the [C]orporate [D]efendants' efforts to retain counsel within the extended period provided by the Court."  Mar. 25, 2020 Hearing Tr. at 14:7–9; 15:6–9.  The Corporate Defendants argue that fees incurred after March 3, 2020 are the

---

[5] The time entry narrative reads:  "Telephone conferences with court clerk re: filing and scheduling of order to show cause; telephone conferences with R. Briant re: preparation, service and endorsement of default motion order to show cause papers; emails to/from R. Briant re: same; review and revise draft default motion papers; legal research re: same; attention to electronic filing of same; review and analyze papers submitted by G. Tatintsian counsel; emails to/from G. Tatintsian counsel re: coordination of presentation of order to show cause at court; telephone conference with K. Santillo re: same; emails to D. Khmaladze re: status and next steps."  Chattoraj Decl., Ex. A at 4.

14

result of Plaintiffs' refusal to stipulate to a vacatur of the default.[6]  Tatintsian Opp. ¶ 2; Khmaladze Opp. ¶ 2.  Fundamentally, the proceedings that occurred post-March 3, 2020 would not have been necessary in the first place if not for the Corporate Defendants' dilatory conduct.

Accordingly, the Court reduces the fees in the *Khmaladze* Action by only $421.88.  The Court finds that the Corporate Defendants owe a total of $10,640.62 in attorneys' fees in connection with default judgment and vacatur proceedings in the *Khmaladze* Action.

### III.     Conclusion

The applications for attorneys' fees are GRANTED.  The Court concludes that the reimbursement of $14,738.00 in attorneys' fees and costs is reasonable in the *Tatintsian* Action.  The Court further concludes that the reimbursement of $10,640.62 is reasonable in the *Khmaladze* Action.[7]  The Corporate Defendants are directed to make the payments ordered herein within fourteen (14) days after the date of this order.

Plaintiffs are directed to file a letter no later than sixteen (16) days after the date of this order updating the Court on the status of these payments.  Upon payment, the Court will vacate the defaults entered against the Corporate Defendants.  In the event the Corporate Defendants fail to timely pay the sums ordered herein, the default will not be lifted and the Court will promptly adjudicate the applications for default judgment by Plaintiffs.

---

[6] Ms. Santillo's explanation for Mr. Tatintsian's refusal to stipulate to vacatur is compelling.  In requesting that Plaintiffs stipulate to vacatur, Mr. Thomas "did not articulate any good cause for why the default should be vacated."  Santillo Reply Decl. ¶ 4.  Considering the default was already in place and that Plaintiffs had already expended a great deal of time on the default judgment proceedings, they reasonably assert that they were "entitled to a justification for why the default occurred, and to have the Court resolve the motion [for vacatur of the defaults] on the merits."  *Id.*

[7] Corporate Defendants are required to pay the fees of not one but two law firms in connection with the vacatur of the defaults.  The purpose of requiring the Corporate Defendants to pay Plaintiffs' reasonable attorneys' fees is to eliminate the prejudice resulting from the Corporate Defendants' willful default.  Unfortunately for the Corporate Defendants, the aggregate amount of fees owed is greater because attorneys' fees for two sets of plaintiffs and law firms must be offset in order to remedy the prejudice.  But it has long been apparent that two law firms would be involved.  While the Corporate Defendants are unfortunate that two sets of attorneys' fees must be offset, they are fortunate that both law firms either dramatically marked down or wrote off their work on this case.

The Clerk of Court is directed to terminate the motions pending at Dkt. No. 254 in the *Tatintsian* Action, Case No. 1:16-cv-7203-GHW, and Dkt. No. 139 in the *Khmaladze* Action, Case No. 1:16-cv-8029-GHW.

Counsel for the Corporate Defendants is directed to serve a copy of this order on each of Mr. and Mrs. Vorotyntsev, and to file proof of service on the docket within two (2) business days after the entry of this order on the docket.

SO ORDERED.

Dated: May 31, 2020

GREGORY H. WOODS
United States District Judge