**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

GARY TATINTSIAN, on his own behalf and for the
benefit of ShopLink Inc.,

                          Plaintiff, Counterclaim-
                          Defendant,

    -against-

MIKHAIL VOROTYNTSEV and ELENA
VOROTYNTSEV,

                          Defendants,
                          Counterclaim-Plaintiff,

    and,

SHOPLINK INC.,

                          Nominal Defendant,
                          Counterclaim-Plaintiff.

------------------------------------------------------------------x

Case No. 16-CV-7203 (GHW)(JLC)

**Oral Argument Requested**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF AND COUNTERCLAIM-
DEFENDANT GARY TATINTSIAN'S MOTION FOR SUMMARY JUDGMENT**

Kristen Santillo, Esq.
Gelber & Santillo PLLC
347 West 36th Street, Suite 805
New York, NY 10018
Phone: 212-227-4743

**Table of Contents**

I. Preliminary Statement ..............................................................................................1

II. Legal Standard.......................................................................................................3

III. Tatintsian is Entitled to Summary Judgment on his Securities Fraud Claim............................4

    A. Vorotyntsev made material misrepresentations and omissions. ............................................4

        1. Vorotyntsev misrepresented ShopLink's ownership of technology. ................................5

        2. Vorotyntsev falsely claimed that Tatintsian's investment would be used primarily to

        fund ShopLink's start-up operation. ..........................................................................8

    B. Vorotyntsev acted with scienter. ..........................................................................11

    C. The remaining elements of securities fraud are readily met. ................................................13

IV. Tatintsian is Entitled to Summary Judgment on ShopLink's Counterclaims...........................14

    A. Tortious Interference with Prospective Business Relations ................................................15

        1. There is insufficient evidence to establish tortious interference with investors. ...........15

        2. There is insufficient evidence to prove tortious interference with Khmaladze. ............16

    B. There is Insufficient Evidence to Support a Claim of Aiding and Abetting Khmaladze's

    Breach of Fiduciary Duty................................................................................................17

    C. There is Insufficient Evidence to Support a Claim of Unfair Competition Perpetrated by

    Civil Conspiracy ..........................................................................................................19

    D. There is Insufficient Evidence to Support Conversion by Civil Conspiracy .....................22

CONCLUSION..............................................................................................................25

## Table of Authorities

**Cases**

*Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690 (2d Dep't 2007)................................. 20

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) ........................................ 14

*Allcar Motor Parts Corp. v. Federal–Mogul Corp.,* No. 96 Civ. 4419 (JFK), 1998 WL 671448
    (S.D.N.Y. Sept. 29, 1998) ........................................................................................................ 17

*BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123 (S.D.N.Y. 1999), *aff'd*, 205 F.3d
    1321 (2d Cir. 2000) ................................................................................................................. 17

*Big Vision Priv. Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69 (2d Cir. 2015)............ 20

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (2004) ............................................................................. 15

*Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001) ............................................. 14

*Coca-Cola N. Am. v. Crawley Juice, Inc.,* No. 09 CV 3259 JG RML, 2011 WL 1882845
    (E.D.N.Y. May 17, 2011) ......................................................................................................... 22

*Coppola v. Bear Stearns & Co.*, 499 F.3d 144 (2d Cir. 2007) ....................................................... 3

*Coyle v. United States*, 954 F.3d 146 (2d Cir. 2020)...................................................................... 3

*E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441 (2018) ................................................. 21

*eCommission Sols., LLC v. CTS Holdings, Inc.*, No. 15-CV-2671 (KBF), 2018 WL 2078816
    (S.D.N.Y. May 1, 2018), *aff'd*, No. 18-1672-CV, 2019 WL 2261457 (2d Cir. May 28, 2019)....
    .................................................................................................................................................. 21

*Fed. Trade Comm'n v. Moses*, 913 F.3d 297 (2d Cir. 2019) ......................................................... 3

*Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612 (S.D.N.Y. 2014) .............................................. 23

*Fincher v. Depository Trust & Clearing Corp.*, No. 06 Cv. 9959, 2008 WL 4308126 (S.D.N.Y.
    Sept. 17, 2008) aff'd, 604 F.3d 712 (2d Cir. 2010)................................................................... 3

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951 (2021) .......................... 13

*Hayes v. N.Y.C. Dep't of Corrections*, 84 F.3d 614 (2d Cir. 1996)............................................... 16

*Helfer v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 0008, 2020 WL 6823240 (S.D.N.Y. Nov. 20,
    2020) ........................................................................................................................................ 16

*Hughes v. Design Look Inc.*, 693 F. Supp. 1500 (S.D.N.Y. 1988) ................................................ 22

*In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711 (S.D.N.Y. 2015)............................................. 9

*In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206 (S.D.N.Y. 2010) .......................................... 4

*In re MetLife Demutualization Litig.*, 262 F.R.D. 217 (E.D.N.Y. 2009)....................................... 13

*In re Sharp Int'l Corp.*, 403 F.3d 43 (2d Cir. 2005) ..................................................... 18

*Jamison Bus. Sys., Inc. v. Unique Software Support Corp.*, No. CV 02-4887 (ETB), 2005 WL
    1262095 (E.D.N.Y. May 26, 2005) ........................................................................ 24

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ................................................................ 12

*Kirschner v. Bennett*, 648 F. Supp. 2d 525 (S.D.N.Y. 2009) .......................................... 23

*LoPresti v. Terwilliger*, 126 F.3d 34 (2d Cir. 1997) ....................................................... 23

*Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.*, No. 95CIV.8450(AGS)(THK), 1998 WL
    422482 (S.D.N.Y. July 22, 1998) ......................................................................... 21

*Marini v. Adamo*, 995 F. Supp. 2d 155 (E.D.N.Y. 2014), *aff'd*, 644 F. App'x 33 (2d Cir.
    2016) ..........................................................................................................4, 13

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ............................................. 4

*Metito (Overseas) Ltd. v. Gen. Elec. Co.*, No. 05 CIV. 9478(GEL), 2009 WL 399221 (S.D.N.Y.
    Feb. 18, 2009) ................................................................................................... 20

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ............................................................... 12

*Oxford Mall Co. v. Sadie's Inc.*, 18 F.3d 936, 1994 WL 83419 (5th Cir. Feb. 22, 1994) ............... 4

*Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157 (S.D.N.Y. 1998) ...................... 20

*Porter v. Quarantillo*, 722 F.3d 94 (2d Cir. 2013) ........................................................... 3

*Puddu v. 6D Glob. Techs., Inc.*, No. 15-CV-8061 (AJN), 2021 WL 1198566 (S.D.N.Y. Mar. 30,
    2021) ................................................................................................................ 4

*Rao v. Verde*, 222 A.D.2d 569 (2d Dep't 1995) ............................................................. 24

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ............................................................. 4

*Ruder & Finn Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518 (1981) ..................................... 22

*S.E.C. v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421 (E.D.N.Y. 2016) .......................... 5, 13

*S.E.C. v. George*, 426 F.3d 786 (6th Cir. 2005) ............................................................. 12

*S.E.C. v. Glantz*, No. 94 CV 5737(LAP), 2009 WL 3335340 (S.D.N.Y. Oct. 13, 2009) ............. 11

*S.E.C. v. Glob. Telecom Servs., L.L.C.*, 325 F. Supp. 2d 94 (D. Conn. 2004) ...................... 8

*S.E.C. v. Hurgin*, 484 F. Supp. 3d 98 (S.D.N.Y. 2020) ................................................... 8

*S.E.C. v. Research Automation Corp.*, 585 F.2d 31 (2d Cir. 1978) .................................. 8, 11

*S.E.C. v. Riel*, 282 F. Supp. 3d 499 (N.D.N.Y. 2017) .................................................. 11, 12

*S.E.C. v. Universal Exp., Inc.*, 475 F. Supp. 2d 412 (S.D.N.Y. 2007), *aff'd sub nom. SEC v.
    Altomare*, 300 Fed.Appx. 70 (2d Cir. 2008) ........................................................... 12

*Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280 (S.D.N.Y. 2011) ............................... 8, 13

*Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199 (2d Cir. 2009)............. 4

*Spithogianis v. Haj-Darwish,* No. 07CIV.4609 P ACJCF, 2008 WL 82188 (S.D.N.Y. Jan. 7, 2008) ....................................................................................................................................... 21

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007).................................................... 11

*Tucker v. Wyckoff Heights Med. Ctr.*, 52 F. Supp. 3d 583 (S.D.N.Y. 2014)................................. 17

*United States v. McGinn*, 941 F. Supp. 2d 260 (N.D.N.Y. 2013), *aff'd*, 787 F.3d 116 (2d Cir. 2015) ...................................................................................................................................... 11

*Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427 (S.D.N.Y. 2007) ....................................................... 15

*Williams v. New York City Dep't of Educ.*, No. 1:19-CV-01353 (MKV), 2021 WL 1178118 (S.D.N.Y. Mar. 29, 2021) ..................................................................................................... 3

*XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179 (E.D.N.Y. 2016)........ 15

*Yadav v. Punj*, No. 11 CIV. 1500 HBP, 2013 WL 3975943 (S.D.N.Y. Aug. 5, 2013).................... 12

*Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216 (2d Cir. 2020) ..................................................... 19

## I.        Preliminary Statement

Discovery has long since closed and the evidence is crystal clear. Defendant Mikhail Vorotyntsev committed brazen securities fraud and Plaintiff Gary Tatintsian is entitled to summary judgment. The discovery, including irrefutable documentary evidence, an audio recording and sworn deposition testimony, conclusively shows that Vorotyntsev made material misrepresentations and omissions to induce Tatintsian to invest approximately $1.35 million in ShopLink Inc. Vorotyntsev presented ShopLink to investors as a cutting-edge e-commerce company that would use referral links to revolutionize the way customers and businesses marketed their products, yet Vorotyntsev was well aware that ShopLink did not own <u>any</u> of the technology being developed for the e-commerce platform. Indeed, Vorotyntsev himself owned the technology, personally and through another entity, AUM Code LLC. Nonetheless, during a recorded meeting and in a Subscription Agreement, Vorotyntsev plainly misled Tatintsian into believing that ShopLink itself owned the technology to secure Tatintsian's lucrative investment.

Additionally, although Vorotyntsev expressly warranted in the Subscription Agreement that Tatintsian's investment would primarily be used as working capital to fund ShopLink's start-up operations, Vorotyntsev freely used Tatintsian's investment on personal expenses, including at least $90,000 in cash transfers to his wife, paying personal debts and making extravagant purchases at luxury stores such as Barneys, Chanel and ABC Home Furnishings.  Based upon Vorotyntsev's misrepresentations and omissions about ShopLink's ownership of technology and his intended use of the funds, Tatintsian invested nearly $1.35 million in ShopLink, and lost it all.  These undisputed facts entitle him to summary judgment on his securities fraud claim.

Tatintsian is also entitled to summary judgment on ShopLink's counterclaims, as ShopLink has wholly failed to adduce evidence to establish any of its claims, and Vorotyntsev's own deposition testimony soundly defeats most of them.

Counterclaim 5, alleging tortious interference with prospective business relations with investors fails because Vorotyntsev testified unequivocally that ShopLink has maintained its relationship with all of its investors and potential investors, and thus ShopLink could not establish any causation or damages from any alleged interference by Tatintsian. ShopLink has also not identified any wrongful conduct directed at investors, a critical element of its claim.

Counterclaim 4, alleging tortious interference with prospective business relations with software architect Dmitriy Khmaladze, also fails since ShopLink did not establish any wrongful conduct aimed at Khmaladze. Any alleged interference also did not cause Khmaladze to sever ties with Vorotyntsev, as Khmaladze clearly testified that he cut off ties due to Vorotyntsev's audacious embezzlement from ShopLink, and not due to any wrongful conduct by Tatintsian.

Counterclaim 7, alleging aiding and abetting Khmaladze's breach of fiduciary duty, fails because Khmaladze had no fiduciary duty to ShopLink, as the undisputed evidence shows that his relationship was with AUM Code and IT Adapter LLC, not ShopLink. ShopLink has further failed to establish any breach, any causation or any damages.

Counterclaim 9, alleging unfair competition through civil conspiracy, fails because ShopLink did not own any intellectual property, and presented no evidence that confidential information was misappropriated. ShopLink also never marketed a product and had no revenue, and could show no use of any commercial advantage by a competing venture or damages.

