May 07, 2025

Hon. Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Tatintsian v. Vorotyntsev, Case No. 1:16-cv-7203-GHW

Dear Judge Woods:

I write to bring to the Court's attention a pattern of deception and misconduct by Mr. Tatintsian and his counsel that constitutes fraud upon the Court and warrants immediate relief and sanctions. The evidence demonstrates that Mr. Tatintsian was never a genuine investor in ShopLink but rather pursued a calculated scheme to misappropriate ShopLink's technology through litigation, manipulated evidence, and coordinated action with Mr. Khmaladze, Mr. Zubchevich and their respective counsel.

**Recent Procedural Maneuvering Confirms Pattern of Misconduct**

I must first address Mr. Tatintsian's counsel's recent letter to the Court, which exemplifies precisely the pattern of misconduct I have described. Counsel now claims the secret recordings were produced on October 27, 2020, and therefore should not be considered "new evidence." This procedural deflection tactic merits particular attention for three reasons:

1. It tacitly acknowledges the existence and authenticity of the recordings while attempting to avoid their substantive implications through procedural technicalities.
2. The production allegedly occurred during the height of the COVID-19 pandemic, a period during which Shoplink was in the middle of switching legal representation, as Mr. Thomas was battling a very hard long form Covid and was unable to attend to his duties. At the same time, I was severely incapacitated by long Covid – physically, mentally, and emotionally – a fact known to opposing counsel. This calculated timing is consistent with the pattern of overwhelming force through weaponized litigation that I have described.
3. Most tellingly, counsel's argument essentially amounts to: "We disclosed our misconduct during a time when we knew you were unable to properly review it, and your failure to immediately identify our misconduct should now shield us from accountability for that very misconduct."

This is not legitimate advocacy but rather confirmation of the manipulative litigation strategy I have outlined. In a genuine commercial dispute, procedural rules serve to ensure fairness; in a sham litigation designed to misappropriate intellectual property and exhaust an opponent's resources, these same rules become weapons. The Court should recognize this latest deflection for what it is – further evidence of the abuse of process that has characterized these proceedings from the outset.

The argument that evidence of misconduct should be ignored because it was technically produced (albeit in a manner designed to ensure it would not be discovered) underscores the cynical approach to litigation that has pervaded this case. It is the legal equivalent of claiming: "Yes, we set the trap, but you should have seen it." Such reasoning cannot shield parties from accountability for substantive misconduct that goes to the heart of this Court's truth-finding function.

**The Orchestrated Litigation Strategy**

Evidence now confirms that Mr. Tatintsian's initial approach to ShopLink was not as a legitimate investor but as part of a coordinated plan to:

1. Identify vulnerabilities in ShopLink's corporate structure
2. Create manufactured "evidence" of securities fraud
3. Use litigation as a means to acquire ShopLink's proprietary technology
4. Establish a competing business (Agnicore) with Mr. Khmaladze while he remained employed by ShopLink

This is not mere speculation, but established facts. On September 8, 2016 – three days before Mr. Khmaladze resigned from ShopLink – Mr. Tatintsian, Mr. Khmaladze, and Mr. Zubchevich, through Mr. Zubchevich's counsel, Mr. Frank Hariton (who, together with Mr. Zubchevich, upon Mr. Tatintsian's directions, was deeply involved in Shoplink corporate governance clean up from around June 2016) formed Agnicore. This crucial timeline was concealed from the Court during the summary judgment proceedings.

The centerpiece of this strategy involves a series of secretly recorded closing meetings, at Pryor Cashman's offices, culminating with April 8, 2016 closing meeting, which Mr. Tatintsian has misrepresented to create the false impression of securities fraud.
Additionally, newly discovered evidence confirms that Mr. Tatintsian previously invested in ShopLink in September 2015, personally reviewed the corporate governance documents, and received a same-day refund on October 9, 2015 – facts directly contradicting his claim of reasonable reliance regarding corporate governance in 2016.

**Evidence of Entrapment and Manipulation**

The evidence demonstrates that Mr. Tatintsian deliberately set up an entrapment scenario during the April 8, 2016 closing meeting by:

1. Secretly recording the meeting without disclosure to participants
2. Deliberately covering the microphone at key moments to obscure my statements
3. Pressuring Pryor Cashman's attorney (who had no prior knowledge of the patent matters) to insert language about patent ownership into the subscription agreement
4. Subsequently misrepresenting the context and content of this recording to create the appearance of misrepresentation

**The True Context of Patent Assignment**

The Court's current understanding of the patent assignment issue appears to be based on Mr. Tatintsian's manipulated presentation of the facts:

1. I clearly stated during the recorded meeting that the patent had been assigned to ShopLink "almost a year ago" (around October 2015)
2. This statement was factually correct - Mr. Khmaladze executed patent assignment forms on October 15, 2015, just six days after Mr. Tatintsian canceled his original investment and instructed the total corporate governance clean up
3. There was an inadvertent clerical error in the patent application number on the assignment form prepared by ShopLink's volunteer general counsel, Ed Zahos
4. Prior to the closing on April 8, 2016, I showed Mr. Tatintsian an email from Mr. Khmaladze, with the signed version of the patent assignment document, which he copied and was aware contained a mistake in the application number
5. The recording reveals that I explicitly stated multiple times that Mr. Tatintsian would have two weeks to wire funds, and if the patent assignment was not confirmed to his satisfaction, he would not be obligated to send the money

