UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X
GARY TATINTSIAN, et al.,
Plaintiff, Counterclaim-Defendant,

-against-                                              Case No. 1:16-cv-7203-GHW

MIKHAIL VOROTYNTSEV, et al.,
Defendants, Counterclaim-Plaintiff, :


--------------------------------------------X
DMITRIY KHMALADZE and IT ADAPTER
CORPORATION INC.,
Plaintiffs, Counterclaim-Defendants,

-against-                                              Case No. 1:16-cv-8029-GHW

MIKHAIL VOROTYNTSEV, et al.,
Defendants, Counterclaim-Plaintiffs. :
--------------------------------------------X

# Motion in Limine to Exclude Evidence and Deem Facts Established in *Tatintsian v. Vorotyntsev*

## I. Introduction

This motion in limine is respectfully submitted to preclude Plaintiff Gary Tatintsian ("GT") from introducing evidence at trial, regarding his alleged reliance and securities fraud claim, and the alleged patent misrepresentation by Mikhail Vorotyntsev ("MV"). It also seeks to have certain facts deemed established due to GT's, Dmitriy Khlamadze's ("DK") and Younis Zubchevich's ("YZ") actions. The basis for this exclusion and the deeming of facts rests on GT and his counsel's repeated misrepresentation of facts to this Court, their pervasive discovery misconduct, and the systematic nature of the fraudulent scheme orchestrated by GT, YZ, and DK, along with their associated counsel, across two interconnected cases: *Tatintsian v. Vorotyntsev*, 1:16-cv-7203-GHW (the "GT Case"), and *Khmaladze v. Vorotyntsev*, 1:16-cv-8029-GHW (the "DK Case") and GT's NYSSC Pryor Cashman proceedings.

## A. Case Background (1:16-cv-7203-GHW) and Interconnected Litigation (1:16-cv-8029-GHW)

The GT Case involves GT's claims of securities fraud against MV, along with various counterclaims by MV and ShopLink, Inc. against GT and DK.[1] The DK Case involves claims by DK against MV and ShopLink, primarily seeking rescission of contracts and intellectual property ownership.[1]
The interconnectedness of these cases is crucial, as the alleged misconduct in one directly impacts the factual and legal landscape of the other, demonstrating a broader pattern of abuse of process.
The presence of two closely related cases involving the same key players (GT, MV, DK, YZ) and overlapping subject matter (ShopLink's technology, investments, corporate governance) indicates that the alleged misconduct is not isolated but part of a larger, coordinated fraudulent scheme. A review of the factual record reveals coordinated actions, such as the formation of Agnicore, proven patent theft, sharing of legal analysis, and witness tampering, that span across the factual narratives of both cases.[1]
This overlap demonstrates that the alleged fraud and misconduct in one case directly influences and is intertwined with the other, pointing to a single, overarching scheme rather than separate, unrelated acts. Consequently, the Court should view the misconduct as a systemic attempt to pervert justice across the entire litigation landscape.

## B. Overview of Grounds for Exclusion and Deeming Facts Established

The grounds for this motion include the irrelevance and prejudicial nature of GT's proposed evidence, prior judicial findings, pervasive discovery misconduct, and the doctrine of judicial estoppel.

# II. Legal Standard for Motions in Limine and Sanctions for Misconduct

## A. Authority to Exclude Evidence (Relevance, Prejudice, Hearsay, Prior Rulings)

The Court possesses inherent authority to manage its docket and ensure the fair and efficient administration of justice, including the power to rule on motions in limine to exclude evidence before trial. Evidence may be excluded if it is irrelevant (Fed. R. Evid. 401), unduly prejudicial (Fed. R. Evid. 403), constitutes inadmissible hearsay (Fed. R. Evid. 802), or has been improperly procured.
Prior judicial findings regarding the inadmissibility of evidence due to hearsay or lack of personal knowledge are binding and reinforce the need for exclusion.[1]

## B. Authority to Impose Sanctions for Discovery Misconduct (Fed. R. Civ. P. 37)

The Court has broad discretion under Fed. R. Civ. P. 37 to impose sanctions for discovery misconduct, including failing to make disclosures, respond to discovery, or obey a discovery order. Sanctions may include prohibiting the disobedient party from introducing designated matters in evidence, striking pleadings, or dismissing the action.

