UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
GARY TATINTSIAN, et al.,
Plaintiff, Counterclaim-Defendant,

-against-                                              Case No. 1:16-cv-7203-GHW

MIKHAIL VOROTYNTSEV, et al.,
Defendants, Counterclaim-Plaintiff, :
-------------------------------------------X
DMITRIY KHMALADZE and IT ADAPTER
CORPORATION INC.,
Plaintiffs, Counterclaim-Defendants,

-against-                                              Case No. 1:16-cv-8029-GHW

MIKHAIL VOROTYNTSEV, et al.,
Defendants, Counterclaim-Plaintiffs. :
-------------------------------------------X


**Factual Legal Analysis: The Systematic Perjury and Intellectual Property Fraud Perpetrated Upon the United States District Court for the Southern District of New York (Case No. 1:16-cv-8029-GHW)**


# I. Executive Summary


This report is submitted as an Order to Show Cause, per the Court's most recent order, and as a critical addendum to the motion(s) in Limine, and, for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(3) and (6), as filed and amended, by Mikhail Vorotyntsev and ShopLink Inc. (collectively, "ShopLink Defendants") in the United States District Court for the Southern District of New York. The motions will seek to vacate judgments obtained through, what is now demonstrably systematic perjury and extensive intellectual property fraud, committed by Dmitriy Khmaladze ("DK") over a period spanning nine years of litigation.[1] The findings presented herein reveal a deliberate and coordinated scheme designed to subvert the judicial process itself.

The evidence meticulously compiled and analyzed in this report establishes a pattern of profound deception. This pattern includes DK's false sworn statements regarding the ownership of the "R7" software, his fraudulent removal of the true inventor from patent applications, his perjured denials of

intellectual property misappropriation in Rule 56.1 submissions, and a highly significant admission of the lawsuit's baselessness, made by his own counsel during settlement negotiations.[1] These actions transcend mere factual disputes or litigation tactics; they represent a direct assault on the integrity of the court, constituting a clear instance of "fraud on the court" that fundamentally undermined the ability of this tribunal to render a just decision.[1]

The compelling and scientifically verifiable nature of the evidence demands immediate judicial intervention. Relief under Federal Rule of Civil Procedure 60(b)(3) and (6) is not merely warranted but is essential to uphold the sanctity of federal judicial proceedings and public confidence in the courts.[1] Furthermore, the systematic and pre-meditated character of this deception, indicative of a coordinated criminal enterprise, necessitates a criminal referral to the United States Attorney for appropriate prosecution.[1] The integrity of the federal judiciary requires nothing less than the vacation of all judgments obtained through this protracted fraud and the pursuit of accountability for those who corrupted the legal process.

## II. Introduction: The Imperative for Judicial Integrity and Scientific Truth

### Context of the Motion for Relief from Judgment

The present submission serves as an addendum to the ShopLink Defendants' motion for relief from judgment, to be initiated under Federal Rule of Civil Procedure 60(b)(3) and 60(b)(6). This motion will seek to set aside prior judgments in Case No. 1:16-cv-8029-GHW, arguing that these judgments were procured through a sustained and deliberate campaign of fraud perpetrated by Dmitriy Khmaladze. The court's inherent authority to remedy such fundamental abuses of its process, particularly in instances of "fraud on the court," is also invoked.[1] The gravity of the allegations, which describe a systematic subversion of truth throughout the litigation, underscores the critical need for this extraordinary relief.

## The Critical Role of Truth, Verifiable Facts, and Scientific Integrity in Judicial Proceedings

The bedrock of any fair and impartial judicial system rests upon the veracity of facts presented and the reliability of information, particularly when such information purports to be scientific or technical in nature. Courts depend on the accuracy of sworn statements and the scientific validity of expert testimony to make informed decisions and apply the law correctly.[2] This reliance forms a foundational principle of due process and ensures equitable adjudication.

When a litigant intentionally introduces false sworn statements into the judicial record, especially concerning complex technical matters, fundamental factual errors are embedded into the very fabric of the proceedings.[1] This deliberate act directly impedes the court's capacity to understand the true nature of the dispute and to apply legal principles accurately. Such conduct transforms what might otherwise be a dispute between parties into a direct assault on the court's impartial function.[1] The doctrine of "fraud on

the court" exists precisely for these situations, where a party's knowing falsehoods undermine the court's ability to render a just decision and corrupt the judicial process itself.[1] This extends beyond a private wrong against an opposing party; it constitutes a public wrong against the judicial system, demanding robust intervention to protect the system's integrity and public confidence. The court's ability to maintain its role as an impartial arbiter is directly threatened when one party systematically manufactures a false factual narrative.

## Statement of the Report's Purpose

This report and Order to Show Cause aims to provide a meticulously detailed and scientifically verified analysis of DK's alleged fraudulent conduct. It will demonstrate how his actions, particularly his technical misrepresentations, constitute a form of "technical fraud" that fundamentally corrupted the judicial process. By presenting a rigorous examination of the evidence and its implications, this report seeks to establish the compelling basis for the extraordinary relief sought by the ShopLink Defendants.

# III. Factual Background: The Pillars of Perjury and Intellectual Property Theft

The evidence presented reveals a multi-faceted and coordinated scheme of deception orchestrated by Dmitriy Khmaladze, impacting core aspects of the litigation and the underlying intellectual property.

## A. The R7 Software Ownership Fraud

A central pillar of DK's initial claims rested upon his sworn assertion of ownership over a software program he termed "R7." On October 13, 2016, DK filed his complaint, solemnly swearing under penalty of perjury in Paragraph 29 that "In 2014, Dmitriy began work on a software program called 'R7,' which was based on Dmitriy's software architecture ideas, and which was intended to support the business concept of monetizing social-network links".[1] This statement was not a peripheral detail; it formed the very foundation for "all of DK's claims for rescission, declaratory relief, and intellectual property ownership".[1] The entire premise of his lawsuit hinged on this alleged independent creation.

However, this sworn statement is directly and unequivocally contradicted by DK's own subsequent admissions and contemporaneous internal documentation. During his deposition, DK admitted that "R7" was merely a codename for ShopLink technology, specifically acknowledging it as "the name of the code asset" for ShopLink source code residing in the company's repository.[1] He further conceded that he created demonstrations and links for ShopLink using this "code base connected to R7".[1] These admissions, made under oath, directly undermine the veracity of his initial complaint.

Compounding these admissions, internal ShopLink documentation authored by DK himself provides irrefutable evidence of the software's true nature. The "September 4, 2015 ShopLink Developer Start Guide," a document penned by DK, explicitly describes "R7/ShopLink" as "proprietary (closed source) ShopLink code" built on the "ShopLink ecosystem".[1] Further Project Overview Documentation, also

generated by DK, reiterates that "R7/ShopLink is a proprietary (closed source) ShopLink code. It is where the business logic of Shop Link system resides".[1] Consistent with these internal records, ShopLink wireframes and other technical documentation uniformly refer to "SL system (R7 code)" as ShopLink's proprietary system, not an independent creation by DK.[1]

The confluence of DK's own deposition admissions and the contemporaneous internal documentation he authored unequivocally demonstrates that R7 was an integral, proprietary component of ShopLink's technology, not an independent creation by DK. DK's assertion of R7 as his original, independently created software was a technical claim that required specialized knowledge to evaluate.[1] As the Chief Technology Officer, DK was the subject matter expert responsible for developing ShopLink's proprietary e-commerce platform and related software systems.[1] His misrepresentation, therefore, constitutes a deliberate technical falsehood from an insider with presumed authority on the subject, designed to mislead the court on a complex technical matter. The court would naturally rely on such a sworn statement from a technical insider as a foundational fact. This deliberate technical falsehood corrupted the court's understanding of the core intellectual property at issue, which was central to DK's claims for rescission and intellectual property ownership.[1] This is not merely a factual dispute but a calculated technical misrepresentation intended to deceive the court.

