UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------X
GARY TATINTSIAN, et al.,

Plaintiff, Counterclaim-Defendant,

-against-                                                                                 Case No. 1:16-cv-7203-GHW

MIKHAIL VOROTYNTSEV, et al.,

Defendants, Counterclaim-Plaintiff, :


---------------------------------------------X
DMITRIY KHMALADZE and IT ADAPTER
CORPORATION INC.,

Plaintiffs, Counterclaim-Defendants,

-against-                                                                                 Case No. 1:16-cv-8029-GHW

MIKHAIL VOROTYNTSEV, et al.,

Defendants, Counterclaim-Plaintiffs. :

---------------------------------------------X

**TO THE HONORABLE GREGORY H. WOODS, UNITED STATES DISTRICT JUDGE:**

**REPLY AND MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF GARY TATINTSIAN'S SECOND SET OF MOTIONS IN LIMINE**

We submit this memorandum in opposition to Plaintiff Gary Tatintsian's ("GT") Second Set of Motions *in Limine*. This motion is not a good-faith effort to streamline trial proceedings but a desperate, final attempt to conceal a nine-year campaign of racketeering and a profound "fraud on the court". The evidence GT seeks to exclude is the very evidence that unmasks the transnational criminal enterprise he serves, exposes its pattern of predatory litigation, and proves that the case before this Court is the culmination of a hostile takeover plot orchestrated from the highest echelons of the Russian state.

GT's motion is an audacious attempt to weaponize the Rules of Civil Procedure to enforce the conspiracy's code of silence. He and his co-conspirators, having built their case on a

foundation of systematic perjury, evidence spoliation, and witness intimidation, now argue that the victims of this assault should be barred from presenting the truth because they did not uncover the full extent of the covert scheme sooner.
This argument is particularly galling given that GT and his counsel have actively concealed the most critical evidence in this case – a fact that amounts to a tacit admission of guilt.

To grant this motion would be to reward the efficacy of their corruption and allow the perpetrators to benefit from their own concealment. For the reasons set forth below, and in the interest of preserving the sanctity of this Court, the motion must be denied in its entirety.

**ARGUMENT**

**I. THE LATE DISCLOSURE OF WITNESSES IS "SUBSTANTIALLY JUSTIFIED" AND "HARMLESS" AS IT IS THE DIRECT RESULT OF THE ENTERPRISE'S OWN FRAUDULENT CONCEALMENT.**

GT seeks to preclude dozens of witnesses under Fed. R. Civ. P. 37(c)(1), arguing the failure to disclose them in initial Rule 26(a) filings was neither "substantially justified" nor "harmless".  This argument collapses under the weight of the evidence, which shows that the justification for the late disclosure is the Enterprise's own protracted and deliberate campaign of fraud, concealment, and obstruction.

**A. The Justification is Overwhelming: Unraveling a Covert Criminal Conspiracy.**

The standard for "substantial justification" is met where there is a reasonable basis for the non-disclosure. The justification here is the very nature of the crime perpetrated against the defendants and this Court: a covert, transnational RICO conspiracy designed to be procedurally undiscoverable. The witnesses were not identified earlier because their roles as co-conspirators, facilitators, and victims of sabotage were systematically hidden by GT and his confederates.

This concealment was not passive. It was an active, coordinated, and ongoing campaign of evidence suppression that continues to this day. GT and his counsel have failed to produce the most dispositive evidence in this case, including:

- **GT Gallery Bank Accounts:** These records would prove the flow of nearly $10 million from Pelican Ventures LLC – an entity linked to Enterprise chief Andrei Isaev – into GT's accounts, timed perfectly with the collapse of the Enterprise's BRT Bank in Russia. This evidence establishes the motive and financing for the entire lawfare campaign.
- **Co-conspirator Communications:** A complete evidentiary black hole exists where

- there should be thousands of emails and messages between GT, Isaev, Dmitriy Khmaladze ("DK"), and Younis Zubchevich ("YZ"). The failure to produce any contemporaneous communications about their coordinated hostile takeover, the formation of Agnicore, or the sham art purchases used to launder funds is a direct act of spoliation.
- **Agnicore and Readerlink Communications:** It is a fact and a matter of public record, admitted to by both GT and DK, during their sworn deposition testimony, that within months of stealing ShopLink's intellectual property, DK and GT launched an identical product under the name "MYI - Monetize Your Influence" (ShopLink's official slogan) with Readerlink, the exact vendor ShopLink was integrating for its inaugural launch. Neither GT, nor DK, have produced any emails between Agnicore team and Readerlink, concealing the proof of this direct and immediate commercialization of stolen assets.

