USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/12/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

GARY TATINTSIAN,                                   :
                                                   :
                                                   :
                              Plaintiff,           :         1:16-cv-7203-GHW
                                                   :
              -v-                                  :     MEMORANDUM OPINION &
                                                   :            ORDER
MIKHAIL VOROTYNTSEV,                               :
                                                   :
                              Defendant.           :
                                                   :
------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

Plaintiff Gary Tatintsian initiated this action on September 15, 2016, naming as defendants Mikhael Vorotyntsev and his wife, Elena Vorotyntseva. He accused Mr. Vorotyntsev of fraudulently securing Mr. Tatintsian's investment into Mr. Vorotyntsev's startup software company, Shoplink. He also brought claims against both individuals on behalf of Shoplink. Ms. Vorotyntseva was dismissed from this action in May 2018. Discovery concluded in December 2020.

This case became trial ready in August 2024 when the Court denied Plaintiff summary judgment on his claim of securities fraud against Mr. Vorotyntsev. The Court first scheduled a jury trial on that claim to begin in July 2025. In October 2025, that trial was rescheduled to begin on March 23, 2026.

Mr. Vorotyntsev has raised several issues relating to parties and claims that are not in this case. On multiple occasions, including in written orders and on the record, the Court has reminded him that the only claims that remain in this case are Mr. Tatintsian's claim of securities fraud, and the only parties that remain in this case are him and Mr. Tatintsian.

Mr. Vorotyntsev now moves to amend his answer to add counterclaims arising under the Racketeering Influenced and Corrupt Organizations Act ("RICO") against Plaintiff and a bevy of nonparties. Ms. Vorotyntseva seeks to rejoin this action through a motion to intervene, asserting

similar RICO counterclaims against Plaintiff and a similar set of nonparties. Because the requests to introduce new issues and parties in a case that is set for trial in less than two months will inevitably delay trial and result in significant prejudice to the parties already in this case and because Mr. Vorotyntsev has not been diligent in seeking amendment, both the motion to intervene and the motion to amend are DENIED.

## I.     BACKGROUND

### A.     This Case Becomes Trial-Ready

On September 15, 2016, Plaintiff Gary Tatintsian initiated this action against Mr. Vorotyntsev and Ms. Vorotyntseva. Dkt. No. 1 ("Compl."). Plaintiff alleged that Mr. Vorotyntsev violated securities laws by making material misrepresentations that caused him to purchase shares of Shoplink, Mr. Vorotyntsev's startup technology company. *Id.* Plaintiff alleged that Mr. Vorotyntsev first approached him to encourage that investment in 2015. *Id.* ¶ 17. He alleged that by August 2016, he had purchased Shoplink shares totaling nearly $1.35 million. *Id.* ¶ 21. He alleged that Mr. Vorotyntsev and Ms. Vorotyntseva squandered his investment to fund a luxurious lifestyle in the months that followed. *Id.* ¶ 32. He brought a claim of securities fraud against Mr. Vorotyntsev. *Id.* ¶¶ 48–52. He also brought claims against Mr. Vorotyntsev and Ms. Vorotyntseva on behalf of Shoplink. *Id.* ¶¶ 53–73.

On October 28, 2016, Ms. Vorotyntseva and Mr. Vorotyntsev answered. Dkt. Nos. 31, 32. Mr. Vorotyntsev asserted several counterclaims. Dkt. No. 32 ¶¶ 63–83

On May 22, 2018, the Court dismissed all of Mr. Tatintsian's derivative claims. *See* Dkt. No. 180. Because the only claims against Ms. Vorotyntseva were claims brough on behalf of Shoplink, the dismissal meant that she was no longer a party to this action. *See id.*; *see also* Compl. ¶¶ 60–73.

On May 23, 2019, the Court entered an amended case management plan and scheduling order (the "ACMP"). Dkt. No. 188. Following several requests for extensions of deadlines set in

the ACMP, discovery concluded in December 2020.  *See* Dkt. No. 290.

