USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/11/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                 :

GARY TATINTSIAN,                  :

                                 :

                  Plaintiff,    :                     1:16-cv-7203-GHW

                                 :

        -v-                       :

                                 :               MEMORANDUM

MIKHAIL VOROTYNTSEV,       :      OPINION & ORDER

                                 :

                  Defendant.    :

                                 :
-------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

Before the Court is Defendant Mikhail Vorotyntsev's motion for the Court to be recused from this case. Because Mr. Vorotyntsev does not offer any facts demonstrating that a reasonable person knowing all the facts would conclude that the Court is biased against him or partial to Plaintiff, the Court DENIES his motion for recusal.

## I.     BACKGROUND

This case has a long procedural history that speaks for itself. The Court reviews the history of the motion for recusal here and directs the reader to the docket of this case for a full review of the history and facts.

On March 9, 2026, Mr. Vorotyntsev moved for recusal pursuant to 28 U.S.C. § 455(a) and 28 U.S.C. § 144. Dkt. No. 608 ("Mot"). He filed a brief in support of his motion and a declaration in support of his motion. *Id.*

Mr. Vorotyntsev argued that the record of this case merited recusal. He highlighted several aspects of the record. First, he argued that this Court's application of *Coppedge v. United States*, 369 U.S. 438 (1962) evinced bias because the Court had denied him the *in forma pauperis* status that he believes deprives him of the opportunity to pursue interlocutory appeals of several non-final orders

and evidentiary rulings. Mot. at 3–4. Next, he pointed to several of the Court's rulings on the merits and orders related to administration of this case with which he disagreed. *See id.* at 4–14. Most recently, Mr. Vorotyntsev identified the Court's rulings during the final pretrial conference held on March 3, 2026 as evidence of its partiality because the Court excluded evidence that Mr. Vorotyntsev believes to be of importance to the upcoming trial. *Id.* at 11–12. Mr. Vorotyntsev filed an affidavit alongside his motion. *Id.* at 15–16. In that affidavit, Mr. Vorotyntsev expressed his belief concerning the Court's alleged bias and identified portions of the record that led him to that belief. *Id.*

## II.    LEGAL STANDARD

Section 455 provides the statutory framework for when a presiding judge must "disqualify himself." 28 U.S.C. § 455; *Litovich v. Bank of Am. Corp.*, 106 F.4th 218 (2d Cir. 2024).

Section 455 provides, in relevant part,

> (a) Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455.

Section 455(a) is a "catchall recusal provision." *Litovich*, 106 F.4th at 224 (quotation omitted). It "governs circumstances that constitute an appearance of partiality, even though actual partiality has not been shown." *Id.* (quoting *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003)). "A judge need not have actual knowledge of the disqualifying circumstance for § 455(a) to apply." *Id.* (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859 (1988)). "That is because the purpose of § 455(a) is 'to promote public confidence in the integrity of the judicial process,' which 'does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew.'" *Id.* (quoting *Liljeberg*, 486 U.S. at 860). "Accordingly, the test for whether an appearance of

2

partiality exists 'is an objective one based on what a reasonable person knowing all the facts would conclude.'" *Id.* (quoting *Chase Manhattan Bank*, 343 F.3d at 127).

"To be disqualifying under § 455, 'the alleged bias and prejudice . . . must stem from an extrajudicial source and result in an opinion on the merits *on some basis other than what the judge has learned from his participation in the case.*'" *S.E.C. v. Razmilovic*, 738 F.3d 14, 29 (2d Cir. 2013), *as amended* (Nov. 26, 2013) (quoting *In re Int'l Bus. Machines Corp.*, 618 F.2d 923, 927 (2d Cir. 1980) (internal quotations omitted) (emphasis in original)).

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

"*Not* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.  A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Liteky*, 510 U.S. at 555–56 (emphasis in original).

"Accordingly, recusal is not warranted [under section 455] where the only challenged conduct 'consist[s] of judicial rulings, routine trial administration efforts, and ordinary admonishments . . . to counsel and to witnesses,' where the conduct occurs during judicial proceedings, and where the judge 'neither (1) relie[s] upon knowledge acquired outside such proceedings nor (2) display[s] deep-seated and unequivocal antagonism that would render fair judgment impossible.'" *Razmilovic*, 738 F.3d at 29–30 (quoting *Liteky*, 510 U.S. at 556).

