USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/11/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X

GARY TATINTSIAN,                                  :
                                                  :
                                                  :
                              Plaintiff,          :
                                                  :
              -v-                                 :
                                                  :
MIKHAIL VOROTYNTSEV,                              :
                                                  :
                              Defendant.          :
                                                  :
--------------------------------------------------------------------- X

1:16-cv-7203-GHW

MEMORANDUM
OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

Before the Court is Mikhail Vorotyntsev and Elena Vorotyntseva's motion for reconsideration of the Court's denial of his motion to amend his counterclaims and her motion to intervene.  Dkt. No. 578 ("Op.").

The Court assumes the parties' familiarity with the relevant background as summarizing in the Court's prior order, *see* Op., and the Vorotyntsevs' submissions in support of their motion, Dkt. No. 603 ("Mot.").

In their motion for reconsideration, the Vorotyntsevs raise several arguments concerning the legal standard applicable to a motion to intervene and evidence they argue that the Court overlooked.  Because they have failed to meet the high bar for a motion for reconsideration, the motion for reconsideration is DENIED.

I.    **LEGAL STANDARD**

Motions for reconsideration are governed by Local Rule 6.3, which provides that the moving party shall set forth "the matters or controlling decisions which the moving party believes the court

has overlooked."[1]  "Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly."  *Ortega v. Mutt*, No. 14-cv-9703 (JGK), 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017) (quoting *Anwar v. Fairfield Greenwich Ltd.*, 800 F. Supp. 2d 571, 572 (S.D.N.Y. 2011)).  As such, reconsideration should be granted only when the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)).

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Bartlett v. Tribeca Lending Corp.*, No. 18-cv-10279, 2019 WL 1595656, at *1 (S.D.N.Y. Apr. 12, 2019) (noting that a party moving for reconsideration of a previous order must demonstrate that the Court overlooked "controlling law or factual matters" that had been previously put before it).  "A motion to reconsider will not be granted where the moving party is merely trying to relitigate an already decided issue," *Padilla v. Maersk Line, Ltd.*, 636 F. Supp. 2d 256, 258–59 (S.D.N.Y. 2009), because "reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).  Ultimately, "[t]he decision to grant or deny a motion for reconsideration rests within 'the sound

---

[1] Though the Vorotyntsevs also invoke Federal Rule of Procedure 59(e), that rule permits parties to file motions to "alter or amend a judgment."  *See* Fed. R. Civ. P. 59(e).  The Court's order denying Mr. Vorotyntsev's motion to amend and Ms. Vorotyntseva's motion to intervene is not a judgment.  On its face, Rule 59(e) does not apply to the Vorotyntsevs' motion.

discretion of the district court.'" *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 352 F. Supp. 3d 242, 246 (S.D.N.Y. 2019) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

## II.   DISCUSSION

### A.   The Motion for Reconsideration

The Vorotyntsevs' request for reconsideration is denied because they have not identified any legal precedent or issue of fact that the Court overlooked in ruling on their initial requests.  They raised two principal arguments in support of their motion:  first, that the Court did not consider Ms. Vorotyntseva's motion to intervene under Federal Rule of Civil Procedure 24(a) and did not apply the correct legal standard under that rule; and second, that the Court failed to consider certain evidence.  None of the Vorotyntsevs' contentions point to a matter of law or fact overlooked by the Court that would alter the Court's prior conclusions.

The Court correctly applied the standard applicable to intervention as of right under Federal Rule of Civil Procedure 24(a).  The Court specifically addressed Ms. Vorotyntseva's motion to intervene as of right.  Op. at 7 ("Ms. Vorotyntseva has not met her burden to demonstrate that she is entitled to intervene as of right.").  The Court concluded that the motion was untimely.  *See id.* at 9 ("As Ms. Vorotyntseva correctly notes, timeliness is measured from the moment she had notice of her interest *in the case.*" (emphasis added)); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (agreeing with district court's evaluation of timeliness, defined as "the length of [movant's] notice of his interest *in the action.*" (emphasis added)).

Ms. Vorotyntseva's request that the Court reconsider its decision to allow Ms. Vorotyntseva to intervene in this case is based on an errant view regarding the scope of this litigation.  As the Court has explained on multiple occasions, this action has always been limited to Plaintiff's claims arising out of a set of events that took place in 2015 and 2016 related to Plaintiff's investment in Mr. Vorotyntsev's startup company and the Vorotyntsevs' subsequent use of those funds.  *See* Dkt. No.

