USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/03/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                               :

GARY TATINTSIAN,                         :

                               :

                  Plaintiff,     :          1:16-cv-7203-GHW

                               :

          -v –                 :      MEMORANDUM OPINION &
                               :            ORDER

MIKHAIL VOROTYNTSEV,       :

                Defendant.    :

                               :
----------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

Before the Court are Defendant Mikhail Vorotyntsev's motions for sanctions against Plaintiff Gary Tatintsian, his counsel Kristen Santillo, and his former counsel John H. Snyder. Because none of the conduct of which Mr. Vorotyntsev complains merits the imposition of sanctions, Mr. Vorotyntsev's motions are DENIED in full.

## I.      BACKGROUND

This case has a long procedural history that speaks for itself. The Court reviews the history as is relevant to the motions for sanctions and directs the reader to the docket of this case for a full review of the history and facts.

### A.      Plaintiff and His Counsel

On December 30, 2025, Mr. Vorotyntsev filed a motion for sanctions against Plaintiff and his counsel. Dkt. No. 538 ("Tatintsian Sanctions Mot."). He argued that Plaintiff's conduct during this litigation—including his decision to initiate this lawsuit—merited the imposition of sanctions. *Id.* at 538. He argued that Plaintiff initiated this litigation to "inflict financial harm and facilitate a hostile takeover" of Defendant's startup company Shoplink. *Id.* at 7. In particular, he argued that Mr. Tatintsian initiated this lawsuit alleging securities fraud despite having rejected Mr. Vorotyntsev's offer to buy back Mr. Tatintsian's shares. *Id.* at 2. Mr. Vorotyntsev argued that this

lawsuit was part of a scheme to seize Shoplink's corporate assets, including its intellectual property. *Id.* at 2–4. He also alleged that Mr. Tatintsian filed this lawsuit to prevent him and his wife from accessing certain cryptocurrency assets. *Id.* at 4–5.

On February 19, 2026, Mr. Tatintsian filed his opposition. Dkt. No. 585 ("Tatintsian Opp."). Mr. Tatintsian argued that his decision to initiate this lawsuit was not for an improper purpose, but rather a good-faith effort to vindicate his legal rights. *Id.* at 1. He argued that Mr. Vorotyntsev's motion for sanctions was an improper attempt to litigate issues resolved against him. *Id.* at 1–2. He also argued that issues related to cryptocurrency were not part of this case. *Id.* at 2.

On March 9, 2026, Mr. Vorotyntsev filed his reply. Dkt. No. 609 ("Reply"). He first argued that Mr. Tatintsian had not adequately controverted what Mr. Vorotyntsev argued were the factual bases for sanctions. *Id.* at 2–4. This included, among other allegations, that counsel for Mr. Tatintsian had concealed certain evidence and that counsel had not complied with a Court order, resulting in an entry of default against Shoplink. *Id.*

### B. Mr. Snyder

On July 14, 2025, Mr. Snyder entered a notice of appearance in this case on behalf of Mr. Vorotyntsev and Shoplink. Dkt. No. 499.

Mr. Snyder and Mr. Vorotyntsev's attorney-client relationship was brief, but contentious. On September 11, 2025, Mr. Vorotyntev submitted a letter to the Court via email. Dkt. No. 520. In that letter, he accused Mr. Snyder of misconduct in connection with his representation, including "mishandling of evidence," "unauthorized settlement activity," and "extortionate fee demands." *Id.* The Court scheduled a conference to discuss that communication to take place on September 16, 2025. Dkt. No. 504.

On September 15, 2025, Mr. Snyder filed a letter requesting an adjournment of the conference. Dkt. No. 505. In that letter, he represented that he "continue[d] to zealously advocate

2

for [his] clients' best interests." *Id.* He also stated that he was "working to bring about a global resolution" to this case and the case captioned 1:16-cv-8029. *Id.* The Court adjourned the conference *sine die.* Dkt. No. 506.

On September 17, 2025, Mr. Vorotyntsev emailed the Court another letter. Dkt. No. 521. In that communication, he repeated several of his prior allegations. *Id.* He also alleged that Mr. Snyder was colluding with Plaintiff. *Id.* To address Mr. Vorotyntsev's communications, the Court scheduled a conference to take place on September 24, 2025. Dkt. No. 508.

On September 18, 2025, Mr. Vorotyntsev informed the Court that he had terminated his relationship with Mr. Snyder. Dkt. No. 509.