Counterclaim 10, alleging conversion through civil conspiracy, fails because ShopLink did not own, possess or control the source code or any other tangible property that was allegedly converted. Khmaladze, as part owner, also did not exercise unauthorized dominion over the code. He simply preserved a forensic copy then returned the code to Vorotyntsev, and ShopLink has not established that the code was altered in any way.

2

For these reasons, Tatintsian is entitled to summary judgment not only against Vorotyntsev on his securities fraud claim, but also against ShopLink on all of its counterclaims. [1]

## II.    Legal Standard

A motion for summary judgment should be granted where, viewing the facts in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020). "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007) (internal quotation marks omitted).

"Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019). "A [nonmoving party's] self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Fincher v. Depository Trust & Clearing Corp.,* No. 06 Cv. 9959, 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) *aff'd*, 604 F.3d 712 (2d Cir. 2010); *see also Williams v. New York City Dep't of Educ.*, No. 1:19-CV-01353 (MKV), 2021 WL 1178118, at *7 (S.D.N.Y. Mar. 29, 2021) (Non-movant "cannot create an issue of fact simply by citing her own deposition and affidavit testimony without more.")

---

[1] While ShopLink initially asserted additional counterclaims against Tatintsian, those counterclaims were dismissed pursuant to the Court's order dated April 18, 2019 at docket No. 182. Only the surviving claims are addressed here.

Although the initial burden rests with the movant to demonstrate that there is no genuine dispute of material fact, "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). "In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Id.*

## III.    Tatintsian is Entitled to Summary Judgment on his Securities Fraud Claim

To prevail on his claim for securities fraud, Tatintsian must prove: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011). The undisputed evidence establishes these elements.

### A.  Vorotyntsev made material misrepresentations and omissions.

In the context of securities fraud, "a statement or omission [is material if] a reasonable investor would have considered [the statement or omission] significant in making investment decisions." *Marini v. Adamo*, 995 F. Supp. 2d 155, 186 (E.D.N.Y. 2014), *aff'd*, 644 F. App'x 33 (2d Cir. 2016). In addition, a duty to disclose an omitted fact "arises when disclosure is necessary to make prior statements not misleading.'" *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 232 (S.D.N.Y. 2010) (citations omitted). "To determine whether such an omission has occurred, the Court should consider 'whether the defendants' representations, taken together and in context, would have misled a reasonable investor.'" *Puddu v. 6D Glob. Techs., Inc*., No. 15-CV-8061 (AJN), 2021 WL 1198566, at *5 (S.D.N.Y. Mar. 30, 2021) (*citing Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d Cir. 2004)). *See also Oxford Mall Co. v. Sadie's Inc*., 18 F.3d 936, 1994

WL 83419, at *5 (5th Cir. Feb. 22, 1994) ("[m]ultiple misrepresentations that are interrelated are usually material when viewed as part of a whole, even if the component misrepresentations are each immaterial … standing alone.")

The undisputed evidence shows that Vorotyntsev made multiple material misrepresentations and omissions to fraudulently induce Tatintsian to invest in ShopLink, including: (1) falsely misrepresenting that ShopLink owned mission-critical technology; and (2) misrepresenting that Tatintsian's investment would primarily be used as working capital to fund ShopLink's start-up operations, when in fact it was primarily used to fund the personal expenses of Vorotyntsev and his wife.  Since these misrepresentations and omissions are "so obviously important to the investor that reasonable minds cannot differ on the question of materiality," summary judgment on the materiality element is warranted. *SEC v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 444 (E.D.N.Y. 2016).

## 1.  Vorotyntsev misrepresented ShopLink's ownership of technology.

ShopLink was purportedly an e-commerce company developing technology to help companies and consumers market and sell goods through referral links on social media. Since ShopLink was a start-up technology company, whether it owned its technology was naturally a primary consideration for Tatintsian in deciding whether to invest in ShopLink. At a recorded meeting during which the terms of Tatintsian's investment were finalized, Tatintsian sought assurances that ShopLink owned the underlying technology for the e-commerce platform. *See* K-1 (original recording); K-4 at 2-4 (transcript and translation of recording); Tatintsian Decl. ¶ 6 (identifying the speakers in the recording).[2] Tatintsian asked that it be made clear in the

---

[2] Unless otherwise noted, all exhibits referenced herein are attached to the Declaration of Kristen M. Santillo in Support of Gary Tatintsian's Motion for Summary Judgment dated September 2, 2021, and are cited in this memorandum as "Ex. -."

Subscription Agreement that ShopLink "owns the technology" and wanted the Subscription Agreement to reflect that "part of the company property is the … technology."  K-4 at 2, 3.  In response, Vorotyntsev assured Tatintsian that ShopLink "fully owns the entire technology."  Ex K-4 at 3. In a sleight of hand, Vorotyntsev also focused on a pending patent, assuring Tatintsian that the company owned a pending patent, which had been assigned to ShopLink about "a year ago." Ex K-4 at 3. While Tatintsian asked that the Subscription Agreement include a provision that the "company owns this property," Vorotyntsev pivoted and instructed his lawyer to include a representation in the Subscription Agreement that ShopLink owned the pending patent (Ex. K-4 at 5), and the Subscription Agreement was modified to reflect this language. *See* Ex. E at 7, ¶ 4.8 (Subscription Agreement ███████████████████████████████████████ ████████████████████████  It is evident from the context of the recorded meeting that Vorotyntsev presented the pending patent as embracing the technology for the e-commerce platform, when the documentary evidence plainly shows it did not.

As a preliminary matter, Vorotyntsev's statement that ShopLink owned the pending patent was demonstrably false because patent Application No. 14/071,137 was filed by Vorotyntsev and Khmaladze personally, not by ShopLink (*see* Ex. H), and any interests in the patent application were not transferred to ShopLink until September 2, 2016 (*see* Ex. J), nearly 5 months after Tatintsian signed the Subscription Agreement, and nearly 3 months after the application was rejected by the United States Patent and Trademark Office because it "[did] not amount to significantly more than [an] abstract idea" (Ex. E at 4). Thus, at the time Tatintsian agreed to invest in ShopLink, ShopLink did not own any pending patent, and by the time any interest in the patent application was ultimately transferred to ShopLink, it was worthless.