**Rescission Requests**

Mr. Tatintsian has falsely testified under oath that I refused his requests to rescind the investment. The documented evidence shows precisely the opposite:

1. Beginning in July 2016, I suggested on at least five separate occasions that Mr. Tatintsian would be better served by rescinding the transaction and receiving a refund

2. Mr. Tatintsian repeatedly refused rescission and instructed Pryor Cashman to confirm that ShopLink had no right to cancel his investment by returning his money
3. In August 2016, Mr. Tatintsian sent an email stating that "he is not like other investors, and MV can not simply return his money and cancel the investment" and that "it may work with other investors, but it will not work with Me"
4. Mr. Tatintsian subsequently testified under oath during depositions that he requested rescission and that ShopLink refused - a direct contradiction of the documented evidence

**Mr. Khmaladze's Standing Agreement with ShopLink**

The Court should be made aware that Mr. Khmaladze had a standing agreement with ShopLink regarding the technology and intellectual property:

1. Mr. Khmaladze expressly confirmed in a documented Skype message that he "agree[d] to 4 year vesting" for his equity interest in AumCode
2. Mr. Khmaladze understood and acknowledged that all technology was to be owned by ShopLink through the corporate structure, which was being prepared by, amongst others, Mr. Ed Zahos and Pillsbury law firm
3. Mr. Khmaladze's subsequent lawsuit against me was fabricated as part of this coordinated scheme, as evidenced by:
    - The formation of Agnicore on September 8, 2016 (three days before Mr. Khmaladze resigned from ShopLink)
    - Mr. Tatintsian's travel to Ohio to meet with Mr. Khmaladze on September 6-9, 2016
    - The coordinated timing of the two lawsuits (filed just weeks apart)

The deposition testimony from Mr. Khmaladze, when examined in its complete context rather than through selective excerpts, confirms that he was in fact building Shoplink, not R7/APEX (Shoplink repository codenames) as was alleged in his complaint, and all these facts are incontrovertible.

**The True Nature of the "Patent Misrepresentation"**

What has been characterized, as a patent misrepresentation by me was, in fact, a deliberate misrepresentation to the Court by Mr. Tatintsian:

1. The selective editing and presentation of the secret recording created the appearance of misrepresentation where none existed
2. The full recording demonstrates that I clearly stated the status of the patent assignment and provided Mr. Tatintsian with a two-week period to verify this information before completing his investment

3. Mr. Tatintsian, upon discovering the clerical error in the patent application number, saw an opportunity to manufacture a securities fraud claim rather than simply requesting correction of the error

**The Broader Implications**

Your Honor once referred to a "parade of proud lawyers" in these proceedings. I respectfully submit that this parade has been orchestrated as part of a strategy to:

1. Demonetize ShopLink and myself through protracted litigation
2. Obstruct proper discovery to prevent the truth from emerging
3. Misappropriate ShopLink's technology through litigation rather than legitimate business practices
4. Make a mockery of the judicial process

**Request for Relief**

In light of these serious matters, I respectfully request that the Court:

1. Review the complete, unedited recordings, specifically of the April 8, 2016 meeting, particularly focusing on my statements about the two-week period for confirming the patent assignment
2. Strike Mr. Tatintsian's deposition testimony regarding rescission requests as demonstrably false
3. Impose appropriate sanctions for what appears to be a deliberate fraud upon the Court
4. Reconsider the Court's prior ruling regarding the patent misrepresentation claim in light of the complete context revealed by the recording and documentary evidence
5. Order an evidentiary hearing regarding the coordination between Mr. Tatintsian, Mr. Khmaladze, and Mr. Zubchevich prior to the filing of their respective lawsuits
6. Grant leave to file a motion to dismiss the remaining claims based on these revelations
7. Consider referral to appropriate authorities for investigation of potential litigation misconduct


In light of these serious matters, I respectfully request that the Court:

1. Review the complete, unedited recording of the April 8, 2016 meeting, particularly focusing on my statements about the two-week period for confirming the patent assignment
2. Strike Mr. Tatintsian's deposition testimony regarding rescission requests as demonstrably false

3. Impose appropriate sanctions for what appears to be a deliberate fraud upon the Court
4. Reconsider the Court's prior ruling regarding the patent misrepresentation claim in light of the complete context revealed by the recording and documentary evidence
5. Order an evidentiary hearing regarding the coordination between Mr. Tatintsian, Mr. Khmaladze, Mr. Zubchevich and their counsel prior to the filing of their respective lawsuits
6. Grant leave to file a motion to dismiss the remaining claims based on these revelations
7. Consider referral to appropriate authorities for investigation of potential litigation misconduct

I sincerely appreciate the Court's consideration of these serious matters, which strike at the heart of the allegations in this case and the integrity of these proceedings.

Respectfully submitted,

Mikhail Vorotyntsev Pro Se

cc: All counsel of record

Enclosures:

1. Skype message from Mr. Khmaladze confirming "4 year vesting" agreement
2. Emails from Mr. Tatintsian dated August 2016 refusing rescission and demanding confirmation that Shoplink has NO rescission rights
3. Timeline of Agnicore formation and related events