The Court's prior findings on inadmissible hearsay and lack of competent evidence in the August 6, 2024 Orders [1] establish a clear precedent for excluding GT's evidence. In the GT case, the August 6, 2024 Order explicitly found that GT's tortious interference counterclaim failed partly because MV's evidence was "inadmissible hearsay" or "not based on personal knowledge".[1] Similarly, in the DK case, the court made findings regarding the lack of competent evidence and adherence to Rule 56.1.[1]

GT and his counsel demonstrate a pattern of attempting to introduce inadmissible evidence or failing to provide proper disclosures, this is not merely an evidentiary issue but potentially a discovery misconduct issue under Rule 37. The combination of established evidentiary deficiencies and alleged discovery abuses provides a stronger basis for exclusion and sanctions, as it demonstrates a pattern of disregard for procedural rules and the truth-seeking process.

## C. Doctrine of Judicial Estoppel and Adverse Inferences

Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or an earlier proceeding, thereby protecting the integrity of the judicial process. An adverse inference may be drawn against a party who destroys or conceals evidence, or engages in other misconduct, where the evidence supports a finding that the party acted with a culpable state of mind.

The principles underlying "fraud on the court" (Rule 60(d)(3)) and Rule 60(b)(3) (fraud, misrepresentation, misconduct) are not limited to post-judgment relief, but logically extend to pre-trial evidentiary exclusions. If evidence is the product of a fraudulent scheme or pervasive misconduct, its admission would itself constitute a continuation of the "fraud on the court." The stringent standards for "fraud on the court" and Rule 60(b)(3) relief emphasize that such fraud "corrupts the judicial process itself" and "undermines the Court's ability to render a just decision".[1]

If a party's entire litigation strategy, including the evidence they seek to present, is tainted by systematic perjury, obstruction, and manipulation, allowing such evidence to be presented at trial would be tantamount to the Court enabling the continuation of the fraud. Therefore, the Court's inherent power to protect its integrity, as articulated in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*[2], should be exercised to prevent the introduction of such evidence before judgment. This serves as a preventative measure to maintain the sanctity of the proceedings.

# III. Argument I: Evidence Regarding GT's Reliance and Securities Fraud Claim Must Be Excluded

## A. GT's Prior Knowledge and Actions Negate Any Claim of Reliance

GT's securities fraud claim hinges on his alleged reliance on MV's misrepresentations regarding the use of investment funds and ShopLink's IP ownership. However, the factual record, including GT's own actions and admissions, during sworn deposition testimony, demonstrates that any claim of reliance is negated by his extensive prior knowledge and active participation in the very issues he now claims to have been misled about.

### 1. GT's Awareness of Corporate Governance Deficiencies and MV's Alleged Spending Prior to Investment

In October 2015, GT initially wired $250,000 to ShopLink, but subsequently decided against the investment after a closing with Pryor Cashman lawyers revealed significant corporate governance issues, including the absence of a minute book and corporate records. GT reacted strongly to this discovery.[1] Crucially, after the $250,000 was refunded, GT instructed MV and Pryor Cashman, then Shopink corporate attorneys, to "fix everything" and stated his intention to reinvest.[1] This sequence of events indicates full disclosure and GT's conscious decision to proceed despite initial concerns.

Furthermore, in October 2015, ShopLink Inc. was formally "not in good standing" in Delaware due to "outstanding taxes owed" totaling $195,849.80 and an unfiled 2014 annual report.[1] Michael Campoli, a lawyer involved, advised that the Subscription Agreement's representation of good standing would need to be modified if and that GT "doesn't care about these issues or is comfortable with them being cleaned up post-closing."[1] This demonstrates that GT, confirmed on the record by Shoplink's then counsel, was aware of these critical corporate deficiencies.