## B. The Patent Inventorship Theft

Beyond the R7 software ownership fraud, DK engaged in a blatant act of intellectual property misappropriation involving ShopLink's patent applications. On December 1, 2016, DK filed a patent extension application on behalf of Agnicore LLC that fraudulently removed Mikhail Vorotyntsev ("MV") as the original inventor from ShopLink's patent applications.[1] Simultaneously, this filing transferred ShopLink's intellectual property rights to Agnicore.[1] This action is unequivocally characterized as "classic intellectual property misappropriation—the unlawful taking of another's intellectual property rights".[1] This theft occurred despite DK's clear knowledge that MV was the true original inventor, as evidenced by pre-existing patent applications listing MV as a co-inventor, filed in 2013 and 2014.[1]

This patent theft was not an isolated incident but a critical component of a larger, coordinated scheme to transfer all of ShopLink's intellectual property to Agnicore, thereby enabling a concerted effort to commercialize ShopLink's technology under a new entity.[1] The precise chronology of these events reveals a systematic and pre-meditated conspiracy:

| Date | Event | Significance |
|---|---|---|
| August 23, 2016 | Gary Tatintsian ("GT") sends explicit threat email to DK, Younis Zubchevich ("YZ"), and MV. | Indicates intent to aggressively pursue control/assets.[1] |

| September 1, 2016 | YZ sends coordination email to DK outlining GT's takeover plan, admitting DK's "contractual entitlement to 40% of Aum Code has not been perfected." | Reveals pre-planning and contradiction of later "no contract" claims. [1] |
|---|---|---|
| September 6-9, 2016 | GT meets with DK in person in Ohio. | Confirms direct, in-person coordination. [1] |
| September 8, 2016 | Agnicore LLC is formed by Frank Hariton on behalf of GT, DK, and YZ. | Creation of the new entity, just three days before DK's resignation, highlights premeditation. [1] |
| September 11, 2016 | GT forwards YZ/FH "legal analysis" to DK on how to back out of the APA, with message: "It's exactly we are talk about." | Direct evidence of prior coordination and intent to breach contracts. [1] |
| September 11, 2016 | DK resigns from ShopLink (3:14 PM); blocks MV's access to code repositories (4:46 PM); takes all developers to Agnicore. | Immediate, decisive actions to cripple ShopLink and transfer resources. [1] |
| September 14, 2016 | DK blocks MV's access to corporate email accounts, having deleted most incriminating emails before resignation. | Deliberate obstruction and destruction of evidence. [1] |
| October 13, 2016 | DK files his perjured complaint, falsely claiming R7 ownership. | Initiates the fraudulent litigation based on false premises. [1] |
| December 1, 2016 | Patent theft filing occurs, fraudulently removing MV as inventor and transferring IP to Agnicore. | Executes the intellectual property misappropriation. [1] |
| April 22, 2022 | DK files false Rule 56.1 statement denying evidence of IP misappropriation. | Continues the pattern of perjury to conceal the theft. [1] |

This meticulously detailed timeline reveals a pre-meditated scheme. The individual acts of patent theft, resignation, blocking access, deleting emails, and filing a false complaint, when viewed in their precise chronological sequence, demonstrate a clear, deliberate pattern of events indicating extensive planning and coordination.[1] The rapid succession of events—from explicit threats and legal advice to the formation of a new entity, immediate resignation, data obstruction, followed swiftly by the initiation of litigation and patent theft—strongly suggests a pre-planned, systematic scheme rather than reactive or isolated actions. The stated purpose of the patent filing (transferring intellectual property to Agnicore) further confirms the intent behind the misappropriation.[1] This coordinated, multi-faceted behavior, aimed at illicit gain through deception and intellectual property theft, aligns with the definition of a "criminal enterprise" and a "pattern of racketeering activity".[1] This elevates the severity of the alleged conduct beyond simple civil fraud, indicating a profound abuse of legal and technical systems.

## C. The Rule 56.1 Perjury

The pattern of deceit continued into the summary judgment phase of the litigation. In his Local Rule 56.1 Statement of Material Facts, filed on April 22, 2022, DK swore under penalty of perjury at Paragraph 69 that "No evidence has been produced by any party showing that Defendants' intellectual property was misappropriated by Khmaladze".[1]

This statement was demonstrably false when made. As detailed above, DK's own December 1, 2016 patent filing, which unilaterally removed MV as the original inventor and transferred ShopLink's intellectual property to Agnicore, constituted direct and irrefutable evidence of intellectual property misappropriation.[1] Indeed, patent theft is explicitly identified as the "quintessential example of intellectual property misappropriation" under federal law.[1] Courts rely heavily on the accuracy and good faith of Rule 56.1 statements to streamline and understand the evidentiary record for summary judgment determinations.[1] DK's perjury in this critical submission "likely influenced the Court's summary judgment analysis" by falsely suggesting an absence of evidence when the opposite was true, thereby directly corrupting the judicial process at a crucial, dispositive stage.[1] This deliberate falsehood, presented under oath in a document intended to guide the court's factual findings, represents a conscious effort to manipulate the outcome through deceit.

## D. The Settlement Confession

A particularly telling piece of evidence confirming the fraudulent nature of DK's entire lawsuit emerged during settlement negotiations. On May 13, 2019, David Pohl, then counsel for ShopLink, relayed a settlement proposal from DK's counsel. As summarized by Pohl, the proposal stated: "Dmitriy is offering to give up his claims and walk away entirely." The proposal further clarified that "the contracts that ShopLink has with his entity (concerning rights to the software, etc.) would all remain in place. In other words, ShopLink would have all the rights that you believed it had at the time of entering those contracts - Dmitriy is no longer challenging the validity of any contracts".[1]

This admission is profoundly significant because it "directly contradicts every material allegation in DK's complaint".[1] DK's original complaint had sought rescission of all contracts based on claims that they were procured by fraud and that DK, not ShopLink, owned the disputed intellectual property.[1] The settlement offer, therefore, "constitutes an admission that DK's entire lawsuit was fabricated".[1] It reveals that DK

"pursued claims he knew were meritless, hoping to extract settlement value through the cost and burden of litigation".[1]

DK's stated litigation goal was to rescind contracts and establish his ownership of intellectual property, alleging fraud by ShopLink.[1] However, his settlement offer, conveyed through his counsel, explicitly stated his willingness to "give up his claims" and affirmed that he was "no longer challenging the validity of any contracts" and that ShopLink "would have all the rights that you believed it had".[1] This direct negation of the core allegations and stated purpose of the entire lawsuit leads to the inescapable conclusion that DK knew his claims were baseless from the outset. The only logical inference is that he used the lawsuit as a tool for leverage or extortion, hoping to force a settlement due to the "cost and burden of litigation".[1] This revelation provides compelling evidence of his fraudulent intent and the fabricated nature of the entire legal action from its inception.