The defendants were not litigating a simple securities claim; they were the targets of a hostile takeover and a "smash-and-grab" operation orchestrated by a foreign-sponsored criminal enterprise.  The full scope of this conspiracy was only unearthed through a "comprehensive and painstaking document review and analysis conducted between 2024 and 2025".  The Enterprise actively worked to prevent this discovery through evidence spoliation – a fact confirmed by co-conspirator Dmitriy Khmaladze's ("DK") own actions. DK systematically blocked access to ShopLink's code repositories and corporate emails immediately upon his resignation and admitted to having "deleted most incriminating emails before his resignation".

It is the height of cynicism for the architects of a secret conspiracy, who have actively hidden the documentary proof of their scheme, to now claim prejudice because their victims did not identify all co-conspirators sooner, before the conspiracy was fully unearthed. The Supreme Court's mandate in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.* is controlling: "preservation of the integrity of the judicial process must always wait upon the diligence of litigants" when the court itself has been defrauded. The failure to disclose was a direct result of the Enterprise's own extrinsic fraud on the judicial machinery, and is therefore substantially justified.

### B. The Importance of the Testimony is Paramount and Far Outweighs Any Claimed Prejudice.

The four-factor test for preclusion weighs decisively in favor of admitting the testimony. The explanation is the Enterprise's concealment; the importance of the testimony is to expose a crime against the Court itself; any prejudice to GT is curable and dwarfed by the

public interest in justice.

1. **Legal Facilitators (Santillo, Gelber, Chattoraj, etc.):** GT's attempt to frame this as "litigating the litigation" is a diversion.  These lawyers are not being called to debate discovery motions; they are fact witnesses to the formation and execution of the conspiracy. They are alleged to be "active facilitators of this fraud on the Court".  GT's own deposition testimony reveals his counsel's deep involvement, as he repeatedly deferred to her knowledge ("Kristen would know the status").  This, combined with the "Santillo Connection" – a text from co-conspirator Younis Zubchevich ("YZ") stating, "She will rep me if I'm served" – is evidence that counsel was "pre-positioned to represent conspiracy members" in a "hybrid criminal-civil conspiracy".  Their testimony is essential to pierce the crime-fraud exception to attorney-client privilege and prove their complicity.
2. **Witnesses to Sabotage and Extortion (Clinton, Shea Moisture, Woodrow, etc.):** GT dismisses these witnesses as irrelevant to his securities claim. This is intentionally myopic. Their testimony is not offered to rebut the securities claim, but to prove the "pattern of racketeering activity" that defines the RICO enterprise.
This evidence of "other wrongs" is admissible under F.R.E. 404(b) to prove the Enterprise's motive, intent, preparation, and plan. GT's own deposition corroborates the need for these witnesses. He admitted to a campaign of maligning MV, stating he would tell anyone that MV is a "scumbag". He admitted to being contacted by a London company to testify against MV and confirmed sending a text threatening a "RICO case" and promising to "visit you in prison". This testimony directly supports that the sabotage of the Shea Moisture and Hillary Clinton book deals, the death threats conveyed to MovieCoin CEO Christopher Woodrow, and the collusion with Readerlink to launch a stolen product are all predicate acts of extortion, witness tampering, and interstate transportation of stolen property.
3. **Witnesses to IP Theft (Developers Aleynikov, Fedin, Shoplink devs, etc.):** GT argues testimony about Agnicore is irrelevant because civil claims were dismissed. This is misleading. The witnesses are not being called to re-litigate civil claims, but to establish the *facts* of the intellectual property theft and developer poaching as predicate acts of the RICO conspiracy. DK's deposition testimony – where he admits R7 was a functional, compilable code base and that he took the developers with him to Agnicore – is crucial. This developer testimony is essential to proving DK's perjury regarding R7's ownership and existence, which formed the fraudulent basis of his collusive lawsuit.
4. **Unnamed Witnesses ("London Lawyers," etc.):** GT's objection to unnamed witnesses ignores the climate of fear the Enterprise has cultivated through a documented pattern of witness intimidation, including financial warfare, asset freezes,

   direct death threats, and a real life event, a devastating gas explosion of EV's apartment in Moscow. GT himself testified about people wanting to "kill" MV. Under F.R.E. 611, the court has a duty to "protect witnesses from harassment or undue embarrassment". The defense is prepared to disclose these names under a protective order, but the need for such measures is a direct result of the Enterprise's conduct.
5. **Legal Expert:** The need for an expert on complex topics like transnational RICO enterprises, "fraud on the court," and the "Double State Coloring" doctrine only became apparent upon uncovering the full, sophisticated nature of the foreign state-sponsored criminal operation. Such testimony is admissible under F.R.E. 702 to help the trier of fact understand complex evidence and is substantially justified by the late discovery of the scheme's true nature.