On April 22, 2022, Plaintiff moved for summary judgment on his sole remaining claim—namely, his claim of securities fraud against Mr. Vorotyntsev.  Dkt. No. 374.[1]  The Court denied that motion on August 6, 2024.  Dkt. No. 403.  As the Court observed in an order denying Mr. Vorotyntsev's first attempt to amend his pleadings, the case had already "lasted an extended period of time and [was] now trial-ready."  Dkt. No. 425 at 4 (order dated October 9, 2024).

**B.      The Court Schedules Trial Twice**

On October 17, 2024, the Court scheduled a jury trial on the issue of Mr. Tatintsian's claim of securities fraud.  Dkt. No. 426.  That trial was set to begin on July 21, 2025.  *Id.*  The Court set April 22, 2025 as the deadline for the parties to submit pretrial materials as required by the Court's Individual Rules of Practice in Civil Cases.  *Id.*

As trial drew near, Mr. Vorotyntsev made several requests of the Court premised on an alleged RICO conspiracy involving Mr. Tatintsian, Plaintiff in the matter captioned 1:16-cv-8029 (the "Khmaladze Action"), and other nonparties.  *See* Dkt. Nos. 444, 456.  On May 29, 2025, Mr. Vorotyntsev requested that the upcoming trial be adjourned.  Dkt. No. 471.  Plaintiff consented to that request.  Dkt. No. 474.  On June 2, 2025, the Court, "[c]onsidering the amount of [pretrial] work yet to be completed by the parties," adjourned the trial.  Dkt. No. 476.

On October 27, 2025, the Court once again scheduled a jury trial in this case to begin on March 23, 2026.  Dkt. No. 526 ("Second Trial Order").  The scope of the trial remained the same: whether Mr. Vorotyntsev was liable for securities fraud, and, if so, any amount of damages he owed to Plaintiff Tatintsian.

---

[1] Though not relevant here, Mr. Tatintsian also moved for summary judgment on counterclaims asserted by Shoplink.  *See* Dkt. No. 374.  The Court granted him summary judgment on those counterclaims.  Dkt. No. 403.

### C.    Prior Attempts to Address Issues Not in This Case

On November 28, 2025, Mr. Vorotyntsev requested leave to file a renewed set of pretrial motions. Dkt. No. 532. On December 1, 2025, the Court granted that request and set December 22, 2025 as the deadline for Defendant to file his motions. Dkt. No. 533.

On December 22, 2025, Mr. Vorotyntsev requested leave to file a separate motion for emergency injunctive relief. Dkt. No. 534. That motion sought orders against parties not before the Court on issues unrelated to the sole remaining claim in this case. Dkt. No. 534-5.

On December 30, 2025, the Court denied that request. Dkt. No. 539. The Court made the following observation:

> Mr. Vorotyntsev's submissions are based on what appears to be a profound misunderstanding of the scope of this ligation: it is a vehicle to resolve the claims asserted by the parties in their respective pleadings against the parties to the action. As detailed above, many of those claims have been resolved at the summary judgment stage, and a limited set must be resolved at the two scheduled trials . . . . His proposed claims against third party Nexo [and others] . . . are simply not part of this case. Mr. Vorotyntsev's focus on resolving them through the vehicle of this litigation is misguided. Whether he wishes to pursue such claims in a separate litigation is a separate question. The Court is not going to entertain them here—this case and the Khmaladze Action are limited to the claims pleaded and the parties properly joined in them.

*Id.* at 4.

Mr. Vorotyntsev continued to make requests related to parties not before the Court. *See* Dkt. Nos. 545, 546. The Court once again denied those requests. Dkt. No. 547.

The Court held a status conference on January 29, 2026 to take up several issues related to the trial set to begin on March 23, 2026, including Mr. Vorotyntsev's continued requests related to claims and parties that were not in this case. During that conference, the Court once again reminded Mr. Vorotyntsev that the trial will only concern the issue of whether he is liable to Plaintiff Gary Tatintsian for violations of the securities laws, and, if so, the amount of damages he must pay

Plaintiff. The Court explained that the other issues that Mr. Vorotyntsev seeks to introduce through his requests were not part of this case and would not be the subject of the trial set to begin in less than two months.