"Section 144 provides, in relevant part,

3

> [w]henever a party to any proceeding in a district court makes and files a timely and *sufficient affidavit* that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144 (emphasis added).

"[T]he mere filing of an affidavit of prejudice does not require referral" to another judge. *LoCascio v. U.S.*, 473 F.3d 493, 498 (2d Cir. 2007). "On the contrary," the Second Circuit has explained, "a judge has an affirmative duty to inquire into the legal sufficiency of such an affidavit and not to disqualify himself unnecessarily, particularly 'where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience.'" *Id.* (quoting *Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978)). "A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *In re Literary Works in Elec. Databases Copyright Litig.*, 509 F.3d 136, 140 (2d Cir. 2007).

"The affidavit must be 'sufficient' to provide 'fair support' for the charge of partiality." *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987). "The analysis is the same under [section 144 and section 455(b)(1)], that is, it looks to extrajudicial conduct as the basis for making such a determination, not conduct which arises in a judicial context." *Id.*; *see also United States v. Lewis*, 617 F. Supp. 3d 110, 113 (E.D.N.Y. 2022). Thus, under section 144, "the substantive standard for recusal is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." *Apple*, 829 F.2d at 333. "If it can be established that the affidavits submitted in support of a recusal motion are both 'timely and sufficient,' then the Court 'must accept them as true for the purpose of ruling upon their legal sufficiency, however unfounded they may be in fact.'" *United States v. Hicks*, Nos. 15-CR-33, 23-CV-166, 2024 WL 162880, at *3 (W.D.N.Y. Jan. 16, 2024) (quoting *United States v. Int'l Bus. Machines*

4

*Corp.*, 475 F. Supp. 1372, 1379 (S.D.N.Y. 1979), *aff'd sub nom. In re Int'l Bus. Machines Corp.*, 618 F.2d 923 (2d Cir. 1980)).

### III.   DISCUSSION

#### A.  Mr. Vorotyntsev's Motion

The Court denies the motion for the Court to recuse itself under either 28 U.S.C. § 455(a) or 28 U.S.C. § 144.  Mr. Vorotyntsev has not met his burden to demonstrate that this Court must recuse itself under 28 U.S.C. § 455(a).  Mr. Vorotyntsev's motion is only premised on judicial rulings and this Court's administration of this case.  When a motion for recusal is premised on judicial rulings or a judge's administration of a case, such "challenged conduct" can only constitute a basis for a motion to recuse where the judge either "relies upon knowledge acquired outside such proceedings" or "displays deep-seated and unequivocal antagonism that would render fair judgment impossible." *Razmilovic*, 738 F.3d at 29–30 (quoting *Liteky*, 510 U.S. at 556).  Mr. Vorotyntsev does not argue that the Court has relied on such outside knowledge.

The Court's prior judgments and orders do not display favoritism or antagonism of the type meriting recusal.  "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion," because "only in the rarest circumstances [do they] evidence the degree of favoritism or antagonism required." *Liteky*, 510 U.S. at 555.  Mr. Vorotyntsev does not point to any facts to suggest that the Court issued decisions that were adverse to him because it is antagonistic to him in such a way that would "render fair judgment impossible." *Razmilovic*, 738 F.3d at 30.  The procedural history of this case does not demonstrate the existence of such facts.

For example, to begin, Mr. Vorotyntsev argues that the Court's decision to grant Plaintiff's application for a temporary restraining order evinced bias because it was issued before discovery was completed.  Mot. at 5.  But that is the process by which provisional relief is regularly obtained.  Mr. Vorotyntsev, represented at the time by retained counsel, had the opportunity to present evidence at

the hearing the Court held in connection with the application for preliminary injunctive relief.  The Court's decision to grant injunctive relief early in the case—before discovery was completed—does not evince bias.