3

1. Ms. Vorotyntseva was named as a defendant in the original complaint. *Id.* Therefore, when evaluating the timeliness of Ms. Vorotyntseva's request to intervene, the Court used as its benchmark the date of Ms. Vorotyntseva's interest in *this action*—namely, Mr. Tatintsian's allegations against the Vorotyntsevs. *Id.* The Court concluded that Ms. Vorotyntseva's attempts to intervene was untimely because she has had notice of her interest in *this action* for nearly a decade. *See* Op. at 9.

Undaunted by the Court's clear assertions that this litigation is limited in scope to the claims included in the pleadings based on events from a decade ago, Ms. Vorotyntseva asserts that the date of Ms. Vorotyntseva's interest in this action should be benchmarked not from the inception of the case, but from February 11, 2026—the date on which Mr. Vorotyntsev's former counsel, John H. Snyder, submitted a letter regarding her alleged ownership interest in certain Bitcoin. Mot. at 2. This is incorrect, for the simple reason that the issue of Ms. Vorotyntseva's purported ownership of any cryptocurrency is not being litigated in this case. As a result, she has no right to intervene in this action to protect any ownership interest in such assets.

In her motion, Ms. Vorotyntseva does not present any new or overlooked issue of fact regarding prejudice to Ms. Vorotyntseva that undermines the Court's decision to deny her leave to intervene in this action. In its opinion, when evaluating the issue of prejudice to the parties in permitting Ms. Vorotyntseva's request to intervene, the Court wrote the following: "Ms. Vorotyntseva does not provide any reason why she cannot pursue her claims by filing a separate action against the defendants named in her complaint." Op. at 11. In a later order, after reviewing the prejudice to the other parties of permitting her to intervene in this case, the Court wrote: "In contrast, any prejudice to Ms. Vorotyntseva would be minimal because she could bring her claims by filing a separate action." Dkt. No. 584 at 2.

In her motion for reconsideration, Ms. Vorotyntseva states that since the Court's orders, she has taken steps to pursue her asserted ownership interest in Bitcoin in another court. She "applied

to file proceedings in the Commercial Court of England and Wales—the jurisdiction specified in [Nexo's] own Terms of Service." Dkt. No. 589 at 1. Her application was refused. She explains:

> The United Kingdom's Help with Fees scheme—the equivalent of in forma pauperis status—refused to process her application. The £10,000 filing fee (approximately $12,600) is an absolute barrier for a person whose bank balance is negative six dollars. Ms. Vorotyntseva has resubmitted the application with a detailed legal challenge to the refusal, but the outcome remains uncertain and the timeline indefinite.

*Id.* Ms. Vorotyntseva argues that as a result of the initial denial of her application to file an action in England without the need to pay filing fees means that "[t]he factual predicate of this Court's ruling has therefore changed. Ms. Vorotyntseva **cannot** 'bring her claims by filing a separate action.'" *Id.* at 2 (emphasis in original). "She cannot do so in any court that has jurisdiction over Nexo." *Id.*

These facts do not merit reconsideration for several reasons. First, the argument ignores the prejudice to the other parties in the litigation resulting from the delay that would result from granting Ms. Vorotyntseva's motion to intervene. The Court concluded that the delay would be very substantial. The facts that Ms. Vorotyntseva has added to her submission only add support to the Court's conclusion that prejudice to the other parties outweighs any prejudice to her. She states in her motion that her terms of service for her agreement with Nexo require that an action be brought in the Commercial Court of England and Wales—this Court is not the Commercial Court of England and Wales. As a result, the Court believes that the effort involved in litigating the Court's jurisdiction over Nexo, and its authority to resolve her dispute would be great. The Court did not know that Ms. Vorotyntseva's agreement arguably limited her ability to litigate her claims in this Court. But that fact reinforces the Court's conclusion that granting Ms. Vorotyntseva leave to intervene would delay resolution of this case and prejudice the parties to it.