On September 25, 2025, Mr. Snyder moved to withdraw. Dkt. No. 514. Mr. Snyder affirmed that his relationship with Mr. Vorotyntsev had irretrievably broken down and that Mr. Vorotyntsev had terminated him as counsel. Dkt. No. 516. He also asserted a charging lien for unpaid legal fees. *Id.* ¶ 10. On September 30, 2025, the Court granted that motion. Dkt. No. 519.

On December 30, 2025, Mr. Vorotyntsev moved for sanctions against Mr. Snyder. Dkt. No. 542 ("Snyder Sanctions Mot."). He argued that Mr. Snyder's conduct during his representation of Mr. Vorotyntsev and Shoplink merited the imposition of sanctions. *Id.* First, he argued that Mr. Snyder mishandled his retainer and "shielded himself from accountability" by hiring an assistant who did not have legal training. *Id.* at 2. He alleged that Mr. Snyder "falsely accus[ed]" Mr. Vorotyntsev for failing to pay his legal fees and that Mr. Snyder then, in bad faith, attempted to modify the terms of their engagement into a contingency fee arrangement with various conditions. *Id.* at 2–4. Mr. Vorotyntsev alleged that his wife, Ms. Vorotyntseva, then terminated Mr. Snyder "on behalf of the family" on September 11, 2025. *Id.* at 4. He argued that Mr. Snyder's September 15 2025 attempts he argued that Mr. Snyder's attempts to modify the terms of their engagement agreement constituted extortion. *Id.* at 8–9.

On January 29, 2026, the Court ordered Mr. Snyder to file a letter informing the Court of his views on his ethical obligations and attorney-client privilege and the effect, if any, of Mr. Vorotyntsev's filing his motion for sanctions on those obligations. Dkt. No. 566. Mr. Snyder filed that letter *in camera* after having been granted leave by the Court. *See* Dkt. No. 571. Mr. Snyder copied Mr. Vorotyntsev on those communications. *Id.*

On February 17, 2026, Mr. Vorotyntsev responded to Mr. Snyder's letter on the public docket. Dkt. No. 581 ("Vorotyntsev Resp."). In that submission, he elaborated on his accusations of misconduct. First, he argued that Mr. Snyder had been terminated on September 11, 2025, and that Mr. Snyder's September 15, 2025 representation that he continued to represent Mr. Vorotyntsev was false. *Id.* at 3; *see also* Dkt. No. 581-1 at 2–3. Second, he argued that Mr. Snyder's post-termination conduct supported an inference that Mr. Snyder's objective was not zealous representation, but rather to gain access to certain cryptocurrency assets. Vorotyntsev Resp. at 3. Mr. Vorotyntsev also argued that Mr. Snyder's conduct—including his alleged authorization of the destruction of physical copies of trial exhibits left at the Harvard Club of New York—demonstrated that Mr. Snyder working on behalf of Plaintiff. *Id.* at 5–7.[1]

On February 27, 2026, Mr. Snyder filed his opposition to the motion for sanctions. Dkt. No. 598 ("Snyder Opp."). Mr. Snyder incorporated by reference his *in camera* letter, which he represented "address[ed] the substance of Mr. Vorotyntsev's numerous allegations against [him] and others." *Id.* at 1. He repeated an assertion first made in his *in camera* letter that "Mr. Vorotyntsev cannot prosecute a sanctions motion that rests on attorney-client communications while simultaneously asserting privilege to block examination of those communications." *Id.*

---

[1] Mr. Vorotyntsev construed Mr. Snyder's February 12, 2026 letter as asserting a "privilege defense." Dkt. No 581-1 at 5. He therefore argued that this "defense" does not preclude the motion for sanctions. *Id.* at 5–9. Mr. Vorotyntsev misunderstands attorney-client privilege. The attorney-client privilege obligates Mr. Snyder not to reveal confidential client communications. Only Mr. Vorotyntsev may waive the privilege. The Court construes Mr. Vorotyntsev to be arguing that he consents to the waiver of privilege to the extent necessary to support this motion for sanctions.

On March 9, 2026, Mr. Vorotyntsev submitted his reply in support to of his motion for sanctions. *See* Reply. As it relates to his motion for the Court to impose sanctions on Mr. Snyder, he conceded that he sought to waive the attorney-client privilege to the extent necessary to support this motion for sanctions. *Id.* at 7–8.

## II.    LEGAL STANDARD

### A.    The Court's Inherent Power to Impose Sanctions

"'Courts are vested, by their very creation, with power to impose silence, respect, and decorum[ ] in their presence, and submission to their lawful mandates.'" *Int'l Techs. Marketing Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021) (quoting *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (internal quotations omitted)). "[T]his power . . . springs from the nature of the judicial institution . . . and enables courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (internal quotations omitted). "As part of this inherent power, a court can control admission to its bar and discipline attorneys who appear before it . . . [and] impose monetary sanctions against a litigant (or its counsel) for misconduct." *Id.* "An award of sanctions under the court's inherent power must be based on clear evidence and must be accompanied by a high degree of specificity in the factual findings." *Mickle v. Morin*, 297 F.3d 114, 125–26 (2d Cir. 2002).