More fundamentally, Vorotyntsev's statement was misleading because he failed to disclose that nearly all of the technology being developed for the e-commerce platform was not owned by ShopLink at all and instead was owned by a separate company, AUM Code, of which Vorotyntsev himself was CEO and a 60% owner.  Ex. F; Ex. P at ¶ 50. In 2015, Vorotyntsev signed an Asset Purchase Agreement ("APA") on behalf of AUM Code through which the technology was assigned to AUM Code, and not to ShopLink, in which Tatintsian was investing. Ex. F. As Vorotyntsev was well aware, ShopLink did not own any interest in AUM Code, which was owned by Vorotyntsev (60%) and Khmaladze (40%) personally. Ex. P at ¶ 50. Vorotyntsev's testimony confirms that entities were quite intentionally created to own the technology, separate and apart from ShopLink ███████████████████████

███████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

Vorotyntsev's omission of this critical fact was materially misleading in light of Vorotyntsev's representation that ShopLink owned the pending patent, which he made in direct response to Tatintsian's request for assurances that ShopLink owned the "technology" for the e-commerce platform. Ex. K-4 at 2-3. *See* also Ex. K-4 at 1 (Tatintsian asking "how are the stocks secured.") In truth, ShopLink did not own any technology or other intellectual property, and Tatintsian was lured into investing in a hollow company, with no assets to secure his investment and only an unscrupulous principal at its helm.

Vorotyntsev's misrepresentations and omissions about ShopLink's technology ownership, which are established by irrefutable evidence, were undoubtedly material because a reasonable

investor would consider representations about technology ownership as critically important in determining whether to invest, particularly in a start-up e-commerce company whose success depended upon the technology. In analogous cases, courts have found that misrepresentations and omissions about a company's patent rights and/or ownership of important technology were material. *See, e.g., S.E.C. v. Glob. Telecom Servs., L.L.C.*, 325 F. Supp. 2d 94, 112 (D. Conn. 2004) (false representation regarding ownership of patent rights was material); *S.E.C. v. Research Automation Corp.,* 585 F.2d 31, 35-36 (2d Cir. 1978) (false representation regarding patent application was material); *SEC v. Hurgin*, 484 F. Supp. 3d 98, 110-111 (S.D.N.Y. 2020) (SEC adequately alleged that CEO's statement that his company owned a technology, which it did not actually own, was material); *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 302-303 (S.D.N.Y. 2011) (allegation that corporation failed to disclose agreements transferring all of corporation's intellectual property to one of its officers was material). Thus, even standing alone, Vorotyntsev's misleading statements and omissions about ShopLink's intellectual property ownership meet the materiality element of securities fraud.

### 2. Vorotyntsev falsely claimed that Tatintsian's investment would be used primarily to fund ShopLink's start-up operations.

Vorotyntsev also falsely represented in the Subscription Agreement, which he signed as ShopLink's CEO, that ███████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

In fact, as ShopLink's bank statements plainly show and as Vorotyntsev's testimony confirms, Vorotyntsev and his wife had historically spent substantial sums of investor money on their own personal expenses.[3] Vorotyntsev testified unequivocally that he treated the ShopLink bank account as his own personal bank account, to be used on personal purchases entirely at his discretion. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] Every dollar of his personal living expenses came from the ShopLink bank account, including his rent, his luxury car payment, his electricity, his groceries, and his clothing. *See* Ex. A, Vorotyntsev Depo. at 76:12-14; 95:11-96:2.

Vorotyntsev acknowledged that he made no effort to segregate business and personal expenses, he never saved receipts for accounting purposes and he never hired an accountant for ShopLink to track expenses. *Id*. at 75:16-17; 76:5-14. Vorotyntsev never treated payments to himself as income for tax purposes,[4] and never otherwise documented transfers of money to

---

[3] It is undisputed that Vorotyntsev and his wife had exclusive control over the ShopLink bank account, into which investor funds were deposited. Ex. A, Vorotyntsev Dep at 63:13-18.

[4] Vorotyntsev also testified that neither he nor ShopLink had filed a tax return from ShopLink's inception in 2012 through the present day, which also renders false Vorotyntsev's representation in the Subscription Agreement that ShopLink was in compliance with all applicable laws. *See In re BioScrip, Inc. Sec. Litig*., 95 F. Supp. 3d 711, 729 (S.D.N.Y. 2015) (complaint adequately alleged that statements that company believed it was "in substantial compliance" with relevant laws and regulations were material misstatements where company could not have believed that and the statement was objectively false). *See also* Ex. A, Vorotyntsev Depo. at 96:24-97:2 (admitting ShopLink never filed a tax return); Ex. E at 7, Subscription Agreement ¶ 4.6 (stating that ShopLink was in compliance with all applicable laws).

himself or his wife as salary or loans on ShopLink's books.  *Id*. at 95:4-6; 97:3-98:25. In sum, Vorotyntsev used the ShopLink bank account as his own personal slush fund, with no accountability or sense of duty to ShopLink's shareholders.

Vorotyntsev's use of investor funds for his own personal expenses pre-dated Tatintsian's investment in ShopLink, and escalated immediately after Tatintsian invested in the company. For instance, from January 2016 to April 2016, before Tatintsian's investment hit the ShopLink bank account, the Vorotyntsevs spent a net of over $170,000 on debit card purchases using the ShopLink bank account, including at luxury clothing stores and high-end restaurants. *See* Ex. M at SL000118-181. Within nine days of Tatintsian's initial investment on May 10, 2016, Vorotyntsev transferred $20,000 to his wife, Elena Vorotyntsev.[5] Ex. M at SL000218. In July 2016 alone, ShopLink's bank statements show $65,000 in transfers to Elena Vorotyntsev, $81,450 in withdrawals, and a net of $75,805.93 in credit card purchases, including at luxury stores such as Barneys and Tourneau. *Id*. at SL000252.  In contrast, in July only $30,000 was sent to IT Adapter LLC, the company and the account through which all of the programmers developing the e-commerce platform were paid, out of which only $16,000 went to the programmers. *Id*. at SL000252; Ex. N at SL000086.

In addition to funding his lavish lifestyle, Vorotyntsev acknowledged at his deposition that he used Tatintsian's investment to pay off personal debts, including a $30,000 personal promissory note and a payment to his landlord to resolve a landlord-tenant dispute. Ex. A, Vorotyntsev Depo. at 179:6-182:13; Ex. M at SL000245; Ex. O.