In February/March 2016, GT reaffirmed his commitment to MV and Pryor Cashman, stating he was investing up to $1.5 million into ShopLink and confirming he would buy all outstanding investor promissory notes.[1] This continued commitment, despite his prior knowledge, further undermines any assertion of reliance on MV's alleged misrepresentations.
In June 2016, GT expressed anger about the fact that he agreed to pay for all legal and closing costs, by signing an extension letter on April 29th, 2016, and actively demanded corporate governance cleanup, appointing YZ as his operative in charge of the corporate governance clean-up, because, purportedly, he wanted the company to succeed.[1] This further confirms his awareness of the issues and his willingness to actively participate in their resolution, on the surface, while actively and covertly sabotaging the clean-up. GT's documented awareness of ShopLink's corporate governance issues and MV's expenditures, on behalf of Shoplink, as completely appropriate and legitimate business development and operating expenses, *before* his primary investment, coupled with his active engagement in attempts to seemingly rectify, while sabotaging these issues, fundamentally contradicts any later claim of reliance on MV's alleged misrepresentations.

His actions demonstrate that he was not a passive, uninformed investor but an active participant fully aware of the company's internal issues. His subsequent investment and demands were made with this knowledge, negating any argument that he relied on misrepresentations about these specific facts.

| Date | Event | Source | Significance to Reliance |
| --- | --- | --- | --- |
| October 2015 | GT's initial $250k investment refunded due to discovery of missing corporate records/minute book. MV provides "full disclosure" to GT. ShopLink found "not in good standing" with outstanding taxes. | 1 | Demonstrates GT's direct, early knowledge of corporate deficiencies. |
| July 2016 | MV suggests rescission. GT "forcefully demands" no rescission right in subscription agreement. | 1 | Shows GT's active role in shaping the investment terms against his own exit, inconsistent with a defrauded investor. |
| August 23, 2016 | GT explicitly refuses buyout: "it's not gone happen. Not with me!!!" Threatens: "I can efford much more to sped to fighting u then you all!!" | 1 | Reinforces GT's strategic intent to stay invested and exert control, rather than seeking redress for fraud. |

## 2. GT's Forceful Demand for No Rescission Rights in Subscription Agreement

In July 2016, MV, feeling discomfort with GT's behavior, suggested rescinding the transaction and returning GT's money. However, GT "talked Mikhail out of it" and then "forcefully demanded that the lawyers at Pryor Cashman confirm there was NO provision in the subscription document that allowed Shoplink to unilaterally rescind the transaction, at will".[1] Email exchanges, spanning from July 20, 2016 to August 27, 2016, confirm GT's explicit multiple demands for no rescission rights in the subscription agreement, along with a refusal to be bought out of his investment.[1]

### 3. GT's Express Refusal to Be Bought Out of Shares

On August 23, 2016, in an email to DK, YZ, and MV, GT explicitly stated: "If u invite the investor and recieving money from him do not threaten him of buyback his stock- it's not gone happen. Not with me!!!".[1] In the same email, GT issued a direct threat: "I can efford much more to sped to fighting u then you all!!".[1] This communication indicates a hostile takeover mentality and a refusal to accept a peaceful resolution.[1]

GT's forceful insistence on removing rescission rights and his explicit refusal to be bought out of his shares reveal a strategic intent to maintain his position and control within ShopLink, rather than a genuine belief in the company based on MV's representations. This behavior is inconsistent with an investor who feels defrauded and seeks to exit. If an investor genuinely believes they are being defrauded, they would undoubtedly and typically seek to rescind their investment and recover funds. However, the record demonstrates that when MV actually *suggested* rescinding the transaction, GT was persistent in his pursuit of no rescission rights for Shoplink.[1]

This aggressive stance against rescission or buyout, coupled with threats of prolonged litigation [1], indicates GT's strategic objective was not to recover a defrauded investment but to maintain leverage and control, potentially for a hostile takeover.[1] This active resistance to exiting the investment, even when offered, directly undermines any claim that he was relying on MV's representations in a way that would lead to a securities fraud claim. His actions demonstrate a calculated, adversarial intent.