## E. Systematic Obstruction of Evidence

The systematic nature of DK's scheme extended to active obstruction of evidence, directly hindering ShopLink's ability to defend itself and uncover the full extent of the deception. On September 11, 2016, the very day of his resignation from ShopLink, DK took deliberate steps to obstruct access to critical technical evidence. He blocked MV's access to code repositories at 4:46 PM and immediately took all developers to Agnicore.[1] This action effectively severed ShopLink's access to its own proprietary software and development team. Three days later, on September 14, 2016, DK further compounded this obstruction by blocking MV's access to corporate email accounts, allegedly having "deleted most incriminating emails before his resignation".[1]

These actions constitute a deliberate and systematic destruction and concealment of evidence. This directly prevented ShopLink from undertaking "full factual development" and significantly contributed to their inability to "discover the full extent of DK's perjury" earlier in the litigation.[1] The timing of these actions, precisely at the moment of his departure and just prior to initiating litigation, is highly indicative of intent.[1] This direct obstruction of evidence hindered ShopLink's ability to gather crucial information, build its defense, and present its true case.[1] The nature of the obstruction—blocking access and deleting "incriminating" emails—strongly suggests a deliberate attempt to conceal the truth and frustrate the judicial process. This behavior is a hallmark of "fraud on the court" and further supports the characterization of the overall scheme as a criminal enterprise.[1]

# IV. Legal Framework for Relief: Federal Rule of Civil Procedure 60(b) and the Doctrine of Fraud on the Court

The Federal Rules of Civil Procedure provide mechanisms for relief from judgments obtained through improper means, particularly Rule 60(b). The severe and systematic nature of DK's conduct warrants relief under multiple provisions of this rule, as well as the inherent power of the court to address fraud perpetrated upon it.

## A. Rule 60(b)(3): Fraud, Misrepresentation, or Misconduct

Federal Rule of Civil Procedure 60(b)(3) permits a court to grant relief from a judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party".[9] To prevail on a motion under this rule, the Second Circuit requires the moving party to establish three elements by clear and convincing evidence: (1) fraud, misrepresentation, or misconduct by the opposing party; (2) that this misconduct prevented the moving party from fully presenting its case; and (3) that the moving party was not at fault for its failure to obtain the evidence earlier [[1], citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994),[72]]. The "clear and convincing evidence" standard mandates that the evidence presented must be "highly and substantially more likely to be true than untrue" [[1], citing *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988),[5]].

### Application to Khlamadze's Systematic Perjury, Supported by Clear and Convincing Evidence

DK's actions throughout the litigation demonstrate a continuous and deliberate pattern of deceit designed to manipulate the judicial process, satisfying each element of Rule 60(b)(3).

**1. Fraud, Misrepresentation, or Misconduct by DK:** DK committed systematic fraud and misconduct through multiple material false statements made under penalty of perjury. These include:

- **False Claim of R7 Software Ownership:** In Paragraph 29 of his complaint, DK falsely swore that "R7" was his original creation, a statement directly contradicted by his own deposition testimony and internal ShopLink documentation.[1]
- **False Denial of IP Misappropriation:** In Paragraph 69 of his Rule 56.1 Statement, DK falsely denied that any evidence of intellectual property misappropriation by him had been produced, despite his own prior patent filing demonstrating such theft.[1]
- **False Claim of Sole Inventorship:** DK fraudulently removed MV as the original inventor from ShopLink's patent applications and claimed sole inventorship for technology developed while employed by ShopLink.[1]

The Second Circuit has consistently held that perjured testimony in sworn statements and depositions constitutes fraud or misconduct sufficient for Rule 60(b)(3) relief [[1], citing *Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters*, 675 F.2d 1349, 1356 (4th Cir. 1982),[74], and *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995),[5]]. DK's knowledge of the falsity of his statements is unequivocally established by his own contradictory deposition admissions, the internal documents he authored, his counsel's explicit confession that the claims were meritless, and the coordinated timing of his deceptive actions.[1] This extensive and internally consistent body of evidence, including DK's own contradictory statements and contemporaneous documents, rises to the "highly and substantially more likely to be true than untrue" standard required for clear and convincing evidence.[1]

**2. Prevention of ShopLink from Fully Presenting Its Case:** DK's misconduct directly and substantially hindered ShopLink's ability to present its true defense. His false claim of R7 ownership corrupted the entire factual predicate for his claims, forcing ShopLink to defend against allegations rooted in fabrication.[1] The false Rule 56.1 statement actively concealed critical evidence of his intellectual property theft, which would have been central to defeating his claims and supporting ShopLink's counterarguments.[1] Furthermore, DK systematically blocked ShopLink's access to crucial source code repositories and deleted incriminating emails immediately prior to and following his resignation, thereby preventing full factual development and obstructing discovery.[1]

**3. ShopLink Was Not at Fault for Failing to Discover the Evidence Earlier:** ShopLink exercised due diligence but was unable to discover the full extent of DK's systematic perjury until recently. As ShopLink's former Chief Technology Officer, DK controlled access to technical systems and deliberately deleted, blocked, and omitted evidence before his departure, making early discovery exceptionally difficult.[1] Additionally, DK's counsel's devastating admissions in settlement negotiations were protected by litigation privilege and only became discoverable when that privilege was waived through court submissions.[1] Finally, the full contradiction between DK's deposition admissions and his sworn complaint, and the complete pattern of deception spanning the complaint, discovery, and summary judgment submissions, only became apparent after a comprehensive and painstaking transcript and document analysis conducted between 2024 and 2025.[1] The cumulative effect of DK's actions, from the inception of the lawsuit to summary judgment, demonstrates a continuous and deliberate pattern of deceit designed to manipulate the judicial process. This systematic nature is crucial in demonstrating pre-meditated intent rather than isolated mistakes, thereby strengthening the argument for meeting the "clear and convincing" standard for fraud.

# B. Rule 60(b)(6): Extraordinary Circumstances

Alternatively, even if Rule 60(b)(3) were deemed inapplicable for any reason, the extraordinary circumstances of this case unequivocally warrant relief under Federal Rule of Civil Procedure 60(b)(6). This provision serves as a "catch-all," allowing relief for "any other reason that justifies relief from the operation of the judgment".[9] It is widely recognized as a "grand reservoir of equitable power" intended to prevent injustice when the more specific provisions of Rule 60(b)(1)-(5) do not fully capture the egregious nature of the situation [[1], citing
*Klapprott v. United States*, 335 U.S. 601, 614-15 (1949), [16]]. Recent Supreme Court precedent, including
*Kemp v. United States*, 596 U.S. 528, 534 (2022), reaffirms this broad equitable authority.[1] Relief under Rule 60(b)(6) is considered "extraordinary judicial relief" and is granted "only upon a showing of exceptional circumstances".

### Analysis of how Systematic Fraud and Abuse of Judicial Process Meet this Stringent Standard

The alleged conduct in this case involves a systematic corruption of federal court proceedings that goes far beyond mere inter-party fraud, thereby constituting "extraordinary circumstances."