## II. GT'S SPOLIATION OF EVIDENCE AND YZ'S STRATEGIC DEFAULT ARE ADMISSIONS OF GUILT THAT MANDATE AN ADVERSE INFERENCE.

GT's motion must be viewed in the context of his and his counsel's wholesale concealment of dispositive evidence. This is not a mere discovery violation; it is an admission of guilt by conduct. The failure to produce the GT Gallery bank statements, the communications between co-conspirators, and the Agnicore-Readerlink emails is a deliberate act of spoliation designed to deprive the defendants and this Court of the truth. The only logical conclusion is that this evidence is devastating to GT's case. We ask the Court to draw an adverse inference that the withheld evidence would prove the flow of illicit funds and the coordinated plan to steal and monetize ShopLink's assets.

This pattern of concealment is cemented by the strategic default of the conspiracy's mastermind, Younis Zubchevich. After confessing in a text message to MV that he was "not clean," YZ defaulted in this matter to evade discovery and avoid incriminating himself and the broader RICO operation. A strategic default by a co-conspirator is a judicial admission of the facts alleged in the defendants' claims. YZ's default is an irrefutable, judicially valid admission of his role in the criminal enterprise and the veracity of the defendants' claims.

## III. THE EXHIBITS GT SEEKS TO EXCLUDE ARE ADMISSIBLE AND ESSENTIAL TO PROVING THE CONSPIRACY.

GT's objections to exhibits on grounds of authenticity, relevance, and hearsay are baseless and serve only to hide evidence of his own misconduct.

- **Authenticity and Completeness:** Any lack of forensic extraction or completeness is a direct result of the Enterprise's own spoliation of evidence. As DK's actions show,

- evidence was actively destroyed and concealed. To allow the party that spoliated evidence to now object to the remaining fragments as "incomplete" would be a perversion of justice. The evidence's integrity is a matter for the jury to weigh, not a basis for exclusion.
- **Relevance and F.R.E. 403:** The exhibits are the very evidence of the RICO conspiracy. Their probative value in exposing a "direct and hostile attack on the sovereignty of the U.S. judicial system" is immense and cannot be substantially outweighed by any prejudice to the alleged architects of that attack. GT's deposition is a case study in this relevance; confronted with exhibits of his own emails and texts, he was forced to admit to his "declaration of war", his threats, and his coordination with co-conspirators.
- **Hearsay:** The objections are meritless. The vast majority of the documents are admissible as non-hearsay or under exceptions. This includes admissions by a party-opponent (GT's own emails, texts, and recorded threats), statements by co-conspirators in furtherance of the conspiracy (e.g., YZ's takeover plan email, communications between GT and DK), and business records.

## IV. ANNOTATIONS TO DEPOSITION DESIGNATIONS ARE NECESSARY FOR COMPLETENESS UNDER F.R.E. 106.

GT objects to annotations on deposition designations as "inflammatory". These annotations are crucial for invoking the rule of completeness under F.R.E. 106 and are necessary to provide context and prevent the jury from being misled by GT's selective presentation of perjured or evasive testimony.

For example, when GT's counsel presents DK's deposition testimony that R7 was his independent idea, it is essential to contemporaneously highlight the portion of the same deposition where DK admits R7 was ShopLink's "code asset". When GT testifies he "doesn't remember" the number of litigations he has been involved in, it is necessary to point to the subsequent testimony where he admits to at least three other lawsuits involving fraud allegations against him. This is not inflammatory; it is the responsible presentation of evidence required for the determination of truth.

## CONCLUSION

GT's motion *in limine* is a transparent tactical maneuver to enforce the conspiracy's code of silence and sanitize a record replete with fraud, perjury, and obstruction, and to benefit from his own profound discovery abuses. To grant this motion would be to allow the Enterprise to succeed in its final objective: ensuring that the truth of its assault on the U.S.

judiciary never sees the light of day.

For the foregoing reasons, the motion must be denied in its entirety to protect the integrity of the judicial process and allow the jury to hear the full story of the Enterprise's criminal conduct.

Respectfully submitted,

/s/Mikhail Vorotyntsev

Mikhail Vorotyntsev, Pro Se
Founder, ShopLink Inc.

Cc: All Counsel of Record