### D.    The Motions to Intervene and Amend

On January 29, 2026, Ms. Vorotyntseva moved to intervene pursuant to Federal Rule of Civil Procedure 24. Dkt. No. 565-3 ("Intervene Mem."). She argued that she was entitled to intervene as of right under Rule 24(a)(2) or, in the alternative, that the Court should grant her permission to intervene, *see* Fed. R. Civ. P. 24(b). Intervene Mem. at 5–7. She also argued that intervention would promote judicial economy because it would obviate the need to file a separate action. *Id.* at 7. Finally, she argued that any claims otherwise barred by applicable statutes of limitation should "relate back" to the date Plaintiff filed the initial complaint. *Id.*

In her moving papers, she submitted a proposed complaint in intervention. *See* Dkt. No. 565-4 ("Proposed Intervention Compl."). She sought to bring RICO claims against dozens of named and unnamed defendants, including Plaintiffs in this action and the Khmaladze Action, counsel for Plaintiffs in both actions, former counsel for Mr. Vorotyntsev, and several other individuals that have never been parties or representatives in this case. Proposed Intervention Compl. ¶¶ 7–67.[2] Ms. Vorotyntseva outlined a series of events that she describes as a "pattern of racketeering activity" giving rise to her RICO claims. *Id.* ¶ 47. She alleged that this lawsuit was part of this pattern. *Id.* ¶ 47. However, most of the events alleged to be part of the pattern take place in years after the filing of this lawsuit. *See id.* ¶¶ 48–58 (describing events that took place in late 2016, 2018, 2020, 2021, 2022, 2025, and 2026). Ms. Vorotyntseva also indicated that she intends to move for preliminary injunctive relief should the Court grant her motion to intervene and assert

---

[2] She also sought to bring a claim under 42 U.S.C. § 1983 for violations of her due process rights, premised on acts related to the "sealing and re-attribution of Document 475." *Id.* ¶¶ 68–70.

counterclaims.  Dkt. No. 565-9.

On February 2, 2026, Mr. Vorotyntsev moved to amend his answer to add counterclaims and to join third-party defendants.  *See* Dkt. No. 567-2 ("Amend Mem.").  Though he acknowledged that the amendment was untimely, Mr. Vorotyntsev argued that there was good cause for the untimely amendment.  *Id.* at 14–17.  He also argued that his amendment should be freely given under Federal Rule of Civil Procedure 15(a)(2), and that any claims should relate back to the date of his original answer under Federal Rule of Civil Procedure 15(c).  *Id.* at 17–19, 25–27.  He also argued that joinder of the proposed counterclaim Defendants was proper under Federal Rule of Civil Procedure 20.  *Id.* at 19–22.

His proposed amended answer asserted RICO counterclaims against several defendants—a similar set of defendants Ms. Vorotyntseva's proposed complaint asserts RICO claims against.  *See* Dkt. No. 567-5 ("Proposed Third Amended Ans."); *see also* Proposed Intervention Compl.  Mr. Vorotyntsev also premised his new claims on a series of events that largely take place after this lawsuit began.  *See* Proposed Third Amended Ans. ¶¶  285(c)–285 (g), 285(i)–285(m) (describing events that happened in late 2016, 2018, 2020, 2024, 2025, and 2026).  He also alleged that the conduct giving rise to his claims was "ongoing."  *Id.* ¶ 287.

## II.     DISCUSSION

### A.     Ms. Vorotyntseva's Motion to Intervene

Ms. Vorotyntseva's motion is denied.  The Second Circuit has "explained that intervention is a procedural device that attempts to accommodate two competing policies." *Floyd v. City of New York.*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (quotation and brackets omitted).  "[O]n the one hand," intervention is designed to permit courts to "efficiently administ[er] legal disputes by resolving all related issues in one lawsuit." *Id.* (quotation omitted).  The Second Circuit has cautioned that "on the other hand," permitting parties to intervene haphazardly makes lawsuits

"unnecessarily complex, unwieldy or prolonged." *Id.* (quotation omitted). The Second Circuit has repeatedly emphasized the "fact-intensive nature" of the inquiry a district court must make in resolving a motion to intervene. *Id.*; *see also United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994) ("In resolving the tension that exists between these dual concerns, the particular facts of each case are important . . . .").