Mr. Vorotyntsev also identifies a number of more recent decisions and orders with which he disagrees.[1]  He does not, however, identify a viable reason why that conduct "evidence[s] the degree of favoritism or antagonism required" to justify recusal.  *Litecky*, 510 U.S. at 555.  Mr. Vorotyntsev argues that the Court's decisions on Plaintiff's pretrial motions during the final pretrial conference in this case are a basis for recusal.  Mot. at 11–12.  It is well established that "[t]he recusal statue was never intended to enable a litigant to oust a judge for adverse rulings made, for such rulings are reviewable otherwise."  *In re Int'l Bus. Machines Corp.*, 618 F.2d 923, 929 (2d Cir. 1980) (citing *Ex Parte American Steel Barrel Co.*, 230 U.S. 35, 44 (1913)).  Mr. Vorotyntsev does not identify any evidence that the Court's rulings were based on any favoritism or antagonism; indeed, the Court denied in part several of Plaintiff's motions *in limine* and clarified that Mr. Vorotyntsev will have the opportunity to present competent evidence relevant to each of the elements that Plaintiff must prove at trial.  *See* Dkt. No. 604.

Mr. Vorotyntsev also argues that bias can be found in the Court's denial of his request to respond to the document filed at Dkt. No. 318.  This argument distorts the facts.  Mr. Vorotyntsev represents that the Court stated that "'no rebuttal' will affect its decisions."  Mot. at 15.  The Court never made such a general statement.  Former counsel for Defendant Shoplink filed a motion to

---

[1] Several of the decisions of which Mr. Vorotyntsev complains were not rulings that applied to him individually.  He identifies the Court's imposition of attorney's fees on former Defendant Shoplink as a condition to vacate a default entered after Shoplink did not meet the Court's deadline to secure new counsel.  Mot. at 5–7.  As the Court has explained multiple times, Mr. Vorotyntsev cannot represent Shoplink.  *See Rowland v. California Men's Colony*, 506 U.S. 194, 201–02 (1993).  Notwithstanding that limitation, the record belies Mr. Vorotyntsev's characterization of events.  The Court, mindful that Mr. Vorotyntsev elected to proceed *pro se*, provided Shoplink "over three months" to secure new counsel and only held Shoplink in default after it missed "multiple deadlines."  Dkt. No. 259 at 14:7–9.  The Court also did not credit Mr. Vorotyntsev's excuse regarding travel for medical purposes because it was premised on Mr. Vorotyntsev's unfounded assumption that the Court would exercise its discretion to grant his request for an extension of the deadline.  *Id.* at 14:10–18.

withdraw.  He provided the Court an *ex parte* letter in connection with the application.  Dkt. No. 318.  The Court did not request that letter, and the Court did not consider that letter in connection with counsel's motion to withdraw.  Dkt. No. 325, 8:10–18.  The Court granted counsel leave to withdraw over five years ago.  In response to Mr. Vorotyntsev's recent request to respond to the *ex parte* letter, the Court commented that "no rebuttal will *affect the Court's decision to grant [counsel] leave to withdraw.*"  *See* Dkt. No. 597 (emphasis added).  The Court advised Mr. Vorotyntsev that any rebuttal to the statements made by counsel in that *ex parte* letter would not result in the Court changing its five-year-old decision and requiring that counsel renew his representation.  The Court did not state that no rebuttal argument would affect any decision by the Court in any context, as Mr. Vorotyntsev's motion implies.

Mr. Vorotyntsev also finds evidence of bias in the fact that this Court has not taken action to protect him and his spouse from the consequences of their asserted indigence.  The Court's lack of action to protect the Vorotyntsevs from the consequences of their asserted indigency, however, is not the result of bias.  The Court is sympathetic to the Vorotyntsevs' asserted indigence.  But this action in this Court is not the forum in which they may seek relief from their creditors as a result of financial pressures.  The United States Bankruptcy Court for the Southern District of New York is one such forum.  The Vorotyntsevs' choice not to pursue relief from an appropriate court for the effects of their purported indigency is not the result of any bias; it is the result of their choice to pursue relief from the consequences of their asserted indigency in the incorrect forum.