Second, the Court's order was not predicated on the expectation that Ms. Vorotyntseva would successfully be able to pursue a claim in any other court without facing procedural hurdles or financial cost. The Court's order stated that she could pursue her claims elsewhere. The Court did

not assume that she would be able to do so successfully, much less that she could do so without complying with the procedural requirements of the relevant jurisdiction and without any cost to her.[2] That Ms. Vorotyntseva's ability to pursue a separate action might be constrained by procedural requirements or be limited by her financial resources is not a new fact of which the Court was previously unaware.  Ms. Vorotyntseva's interpretation of the Court's order denying her leave to intervene in this case as a promise that she would be able to pursue such an action elsewhere without the need to comply with any applicable procedural requirements without cost is not sound.

Ms. Vorotyntseva's asserted indigence does not justify reconsidering the Court's decision. Mot. at 7 ("On January 29, 2026, Elena Vorotyntseva told this Court she cannot afford food.  Her bank balance is now negative $887.84.").  The Court is sympathetic to Ms. Vorotyntseva's asserted financial straits.  However, this action is not the proper vehicle for her to seek protection from creditors or to secure her assets.  If Ms. Vorotyntseva seeks such protection, she may wish to pursue it separately in an appropriate court.[3]  Her effort to intervene in this case to remedy the effect and causes of her asserted indigence is misguided.

In their motion for reconsideration, the Vorotyntsevs point to evidence that does not have a direct relation to the order they ask the Court to reconsider.  In particular, they point to evidence presented to the Court when it ruled on the temporary restraining order at the outset of this case in 2016, and to a Local Rule 56.1 statement presented to the Court in connection with summary judgment briefing.  Mot. at 4–6.  This motion for reconsideration of the Court's order denying Ms. Vorotyntseva leave to intervene and for Mr. Vorotyntsev to amend his answer is not the proper

---

[2] The Court also takes no position on the merits of Ms. Vorotyntseva's claims.  Contrary to the Vorotyntsevs' representation, Mot. at 4, the Court's decision to deny Ms. Vorotyntseva's motion was not premised on any evaluation of the strength of her claim to ownership of the Bitcoin.  The Court did not consider the merits of Ms. Vorotyntseva's claims in ruling on the motion to intervene; it only denied her request to litigate those claims as part of this action.
[3] Among the resources available to Ms. Vorotyntseva is the website of the United States Bankruptcy Court for the Southern District of New York, which provides resources for *pro se* filers.  *See* https://www.nysb.uscourts.gov/filing-without-attorney (last visited March 8, 2026).

vehicle to relitigate those decisions. The deadline to move for reconsideration of those decisions has long since passed. The upcoming trial provides Mr. Vorotyntsev the opportunity to present admissible evidence to rebut Plaintiff's claim.[4]

In this motion, Mr. Vorotyntsev presented evidence with this motion related to his separate motion for sanctions against Mr. Snyder. *See* Dkt. No. 603-4. That evidence will be considered, as appropriate, in connection with that motion.

Accordingly, the Court—having reviewed the evidence submitted by the Vorotyntsevs—denies the motion for reconsideration.

### B.   The Remaining Requests

The Vorotyntsevs' remaining requests are denied. Ms. Vorotyntseva asks the Court for relief against Nexo related to certain digital assets. Mot. at 8. Again, Nexo is not a party to this case. The Court will not be determining Ms. Vorotyntseva's ownership interest in any assets in this case.

Mr. Vorotyntsev also asks the Court to enforce its prior order and to require counsel for Plaintiff to produce deposition exhibits. Dkt. No. 325. The Court reminds Mr. Vorotyntsev that the order to produce exhibits was directed to former counsel for Shoplink, Mr. Seibert—not counsel for Plaintiff. *See id.* 36:16–23. Therefore, the Court denies that request without prejudice.

Finally, Mr. Vorotyntsev requests that the Court sanction counsel—both their former counsel and counsel for Plaintiff. The Court will separately address any relief against counsel when it resolves Mr. Vorotyntsev's pending motions for sanctions against Mr. Tatintsian and his former lawyer.

## III.   CONCLUSION

For the reasons stated above, the Vorotyntsevs' motion for reconsideration is DENIED.

---

[4] Mr. Vorotyntsev's assertion that he has evidence that refutes Mr. Tatintsian's claim does not justify allowing amendment or intervention to add claims and parties to the case. Granting intervention would delay Mr. Vorotyntsev's opportunity to present any such competent evidence to the finder of fact—namely, the jury.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 603.

SO ORDERED.

Dated: March 11, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge

8