"Because of its potency, however, a court's inherent power 'must be exercised with restraint and discretion.'" *Int'l Techs. Mktg.*, 991 F.3d at 368 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). "When it comes to monetary sanctions, that means a court should sanction only 'bad faith, vexatious[ ], [or] wanton[ ]' acts or actions otherwise undertaken for 'oppressive reasons.'" *Id.* Imposing sanctions in this instance serves to "vindicat[e] judicial authority and [make] the wronged party 'whole for expenses caused by his opponent's obstinacy.'" *Int'l Techs.*, 991 F.3d at 367 (quoting *Chambers*, 501 U.S. at 45–46).

"In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (internal citation omitted). "Although both findings must be supported by a high degree of specificity in the factual findings, bad faith may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.* (internal citations omitted). "[B]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) (internal citation omitted). A claim is "entirely without color when it lacks any legal or factual basis. Conversely, a claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Schlaifer Nance & Co. Inc. v. Estate of Warhol*, 194 F.3d 323, 336–37 (2d Cir. 1999) (internal citations omitted) (emphasis removed).

"[S]anctions may be warranted even where bad-faith conduct does not disrupt the litigation before the sanctioning court. This accords with [the] sanctions jurisprudence, which counsels district courts to focus on the purpose rather than the effect of the sanctioned attorney's activities." *Enmon*, 675 F.3d at 145. Furthermore, "[a] court need not wait until a party commits multiple misrepresentations before it may put a stop to the party's chicanery." *Int'l Techs. Mktg.*, 991 F.3d at 369–70. "[T]he effect of and number of misrepresentations that a party makes are perfectly acceptable data points for a court to consider in determining whether—and, perhaps more importantly, *what*—sanctions are warranted. But neither fact should be given dispositive weight." *Id.* (internal citation omitted). Finally, a finding that a litigant successfully defrauded the court is sufficient grounds for imposing monetary sanctions, but it is not necessary. *See Va. Props., LLC v. T-Mobile Ne. LLC*, 865 F.3d 110, 114, 123 (2d Cir. 2017) (concluding that while the plaintiff did not

"commit[ ] a fraud on the court," sanctions in "the award of costs and attorney's fees" could nevertheless still be awarded on remand "to compensate appellees for the failure of [the plaintiff] or its attorneys to make timely disclosures").

### B.    Section 1927

Section 1927 of Title 28 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927. Section 1927 is "indifferent to the equities of a dispute and to the values advanced by the substantive law.  It is concerned only with limiting the abuse of court processes."  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980).

An award made under Section 1927 is akin to an award made pursuant to the Court's inherent powers.  *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir 1986).  However, unlike sanctions imposed pursuant to the court's inherent power, sanctions under Section 1927 may only be imposed against an attorney or person authorized to practice before the courts.  *See* 28 U.S.C. § 1927; *Oliveri*, 803 F.2d at 1273.

"Even where the standard [to impose sanctions] is met, '[t]he Court has discretion to decide whether to impose sanctions under 28 U.S.C. § 1927 and its inherent authority.'"  *Keung v. Patisseries Saines Corp.*, No. 22 CIV. 3725 (JPC), 2023 WL 4487728, at *5 (S.D.N.Y. July 12, 2023) (quoting *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 634 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x 33 (2d Cir. 2017)).

### C.    Rule 11

Federal Rule of Civil Procedure 11(b) requires that an attorney filing a motion certify, "to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Courts maintain a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy. *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008). However, if "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "[I]f the district court concludes that the assertion of a given claim violates Rule 11 . . . the decision whether or not to impose sanctions is a matter for the court's discretion." *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-cv-885, 2019 WL 422613, at *2 (S.D.N.Y. Feb. 4, 2019) (citing *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)). And even if the Court finds that a party has met this high bar, "the decision whether or not to impose sanctions is a matter for the court's discretion." *Perez*, 373 F.3d at 325.

Because he is proceeding *pro se*, the Court must liberally construe Defendant's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89 (2007) ("A document filed pro se is 'to be liberally construed' . . . " (citation omitted)). However, "the liberal treatment afforded to pro se litigants does

not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013).