Vorotyntsev's statement that Tatintsian's investment would be used primarily for working capital to fund start-up operations was therefore demonstrably false and, as many courts

---

[5] Vorotyntsev testified that transfers to his wife, Elena Vorotyntsev, were for personal expenses. Ex. A, Vorotyntsev Depo. at 208:21-210:6.

considering comparable facts have concluded, undoubtedly material. *See, e.g.*, *Research Automation Corp.*, 585 F.2d at 35 ("What reasonable investor would not wish to know that the money raised by stock sales would not be used for working capital but be diverted to RAC's officers?"); *S.E.C. v. Riel*, 282 F. Supp. 3d 499, 520 (N.D.N.Y. 2017) ("No reasonable investor would have invested with REinvest had he or she known…that Defendant Riel and REinvest did not intend to invest most of the funds for a return, or that Defendant Riel would use most of the investment funds for personal expenses."); *United States v. McGinn*, 941 F. Supp. 2d 260, 265 (N.D.N.Y. 2013), *aff'd*, 787 F.3d 116 (2d Cir. 2015) (jury reasonably concluded that defendants engaged in securities fraud by failing to disclose that investor money would be used to make payments to personal bank accounts, and this would have been material to an investor's decision to invest); *S.E.C. v. Glantz*, No. 94 CV 5737(LAP), 2009 WL 3335340, at *4 (S.D.N.Y. Oct. 13, 2009) (defendant committed securities fraud by soliciting investments to obtain lines of credit to buy financial instruments, but instead personally used investor funds). Vorotyntsev's misrepresentations and omissions about the historical and intended use of investor funds were therefore, standing alone, material. Certainly when combined with Vorotyntsev's misleading misrepresentations and omissions about ShopLink's ownership of intellectual property, the misstatements about the intended use of investor funds establish the materiality element of securities fraud.

## B. Vorotyntsev acted with scienter.

The undisputed evidence also shows that, in making these misrepresentations and omitting material information, Vorotyntsev "acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007) (internal quotation marks omitted). "Representing information as true while knowing it is not, recklessly misstating information, or asserting an opinion on grounds so flimsy as to belie

any genuine belief in its truth, are all circumstances sufficient to support a conclusion of scienter." *SEC v. Universal Exp., Inc*., 475 F. Supp. 412, 424 (S.D.N.Y. 2007), *aff'd sub nom. SEC v. Altomare*, 300 Fed.Appx. 70 (2d Cir. 2008).[6] The undisputed evidence demonstrates that Vorotyntsev acted with scienter because: (1) Vorotyntsev acknowledged in his deposition testimony that he used Tatintsian's money, like he had historically used all investor money, for his own personal expenses; and (2) Vorotyntsev misrepresented to Tatintsian that ShopLink owned the technology being developed when he, as the actual owner of the technology, knew for a fact ShopLink did not.

First, Vorotyntsev does not "deny that he spent investor funds on personal expenses, a fact that itself establishes the requisite state of mind for committing securities fraud." *S.E.C. v. George*, 426 F.3d 786, 795–96 (6th Cir. 2005). S*ee also Riel,* 282 F. Supp. 3d at 521 (defendant who withdrew significant portions of investor's funds for personal expenses unrelated to the company "'benefitted in a concrete and personal way from the purported fraud,' which satisfies the scienter element"); *Yadav v. Punj*, No. 11 CIV. 1500 HBP, 2013 WL 3975943, at *6 (S.D.N.Y. Aug. 5, 2013) (where defendant received funds and deposited them into his personal bank account, he personally benefitted in a concrete way from the purported fraud, fulfilling the element of scienter). The concrete benefit that Vorotyntsev received from investor funds, including Tatintsian's, which ShopLink's bank statements and Vorotyntsev's own deposition testimony confirm, therefore readily establishes scienter.

---

[6] *See also Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (a plaintiff can establish scienter either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness") (internal quotation marks omitted); *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000) (inference of scienter may arise where the complaint sufficiently alleges that the defendants: "(1) benefitted in a concrete and personal way from the purported fraud … (2) engaged in deliberately illegal behavior … (3) knew facts or had access to information suggesting that their public statements were not accurate … or (4) failed to check information they had a duty to monitor.")

Scienter is further established because Vorotyntsev – who himself or through entities other than ShopLink, owned all of the intellectual property being developed in connection with the e-commerce platform – was well aware that he was making material misrepresentations and omissions when he represented that ShopLink owned a pending patent that it did not own,[7] and failed to disclose that another entity, not ShopLink, owned <u>all</u> of the technology being developed in connection with the e-commerce platform.  A defendant, such as Vorotyntsev, "who believes his statements to be false acts with requisite scienter."  *In re MetLife Demutualization Litig.*, 262 F.R.D. 217, 234 (E.D.N.Y. 2009) ("Scienter also exists if a defendant knows of omitted facts which make its statement materially misleading.").

### C.  The remaining elements of securities fraud are readily met.

The undisputed evidence also readily establishes the remaining elements of securities fraud.  "Any statement that is reasonably calculated to influence the average investor satisfies the 'in connection with' requirement' of the securities laws."  *SEC v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 450 (E.D.N.Y. 2016).  Because Vorotyntsev "made material misrepresentations in order to induce plaintiff[] to purchase securities" in ShopLink, this element is easily satisfied. *Marini*, 995 F. Supp. 2d at 192.

Reliance is also established.  "The 'traditional (and most direct) way' for a plaintiff to prove reliance is to show that he was aware of a defendant's misrepresentation and engaged in a transaction based on that misrepresentation."  *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1958 (2021).  Tatintsian was clearly aware of Vorotyntsev's

---

[7] Vorotyntsev was, at minimum, reckless in not confirming that an assignment to ShopLink had been properly effectuated when, as the recorded meeting establishes, he was well aware that ownership of the technology was of key concern to Tatintsian.  *See e.g.*, *Sawabeh*, 832 F. Supp. 2d at 304 (misrepresentations about IP ownership made to induce investment adequately alleged recklessness for purposes of the scienter requirement, given that the "ownership and value of [the company's] IP was clearly central to the transaction").

misrepresentations regarding ShopLink's ownership of the technology and the way in which ShopLink would use Tatintsian's investment – Vorotyntsev made these representations directly to Tatintsian in a recorded meeting and through the Subscription Agreement. *See* Ex. K-4; Ex. E. Tatintsian thereafter invested $1.35 million in ShopLink directly as a result of these misrepresentations.  With regard to Vorotyntsev's omissions about the technology ownership and Vorotyntsev's historic and intended use of investor funds for personal expenses, reliance is presumed.  *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54 (1972) (in cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery" – instead, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.")