## B. Prior Judicial Findings Affirming Lack of Reliance

### 1. Court's August 6, 2024 Order in *Tatintsian v. Vorotyntsev* (1:16-cv-7203-GHW)

The Court's August 6, 2024 Order in *Tatintsian v. Vorotyntsev* (1:16-cv-7203-GHW), while adversarial to MV, had already denied GT summary judgment on his securities fraud claim, specifically finding that he "failed to present evidence that he relied on Mr. Vorotyntsev's misrepresentations about Shoplink or that he suffered an economic loss".[1] The Order noted that while GT was aware of the Investment Representations, he "has presented no evidence that he purchased the shares in reliance on those representations".[1] The Court explicitly rejected the "Affiliated Ute Presumption" for reliance, stating that the Investment Representations were "affirmative misrepresentations on which it is possible for Plaintiff to prove he relied".[1]

The Court's explicit finding in the August 6, 2024 Order that GT failed to present evidence of reliance or economic loss for his securities fraud claim, because **it does not exist** and should preclude him from re-litigating these elements at trial. This is a direct factual finding on a core element of his claim. Allowing GT to present evidence on reliance at trial, after failing to do so at summary judgment, would be an inefficient use of judicial resources and undermine the finality of the Court's prior rulings. This falls under principles of judicial estoppel or issue preclusion, where a party is prevented from asserting a position inconsistent with one previously determined by the court.

# IV. Argument II: Evidence Regarding Patent Misrepresentation by Mikhail Vorotyntsev Must Be Excluded, and Certain Facts Deemed Established

The core of GT's securities fraud claim includes allegations of patent misrepresentation by MV. However, the record demonstrates that GT and his co-conspirators, DK and YZ, engaged in systematic misconduct, including patent inventorship theft, perjury, and discovery abuses, which should preclude GT from presenting evidence on this matter and lead to certain facts being deemed established.

MV's intent regarding patent inventorship dates back to early 2013 when he met DK. MV discussed his vision for ShopLink with DK and asked him to sign a Non-Disclosure Agreement (NDA).[1] They agreed that MV would raise funds, and DK would receive a salary and equity stake.[1] MV planned to form Aum Code LLC as a wholly owned subsidiary of ShopLink to acquire DK's technology, with DK receiving a 20% equity interest in Aum Code, and later 40%.[1] A provisional patent for ShopLink, with MV as a sole inventor, was filed in October 2012 by Eric Hellige.[1] In late 2013, DK was concerned about listing multiple people on the patent, suggesting only his and MV's names should be included.[1] This highlights DK's early involvement and awareness of the patent process and inventorship.

The patent application, US 20170083960A1, lists Dmitriy Khmaladze as the inventor.[1] However, the factual evidence demonstrated in "Fraud Analysis" brief clearly shows that on December 1, 2016, DK filed a patent extension application on behalf of Agnicore LLC that "fraudulently removed Mikhail Vorotyntsev ("MV") as the original inventor from ShopLink's patent applications" and simultaneously transferred ShopLink's intellectual property rights to Agnicore.[1]
This is characterized as "classic intellectual property misappropriation".[1] This documented theft occurred despite DK's knowledge that MV was the true original inventor, as evidenced by pre-existing patent applications listing MV as the original inventor.[1]

The formation of Agnicore LLC by Frank Hariton on September 8, 2016, on behalf of GT, DK, and YZ, just three days before DK's resignation from ShopLink, suggests premeditation.[1] This was followed by GT forwarding a "legal analysis" from YZ/FH to DK on September 11, 2016, discussing "how to back out of the APA".[1]
The "DK Fraud Analysis" brief further proves that DK engaged in "R7 perjury" and "Rule 56.1 perjury." DK falsely swore in his complaint that "R7" was his original creation, a statement contradicted by his own deposition testimony and internal ShopLink documentation, which explicitly described "R7/ShopLink" as "proprietary (closed source) ShopLink code".[1]
Additionally, in his Rule 56.1 Statement, DK falsely swore that "No evidence has been produced by any party showing that Defendants' intellectual property was misappropriated by Khmaladze".[1] This statement was demonstrably false given his own patent filing application, evidencing outright theft of Shoplink's IP.[1] These actions demonstrate a deliberate effort to mislead the Court on a complex technical matter, corrupting the judicial process.[1]