**1. Systematic Corruption of Federal Proceedings:** The coordinated perjury perpetrated by DK, spanning multiple years and various stages of litigation, represents a profound and systematic corruption of federal court proceedings.[1] Courts consistently hold that systematic fraud involving multiple perjured statements rises to the level of extraordinary circumstances warranting Rule 60(b)(6) relief [[1], citing *King Vision Pay Per View, Ltd. v. J.C. Dimitri's Restaurant*, 180 F.R.D. 332, 335 (E.D.N.Y. 1998), [77]]. The court's "careful preservation of evidence over nine years has inadvertently documented one of the most systematic frauds ever perpetrated upon a federal district court".[1] This prolonged and pervasive deception, designed to mislead the court at every turn, is precisely the type of abuse this rule is designed to address.

**2. Criminal Enterprise Using Courts as Instruments:** The collective evidence, particularly the meticulously documented timeline of events surrounding the formation of Agnicore LLC, the intellectual property theft, and the subsequent perjured filings, strongly suggests a coordinated criminal enterprise that deliberately used federal courts as instruments of fraud and extortion.[1] Such a calculated abuse of the judicial process, transforming litigation into a vehicle for illicit gain, constitutes an exceptional circumstance that demands the court's equitable intervention.

**3. Constitutional Implications:** The systematic deception employed by DK violated MV's and ShopLink's fundamental due process rights by denying them a fair opportunity to litigate their case on the merits.[1] Furthermore, the weaponization of federal judicial authority for private criminal purposes, as evidenced by the scheme to legitimize stolen intellectual property through perjured court filings, raises grave constitutional concerns regarding the integrity and fairness of the legal system.[1]

**4. Public Interest in Judicial Integrity:** Protecting the integrity of the judicial system and maintaining public confidence in its fairness are paramount. The systematic nature of DK's fraud directly threatens these vital interests.[1] The court has a compelling public interest in taking extraordinary measures to restore and preserve the integrity of its proceedings, ensuring that judgments are based on truth and merit, not on calculated deception. The Supreme Court's reaffirmation of Rule 60(b)(6) as a "grand reservoir of equitable power" supports intervention in such egregious cases, where the very foundation of justice has been undermined.[16]

## C. Fraud on the Court Doctrine (Rule 60(d)(3))

Separate from, and broader in its temporal application than, Rule 60(b)(3), the doctrine of "fraud on the court" provides an independent basis for relief. This doctrine originates from the Supreme Court's decision in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), which established the inherent authority of federal courts to vacate judgments obtained through fraud specifically directed at the judicial process itself.[1]

## Elements and Evidentiary Requirements

The modern application of the "fraud on the court" doctrine requires proof by clear and convincing evidence of three elements: (1) the fraud must be specifically directed at the court, not merely fraud between parties; (2) the fraud must be material to the court's determination; and (3) it must be proven by clear and convincing evidence [[1], citing

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989), [6]]. A crucial aspect of this doctrine is that claims based on "fraud on the court" are not subject to the one-year time limitations typically imposed by Federal Rule of Civil Procedure 60(c), as they challenge the very legitimacy of the judicial process itself [[1], citing

*Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005), [79], and

*Demjanjuk v. Meese*, 784 F.2d 1114, 1131 (D.C. Cir. 1986), [81]].

## Application to DK's Conduct

DK's conduct squarely falls within the ambit of "fraud on the court."

**1. Fraud Specifically Directed at the Court:** The alleged fraud is not merely between parties; it directly "defile[s] the court itself".[5] DK's false sworn statements in Paragraph 29 of his complaint and Paragraph 69 of his Rule 56.1 statement were direct submissions specifically directed to this Court for its reliance in making legal determinations.[1] The fraud was meticulously designed to corrupt the Court's decision-making process by providing false factual premises for legal rulings, particularly concerning intellectual property ownership and misappropriation.[1] This is distinct from mere inter parties fraud; it is fraud specifically perpetrated on the court itself through perjured filings, subverting the judicial machinery and preventing the court from performing its impartial task.[1]

**2. Materiality to the Court's Determinations:** Each act of perjury was profoundly material to the Court's determinations. DK's false claim of R7 ownership was central to all of his claims for rescission and declaratory relief.[1] The evidence of intellectual property misappropriation, falsely denied in his Rule 56.1 statement, was directly material to the summary judgment analysis.[1] Furthermore, the true software inventorship directly affected patent-related determinations throughout the proceedings.[1]

**3. Clear and Convincing Evidence Standard Met:** As extensively detailed in Section III of this report and in the analysis of Rule 60(b)(3), the evidence of DK's perjury meets the clear and convincing evidence standard. This is established through his own deposition admissions contradicting his sworn statements, the contemporaneous internal documents he authored, and his counsel's devastating settlement confession.[1] The systematic nature of the deception, coupled with the clear evidence of intent, provides overwhelming proof.

Federal courts possess inherent authority to remedy fraud on the court, regardless of procedural limitations [[1], citing

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), [83]]. This inherent power encompasses the authority to vacate judgments obtained through fraud, impose sanctions on fraudulent parties, and refer criminal conduct to prosecutors.[1] The subversion of the judicial machinery, through false sworn statements and manipulation of the record, prevents the court from performing its impartial task.[1] The doctrine of "fraud on the court" is designed for such extreme cases, allowing the court to act proactively to protect its own integrity, even beyond typical procedural limitations.[1]

# D. Timeliness of the Motion

The present motion for relief from judgment is timely filed, supported by multiple legal principles that address the unique circumstances of this case.

**1. Fraud on the Court Exception:** Claims based on "fraud on the court" are not subject to the one-year time limitations imposed by Federal Rule of Civil Procedure 60(c).[1] This exception is a fundamental aspect of the doctrine, recognizing that fraud which corrupts the judicial process itself undermines the very legitimacy of the judgment, irrespective of when it is discovered. The systematic perjury and intellectual property theft established in this case constitute "fraud on the court," warranting relief regardless of the passage of time.[1]

**2. Newly Discovered Evidence:** The complete and comprehensive picture of DK's systematic deception was not reasonably discoverable until very recently.

- **Settlement Confession (2019):** DK's counsel's admission on May 13, 2019, that DK was offering to "give up his claims and walk away entirely" and was "no longer challenging the validity of any contracts" was a devastating revelation.[1] This admission, made during confidential settlement discussions, was protected by litigation privilege and therefore was not discoverable by ShopLink until it was waived and disclosed in court submissions.[1]

- **Complete Evidentiary Analysis (2024-2025):** The full pattern of deception, encompassing the initial complaint, extensive discovery, and summary judgment submissions, only became apparent after a comprehensive and painstaking document review and analysis conducted between 2024 and 2025.[1] The sheer volume and complexity of the materials, combined with DK's obstructive tactics, made earlier synthesis of this systematic fraud impractical.

- **Deposition Admissions:** DK's repeated admissions during his deposition that "R7" was a codename for ShopLink's source code directly contradicted his sworn complaint.[1] The full extent of this contradiction and its implications for his claims required careful and detailed transcript analysis to fully comprehend and integrate into the broader pattern of deception.[1]

The fact that the full extent of DK's systematic deception, including the settlement confession and the comprehensive document review, only became apparent recently, means the evidence supporting "fraud on the court" and "extraordinary circumstances" was not reasonably discoverable earlier, thereby justifying the motion's timeliness.[1]

**3. Rule 60(b)(6) Exception:** Even if standard time limitations were to be considered, the extraordinary circumstances of this case, characterized by systematic fraud and abuse of the judicial process, warrant relief under Rule 60(b)(6), which has more flexible timing requirements when justified by exceptional circumstances.[1] The Supreme Court's reaffirmation of Rule 60(b)(6) as a "grand reservoir of equitable power" supports intervention in such egregious cases, where the very foundation of justice has been undermined.[16]

# V. The Groundbreaking Scientific Verification of Technical Fraud

The systematic misrepresentations by Dmitriy Khmaladze concerning software ownership and patent inventorship are not merely legal misstatements; they constitute a form of "technical fraud" that can be rigorously evaluated through the lens of forensic science principles, akin to scrutinizing unreliable expert testimony. This approach provides a groundbreaking perspective on the gravity of DK's actions and their corrosive effect on the judicial process.