Ms. Vorotyntseva's motion is the precise type of application that the Second Circuit has cautioned against. At the time the lawsuit was brought, the case concerned several claims arising out of events that took place between 2015 and 2016. The issues in this case have been narrowed to a single claim arising out of those events. Ms. Vorotyntseva now seeks to bring RICO claims premised on events that took place years after the transactions that gave rise to this lawsuit. *See* Proposed Intervention Compl. It would not be efficient to resolve these new claims in this case. To the contrary, permitting Ms. Vorotyntseva to intervene and add her claims would make what is otherwise a discrete case of alleged securities fraud "unnecessarily complex [and] unwieldy." *Floyd,* 770 F.3d at 1057. It appears that Ms. Vorotyntseva is not seeking to add herself back to this case because she believes that the decision on the remaining securities fraud claim will affect rights being litigated in this case; the claims against her were dismissed years ago. Instead, it appears that her desire to use this litigation as a vehicle to pursue an array of other issues is motivated by a strategic initiative to "prolong[]" these proceedings. *Id.*

Even if Ms. Vorotyntseva's motion to intervene were a genuine attempt to protect her interests in this case, neither the rule allowing intervention as of right nor the rule allowing permissive intervention supports Ms. Vorotyntseva's motion to intervene. *See* Fed. R. Civ. P. 24.

### i.    Intervention as of Right

Ms. Vorotyntseva has not met her burden to demonstrate that she is entitled to intervene as of right.

> Federal Rule of Civil Procedure 24(a) provides for intervention as of right . . . : "On timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

*Floyd.*, 770 F.3d at 1057 (quoting Fed. R. Civ. P. 24(a)(2)) (emphasis and ellipsis omitted).

Thus, "[a] district court must grant an applicant's motion to intervene under Rule 24(a)(2) if (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *Laroe Ests., Inc. v. Town of Chester*, 828 F.3d 60, 66 (2d Cir. 2016), *vacated and remanded on other grounds*, 137 S. Ct. 1645 (2017) (quotation omitted). "[A] failure to satisfy any one of these four requirements is a sufficient ground to deny the application." *Floyd*, 770 F.3d at 1057 (quotation, emphasis, and brackets omitted). "In seeking intervention under this Rule, the proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention." *Kamdem-Ouaffo v. PepsiCo, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016); *see also United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) ("Under Rule 24(a)(2) the purported intervenor must show that its interest is not adequately represented, while under [a different statute], the government bears that burden.").

Ms. Vorotyntseva has not met her burden to demonstrate that her motion is timely. "Whether a motion to intervene is timely is determined within the sound discretion of the trial court from all the circumstances." *Pitney Bowes*, 25 F.3d at 70.

> Timeliness defies precise definition, although it certainly is not confined strictly to chronology. Among the circumstances generally considered are: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or

8

against a finding of timeliness.

*Id.* "It is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000) (quotation and citation omitted).

Ms. Vorotyntseva's failure to intervene after having notice of her interest justifies denial of her motion as untimely. As Ms. Vorotyntseva correctly notes, timeliness is measured from the moment she had notice of her interest in the case. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001). In this case, that moment is easy to ascertain. Ms. Vorotyntseva was named as a defendant when Plaintiff first filed his complaint on September 15, 2016. Compl.[3] Indeed, her moving papers identify her interest as relating to her status as the "original founder" of ShopLink, Intervention Mem. at 5, the very company that Mr. Tatintsian alleged is a "vehicle through which Mikhael Vorotyntsev and his wife, Elena Vorotyntsev, bilked Plaintiff and other investors," Compl. ¶ 2. Reading her submissions with the solicitude due to a *pro se* litigant, Ms. Vorotyntseva has been interested in the outcome of this litigation for nearly a decade.[4] Numerous cases have found that significantly shorter delays were untimely. *See Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 135 (S.D.N.Y. 2016) (collecting cases finding delays as little as eight months were untimely).