Finally, Mr. Vorotyntsev argues that the number of this Court's denials of *in forma pauperis* ("IFP") status for the purposes of appeal evinces bias.  An objective observer would not come to the same conclusion.  The certifications do not foreclose Mr. Vorotyntsev's ability to seek appellate review without the payment of court fees.  Should he desire to do so, he may apply for IFP status in the Court of Appeals.  *See Coppedge v. United States*, 368 U.S. 438, 444–45 (1962).  Accordingly, none

of the judicial conduct of which Mr. Vorotyntsev complains is evidence that "fair judgment" is "impossible." *Razmilovic*, 738 F.3d at 30.[2]

For similar reasons, Mr. Vorotyntsev's affidavit is legally insufficient to merit recusal. An affidavit in support of a motion pursuant to 28 U.S.C. § 144 is insufficient as a matter of law if it only alleges disagreement with judicial decisions. *See Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL-CIO*, 402 F.3d 314, 318 (2d Cir. 2005). Mr. Vorotyntsev's affidavit is insufficient for this reason. His affidavit states his opinion about this Court's alleged bias and points to this Court's orders that he argues support that belief. He does not identify any viable factual basis to establish that the Court's judicial conduct demonstrates "deep-seated and unequivocal antagonism that would render fair judgment impossible." *Razmilovic*, 738 F.3d at 30. Mr. Vorotyntsev's subjective beliefs about this Court's bias "are not facts and cannot serve as the basis for recusal under [section 144]." *Hoatson v. New York Archdiocese*, No. 05 CIV. 10467 (PAC), 2006 WL 3500633, at *2 (S.D.N.Y. Dec. 1, 2006). Accordingly, Mr. Vorotyntsev's affidavit is not sufficient to mandate recusal. *See id.*

### B. The Context for this Motion

This motion should be viewed in the context in which it was made. It has no merit. It is the latest in a series of filings that the Court believes Mr. Vorotyntsev has filed in order to delay or avoid trial. *See, e.g.*, Dkt. Nos. 525, 537, 541, 565, 567, 582, 599, 607. For example, Mr. Vorotyntsev and his wife have recently sought to expand the scope of this litigation to conduct that took place long after the events at issue here through a motion to amend Mr. Vorotyntsev's answer and to permit Ms. Vorotyntseva to intervene. Dkt. Nos. 565, 567. And Mr. Vorotyntsev seeks to delay trial

---

[2] Many of the issues on which he premises his motion for recusal are the subject of pending motions. For instance, he points to his disagreement with this Court's decision not to grant his motion to amend or his wife's motion to intervene. Mot. at 10–11. He has filed a motion for reconsideration of that decision that the Court will resolve in due course. *See* Dkt. No. 603. He also points to conduct by his counsel and counsel for Plaintiff that is the subject of pending motions for sanctions. See Mot. at 6, 10–13. Mr. Vorotyntsev does not identify any facts to suggest that the Court will not resolve these motions through a faithful application of the relevant legal standards, with due consideration to his status as *a pro se* litigant.

pending an investigation of the allegation that a witness list filed by him was, for a period of time, filed in party view only status. Dkt. No. 607.[3]  Through these filings, Mr. Vorotyntsev seeks to delay or avoid the trial.  As the Court has explained on multiple occasions in response to those prior efforts, this case has been trial-ready for over a year and a half.  The Court expects that trial will begin on March 23, 2026.

Mr. Vorotyntsev's motion for recusal is premised in part on mischaracterizations of the record.  The Court cannot address them all here.  The full record speaks for itself.  But two comments at the end of Mr. Vorotyntsev's motion are worthy of brief correction.

First, Mr. Vorotyntsev claims that the Court requires that he testify through a "pre-written script."  Mot. at 11.  That is inaccurate.  During the final pretrial conference, the Court informed Mr. Vorotyntsev that should he seek to testify on his own behalf, he would not be permitted to testify in narrative form.  Instead, he—like any other witness—would testify by answering questions that were written in advance and read to him by an assistant. The Court never required that he write a script containing his testimony for someone else to read.  The Court is skeptical that Mr. Vorotyntsev truly fails to comprehend the Court's directive.  For in a submission prior to the March 3, 2026 conference, Mr. Vorotyntsev quoted verbatim the Court's explanation of the procedure it expected to follow:

> What I expect to do is to require, as many of my colleagues do in *pro se* cases, that you create a script, *a script of the questions that someone*, your friend or other person will read to you that you can then respond to.