## III.    DISCUSSION

### A.    Plaintiff and His Counsel

The Court denies Mr. Vorotyntsev's motion for sanctions against Mr. Tatintsian and his counsel.  In support of his motion, Mr. Vorotyntsev argues that Mr. Tatintsian initiated this lawsuit for an improper purpose, that his attorney concealed certain evidence, and that his attorney undertook actions that led to an entry of default against Shoplink.  As addressed at length in the Court's opinion resolving Mr. Vorotyntsev's motion under Federal Rule of Civil Procedure 60, none of these arguments have merit.  Mr. Tatintsian's decision to initiate this lawsuit and his decision to continue to pursue his claims were not for an improper purpose because one of the reasons Mr. Tatintsian pursued this action was to seek "warranted judicial relief."  Dkt. No. 653 ("Rule 60 Op.") at 8–9; *see also Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) ("A party should not be penalized for or deterred from seeking and obtaining warranted judicial relief merely because one of his multiple purposes in seeking that relief may have been improper.").  Therefore, the decision to bring this lawsuit and to pursue the claims therein do not support the imposition of sanctions under either Rule 11, section 1927, or the Court's inherent authority.

Second, Mr. Vorotyntsev's argument that Ms. Santillo concealed evidence is based on a misreading of the record.  Rule 60 Op. at 10–11.  Mr. Vorotyntsev, in his reply, argues that Ms. Santillo concealed evidence in her submissions on Mr. Tatintsian's behalf in connection with Plaintiff's motion for summary judgment.  Reply at 8.  As discussed at length, Ms. Santillo did not conceal evidence.  Rule 60 Op. at 10–11.  To the contrary, the statements made in the Local Rule 56.1 statement had "evidentiary support."  Fed. R. Civ. P. 11(b)(3).  And there is no evidence that Ms. Santillo acted in bad faith as is required for sanctions under section 1927 and the Court's

9

inherent authority. *Oliveri v*, 803 F.2d at 1272. Therefore, there is no basis for which to sanction Ms. Santillo for her submissions in support of Mr. Tatintsian's motion for summary judgment.

Finally, there is no basis to sanction counsel for their purported failure to email Mr. Vorotyntsev a copy of an order. As the Court has discussed previously, Shoplink's default was not caused by the failure of any party to email Mr. Vorotyntsev an order; it was the result of Shoplink's failure to secure counsel. Rule 60 Op. at 10 n.6. The Court's decision to condition vacatur of the default on the imposition of reasonable attorneys' fees was based on a finding that there the failure to obtain counsel was "more than merely negligent or careless," but rather willful. Dkt. No. 259. 14:7– 15:12. And there is no credible evidence that counsel sought to "manufacture" a default in order to vitiate Shoplink's counterclaims.[2] Accordingly, the Court cannot find that there is "clear evidence" to support the imposition of sanctions under its inherent authority or section 1927. *See Mickle*, 297 F.3d at 125–26.

## B.    Mr. Snyder

There is no basis on which to impose sanctions on Mr. Snyder. As a threshold matter, Mr. Vorotyntsev's motion is premised on conduct for which sanctions are not an appropriate remedy. The Court's inherent power to sanction "derives from the fact that courts are vested . . . with power to impose silence, respect, and decorum, *in their presence, and submission to their lawful mandates.*" *Schlaifer Nance & Co., Inc.*, 194 F.3d at 336 (quoting *Chambers*, 501 U.S. at 43) (emphasis added) (internal quotations omitted). Section 1927 "is concerned only with limiting the abuse of court processes." *Id.* at 1273 (quoting *Roadway Express*, 447 U.S. at 762). And Rule 11, by its terms, applies to

---

[2] Indeed, the Court set a deadline of January 24, 2020 for Shoplink to secure counsel. Dkt. No. 223. Plaintiff did not apply for an order to show cause why default judgment should not be entered until February 19, 2020—nearly four weeks later. Dkt. No. 231. As the Court observed, had Shoplink secured counsel prior to this date, Shoplink would have avoided the need for briefing on the order to show cause. Dkt. No. 259 at 15:4–6.

"pleading[s], written motion[s], or other paper[s]" that have been "present[ed] to the court." Fed. R. Civ. P. 11(b).

Much of Mr. Vorotyntsev's motion is not premised on conduct that occurred before this Court or in response to orders before this Court, but on alleged violations of Mr. Snyder's ethical and professional duties. For instance, Mr. Vorotyntsev takes issue with Mr. Snyder's alleged attempts to modify their fee arrangement and Mr. Snyder's alleged decision to allow the Harvard Club to destroy physical copies of exhibits that were assembled in preparation for trial. *See, e.g.*, Reply at 4. He also complains of Mr. Snyder's decision to hire an assistant related to a Shoplink investor. Snyder Sanctions Mot. at 2. Mr. Vorotyntsev also alleges that Mr. Snyder did not attempt to renegotiate the terms of their relationship in good faith. *Id.* at 2–4. Mr. Vorotyntsev argues that Mr. Snyder's conduct was a breach of the latter's duty of loyalty to his client. *Id.* at 5.