Economic loss and loss causation are also established.  Tatintsian invested nearly $1.35 million in ShopLink, much of which was diverted by the Vorotyntsevs shortly after Tatintsian's investment.  Tatintsian's shares are now worthless, establishing economic loss.  "[L]oss causation has often been described as proximate cause, meaning that the damages suffered by plaintiff must be a foreseeable consequence of any misrepresentation or material omission." *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 186 (2d Cir. 2001).  It was reasonably foreseeable that Vorotyntsev's misrepresentations and omissions about ShopLink's ownership of technology and the intended uses of his investment funds would cause Tatintsian to lose his investment.  These material misrepresentations and omissions concealed the reality of ShopLink – that it was a grossly mismanaged company with no assets and a corrupt principal who treated the ShopLink bank account as his own personal piggy bank.

Summary judgment in Tatintsian's favor on this claim is thus warranted.

IV.    **Tatintsian is Entitled to Summary Judgment on ShopLink's Counterclaims.**

ShopLink has failed to adduce sufficient evidence for a reasonable jury to find in its favor on any of its counterclaims. Additionally, with respect to several counterclaims, the undisputed record affirmatively *disproves* ShopLink's allegations. Accordingly, Tatintsian is entitled to summary judgment with respect to each of these claims.

A.    **Tortious Interference with Prospective Business Relations**

ShopLink has alleged tortious interference with prospective business relations with investors and Khmaladze.  To prevail on these claims, ShopLink must prove that "(1) there was a business relationship with a third party; (2) defendant knew of that relationship and intentionally interfered with it; (3) defendant either acted solely out of malice or used wrongful means; and (4) defendant's interference caused injury to the relationship with the third party." *Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 434 (S.D.N.Y. 2007) (internal quotation marks omitted). "[A]s a general rule, the defendant's conduct must amount to a crime or an independent tort." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004). The wrongful conduct must be "directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Id.* at 192; *accord XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 187 (E.D.N.Y. 2016).

1.    **There is insufficient evidence to establish tortious interference with investors.**

ShopLink's claim for tortious interference with prospective business relations with investors fails because, by Vorotyntsev's own admission, any alleged wrongdoing by Tatintsian did not cause injury to the relationship between ShopLink and any of its investors or potential investors.  Vorotyntsev testified that ShopLink's investors with whom Tatintsian allegedly "interfered" are still "all investors in support of [ShopLink]," and even with regard to potential investors, ShopLink still has "an opportunity to create very meaningful commercially beneficial

15

relationships. . . . That's how much people believe in us." Ex. B, Vorotyntsev Depo. 179:6–22; 180:21–181:7. ShopLink cannot now produce evidence to contradict this testimony of its CEO and 30(b)(6) witness. *See Hayes v. N.Y.C. Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."); *accord Helfer v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 0008, 2020 WL 6823240, at *7 (S.D.N.Y. Nov. 20, 2020). This testimony alone defeats ShopLink's claim because, even if ShopLink could establish any interference, ShopLink could prove no causation or damages. ShopLink has also failed to produce evidence of <u>any</u> wrongful conduct by Tatintsian directed at the investors, which is independently fatal to its claim.

### 2.  There is insufficient evidence to prove tortious interference with Khmaladze.

ShopLink's allegation of tortious interference with prospective business relations with Khmaladze also fails. ShopLink alleged that Tatintsian acted "wrongfully" by threatening that he might sue Khmaladze as well as the Vorotyntsevs, but ShopLink produced no evidence that any such threat was made. To the contrary, Khmaladze testified that Tatintsian never threatened him, and no contrary evidence was produced.  Ex. C, Khmaladze Depo. at 230:13–18.

Additionally, Khmaladze testified that he severed ties with Vorotyntsev, not because of a threat of litigation or any other conduct by Tatintsian, but because Khmaladze believed Vorotyntsev had engaged in criminal conduct by embezzling funds from ShopLink, and Khmaladze did not want to be associated with Vorotyntsev's criminality. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████  Thus, even if any wrongful conduct by Tatintsian had been proven (it was not), it was not the but-for cause of Khmaladze severing his relationship with Vorotyntsev or ShopLink. *See Allcar Motor Parts Corp. v. Federal–Mogul Corp.,* No. 96 Civ. 4419 (JFK), 1998 WL 671448, at *6 (S.D.N.Y. Sept. 29, 1998) (granting summary judgment for defendants where plaintiff failed to "specify some particular, existing relationship through which plaintiff would have done business but for the allegedly tortious behavior"); *Tucker v. Wyckoff Heights Med. Ctr.*, 52 F. Supp. 3d 583, 599 (S.D.N.Y. 2014) (plaintiff failed to demonstrate but-for causation, as she could not show that she would have been hired by prospective employers had the defendant said nothing to those employers, particularly since she did not complete her residency).

Finally, the evidence shows that Khmaladze's relationship was with IT Adapter LLC and Aum Code, and not with ShopLink, so ShopLink cannot establish the first element of its claim, "a business relationship" with Khmaladze.  Vorotyntsev himself testified that Khmaladze's employment arrangement was with IT Adapter LLC, which paid Khmaladze's compensation, and AUM Code, of which he was a partner, and not with ShopLink. *See* Ex. A, Vorotyntsev Depo. at 185:5–186:3; Ex. C, Khmaladze Depo. at 321:1-16 (Khmaladze testifying that he had a contractor relationship with IT Adapter LLC, and he was paid through the IT Adapter LLC bank account, not by ShopLink.)  Accordingly, ShopLink's claim for tortious interference with prospective business relations fails.

### B.  There is Insufficient Evidence to Support a Claim of Aiding and Abetting Khmaladze's Breach of Fiduciary Duty

"Under New York law, third party liability for participation in a breach of fiduciary duty is established by showing: (1) a breach by a fiduciary, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a result of the breach."

*BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123, 130 n.2 (S.D.N.Y. 1999), *aff'd*, 205 F.3d 1321 (2d Cir. 2000).[8] "A person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator," and "[s]ubstantial assistance may only be found where the alleged aider and abettor 'affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.'" *In re Sharp Int'l Corp.*, 403 F.3d 43, 50 (2d Cir. 2005). ShopLink has not adduced sufficient evidence for a jury to find any of these elements in its favor.

First, ShopLink cannot show that Khmaladze owed fiduciary duties to ShopLink, as Vorotyntsev and Khmaladze intentionally structured IT Adapter LLC and AUM Code to own the source code and to develop the software, and any employment relationship with Khmaladze was with these entities and not with ShopLink. Ex. A, Vorotyntsev Depo. at 184:19-23, 185:5–186:3; Ex. C, Khmaladze Depo. at 321:1-16.

Second, vis-à-vis the source code, Tatintsian could not have participated in any breach of a fiduciary duty because there was no breach. Khmaladze – who was a part owner of the code -- simply preserved a pristine forensic copy of the code in case there was a criminal investigation of Vorotyntsev, and then provided a copy to Vorotyntsev. ███████████████ ██████████████████████████████████████████ ███████████ ShopLink has presented no evidence that the source code was altered in any way. Ex. B, Vorotyntsev Depo. at 97:15-99:6 (Vorotyntsev acknowledging that Khmaladze returned a copy of the source code to him, and he could not identify any aspects of the code that had been altered, modified, deleted or omitted.) And given that Khmaladze was a part-owner of the code,

---

[8] In response to prior briefing, this Court resolved the choice of law analysis between Delaware and New York law by concluding that the standards are materially the same. *See* Dkt. No. 182 at 13-14. Accordingly, only New York law is addressed here, but summary judgment would similarly be warranted applying Delaware law.

he was well within his rights to temporarily take a copy of it.  *See* Ex. P at ¶ 50 (Khmaladze

owned 40% of AUM Code); Ex. F (agreement transferring code to AUM Code). In any event,

Khmaladze's use of technology that was owned by AUM Code and not ShopLink (*see* Ex. F)

could not be found to have breached any fiduciary duties owed <u>to ShopLink.</u>

With regard to ShopLink's allegation that Tatintsian and Khmaladze stole ShopLink's

"idea" or "business plan," ShopLink has not identified any confidential information Khmaladze

allegedly took from ShopLink. To the extent that ShopLink's claim is predicated on the patent

application, the patent office expressly rejected any notion that the idea was unique, and there

was no evidence produced that Khmaladze even used it. *See* Ex. I at 4 (USPTO rejecting patent

application because it did "not amount to significantly more than [an] abstract idea").

Additionally, since it is undisputed that ShopLink's product never even reached the pilot stage,

there was simply no product to steal or compete with.

Finally, ShopLink has not shown how it was damaged in any way by Khmaladze's

alleged breach, as it did not own the technology Khmaladze allegedly usurped, it has not

identified any of ShopLink's confidential information that was allegedly used by Khmaladze, it

was not the entity that employed or compensated Khmaladze, and Khmaladze never competed in

the marketplace with ShopLink.  *See Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 243 (2d Cir.

2020) ("Because the Foundations did not pay Feldman compensation, and because no evidence

in the record suggests that they suffered 'damage' from Feldman's disloyalty, we reverse the

district court's denial of Feldman's Rule 50 motion with respect to the Foundations.").

### C.  There is Insufficient Evidence to Support a Claim of Unfair Competition Perpetrated by Civil Conspiracy

ShopLink has alleged that Tatintsian, along with Khmaladze, engaged in unfair

competition by civil conspiracy by misappropriating ShopLink's concept, business plan and

software to engage in a competing business. "The elements of a civil conspiracy under New York law are (1) the corrupt agreement between two or more persons, (2) an overt act, (3) their intentional participation in the furtherance of a plan or purpose, and (4) resulting damage." *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 173 (S.D.N.Y. 1998) (internal quotations omitted). An unfair competition claim involving an alleged misappropriation must establish that the defendant: (1) misappropriated the plaintiff's labors, skills, expenditures, or good will; and (2) displayed some element of bad faith in doing so. *See Metito (Overseas) Ltd. v. Gen. Elec. Co.*, No. 05 CIV. 9478(GEL), 2009 WL 399221, at *13 (S.D.N.Y. Feb. 18, 2009); *Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 692 (2d Dep't 2007). ShopLink has failed to adduce any evidence to support the required elements of this claim.

First, ShopLink has not produced any evidence that Khmaladze or Tatintsian misappropriated ShopLink's "labors, skills, expenditures or good will." To the extent that ShopLink's claim is predicated on Khmaladze misappropriating ShopLink's "software," the evidence is clear that ShopLink did not own any software, as the software was owned by AUM Code. Ex. F. ShopLink therefore has no standing to assert a claim based on misappropriation of AUM Code's property. *See Big Vision Priv. Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69, 70 (2d Cir. 2015) ("A claim will fail where a plaintiff cannot demonstrate 'the bad faith misappropriation of a commercial advantage which belonged exclusively to him.'").

In any event, even if the software did reflect ShopLink's "labor, skills expenditures or good will," ShopLink did not produce any evidence that Khmaladze or Tatintsian ever used any of ShopLink's software or any other confidential business information in a competing venture. While Khmaladze testified that he joined a business with Tatintsian (Agnicore), Khmaladze testified that a system he later developed at Agnicore, Monetize Your Influence, involved ▮

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████. ShopLink's failure to produce evidence of Tatintsian's or Khmaladze's use of any

ShopLink technology or confidential information defeats its claim. *See e.g.*, *Big Vision*, 610 F.

App'x at 71 (upholding summary judgment on unfair competition claim where plaintiff "failed to

adduce evidence that [defendant] actually utilized any of [defendant's] confidential information

at all"); *eCommission Sols., LLC v. CTS Holdings, Inc*., No. 15-CV-2671 (KBF), 2018 WL

2078816, at *6 (S.D.N.Y. May 1, 2018), *aff'd*, No. 18-1672-CV, 2019 WL 2261457 (2d Cir.

May 28, 2019) (rejecting unfair competition claim where "the cited evidence gives rise to

nothing more than pure speculation as to whether any of ECS's resulting services made use of

CTS's proprietary information.")