The irrefutable evidence of witness tampering and discovery misconduct by GT and YZ further

underscores the systematic nature of the fraud. YZ actively solicited individuals like Ken Lanyon and others, to join litigation against MV, spreading damaging narratives and suggesting potential criminal investigations against MV.[1] YZ positioned himself as an insider willing to provide incriminating information, and his actions are characterized as "systematic witness tampering".[1]

GT's counsel is directly implicated, with allegations that they were "pre-positioned to represent conspiracy members," indicating a coordinated legal strategy and potential abuse of attorney-client privilege to shield conspiracy communications.[1] Furthermore, GT's counsel failed to provide responsive disclosures, forcing MV to rely on DK's discovery.[1] This pattern of misconduct, including the withholding of damaging emails from GT to DK [1], and subsequent refusals by GT to produce, and ultimate non-production of, bank records [1], demonstrates a concerted effort to obstruct justice and manipulate the legal process.

Given the pervasive nature of this proven fraud on the court, it is imperative that evidence regarding MV's patent statements be excluded, as it is tainted by the systematic deception. Furthermore, due to the actions of GT and YZ in orchestrating and facilitating this misconduct, including the patent inventorship theft and discovery abuses, certain assertions by MV should be deemed established facts. This is necessary to preserve the integrity of the judicial process and prevent the Court from being further misled by a fabricated narrative.

# V. Conclusion

The evidence presented demonstrates a systematic pattern of misrepresentation, discovery misconduct, and manipulation orchestrated by GT, YZ, and DK across two interconnected legal actions and GT's action against Pryor Cashman, proceedings in NYSSC.

GT's claims of reliance and securities fraud are fundamentally undermined by his extensive prior knowledge of ShopLink's corporate deficiencies, his active participation in shaping investment terms, and his explicit refusal to be bought out of his shares. The Court's prior finding of GT's lack of reliance further reinforces the need to preclude re-litigation of this issue.

Moreover, the proven patent inventorship theft by DK, coupled with his perjured statements and the coordinated efforts of GT and YZ to obstruct discovery and tamper with witnesses, constitutes a profound "fraud on the court." Allowing evidence tainted by such pervasive misconduct would compromise the integrity of these proceedings. Therefore, to uphold the sanctity of the federal judiciary and ensure a fair adjudication, it is respectfully requested that the Court:

1. Preclude GT from presenting any evidence regarding his alleged reliance and securities fraud claim.
2. Preclude GT from presenting any evidence regarding the alleged patent misrepresentation by Mikhail Vorotyntsev.
3. Deem all assertions by MV established facts due to the pervasive discovery misconduct and actions of GT and YZ, including:

- All MV's assertions for which GT failed to provide responsive disclosures or bank records must be tried as established facts.
- YZ's default is a judicial admission of MV's entire assertions and pleadings, including YZ's text message on August 31, 2016, stating he is "not clean" and that GT is "on the war path" and "cannot be stopped."

The systematic nature of this misconduct threatens not only the parties to these proceedings but the integrity of the federal judicial system itself. Only immediate and comprehensive action can remedy the corruption that has infected these proceedings and prevent further harm.

Most respectfully submitted,


**MIKHAIL VOROTYNTSEV**
*Pro Se*
Founder, ShopLink Inc.

---

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing letter was served upon all parties of record via the Court's ECF system and/or by email on this 23rd day of June, 2025.

/s/ Mikhail Vorotyntsev
**MIKHAIL VOROTYNTSEV**


**To be provided for reference:**

1. MVSL Case in Chief Exhibit List