## A. Forensic Science Principles Applied to Technical Misrepresentation

### The Daubert Standard and its Evolution (FRE 702)

Federal Rule of Evidence 702 governs the admissibility of expert testimony in federal courts, establishing a critical gatekeeping role for judges to ensure that such testimony is both reliable and helpful to the trier of fact.[2] The Supreme Court's landmark decision in
*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, a function clarified by *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167 (1999), to apply to all expert testimony, not just scientific.[24]

The 2023 amendments to Federal Rule of Evidence 702, effective December 1, 2023, further clarify and strengthen this judicial gatekeeping duty.[26] These amendments emphasize that the proponent of expert testimony must establish its admissibility to the court by a preponderance of the evidence.[26] The court's gatekeeping responsibility is ongoing, meaning that the decision to admit testimony does not permit the expert to offer an opinion not grounded in Rule 702's standards.[26] Key factors for admissibility now explicitly include: (a) the expert's specialized knowledge must help the trier of fact; (b) the testimony must be based on sufficient facts or data; (c) the testimony must be the product of reliable principles and methods; and (d) the expert's opinion must reflect a reliable application of these principles and methods to the facts of the case.[2] These changes were proposed in response to concerns that some courts had admitted expert testimony too liberally, reflecting an intent to empower courts to take seriously their roles as gatekeepers of expert evidence and to exclude testimony with "analytical gaps".[26]

### Lessons from Forensic Science Reform (NAS/PCAST Reports)

The forensic science community has undergone significant scrutiny and reform, providing crucial lessons applicable to the evaluation of technical claims in legal proceedings. The 2009 National Academy of Sciences (NAS) report, "Strengthening Forensic Science in the United States: A Path Forward," was a monumental critique, highlighting the limitations of many forensic disciplines, including the absence of standardization, lack of rigorous research, and insufficient validation of methods.[29] This report called for a move towards more scientific foundations, empirical validation, and quantifiable measures of uncertainty.[29]

Building on the NAS report, the 2016 President's Council of Advisors on Science and Technology (PCAST) report, "Forensic Science in Criminal Courts: Ensuring Scientific Validity of Feature-Comparison Methods," further emphasized the need for "foundational validity" for forensic methods.[41] PCAST concluded that many subjective methods, such as bitemark analysis, lacked foundational validity due to insufficient empirical studies, high false-positive rates, and a lack of consistency among examiners.[52] These reports collectively advocate for empirical testing, measurement of error rates, and objective standards to ensure the reliability of scientific evidence presented in court.

**Application to DK's Technical Claims as "Expert Testimony"**

Dmitriy Khmaladze's sworn statements regarding R7 software ownership and patent inventorship, particularly given his position as Chief Technology Officer, functioned as authoritative factual assertions or, in essence, "expert testimony" on technical matters central to the case.[1] His claims were foundational to his legal arguments, and the court would naturally rely on his technical expertise in evaluating them. Therefore, these claims should be subjected to the same rigorous scrutiny for scientific validity and reliability that would be applied to any expert opinion under FRE 702 and the principles espoused by the NAS and PCAST reports.

**The "Groundbreaking" Aspect: Technical Fraud as a Species of Scientific Misconduct in Litigation**

DK's deliberate misrepresentations of technical facts, which were foundational to his legal claims, constitute a novel and particularly insidious form of deception termed "technical fraud." This goes beyond simple perjury; it represents a subversion of verifiable technical truth, akin to scientific misconduct, directly impacting the integrity of the judicial process.

DK's technical claims regarding R7 ownership and inventorship were foundational to his case.[1] As CTO, his statements carried the weight of specialized knowledge, similar to expert testimony.[1] Modern forensic science, as articulated in the NAS and PCAST reports, emphasizes empirical validation, objectivity, and the rejection of subjective claims without supporting data.[29] DK's claims, however, demonstrably lacked empirical support and were directly contradicted by objective evidence, including his own internal documents and deposition testimony.[1]

This pattern of conduct constitutes a "technical fraud," where an individual with specialized knowledge deliberately misrepresents technical facts to mislead the court. This is analogous to presenting scientifically invalid expert testimony, and it fundamentally undermines the court's ability to discern truth in complex technical disputes. The parallels to the concerns raised in forensic science reform are striking: just as courts must guard against unreliable pattern-matching evidence lacking empirical foundation, they must also reject foundational technical claims that are demonstrably false and unsupported by objective data, particularly when advanced by a party in a position of technical authority. This deliberate fabrication of technical reality, presented under oath, corrupts the very essence of fair adjudication.

# VI. Conclusion and Recommendations

This case presents an extraordinary and deeply troubling instance of systematic perjury and intellectual property fraud, meticulously orchestrated to corrupt the federal judicial process. Dmitriy Khmaladze's actions, from the initial filing of his complaint to his submissions during summary judgment and his counsel's ultimate confession, reveal a continuous and deliberate pattern of deception. This pattern includes false sworn statements about software ownership, fraudulent patent inventorship, perjured denials of evidence, and active obstruction of discovery. These are not isolated incidents but components of a coordinated scheme designed to achieve illicit gains through the manipulation of the court.

The evidence presented in this report, including DK's own admissions and contemporaneous documents, overwhelmingly establishes his knowing and willful intent to defraud. This conduct transcends mere

litigation misconduct; it constitutes a profound "fraud on the court," directly undermining the integrity and impartiality of the United States District Court for the Southern District of New York. The application of forensic science principles to the evaluation of DK's technical misrepresentations further illuminates the deliberate and scientifically baseless nature of his claims, characterizing his actions as a form of "technical fraud."

Given the clear and convincing evidence of this systematic corruption, the ShopLink Defendants are entitled to the extraordinary relief sought under Federal Rule of Civil Procedure 60(b)(3) and (6). The "fraud on the court" doctrine, which is not subject to typical time limitations, provides an additional and compelling basis for intervention, as the very legitimacy of the judgments obtained through such deceit is called into question.

For these reasons, and to preserve the sanctity of federal judicial proceedings and public confidence in the administration of justice, the following actions are respectfully recommended:

1. **Vacation of All Judgments:** All judgments obtained by Dmitriy Khmaladze in Case No. 1:16-cv-8029-GHW must be vacated. These judgments are tainted by systematic fraud and cannot stand as legitimate outcomes of a fair judicial process.
2. **Criminal Referral:** The compelling evidence of perjury, intellectual property theft, and a coordinated scheme to defraud warrants immediate referral to the United States Attorney for criminal prosecution. The facts establish probable cause for multiple federal crimes, including Perjury (18 U.S.C. § 1621), Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343), and Racketeering (18 U.S.C. § 1962), given the pattern of predicate acts and the apparent criminal enterprise.[1]
3. **Appropriate Sanctions:** The court should impose severe sanctions against Dmitriy Khmaladze to deter similar egregious conduct in the future and to compensate the ShopLink Defendants for the immense costs and burdens incurred due to this protracted fraud.
4. **Protection of Judicial Integrity:** These decisive actions are imperative to reaffirm the court's commitment to truth and fairness, sending a clear message that the federal judiciary will not tolerate its processes being weaponized for fraudulent purposes.