The delay would result in prejudice to the existing parties because it would delay resolution of these proceedings. "Case law is clear that if an intervenor attempts to introduce collateral issues in a proceeding, a court may be justified in denying a motion to intervene based on undue delay or prejudice." *S.E.C. v. Callahan*, 2 F. Supp. 3d 427, 438 (E.D.N.Y. 2014) (quotation and brackets

---

[3] Ms. Vorotyntseva suggests that her claims "differ in kind" from Mr. Vorotyntsev's because she "seeks to intervene as a *plaintiff* asserting RICO claims against 22 defendants." Intervention Mem. at 6 (emphasis in original). The Court does not understand Ms. Vorotyntseva to be asserting claims against the sole Defendant in this action, Mr. Vorotyntsev. The only party in this action against whom she seeks to assert claims is Plaintiff Gary Tatintsian. Therefore, the Court construes her motion as a motion to intervene as a defendant.

[4] The Court recognizes that Ms. Vorotyntseva identifies a date in June 2025 as the date when she first learned of her interest. *See* Intervention Mem. That date might be the date at which point she became aware of a fact she understood to be relevant to her RICO claims. It is not, however, the date when she became aware in her interest in this case.

omitted).  Ms. Vorotyntseva proposes to add a broad array of collateral issues to this litigation.

Should the Court grant Ms. Vorotyntseva's motion, the trial set to begin in less than two months

would almost certainly need to be continued.  The Could would need to provide Mr. Tatintsian an

opportunity to be heard on the issues that Ms. Vorotyntseva seeks to introduce in this case.  *See*

Proposed Intervention Compl.  At a minimum, Mr. Tatintsian would need to be provided an

opportunity to answer or otherwise respond to the counterclaims.  *See* Fed. R. Civ. P. 12.  The newly

added defendants would need to be served, retain counsel, and engage in motion practice regarding

the Court's jurisdiction over them and the plausibility of the pleadings.  Following the resolution of

such motions, the Court would need to reopen discovery for the parties to explore what Ms.

Vorotyntseva understands to be a multiple year global conspiracy.  *See* Fed. R. Civ. P. 16.  In effect,

granting Ms. Vorotyntseva's motion would require the Court to restart this case.

In sum, granting the request to intervene at this late stage would require the parties to

expend significant efforts in short order, resulting in a set of competing deadlines that would make

delaying the trial inevitable—not by weeks, but, likely, years.  The parties have been litigating this

case for nearly a decade, and this case has twice been scheduled for trial.  Further delay in resolution

would result in prejudice to both Plaintiff and Defendant.[5]

Though there would be prejudice to the existing parties, the Court does not find that there

will be countervailing prejudice to Ms. Vorotyntseva by denying her motion.  She argues that

denying her motion will prejudice her ability to recover certain cryptocurrency she alleges has been

---

[5] The Court cannot credit the Vorotyntsevs' representations to the contrary.  In the conference held on January 29, 2026, the Vorotyntsevs represented that the claims against the RICO defendants can be addressed "in parallel" to the trial set to begin in under two months on Plaintiff Tatintsian's claims of securities fraud.  The Vorotyntsevs' filings since the conference belie that representation.  For instance, Mr. Vorotyntsev filed a letter indicating that he intends to compel the testimony of Sydney Lanyon at trial on the theory that she "[w]ill be named as a defendant and counter-defendant in both RICO actions."  See Dkt. No. 570.  In a subsequent filing, Mr. Vorotyntsev explicitly stated that he intends to "[s]erve and prosecute [trial] subpoenas that will establish the enterprise's operations at trial."  Dkt. No. 574 at 5 (emphasis added).  The phrase "enterprise's operations" refers to Mr. Vorotyntsev and Ms. Vorotyntseva's claims related to a "nine-year RICO enterprise."  *Id.*  It is therefore apparent that the Vorotyntsevs do intend to make the upcoming trial about the claims they seek to introduce.