Dkt. No. 599 at 7 (emphasis added).  During the conference held on March 3, 2026, the Court adopted that procedure.  During the March 3, 2026 conference, Mr. Vorotyntsev said that he had

---

[3] Mr. Vorotyntsev represents that his witness list was sealed and erroneously attributed to Plaintiff.  He does not provide any facts to suggest that the alleged erroneous docketing of his own witness list resulted in any prejudice to him.

found that friend, indicating his spouse.[4]

At no point did the Court require that Mr. Vorotyntsev write a script of his entire testimony for someone else to read, as he affirms in his motion. Instead, the Court only required that he testify the same way most other witnesses do in civil jury trials—*i.e.*, through responses to prepared questions rather than through a free-wheeling narrative. The Court explained the reasons for that requirement at length during the conference.

Second, Mr. Vorotyntsev mischaracterizes the Court's comments in the conference held on March 3, 2026 concerning the Court's expectations for the parties' conduct during trial. Mr. Vorotyntsev alleges that the Court "warned Defendant that presenting certain evidence would expose him to criminal prosecution." Mot. at 11. That, too, is misleading. During the pretrial conference, the Court advised both parties of the nature of their obligations during the trial. The Court informed the parties of its expectation that—out of respect for the solemn process of a trial and the service of the individuals taking time out of their busy lives to serve on the jury—the parties would maintain decorum and refrain from outbursts that disrupt the proceedings. The Court also relayed its expectation that the parties comply with its orders in full. The Court has observed the conduct of Mr. Vorotyntsev in proceedings before the Court. The Court has also read Mr. Vorotyntsev's written submissions to the Court. Based on the Court's observations of his conduct throughout the course of this litigation, the Court found it prudent to warn the parties that failure to comply with Court orders or engaging in inappropriate behavior during trial could result in the imposition of sanctions, including civil or criminal contempt.

At the conference, the Court also ruled on motions *in limine* and excluded categories of evidence on the basis of its rulings. Parties may not introduce evidence at trial that the Court has

---

[4] The Court allowed Ms. Vorotyntseva to be seated at counsel's table during the final pretrial conference. The Court expects to allow her to be seated at counsel's table in her capacity as Mr. Vorotyntsev's litigation assistant during the trial.

excluded. Should Mr. Vorotyntsev fail to comply with the rulings of the Court, he may be subject to sanctions. However, to avoid that potential consequence, all the parties need to do is to comply with the Court's rulings. That is the expectation of parties in all civil litigation. The Court did not threaten Mr. Vorotyntsev with criminal prosecution should he introduce evidence at trial: he may admit competent evidence at trial subject to the Court's rulings. Mr. Vorotyntsev must, however, comply with the pre-trial evidentiary rulings of the Court.

Finally, like many of Mr. Vorotyntsev's prior filings, this motion is premised in part on an apparent misunderstanding of the stage and scope of this litigation. Mr. Vorotyntsev seeks recusal because this Court has not resolved disputed questions of fact related to Plaintiff's claim of securities fraud. Mot. at 7–10. That is not the role of the Court at this stage of the litigation. There will be a trial that begins on March 23, 2026. As the Court stated on the record during the final pretrial conference, the consequence of the Court's denial of Mr. Tatintsian's motion for summary judgment on his claim of securities fraud is that the Court must hold a trial to resolve that claim. As Mr. Vorotyntsev correctly identifies in his motion for recusal, for Plaintiff to prevail on that claim at trial, he must prove several elements. The jury will be asked to decide if Mr. Tatintsian has met that burden. The Court's choice not to co-opt the jury's role as the finder of fact at this stage of the case does not evince bias.

Similarly, as with many of his recent filings, Mr. Vorotyntsev attempts to raise issues in this motion that are not a part of this case. *See* Mot. at 7, 9–10. The only claim remaining in this case is Mr. Tatintsian's claim of securities fraud. No other claims are in this case. The events giving rise to the claim in this case took place in 2015 and 2016. Ms. Vorotyntseva's contentions regarding her asserted interest in Bitcoin are based on events that took place years later and involve entities and individuals that are not parties to this case. The only parties in this case are Mr. Vorotyntsev and Mr. Tatintsian. None of Ms. Vorotyntseva, nor Nexo, nor Nebeus are parties to this case. The

11

Court's failure to resolve issues related to disputes between them is not evidence of bias.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to recuse is DENIED.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 608 and to mail a copy of this order to Defendant by certified mail.

SO ORDERED.

Dated:  March 11, 2026
           New York, New York

_____
GREGORY H. WOODS
United States District Judge

12