A motion for sanctions is not a proper vehicle for Mr. Vorotyntsev to seek relief for what he argues are Mr. Snyder's failures to uphold his professional duties. The fact that this Court presided over the case where Mr. Snyder represented Mr. Vorotyntsev does not obligate the Court to resolve all of Mr. Vorotyntsev's grievances against his former counsel. The proper vehicle to seek relief for Mr. Snyder's asserted "gross professional negligence" is a separate action.[3] Mr. Vorotyntsev is not barred from pursuing such an action.

---

[3] Because the Court does not address this conduct here, the Court declines to reach the parties' arguments concerning the attorney-client privilege first raised in Mr. Snyder's *in camera* letter to the Court.

The Court will also allow that submission to be filed under seal. In *Mirlis v. Greer*, the Second Circuit summarized the three-steps that the Court should follow to determine whether the presumption of public access attaches to a particular document and bars disclosure. 952 F.3d 51 (2d Cir. 2020). First, the Court determines whether the document is a "judicial document"—"one that has been placed before the court by the parties and that is relevant to the performance of the judicial function and useful in the judicial process." *Id.* at 59 (internal quotation marks omitted). Second, the Court "proceeds to 'determine the weight of the presumption of access to that document.'" *Id.* (quoting *United States v. Erie Cty.*, 763 F.3d 235, 239, 241 (2d Cir. 2014)). "The weight to be accorded is 'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). "Finally, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, ands balance those factors against the weight properly accorded the presumption of access." *Id.*

Here, the balance of factors weigh against disclosure. The document has been placed before the Court in connection with the motion for sanctions. However, the weight of the presumption of access is low because the Court

The Court declines to exercise its discretion to impose sanctions on Mr. Snyder for any of his conduct in this litigation.  The only conduct of which Mr. Vorotyntsev complains that can support the imposition of sanctions are Mr. Vorotyntsev's allegations relating to Mr. Snyder's submissions to the Court.  Mr. Vorotyntsev argues that Mr. Snyder's representations in his September 15, 2025 letter were false.[4]  Snyder Sanctions Mot. at 4.  Mr. Vorotyntsev argues that Mr. Snyder's representation that he continued to represent Mr. Vorotyntsev was a knowing misrepresentation because Mr. Vorotyntsev had already terminated him at that time.  *Id.*  Even crediting Mr. Vorotyntsev's assertion, the imposition of sanctions for Mr. Snyder's ill-fated attempt to manage his client's disappointment with his services is not consistent with the Second Circuit's warning that "sanctions must be imposed with caution."  *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1259 (2d Cir. 1996) (construing Rule 11).  Mr. Snyder moved to withdraw ten days after that letter, and only one week after Mr. Vorotyntsev informed the Court that he had terminated his relationship with Mr. Snyder.  *See* Dkt. Nos. 509, 514.  The effect of the letter was that the Court adjourned a status conference, which took place one week later.  *See* Dkt. No. 506.  Mr. Vorotyntsev does not establish how these brief delays—which occurred months before the previously-scheduled trial was set to begin—merit the impositions of any sanctions, much less the wide-ranging monetary and disciplinary sanctions he seeks here.

Accordingly, the Court denies Mr. Vorotyntsev's motion to sanction Mr. Snyder.

---

has not considered the arguments raised therein as a basis for its decision on the motion.  And there is a strong factor that "legitimately counsel[s] against disclosure" of that letter:  the letter concerns and contains several examples of communications between counsel and his client.  Weighed against the low weight of the presumption as to this document, the Court finds that Mr. Snyder's submission may properly be sealed.

[4] Mr. Vorotyntsev also raises several arguments concerning the February 12, 2026 letter.  Because the Court is not addressing the contents of that letter in this opinion and has not considered the letter in resolving any of the issues presented in this case, the Court does not reach those arguments.

## IV.   CONCLUSION

For the reasons stated above, Defendant's motions for sanctions are DENIED.  Mr. Snyder is directed to file his *in camera* letter under seal no later than April 10, 2026, viewable only by him, Mr. Vorotyntsev, and Ms. Vorotyntseva.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to mail a copy of this order to Defendant.

SO ORDERED.

Dated:  April 3, 2026

_____
GREGORY H. WOODS
United States District Judge

13