Additionally, ShopLink has not established any damages from any alleged unfair

competition.  Under New York law, the damages for unfair competition are limited to "the loss

of profits sustained by reason of the improper conduct," and "[t]he offending party's conduct

must be a substantial factor in causing the loss." *eCommission Sols.,* 2018 WL 2078816, at *4;

*see also E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 449 (2018)

("damages in unfair competition cases should correspond to 'plaintiff's losses [that] were a

proximate result of defendants' conduct.'"). Here, ShopLink – a start-up company that has never

developed a marketable product and has never generated any revenue – could show no lost

profits. Courts routinely decline to award lost profits damages to new businesses with no proven

track records of profits, such as ShopLink. *See, e.g.*, *Spithogianis v. Haj-Darwish,* No.

07CIV.4609 P ACJCF, 2008 WL 82188, at *5 (S.D.N.Y. Jan. 7, 2008) (finding no damages to

new business because "any lost profits … would have been generated by a business that had not

progressed beyond the concept stage and did not have any assurance of future orders."); *Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.*, No. 95CIV.8450(AGS)(THK), 1998 WL 422482, at *6 (S.D.N.Y. July 22, 1998) (lost profit damages considered speculative and denied for new business that did not have any actual future orders from customers).

ShopLink has also not produced any evidence to show that any lost profits – to the extent that they could ever be established with reasonable certainty– were caused in substantial part by any unfair competition. Indeed, it is undisputed that Agnicore, through which Tatintsian and Khmaladze allegedly competed unfairly with ShopLink, also never produced a marketable product and also never generated any revenue. Ex. C, Khmaladze Depo. 253:3-254:9; 261:7-14. Since neither ShopLink nor Agnicore were ever in the marketplace, Agnicore could not have diverted any customers or profits from ShopLink by taking advantage of ShopLink's good will or competitive advantage – the essence of an unfair competition claim. *See Coca-Cola N. Am. v. Crawley Juice, Inc.,* No. 09 CV 3259 JG RML, 2011 WL 1882845, at *6 (E.D.N.Y. May 17, 2011) (quoting *Ruder & Finn Inc. v. Seaboard Sur. Co.,* 422 N.E.2d 518 (1981) ("misappropriation of another's commercial advantage is a cornerstone of the tort" of unfair competition."); *id*. at *7 (dismissing counterclaim for unfair competition where "Coca–Cola was never defendants' competitor"); *Hughes v. Design Look Inc*., 693 F. Supp. 1500, 1508 (S.D.N.Y. 1988) (dismissing unfair competition claim because plaintiffs, who had no products, had "no competing business or product good will upon which [defendant] can capitalize on").  ShopLink could therefore never establish a causal link between any lost profits and Tatintsian's actions.

ShopLink's utter failure to establish misappropriation from ShopLink, lost profits or causation dooms its unfair competition claim.

### D.  There is Insufficient Evidence to Support Conversion by Civil Conspiracy

ShopLink has claimed that Tatintsian engaged in conversion perpetrated by civil conspiracy by conspiring with Khmaladze to convert source code and software in which ShopLink had "certain rights."  To recover for conversion, ShopLink must prove: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009).  ShopLink's conversion claim fails as a matter of law for several reasons.

First, ShopLink has failed to establish that it owned, possessed or controlled the source code or any software.[9] The undisputed evidence shows that AUM Code and IT Adapter LLC were specifically established to own, possess and control the source code and software, separate and apart from ShopLink. *See* Ex. A, Vorotyntsev Depo. at 184:19-185:4. The APA further shows that all rights to the source code and software were transferred to AUM Code, and <u>not</u> to ShopLink. Ex. F. ShopLink's claim thus fails on the first element.

Khmaladze also did not exercise unauthorized dominion over the source code to the exclusion of ShopLink's rights. "Conversion occurs when a defendant exercises <u>unauthorized dominion</u> over personal property in interference with a plaintiff's legal title or superior right of possession." *LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997*) (emphasis added).* Because Khmaladze was the Chief Technology Officer and an owner of the company that owned the code,

---

[9] To the extent ShopLink's claim is based on any intangible rights in the source code:  1) such intangible rights have not been established by any competent evidence; and 2) a claim for conversion cannot be based on intangible rights. *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 630 (S.D.N.Y. 2014) ("it is well-settled" that "a claim for conversion does not lie for the withholding of indefinite, intangible, and incorporeal species of property.")

AUM Code (Ex. P at ¶¶ 50, 52), he was authorized to have dominion over it. Notably, since Khmaladze was a part owner of AUM Code, his claim to legal title and possession of the technology was also superior to that of ShopLink, which had no ownership interest in the code.

Even if ShopLink had any rights, Khmaladze did not interfere with them. The evidence establishes only that Khmaladze temporarily blocked Vorotyntsev's access to the source code to preserve a forensic copy in the event that it was needed in a criminal investigation, which was within his rights. Ex. C, Khmaladze Depo. 311:4–9. Khmaladze shortly thereafter returned a copy to Vorotyntsev, and ShopLink has not identified any changes to the source code. *See* Ex. B, Vorotyntsev Depo. at 98:20–22. Nor did the brief period during which the source code was inaccessible to Vorotyntsev meaningfully impair rights, if any, ShopLink may have held in the software. *See Rao v. Verde*, 222 A.D.2d 569, 570 (2d Dep't 1995) (claim of conversion would not lie where "defendants agreed to and arranged for the return of all medical records and patient lists"); *cf. Jamison Bus. Sys., Inc. v. Unique Software Support Corp.*, No. CV 02-4887 (ETB), 2005 WL 1262095, at *15 (E.D.N.Y. May 26, 2005) (claim of conversion would not lie where defendant merely took copy of code, while another copy remained with plaintiff).

Since ShopLink did not own, possess or control the source code, Khmaladze's actions in preserving the source code were authorized, Khmaladze's rights of ownership, possession and control over the source code were superior to ShopLink's, and because ShopLink has produced no evidence that its rights, if any, in the source code were impaired, the counterclaim for conversion fails as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Tatintsian respectfully requests that this Court grant his motion

for summary judgment on his securities fraud claim and ShopLink's counterclaims.


Dated: September 2, 2021

By: /s/ Kristen Santillo
Kristen Santillo, Esq.
Gelber & Santillo PLLC
347 West 36th Street, Suite 805
New York, NY 10018
Phone: 212-227-4743