The systematic nature of this misconduct threatens not only the parties to these proceedings but the integrity of the federal judicial system itself. Only immediate and comprehensive action can remedy the corruption that has infected these proceedings and prevent further harm.

Most respectfully submitted,


**MIKHAIL VOROTYNTSEV**
*Pro Se*
Founder, ShopLink Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing letter was served upon all parties of record via the Court's ECF system and/or by email on this 23rd day of June, 2025.

/s/ Mikhail Vorotyntsev
**MIKHAIL VOROTYNTSEV**

**Works cited**

1. MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(3) AND (6) BASED ON FRAUD ON THE COURT .pdf
2. Rule 702. Testimony by Expert Witnesses | Federal Rules of Evidence - Law.Cornell.Edu, accessed June 21, 2025, https://www.law.cornell.edu/rules/fre/rule_702
3. Rule 702: Testimony by Experts - Digital Commons @ Touro Law Center, accessed June 21, 2025, https://digitalcommons.tourolaw.edu/cgi/viewcontent.cgi?article=3094&context=lawrevie w
4. Rule 703. Bases of an Expert | Federal Rules of Evidence | US Law - Law.Cornell.Edu, accessed June 21, 2025, https://www.law.cornell.edu/rules/fre/rule_703
5. Space Hunters, Inc. v. United States | 500 FED.APPX. 76 | 2d Cir. | Judgment - CaseMine, accessed June 21, 2025, https://www.casemine.com/judgement/us/5914e683add7b0493490ed11
6. Salim Aoude, Plaintiff, Appellant, v. Mobil Oil Corporation, Defendant, Appellee, 892 F.2d 1115 (1st Cir. 1989) - Justia Law, accessed June 21, 2025, https://law.justia.com/cases/federal/appellate-courts/F2/892/1115/72189/
7. Trial court erred in dismissing for fraud on the court plaintiff's entire personal injury action filed after she slipped and fell at defendant's store where trial court did not appropriately balance policy favoring adjudication on merits with competing policies to maintain integrity of judicial system — Competent substantial evidence supported trial court's finding that, clearly and convincingly, plaintiff had intentionally lied about extent of her movement limitations and pain after her fall in defendant's store, and specific finding that plaintiff's explanations for the discrepancies were not credible — Trial court abused discretion in dismissing entire action as a sanction — Trial court properly dismissed portion of claim for pain and suffering damages and lost wages because plaintiff's repeated pretrial lies about her limitations and pain demonstrated her willingness to lie under oath at trial, which comprehensively infected the integrity of the action seeking pain and suffering and lost wages damages — Plaintiff should not be allowed to pursue pain and suffering or lost wages damages - Abbey, Adams, Byelick & Mueller, LLP, accessed June 21, 2025, https://www.abbeyadams.com/torts-premises-liability-slip-and-fall-dismissal-fraud-on-court-trial-court-erred-in-dismissing-for-fraud-on-the-court-plaintiffs-entire-personal-injury-action-filed-after-she-slipped/
8. MOTIONS - Southern District of New York, accessed June 21, 2025, https://www.nysd.uscourts.gov/sites/default/files/2018-06/motionsguide.pdf
9. Rule 60. Relief from a Judgment or Order | Federal Rules of Civil Procedure | US Law, accessed June 21, 2025, https://www.law.cornell.edu/rules/frcp/rule_60
10. Rule 60. Relief from a Judgment or Order (a) Corrections Based on Clerical Mistakes; Oversights and Omissions, accessed June 21, 2025, https://www.cit.uscourts.gov/sites/cit/files/Rule%2060.pdf
11. x In re - U.S. Bankruptcy Court, Eastern District of New York, accessed June 21, 2025, https://www.nyeb.uscourts.gov/sites/nyeb/files/opinions/opinion_cec_09-07-24.pdf
12. Alaska Supreme Court Opinion No sp-7040 - U.S. Case Law, accessed June 21, 2025, https://cases.justia.com/alaska/supreme-court/2015-s-15729.pdf?ts=1440781231
13. Seeking Review of an Unfavorable Judgment Directly From the District Court | Practical

Law, accessed June 21, 2025, https://content.next.westlaw.com/practical-law/document/Ia7aac8d1642211e38578f7ccc38dcbee/Seeking-Review-of-an-Unfavorable-Judgment-Directly-From-the-District-Court?viewType=FullText&transitionType=Default&contextData=(sc.Default)

14. In the United States Court of Federal Claims, accessed June 21, 2025, https://ecf.cofc.uscourts.gov/cgi-bin/show_public_doc?2016vv1273-157-0

15. Supreme Court of the United States - SCOTUSblog, accessed June 21, 2025, https://www.scotusblog.com/wp-content/uploads/2016/05/Buck-BIO.pdf

16. Federal Rule 60(B): Finality of Civil Judgments v. Self-Correction by District Court of Judicial Error of Law - NDLScholarship, accessed June 21, 2025, https://scholarship.law.nd.edu/cgi/viewcontent.cgi?article=3084&context=ndlr

17. Final Means Final: Supreme Court Reaffirms Strict Limits on Post-Judgment Amendments, accessed June 21, 2025, https://www.venable.com/insights/publications/2025/06/final-means-final-supreme-court-reaffirms-strict

18. IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS PATRICK C. LYNN, Plaintiff, v. CASE NO. 06-3172-SAC RENEE ANDE - GovInfo, accessed June 21, 2025, https://www.govinfo.gov/content/pkg/USCOURTS-ksd-5_06-cv-03172/pdf/USCOURTS-ksd-5_06-cv-03172-4.pdf

19. 23-1259 Blom Bank SAL v. Honickman (06/05/2025) - Supreme Court, accessed June 21, 2025, https://www.supremecourt.gov/opinions/24pdf/23-1259_9p6b.pdf

20. Liljeberg v. Health Svcs. Acq. Corp. | 486 U.S. 847 (1988) - Justia Supreme Court Center, accessed June 21, 2025, https://supreme.justia.com/cases/federal/us/486/847/

21. Liljeberg v. Health Svcs. Acq. Corp - Sandra Day O'Connor Institute Library, accessed June 21, 2025, https://library.oconnorinstitute.org/supreme-court/liljeberg-v-health-svcs-acq-corp-1987/

22. HAZEL-ATLAS GLASS CO. v. HARTFORD-EMPIRE CO. | Supreme Court - Law.Cornell.Edu, accessed June 21, 2025, https://www.law.cornell.edu/supremecourt/text/322/238

23. Hazel-Atlas Glass Co. V Hartford-Empire Co., 322 US 238 (1944) - Original Sources, accessed June 21, 2025, https://www.originalsources.com/Document.aspx?DocID=DMUZJY2JB4S1PR5&H=1

24. Under 'Daubert', It Isn't Getting Easier To Find a 'Reliable' Expert Witness, accessed June 21, 2025, https://static.maglaw.com/docs/Spiro%20Mogul%204.18.17.pdf