frozen by nonparties.  Intervention Mem. at 6.  In particular, she points to an unspecified statute of limitations that will expire "four days after trial begins."  *Id.*  Ms. Vorotyntseva does not provide any reason why she cannot pursue her claims by filing a separate action against the defendants named in her complaint.  The Court observes that the Vorotyntsevs have recently filed a complaint naming Mr. Tatintsian as a defendant in New York State Court, indicating their awareness that other vehicles beyond this action exist to pursue legal claims.  *See* Dkt. No 573 at 4.  Because Ms. Vorotyntseva has presented no rationale for her desire to pursue these claims through the vehicle of this case, the Court views the request—combined with her husband's paired request to amend his answer to pursue similar claims—as a strategic effort to delay resolution of this action.  Therefore, the Court cannot find that Ms. Vorotyntseva will suffer prejudice sufficient to justify granting her motion to intervene.

Accordingly, Ms. Vorotyntseva's motion to intervene as of right is denied.

### ii.        Permissive Intervention

For similar reasons, the Court denies Ms. Vorotyntseva's motion to intervene pursuant to Federal Rule of Civil Procedure 24(b).  "Federal Rule of Civil Procedure 24(b) provides for intervention by permission . . . :  'on timely motion, the court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact.'"  *Floyd*, 770 F.3d at 1057 (quoting Fed. R. Civ. P. 24(b)(1)(B)) (ellipsis, emphasis, and brackets omitted).  "The 'principal consideration' for permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'"  *Battle v. City of New York*, No. 11 CIV. 3599 (RMB), 2012 WL 112242, at *6 (S.D.N.Y. Jan. 12, 2012) (quoting *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)).  "Moreover, it is within the Court's discretion to limit the scope of any intervention."  *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 (LAK), 2011 WL 2150450, at *5 (S.D.N.Y. May 31, 2011) (citing *Stringfellow v. Concerned Neighbors in Action*, 480 U.S.

370, 378 (1987)).  As already discussed at length, intervention will result in further delay in a case that has already lasted nearly a decade.  That delay will prejudice the parties.  Accordingly, the Court denies Ms. Vorotyntseva permission to intervene in this case.

### B. Mr. Vorotyntsev's Motion to Amend

Because Mr. Vorotyntsev has failed to act diligently with respect to amending his answer to add counterclaims and because granting his request would prejudice Plaintiff and unduly extend the litigation, his motion to amend is denied.

In the ACMP, the Court ordered that any motion to amend the pleadings must be filed by June 22, 2019.  *See* ACMP.  Under Federal Rule of Civil Procedure 16, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "A district court has broad discretion in deciding whether good cause exists to amend the scheduling order and reopen discovery."  *Young v. Sw. Airlines Co.*, No. 14-cv-1940 (LDH)(RLM), 2016 WL 3257008, at *2 (E.D.N.Y. May 4, 2016) (quotation omitted).  But the "good cause requirement" is "mandatory."  *In re Adelphia Commc'ns. Corp.*, 452 B.R. 484, 497 (Bankr. S.D.N.Y. 2011) (quotation omitted).  Thus, the Court's "discretion to grant . . . relief" under Rule 16(b)(4) is "limited by" the good cause requirement.  *Rupp v. City of Buffalo*, 328 F.R.D. 69, 71 (W.D.N.Y. 2018) (quotation omitted).

"Rule 16 does not set forth a definition of 'good cause.'"  *Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019).  But "a finding of 'good cause' depends on the diligence of the moving party."  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243, 244 (2d Cir. 2007).  "The party must show that, despite its having exercised diligence, the applicable deadline set in the court's scheduling order could not reasonably have been met."  *Liverpool v. City of New York*, No. 18-cv-1354 (PAE)(BCM), 2020 WL 3057466, at *2 (S.D.N.Y. June 9, 2020) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05-cv3749 (KMW)(DCF), 2009 WL 3467756, at *2 (S.D.N.Y. Oct. 28, 2009)) (internal quotation marks

and alterations omitted).