25. THE DRAINING OF DAUBERT AND THE RECIDIVISM OF JUNK SCIENCE IN FEDERAL AND STATE COURTS - Hofstra Law, accessed June 21, 2025, https://law.hofstra.edu/pdf/academics/journals/lawreview/lrv_issues_v35n01_dd4_schwartz-silverman_final.pdf

26. Recent Applications of FRE 702 | Don't Say Daubert, accessed June 21, 2025, https://dontsaydaubert.com/recent-applications-of-fre-702/

27. New Rule 702: Everything You Need to Know About the Admissibility of Expert Testimony, accessed June 21, 2025, https://www.maslon.com/webfiles/17%20-%20Laws.pdf

28. Proposed Changes to Federal Rule of Evidence on Expert Witness Testimony, accessed June 21, 2025, https://www.globalinvestigations.blog/united-states/proposed-changes-to-federal-rule-of-evidence-on-expert-witness-testimony/

29. Goodman v. Sharp et al, No. 1:2021cv10627 - Document 76 ..., accessed June 21, 2025, https://law.justia.com/cases/federal/district-courts/new-york/nysdce/1:2021cv10627/571682/76/

30. Ten Years Later: The Lasting Impact of the 2009 NAS Report - Innocence Project, accessed June 21, 2025, https://innocenceproject.org/news/lasting-impact-of-2009-nas-report/

31. Influencing Forensic Science for a Decade: Remembering the 2009 NAS Report, accessed June 21, 2025, https://forensicstats.org/blog/2019/02/19/influencing-forensic-science-for-a-decade-remembering-the-2009-nas-report/

32. Strengthening Forensic Science in the United States - Williams College, accessed June 21, 2025, https://web.williams.edu/Psychology/Faculty/Kassin/files/NAS%20(2009)%20-%20Executive%20Summary.pdf

33. NAS Report Executive Summary & Remarks of Judge Harry Edwards, accessed June 21, 2025, https://www.justice.gov/sites/default/files/ncfs/legacy/2014/05/13/harry-edwards.pdf

34. (PDF) Strengthening Forensic Science in the United States: A Path Forward - ResearchGate, accessed June 21, 2025, https://www.researchgate.net/publication/275214356_Strengthening_Forensic_Science_in_the_United_States_A_Path_Forward

35. Strengthening Forensic Science in the United States: A Path Forward - CrimRxiv, accessed June 21, 2025, https://www.crimrxiv.com/pub/z6cvxsr8

36. National Academy of Sciences Report - Nancy Gertner, accessed June 21, 2025, http://nancygertner.com/sites/default/files/National%20Academy%20of%20Sciences%20Report.pdf

37. Strengthening Forensic Science in the United States: A Path Forward : Free Download, Borrow, and Streaming - Internet Archive, accessed June 21, 2025, https://archive.org/details/5972107-228091?q=%22bryan+rose%22

38. Strengthening forensic science in the United States: A path forward - ResearchGate, accessed June 21, 2025, https://www.researchgate.net/publication/309068976_Strengthening_forensic_science_in_the_United_States_A_path_forward

39. The NAS-Report 2009 - EVISCAN, accessed June 21, 2025, https://www.eviscan.com/en/the-nas-report-2009/

40. Strengthening Forensic Science in the United States: A Path ..., accessed June 21, 2025, https://www.ojp.gov/ncjrs/virtual-library/abstracts/strengthening-forensic-science-united-states-path-forward

41. PCAST Releases Report on Forensic Science in Criminal Courts - Obama White House, accessed June 21, 2025, https://obamawhitehouse.archives.gov/blog/2016/09/20/pcast-releases-report-forensic-science-criminal-courts

42. Forensic Science in Criminal Courts: Ensuring Scientific Validity of Feature-Comparison Methods - Obama White House, accessed June 21, 2025, https://obamawhitehouse.archives.gov/sites/default/files/microsites/ostp/PCAST/pcast_forensic_science_report_final.pdf

43. Presidential Council Issues Report Arguing that Ballistics Testimony Should Not be Admitted as Evidence, accessed June 21, 2025, https://www.naag.org/attorney-general-journal/presidential-council-issues-report-arguing-that-ballistics-testimony-should-not-be-admitted-as-evidence/

44. The Foundations of the Comparison Forensic Sciences: Report of the President's Council of Advisors on Science and Technology - PubMed, accessed June 21, 2025, https://pubmed.ncbi.nlm.nih.gov/30137704/

45. Forensic Science in Criminal Courts: Ensuring Scientific Validity of Feature-Comparison Methods, accessed June 21, 2025, https://sites.pitt.edu/~jdnorton/teaching/2682_confirmation/2017/slides/pcast_forensic_science_fragments.pdf

46. Forensic Science in Criminal Courts: Ensuring Scientific Validity of Feature-Comparison Methods - Crime Scene Investigator Network, accessed June 21, 2025, https://www.crime-scene-investigator.net/forensic-science-in-criminal-courts-ensuring-scientific-validity-of-feature-comparison-methods.html

47. Scientific guidelines for evaluating the validity of forensic feature-comparison methods | PNAS, accessed June 21, 2025, https://www.pnas.org/doi/10.1073/pnas.2301843120

48. Forensic Science in Criminal Courts: Ensuring Scientific Validity of Feature-Comparison Methods - Department of Justice, accessed June 21, 2025, https://www.justice.gov/d9/2023-07/07.13.23.%20-%20PCAST%20-%20Interim.pdf

49. Comments on the 2016 President's Council of Advisors on Science and Technology (PCAST) report on Forensic science in criminal courts: Ensuring scientific validity of feature-comparison methods, accessed June 21, 2025, https://forensic-evaluation.net/PCAST2016/

50. Post-PCAST Court Decisions Assessing the Admissibility of Forensic Science Evidence - Cloned | National Institute of Justice, accessed June 21, 2025, https://nij.ojp.gov/microsite-subpage/post-pcast-court-decisions-assessing-admissibility-forensic-science-evidence

51. Justice Department Publishes Statement on 2016 President's Council of Advisors on Science and Technology Report, accessed June 21, 2025, https://www.justice.gov/archives/opa/pr/justice-department-publishes-statement-2016-presidents-council-advisors-science-and

52. Bite mark analysis – A valid science? - FutureLearn, accessed June 21, 2025, https://www.futurelearn.com/info/courses/decoding-forensics/0/steps/284590

53. Bitemark Analysis: A NIST Scientific Foundation Review, accessed June 21, 2025, https://nvlpubs.nist.gov/nistpubs/ir/2023/NIST.IR.8352.pdf

54. Bitemark Analysis: A NIST Scientific Foundation Review - Crime Scene Investigator Network, accessed June 21, 2025, https://www.crime-scene-investigator.net/forensic-bitemark-analysis-not-supported-by-sufficient-data.html

55. Full article: C.E. Credit. Bitemark Analysis: The Legal vs Scientific Battle for Justice, accessed June 21, 2025, https://www.tandfonline.com/doi/full/10.1080/19424396.2023.2191391

56. The Unreliability of Bitemark Evidence: Implications for Forensic Odontology in Legal Proceedings - Today's RDH, accessed June 21, 2025, https://www.todaysrdh.com/the-unreliability-of-bitemark-evidence-implications-for-forensic-odontology-in-legal-proceedings/

57. Forensic Odontology: A Dangerous, Debunked "Science" - Great North Innocence Project, accessed June 21, 2025, https://www.greatnorthinnocenceproject.org/new-blog/bitemarkevidence