Diligence is not the only consideration. "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [the opposing party]." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). "In determining what constitutes 'prejudice' courts consider whether the assertion of a new claim would:  (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, No. 1:15-cv-2457 (GHW), 2019 WL 1245013, at *5 (S.D.N.Y. Mar. 18, 2019) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). "[T]he risk of substantial prejudice increases with the passage of time." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 100 (2d Cir. 2019) (quotation and citation omitted).

"In undertaking the good cause inquiry, the Court gives solicitude to [Defendant's] status as a *pro se* litigant." *Langton v. Town of Chester*, No. 14-cv-9474 (NSR)(LMS), 2017 WL 6988708, at *5 (S.D.N.Y. Sept. 26, 2017) (citing *Case v. Clivilles*, No. 12-cv-8122 (TPG), 2016 WL 5818577, at *3 (S.D.N.Y. Oct. 4, 2016)), *aff'd sub nom. Langton v. Town of Chester Library Bd.*, No. 14-cv-9474 (NSR), 2020 WL 2850898 (S.D.N.Y. June 1, 2020). "This factor, however, must be balanced with the understanding that pro se litigants are nevertheless 'expected to make efforts to comply with the procedural rules of the Court.'" *Id.* (quoting *Case*, 2016 WL 5818577, at *3).

Just as the Court found in connection with Mr. Vorotyntsev's previous request to amend his answer, *see* Dkt. No. 425, Mr. Vorotyntsev has not demonstrated diligence in seeking amendments to his pleadings, and allowing amendment now will result in significant prejudice.  Over six and a half years have passed since the deadline set in the ACMP to amend the pleadings.  Discovery has long

13

since closed, and the Court has twice scheduled this case for trial.  Mr. Vorotyntsev has had an

extended period during which to bring in additional claims and additional parties.  Furthermore, as

described in detail above, allowing leave to amend pleadings would significantly prejudice Plaintiff,

as it would effectively restart the action as to new parties and a sweeping set of new claims.  *See*

*Morelli v. Alters*, No. 1:19-CV-10707-GHW, 2020 WL 6508858, at *3 (S.D.N.Y. Nov. 5, 2020) ("The

new counterclaims would risk significantly delaying the resolution of the dispute because the parties

would likely be required to engage in extensive motion practice to test the sufficiency of the new

claims.  The new counterclaims would also require some expansion of discovery." (internal citations

and quotation marks omitted)).

Accordingly, Mr. Vorotyntsev's request to amend his answer is denied.

### C.    The Remining Requests

Mr. Vorotyntsev's remaining requests are denied.  Premised on the theory that this Court

would grant one or both of the Vorotyntsevs' motions, Mr. Vorotyntsev made several requests of

the Court regarding parties the Vorotyntsevs seek to add to this case.  *See* Dkt. No. 570 (asking the

Court to enforce a trial subpoena served on Ms. Sydney Lanyon); Dkt. No. 573 (requesting interim

relief against nonparties affiliated with "Nexo" and requesting leave to serve those parties by

alternative service); Dkt. No. 574 (modifying his request for relief against "Nexo" nonparties).  As

the Court has reminded the Vorotyntsevs multiple times, the Court will not grant requests based on

legal claims against people and organizations that are not pleaded in this case.  The requests listed

above are predicated on Mr. Vorotyntsev's effort to implant such claims into this action.  Therefore,

the Court denies Mr. Vorotyntsev's requests.

*       *       *

The issues to be resolved in this case remain the same as when the Court first scheduled trial

in this matter nearly sixteen months ago.  The trial will concern Plaintiff Tatintsian's allegations of

14

securities fraud against Defendant Vorotyntsev. The trial will not concern any other claim or any other party. Trial is set to begin on March 23, 2026. The Court again encourages the parties to prepare for trial with its limited scope in mind.

## III.    CONCLUSION

For the foregoing reasons, Ms. Vorotyntseva's motion to intervene is denied, and Mr. Vorotyntsev's motion to amend is denied. The remaining requests are denied.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to mail a copy of this order to Defendant by certified mail and to terminate the motions pending at Dkt. Nos. 565, 567, 573, and 574.

SO ORDERED.

Dated: February 12, 2026
        New York, New York

_____
GREGORY H. WOODS
United States District Judge

15