58. The Most Common Types of Bias in a Human Bitemark Analysis - MDPI, accessed June 21, 2025, https://www.mdpi.com/2673-6373/4/1/10

59. Full article: Is It Likely That Bite Mark Analysis Will in the Future Meet the Criteria Necessary for Use in the Justice System?, accessed June 21, 2025, https://www.tandfonline.com/doi/full/10.1080/19424396.2023.2210328

60. Bitemark Evidence - The Innocence Center, accessed June 21, 2025, https://theinnocencecenter.org/resource/bitemark-evidence/

61. Forensic bitemark analysis for court trials is not supported by sufficient data and "is leading to wrongful convictions" | EurekAlert!, accessed June 21, 2025, https://www.eurekalert.org/news-releases/993279

62. Evaluation of Bitemark Analysis's Potential Application in Forensic Identification: A Systematic Review - PubMed, accessed June 21, 2025, https://pubmed.ncbi.nlm.nih.gov/38893706/

63. Evaluation of Bitemark Analysis's Potential Application in Forensic Identification: A Systematic Review - PMC, accessed June 21, 2025, https://pmc.ncbi.nlm.nih.gov/articles/PMC11171794/

64. (PDF) Bite Mark Analysis- A Crucial Forensic Evidence - ResearchGate, accessed June 21, 2025, https://www.researchgate.net/publication/376312775_Bite_Mark_Analysis-_A_Crucial_Forensic_Evidence

65. Forensic Bitemark Analysis Not Supported by Sufficient Data, NIST Draft Review Finds, accessed June 21, 2025, https://www.nist.gov/news-events/news/2022/10/forensic-bitemark-analysis-not-supported-sufficient-data-nist-draft-review

66. Integration of Bite Mark Microbiome Analysis with Forensic DNA Profiling: Advancements, Challenges, and Synergistic Approaches - PubMed Central, accessed June 21, 2025, https://pmc.ncbi.nlm.nih.gov/articles/PMC11294684/

67. Bite Mark Analysis- A Crucial Forensic Evidence - Oral & Maxillofacial Pathology Journal, accessed June 21, 2025, https://ompj.org/files/ompj%2013%202%20article%2015%20web-7b573064c76f0167f107addbfdbf8c0887566437.pdf

68. Comparative Study on Two Methods for Bite Mark Analysis | ARC Journal of Forensic Science, accessed June 21, 2025, https://www.arcjournals.org/journal-of-forensic-science/volume-2-issue-1/4

69. THE CHALLENGES TO THE FORENSIC ANALYSIS OF HUMAN BITE MARKS IN SKIN AND COMPARISON WITH TEETH | Medical Research Archives - European Society of Medicine, accessed June 21, 2025, https://esmed.org/MRA/mra/article/view/4142

70. An evidence-based methodology for the analysis and comparison of human bite marks in skin with teeth | Medical Research Archives - European Society of Medicine, accessed June 21, 2025, https://esmed.org/MRA/mra/article/view/6158

71. Bitemark evidence can send wrong person to prison, death row, UB professors say - UBNow, accessed June 21, 2025, https://www.buffalo.edu/ubnow/stories/2023/07/bush-bitemark-evidence.html

72. Paddington Partners, Plaintiff, v. Jean-louis Bouchard, Herbert A. Denton, Defendants,econocom Finance Nv; Econocom International N.v.,defendants-appellants,jeffries & Company, Inc., Defendant-appellee, 34 F.3d 1132 (2d Cir. 1994) - Justia Law, accessed June 21, 2025, https://law.justia.com/cases/federal/appellate-courts/F3/34/1132/551750/

73. Trial Court Procedures in Patent Litigation: Maximizing Chances of Success on Appeal:

Part 2 | Articles | Finnegan, accessed June 21, 2025, https://www.finnegan.com/en/insights/articles/trial-court-procedures-in-patent-litigation-maximizing-chances-1.html

74. Great Coastal Express, Inc., Appellee, v. International Brotherhood of Teamsters, Chauffeurs,warehousemen and Helpers Ofamerica, Appellant.great Coastal Express, Inc., Appellee-cross-appellant, v. International Brotherhood of Teamsters, Chauffeurs,warehousemen and Helpers Ofamerica,appellant-cross-appellee.great Coastal Express, Inc., Appellant, v. International Brotherhood of Teamsters, Chauffeurs,warehousemen and Helpers Ofamerica, Appellee, 675 F.2d 1349 (4th Cir. 1982) - Justia Law, accessed June 21, 2025, https://law.justia.com/cases/federal/appellate-courts/F2/675/1349/252737/

75. Great Coastal Express, Inc., Plaintiff-Appellee-Cross v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers Ofamerica, an Unincorporated Association, Defendant-Appellant-Cross - Case Law - Cetient, accessed June 21, 2025, https://www.cetient.com/case/great-coastal-express-inc-plaintiff-appellee-cross-v-international-325568

76. Facey v. Facey - Maryland Appellate Court Decisions - Justia Law, accessed June 21, 2025, https://law.justia.com/cases/maryland/court-of-special-appeals/2021/1183-19.html

77. King Vision Pay Per View, Ltd. v. J.C. Dimitri's Restaurant, Inc. | Case Brief for Law Students, accessed June 21, 2025, https://www.casebriefs.com/blog/law/civil-procedure/civil-procedure-keyed-to-cross/pleading-civil-procedure-keyed-to-cross/king-vision-pay-per-view-ltd-v-j-c-dimitris-restaurant-inc/

78. King Vision Pay Per View, Ltd. v. J.C. Dimitri's Restaurant, Inc. Case Brief | Lexplug, accessed June 21, 2025, https://www.lexplug.com/casebrief/king_vision_pay_per_view_ltd_v_j_c_dimitri_s_restaurant_inc__65a2bd053fc4374f9dad29d9

79. HERRING v. UNITED STATES: ARE ERRORS IN GOVERNMENT DATABASES PREVENTING DEFENDANTS FROM RECEIVING FAIR TRIALS?, accessed June 21, 2025, https://bpb-us-e1.wpmucdn.com/sites.suffolk.edu/dist/5/1153/files/2018/02/Final-Hess-Note-2gkaigx.pdf

80. Office of the Solicitor General | Herring v. United States - Opposition - Department of Justice, accessed June 21, 2025, https://www.justice.gov/osg/brief/herring-v-united-states-opposition

81. THE EXTRADITION OF JOHN DEMJANJUK AS "IVAN THE TERRIBLE" - DigitalCommons@NYLS, accessed June 21, 2025, https://digitalcommons.nyls.edu/cgi/viewcontent.cgi?article=1371&context=journal_of_international_and_comparative_law

82. Government Appeals to Supreme Court to Overturn Fraud Finding in Ivan Case, accessed June 21, 2025, https://www.jta.org/archive/government-appeals-to-supreme-court-to-overturn-fraud-finding-in-ivan-case

83. Chambers v. Nasco, Inc. - Case Brief Summary for Law School Success - Studicata, accessed June 21, 2025, https://studicata.com/case-briefs/case/chambers-v-nasco-inc/

84. Chambers v. Nasco, Inc. | 501 U.S. 32 (1991) - Justia Supreme Court Center, accessed June 21, 2025, https://supreme.justia.com/cases/federal/us/501/32/