USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/24/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                         :

GARY TATINTSIAN,                     :
                         :

                Plaintiff,     :            1:16-cv-7203-GHW
                         :

          -v –                :       MEMORANDUM OPINION &
                         :              ORDER

MIKHAIL VOROTYNTSEV,        :
              Defendant.    :
                         :

------------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

      After nearly ten years of litigation, the Clerk of Court entered judgment in this case on March 31, 2026.  Prior to the entry of judgment, the Court granted Plaintiff Gary Tatintsian's motion to dismiss his remaining claim and dismissed outstanding counterclaims without prejudice for failure to prosecute.  The Court also denied several of Mr. Vorotyntsev's attempts to relitigate its prior rulings and introduce irrelevant issues into this case.  These attempts included a motion to intervene filed on behalf of Tennessee anesthesiologist Dr. Kenneth Lanyon and a motion to vacate the Court's order granting summary judgment to Plaintiff on Defendant's counterclaims under Federal Rule of Civil Procedure 60.

      Through a series of recently filed motions, Mr. Vorotyntsev has renewed his attempts to relitigate prior rulings and to introduce new issues into this decade-old case.  Before the Court are his motion to alter judgment under Federal Rule of Civil Procedure 59(e), a renewed motion to intervene on behalf of Dr. Lanyon, a motion for relief from judgment for fraud on the court, and a motion to substitute himself for his company, Shoplink.  For the reasons stated below, the Court DENIES these motions in full.

I.       **BACKGROUND**

      This case has a long procedural history that speaks for itself.  The Court reviews the history

as is relevant to the outstanding motions and directs the reader to the docket of this case for a full

review of the history and facts.

### A.    The Motion to Alter Judgment

On March 17, 2026, the Court dismissed Mr. Tatintsian's remaining claim of securities fraud

on his motion. Dkt. No. 629. Thereafter, the only claims remaining in the case were Mr.

Vorotyntsev and Shoplink's counterclaims against Mr. Younis Zubchevich. Neither party had taken

any action to prosecute these claims for several years. Accordingly, the Court ordered Shoplink to

show cause why those claims should not be dismissed for failure to prosecute under Federal Rule of

Civil Procedure 41. Dkt. No. 630. Mr. Vorotyntsev responded to that order on his own behalf and

on behalf of Shoplink. Dkt. No. 637.

On March 27, 2026, the Court dismissed all claims against Mr. Zubchevich for failure to

prosecute. Dkt. No. 654 ("R41 Op."). In evaluating the effect that Mr. Vorotyntsev's submissions

have had on the congestion of this Court's docket, the Court made the following observation:

> Not only have Mr. Vorotyntsev's submissions on irrelevant issues resulted in significant congestion on this Court's docket, many of his filings demonstrate either a tenuous grasp on reality or a disregard for the truth. As has been previously detailed, Mr. Vorotyntsev often misrepresents or misquotes this Court's comments on the record and in written orders. *See, e.g.*, Dkt. No. 616 at 9–10 (detailing Mr. Vorotyntsev's mischaracterizations of the Court's comments on the record in the final pretrial conference held on March 3, 2026). And in response to the Court's order to show cause, Mr. Vorotyntsev filed a submission purportedly signed by former Shoplink counsel [William A. Thomas]. Second Resp. That submission represented that Mr. Thomas—who has not represented Shoplink in this action for over five years—would be filling a notice of appearance on Shoplink's behalf forthwith. *Id.* It also included an electronic signature bearing Mr. Thomas's name. No notice of appearance has been entered. And Mr. Thomas has strenuously objected to Mr. Vorotyntsev's representation that the former signed or otherwise approved the submission of Mr. Vorotyntsev's response. *See* Dkt. No. 641; Dkt. No. 403, 1:16-cv-8029.

*Id.* at 12. The Court concluded that it was an appropriate exercise of its discretion to dismiss the

claims against Mr. Zubchevich under Federal Rule of Civil Procedure 41. *Id.*

On April 5, 2026, Mr. Vorotyntsev filed a motion to alter judgment under Federal Rule of Civil Procedure 59(e).  Dkt. No. 658 ("R59 Mot.").  He also filed exhibits in support of his application.  Dkt. No. 659.  These exhibits were copies of correspondence between him and Mr. Thomas, who at the time represented Shoplink and affiliated entities (the "Corporate Entities") in the case captioned 1:16-cv-8029 (the "Khmaladze Action").  *See id.*

Mr. Vorotyntsev argued that relief under Rule 59(e) was warranted because of the "new evidence" he proffered or because "manifest injustice" would otherwise result.  R59 Mot. at 2.  Mr. Vorotyntsev argued that the Court's characterization of his filings as evincing a "tenuous grasp on reality" was belied by the evidence he presented.  *Id.*  In particular, he argued that the Court should not credit Mr. Thomas's characterization of his objection because Mr. Thomas's characterization was "post-hoc" and the correspondence establishes Mr. Thomas's enmity toward Mr. Vorotyntsev.  *Id.* at 7–8.  He also argued that "manifest injustice" would result from denying the motion to alter judgment because he was a participant in other proceedings in which the Court's characterization of his filings could be used against him.  *Id.* at 6–7.  Finally, he argued that the Rule 41 dismissal should be "reconsidered" in light of his pending motion to substitute.  *Id.* at 8–9.

**B.     The Motion to Vacate**

On August 6, 2024, the Court granted Plaintiff summary judgment on Shoplink's counterclaims.  *See* Dkt. No. 403.

On January 14, 2026, Mr. Vorotyntsev filed a motion to vacate that order under Federal Rule of Civil Procedure 60.  *See* Dkt. No. 552-1.  He argued that counsel for Plaintiff and counsel for Plaintiffs in the Khmaladze Action had committed fraud on the Court through their Local Civil Rule 56.1 submissions filed in connection with their motions for summary judgment.  *Id.* at 15.  He also argued that Mr. Tatintsian had committed fraud by filing this lawsuit arising out of the loss of his investment in Shoplink because he was not asserting his claims in good faith and because he had

3

separately sued Shoplink's prior counsel asserting claims arising out the same injury.  *Id.* at 15–16.

He also asserted that various "extraordinary circumstances" justified relief from the Court's order.

*Id.* at 16.

On March 27, 2026, the Court denied Mr. Vorotyntsev's motion for relief under Rule 60.

*See* Dkt. No. 653 ("R60 Op.").  The Court held that Mr. Vorotyntsev's motion was untimely and

that it was improper because he could not raise claims on behalf of Shoplink.  *Id.* at 8.  Nonetheless,

the Court proceeded to analyze the purported fraud of which Mr. Vorotyntsev complained.  As it

related to Mr. Tatintsian's decision to sue Mr. Vorotyntsev, the Court stated the following:

> Even crediting [Mr. Vorotyntsev's] allegations, none render Mr. Tatintsian's
> decision to initiate or prosecute this case fraudulent.  "A party should not be
> penalized for or deterred from seeking and obtaining warranted judicial relief merely
> because one of his multiple purposes in seeking that relief may have been improper."
> *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995).  Even if one of Mr.
> Tatintsian's purposes in pursuing this action was improper, it was not fraudulent if
> he was also seeking warranted judicial relief.  Here, the Court found in resolving the
> motion for summary judgment that the undisputed evidence in the record
> demonstrated that Mr. Vorotyntsev made misrepresentations to Mr. Tatintsian in
> connection with his purchase of Shoplink shares.  It therefore appears that one
> purpose of this action was warranted.  The fact that Mr. Vorotyntsev believes that
> Mr. Tatintsian also had other improper motives to harm him or his family does not
> make the filing of this action fraud under Rule 60.

*Id.* at 9; *see also id.* at 9 n.5  (addressing Mr. Vorotyntev's remaining arguments concerning Mr.

Tatintsian's decision to continue prosecuting his claims).

The Court also addressed Mr. Vorotyntsev's allegations of fraud related to the Local Rule

56.1 statements.  The Court concluded that Mr. Vorotyntsev's claims were unsupported by the

record:

> First, he argues that counsel for Mr. Tatintsian concealed the fact that some
> of the purchases the Vorotyntsevs made with Shoplink's funds were returned.  Reply
> at 5.  This is a mischaracterization of the record.  The Local Rule 56.1 statement filed
> alongside Mr. Tatintsian's motion explicitly acknowledged that "the Vorotyntsevs
> returned some items they purchased."  Dkt. No. 376 ¶ 61.  The Rule 56.1 statement
> cited to the same bank statements that Mr. Vorotyntsev now characterizes as
> "concealed."

> Second, he takes issue with Mr. Tatintsian's characterization of Shoplink's patent as "rejected" and "never approved." Reply at 5. He argues that this led the Court to ignore evidence that Mr. Khmaladze assigned Shoplink certain intellectual property. *Id.* This, too, is a distortion of the record. In evaluating the motion for summary judgment on Shoplink's counterclaims, the Court explicitly considered whether an "Asset Purchase Agreement" assigned Shoplink rights to a "patent for [computer] code." Op. at 25 n.10. The Court found that the evidence in the record did not establish that Shoplink had any such rights. *Id.* at 25. It was undisputed that the Agreement only assigned certain intellectual property to another entity, AUM Code. *Id.* at 22. It was also undisputed that only Mr. Vorotyntsev—and not Shoplink—was ever listed as an inventor on any USPTO application. *Id.* And there was no evidence that AUM Code was a wholly-owned subsidiary of Shoplink or that there was any other agreement that would give Shoplink rights to AUM Code's property. *Id.* at 22–24.

R60 Op. at 11. The Court did not address his request for relief from judgment because judgement had not been entered in this case. *Id.* at 6 n.3.

On March 31, 2026, the Clerk of Court entered judgment in this case. *See* Dkt. No. 655. The Clerk entered judgment in Mr. Vorotyntsev's favor on all of Mr. Tatintsian's claims. *Id.* The Clerk entered judgment in Mr. Tatintsian's favor on all of Mr. Vorotyntsev's and Shoplink's counterclaims. *Id.* The Clerk also entered judgment in Mr. Zubchevich's favor on all claims against him. *Id.*

On April 14, 2026, Mr. Vorotyntsev moved for relief from the judgment for fraud on the Court. *See* Dkt. No. 662-1 ("R60 Mot."). In that motion, Mr. Vorotyntsev identified the "fraud at issue" as "a documented, coordinated operation by" counsel for Plaintiff in this case and counsel for Plaintiffs in the Khmaladze Action wherein they "filed materially false Rule 56.1 statements . . . that procured summary judgment dismissing ShopLink's counterclaims." *Id.* at 1. He argued that he was able to assert claims on behalf of Shoplink because Shoplink had assigned all causes of action to him and his wife, Ms. Elena Vorotyntseva. *Id.* at 2. He also reprised his argument that Mr. Tatintsian's decision to proceed with this lawsuit was fraudulent because Mr. Tatintsian also filed a state lawsuit against Shoplink's former counsel asserting claims arising out of his investment in Shoplink. *Id.* at 4.

5

He argued that the evidence in the record demonstrates that he is entitled relief and that, in the alternative, an evidentiary hearing will demonstrate that entitlement to relief. *See, e.g., id.* at 8.

### C.    The "Renewed" Motion to Intervene

On March 22, 2026, Dr. Kenneth Lanyon, an anesthesiologist based in Tennessee and a Shoplink investor, moved to intervene under Federal Rule of Civil Procedure 24. *See* Dkt. No. 640. He argued that he was entitled to intervene as of right under Federal Rule of Civil Procedure 24(a). *Id.*

On March 27, 2026, the Court denied Dr. Lanyon's motion. Dkt. No. 651 ("R41 Op."). The Court concluded that Dr. Lanyon's motion was untimely as required by Rule 24(a):

> Dr. Lanyon's failure to intervene after having notice of his interest justifies denial of his motion as untimely to the extent that it relates to the alleged loss of value of his investment in Shoplink. Dr. Lanyon's first claim appears to rest on a concern that he has been deprived of the value of his investment in Shoplink. According to his declaration, he invested $500,000 in the company between December 2015 and January 2016. Dkt. No. 640-2. The Court understands that Dr. Lanyon has not received that money back from Shoplink. To the extent that this litigation might have provided a vehicle for Dr. Lanyon to bring an action as a result of his lost investment—as Mr. Tatintsian did when he first filed it—he could have done so many years ago. His request to intervene at this late date—after substantial completion of the litigation—is untimely.
>
> Moreover, granting the motion to intervene would prejudice all of the parties. Again, this case is near completion. Dr. Lanyon seeks to insert into this 2016 litigation a series of claims against people who are not parties to it—including counsel for various parties and the Harvard Club. Granting intervention would require that the Court essentially restart the case with brand new parties, and brand new claims. The delay would result in prejudice to the existing parties because it would delay resolution of these proceedings. "Case law is clear that if an intervenor attempts to introduce collateral issues in a proceeding, a court may be justified in denying a motion to intervene based on undue delay or prejudice." *S.E.C. v. Callahan*, 2 F. Supp. 3d 427, 438 (E.D.N.Y. 2014) (quotation and brackets omitted). Dr. Lanyon proposes to add a broad array of collateral issues to this litigation. Granting the motion to intervene at this late stage would essentially restart this litigation as a new action. Further delay in resolution would result in prejudice to all parties to the case. By contrast, should Dr. Lanyon seek to pursue his claims, he has the opportunity to seek to pursue them through a new action. As a result, denial of this motion does not prejudice him.

*Id.* at 4–5.

On April 14, 2026, Mr. Vorotyntsev filed what he described as a "renewed" motion to intervene on Dr. Lanyon's behalf.  Dkt. No. 661 ("Lanyon Mot.").  Mr. Vorotyntsev argued that the Court's decision denying intervention did not correctly apply the timeliness standard under Rule 24(a).  *Id.* at 3.  He argued that Dr. Lanyon's motion was timely because Dr. Lanyon became aware of his injury when the Court declined to consider Mr. Vorotyntsev's motions seeking relief from the Court's summary judgment order.  *Id.* at 4.  Mr. Vorotyntsev argued that the Court should reconsider its prior ruling on Dr. Lanyon's motion to intervene.  *Id.* at 7.  Mr. Vorotyntsev also argued that the Court should grant Dr. Lanyon relief from its prior order under Federal Rule of Civil Procedure 60(b).  *Id.* at 8.

### D.    The Motion to Substitute

On April 14, 2026, Mr. Vorotyntsev filed a motion to substitute himself in place of Shoplink under Federal Rule of Civil Procedure 25(c).  Dkt. No. 663-1 ("Substitution Mot.").  Mr. Vorotyntsev represented that this motion was "identical" to the one previously filed in the Khmaladze Action.  *Id.* at 1.  He argued that Shoplink had assigned all of its claims to him and his wife, Elena Vorotyntseva, and that he assignment was valid under Delaware law.  *Id.* at 2.  He conceded that Shoplink's charter was "voided for non-payment of franchise taxes," but asserted that he had paid the reinstatement filing fee.  *Id.*  He argued that—as a consequence of his payment of the reinstatement filing fee—the assignment was soon to be perfected once Shoplink's charter was reinstated.  *Id.* at 3.  He then reprised the arguments raised in support of his Khmaladze Action motion.  He argued that the Court should exercise its discretion to allow substitution because Shoplink's "inability to retain counsel was caused by the opposing party's own conduct."  *Id.* at 4.  Mr. Vorotyntsev argued that the substitution would also cure an issue the Court has identified in many of his prior submissions:  namely, that Shoplink must proceed through counsel and that Mr. Vorotyntsev cannot bring claims on Shoplink's behalf.  *Id.*  He finally argued that this motion for

7

substitution differed from the motion in the Khmaladze Action because "this motion addresses counterclaims dismissed" in the Court's summary judgment order and because the procedural posture of the actions are different. *Id.* at 6.

## II.    LEGAL STANDARDS

### A.    Rule 59(e) and Local Rule 6.3

Under Federal Rule of Civil Procedure 59(e), within 28 days of an entry of judgment, a party may file "[a] motion to alter or amend a judgment." And Southern District of New York Local Rule 6.3 permits parties to, within 14 days of a court's order, file "a notice of motion for reconsideration or reargument" of that motion. "The standards set forth in both Fed. R. Civ. P. 59(e) and Local Rule 6.3 are identical." *In re New York Comm. Bancorp, Inc., Sec. Litig.,* 244 F.R.D. 156, 159 (E.D.N.Y. 2007). "Motions for reconsideration are . . . committed to the sound discretion of the district court." *Immigrant Def. Project v. U.S. Immigr. and Customs Enf't*, No. 14-cv-6117, 2017 WL 2126839, at *1 (S.D.N.Y. May 16, 2017) (citing cases). "Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly." *Ortega v. Mutt*, No. 14-cv-9703, 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017) (internal quotation omitted).

As such, reconsideration should be granted only when the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2015) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)). Accordingly, "[t]he Second Circuit has stated that '[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied.'" *Mahmud v. Kaufmann*, 496 F. Supp. 2d 266, 270 (S.D.N.Y. 2007) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)) (alterations in *Mahmud*). In particular, "'[a] party making a motion for reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may

then use such a motion to advance new theories or adduce new evidence in response to the court's rulings, much less rehash arguments already made and rejected.'" *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2015) (quoting *Pfizer, Inc. v. Stryker Corp.,* No. 02–CV–8613 (LAK), 2005 WL 383702, at *1 (S.D.N.Y. Feb. 17, 2005)).

### B.    Rule 60

Federal Rule of Civil Procedure 60(b) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . ." Fed. R. Civ. P. 60(b).  Under Rule 60(b)(1), a party may seek relief based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).  "[A] 'mistake' under Rule 60(b)(1) includes a judge's errors of law." *Kemp v. United States*, 596 U.S. 528, 533–34 (2022).

Rule 60(b)(3) permits such relief on the basis of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3).  To obtain relief under this rule, "[t]he moving party must demonstrate by clear and convincing evidence that the adverse party engaged in fraud, misrepresentation, or other misconduct." *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 286 F.Supp.2d 309, 312 (S.D.N.Y. 2003).  "In addition, the moving party must show that this conduct prevented [the movant] from fully and fairly presenting his case." *Id.* (internal quotation omitted).

"Rule 60(b)(6) provides a catchall for 'any other reason that justifies relief'" and is only available "when Rules 60(b)(1) through (b)(5) are inapplicable." *Kemp*, 596 U.S. at 533.  "Even then, 'extraordinary circumstances' must justify reopening" a case. *Id.* (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988)).

"A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).  What constitutes "a reasonable time . . . is to be determined

9

based on 'the particular circumstances of the case,' taking into account the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality." *Thai-Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017) (quoting *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983)).

"Rule 60(b)(1) and Rule 60(b)(6) are 'mutually exclusive,' such 'that any conduct which generally falls under the former cannot stand as a ground for relief under the latter.'" *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 359 (2d Cir. 2023) (quoting *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (internal quotation marks omitted)).  As such, when "a party's Rule 60(b) motion is premised on grounds fairly classified as mistake, inadvertence, or neglect, relief under Rule 60(b)(6) is foreclosed." *Id.* (quoting *Stevens*, 676 F.3d at 67); *see also id.* (explaining that this is a "threshold issue" because "the two provisions are subject to different filing limitations" under Rule 60(c)).  The same is true for Rules 60(b)(2) and (3).  Where a motion is premised on grounds fairly classified as falling within the scope of those rules, relief under Rule 60(b)(6) is foreclosed.  *See Maduakolam v. Columbia University*, 866 F.2d 53, 55 (2d Cir. 1989) ("The court may treat a motion to vacate a prior judgment as having been made under 60(b)(6) only if the other, more specific grounds for relief encompassed by the rule are inapplicable.").

"A denial of a motion to vacate a judgment under Rule 60(b) is reviewed for abuse of discretion . . . ." *Mandala,* 88 F.4th at 359 (internal quotation marks and citations omitted); *see also Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182 ("[T]he decision whether to grant such relief is addressed to the sound discretion of the district court.").  A district court abuses its discretion if its Rule 60(b) "ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Mandala*, 88 F.4th at 359 (internal quotation marks and citation omitted).  "In exercising that discretion [in ruling on a Rule 60(b) motion], courts aim to 'strike[ ] a balance between serving the ends of justice and preserving the finality of judgments.'" *Thai-Lao Lignite*

10

*(Thailand) Co.*, 864 F.3d at 182 (alteration in original) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)).  In short, Rule 60(b) motions "should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened."  *Nemaizer*, 793 F.2d at 61 (internal quotation marks and citations omitted).

"The burden is on the moving party to demonstrate that it is entitled to relief, and courts generally . . . require that the evidence in support of the motion to vacate a final judgment be highly convincing."  *Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182 (internal quotation marks and citations omitted); *accord Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 53 (2d Cir. 2021).  "[B]ecause vacatur under Rule 60(b) is an equitable remedy, courts may deny Rule 60(b) relief if the moving party is found to have acted inequitably."  *Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182.

Rule 60 also explicitly states that the Rule "does not limit a court's power to . . . set aside a judgment for fraud on the court."  Fed. R. Civ. P. 60(d)(3).  "Although both clause (3) and the saving provision of Rule 60(b) provide for relief from a judgment on the basis of fraud, the type of fraud necessary to sustain an independent action attacking the finality of a judgment is narrower in scope than that which is sufficient for relief by timely motion."  *Gleason v. Jandrucko*, 860 F.2d 556, 558 (2d Cir. 1988).  "Indeed, 'fraud upon the court' as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication."  *Id.* at 559.

"It involves 'far more than an injury to an individual litigant' or 'a case of a judgment obtained [simply] with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury.'"  *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 460 (2d Cir. 1994), *on reh'g in part sub nom. Transaero, Inc. v. La Fuerza Aerea Boliviana*, 38 F.3d 648 (2d Cir. 1994) (citing *Gleason*, 860 F.2d at 559).  "The concept embraces 'that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that

11

the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases presented for adjudication.'" *Id.* (quoting *Kupferman v. Consolidated Research & Mfg. Corp.,* 459 F.2d 1072, 1078 (2d Cir. 1972))

Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89 (2007) ("A document filed pro se is 'to be liberally construed' . . . " (citation omitted)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013).

## III.    DISCUSSION

### A.    The Motion to Alter Judgment

Mr. Vorotyntsev does not identify any basis to modify the Court's entry of judgment on the claims against Mr. Zubchevich. Neither the new evidence he submitted alongside his motion nor his arguments concerning manifest injustice justify granting relief under Rule 59. The Court addresses his arguments concerning new evidence and manifest injustice in turn. "[R]econsideration will generally be denied unless the moving party can point to . . . matters . . . that might reasonably be expected to alter the conclusion reached by the Court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Here, the relevant conclusion was the Court's decision to dismiss the remaining claims pending against Mr. Zubchevich.[1]

---

[1] Mr. Vorotyntsev argues that the Court's analysis on the dismissal of the claims against Mr. Zubchevich—in particular, its observations about the truthfulness of Mr. Vorotyntsev's submissions—was unnecessary because the Court entered judgment in his favor. R60 Mot. at 6. While the Court entered judgment in Mr. Vorotyntsev's favor on Mr. Tatintsian claims, Mr. Vorotyntsev and Shoplink had propounded a number of claims against Mr. Zubchevich that remained pending. The Court's analysis was necessary to determine whether those open claims should be dismissed for failure to prosecute. Having dismissed the only remaining claims in this case, the Court entered judgment in Mr. Zubchevich's favor on those claims.

The evidence Mr. Vorotyntsev presents would not alter the Court's conclusion that the balance of the relevant factors favored dismissal. The Court concluded that Mr. Vorotyntsev's numerous submissions on irrelevant issues had resulted in significant congestion on this Court's docket.[2] The Court observed that "not only" had Mr. Vorotyntsev caused significant congestion, his filings also "demonstrate either a tenuous grasp on reality or a disregard for the truth." R41 Op. at 12. The Court identified several examples. Among those was the Court's observation that "Mr. Thomas has strenuously objected to Mr. Vorotyntsev's representation that the former signed or otherwise approved the submission of Mr. Vorotyntsev's response" to the Court's order to show cause directed at Shoplink. *Id.* To rebut that observation, Mr. Vorotyntsev submitted copies of correspondence between him and Mr. Thomas in the months and days leading up to Mr. Thomas's motion to withdraw. *See* Dkt. No. 659-1. That evidence does not bear on the Court's conclusion that Mr. Vorotyntsev's submissions have had an adverse effect on the congestion of this Court's calendar. And as it relates to the Court's observation about Mr. Thomas's objection to Mr. Vorotyntsev's decision to file papers bearing the former's signature, the evidence Mr. Vorotyntsev presents reinforces that observation. *See* Dkt. No. 659-1 at 14 (email from Mr. Thomas to Mr. Vorotyntsev stating that what appears to be a draft response on Shoplink's behalf "should not be filed in [his] name").[3] Accordingly, "new evidence" does not support his request for relief under Federal Rule of Civil Procedure 59(e).

Nor has Mr. Vorotyntsev identified any manifest injustice from the Court's decision. "In the context of a motion for reconsideration, 'manifest injustice' is defined as an error committed by the

---

[2] Mr. Vorotyntsev's submissions after the Clerk's entry of judgment reinforce this conclusion. Mr. Vorotyntsev seeks to revive his claims about the existence of a transnational conspiracy by moving to substitute himself for Shoplink, Dkt. No. 66, and by filing a motion for reconsideration of the Court's decision to deny Dr. Lanyon's motion to intervene, Dkt. No. 661. That Mr. Vorotyntsev continues to press those claims in this case after entry of judgment—despite the existence of another case in which he is asserting those claims—is further support for the Court's decision to dismiss the claims against Mr. Zubchevich.

[3] Mr. Vorotyntsev identifies his awareness of Federal Rule of Civil Procedure 25(c) as new evidence. The existence of Federal Rule of Civil Procedure 25(c) is not evidence. His awareness of its existence is also not evidence.

trial court that is direct, obvious, and observable." *Corpac v. Rubin & Rothman*, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013).

The Court's characterization of his filings as demonstrating "either a tenuous grasp on reality or a disregard for the truth" is not, as Mr. Vorotyntsev argues, "clear error." R59 Mot. at 6–7.  His filing of a submission bearing an electronic signature of Mr. Thomas was only one example of Mr. Vorotyntsev's flexible relationship with the truth. R41 Op. at 12.  The Court's prior opinion also identified occasions where Mr. Vorotyntsev has "misrepresent[ed] or misquote[d] this Court's comments on the record and in written orders." *Id.*

As an example of the submissions that supported the Court's observation that Mr. Vorotyntsev's filings demonstrate a "tenuous grasp on reality," Mr. Vorotyntsev filed a motion asking that the Court enjoin the anticipated multi-billion dollar acquisition of Warner Brothers-Discovery ("WBD") because, he asserted, he should have the opportunity to bid for the company. *See, e.g.*, Dkt. No. 537 at 2.  Mr. Vorotyntsev asserted that "but for" Mr. Tatintsian's alleged misconduct, he "would today be presenting [a mechanism with which to acquire WBD] to WBD's board." *Id.*  Mr. Vorotyntsev's application to freeze a multi-billion dollar transaction so that he could bid on it at a time when he was complaining of his personal poverty reflects a tenuous grasp on reality, for a person with no money could not realistically expect to be able to present a competitive bid in that process.  The docket supports the Court's observations; it is not in error.

Not only does Mr. Vorotyntsev does not establish that the Court's observations of erroneous, his recent submissions provide other examples of mischaracterization of the record.  The Court does not detail them all here but pauses to highlight two.  Mr. Vorotyntsev characterizes the Court's order denying his motion for sanctions against his prior counsel, John Snyder, as providing "judicial confirmation that the attorney conduct [of which he complains] warrants independent adjudication." R59 Mot. at 7.  This is inaccurate; the Court did not opine on the merits of any

claims Mr. Vorotyntsev might have against Mr. Snyder.  Rather, the Court observed Mr.

Vorotyntsev is not barred from pursuing a separate action to seek relief for allegations of failure to

uphold his professional duties.  *See* Dkt. No. 657 at 11.  Mr. Vorotyntsev also argues that Mr.

Thomas's denial of authorization that Mr. Vorotyntsev file a submission on Shoplink's behalf was

"post hoc."  R59 Mot. at 8.  Mr. Vorotyntsev's exhibits belie that characterization.  On March 19,

2026, in response to an order to show case to Shoplink, Mr. Vorotyntsev filed a document bearing

an electronic signature of Mr. Thomas.  In connection with this application for relief under Rule 59,

Mr. Vorotyntsev provides an email from Mr. Thomas dated March 18, 2026—one day prior.  *See*

Dkt. No. 659-1 at 14.  In that email, Mr. Thomas states unequivocally that Mr. Vorotyntsev's

proposed response to the order to show cause "should not be filed in [his] name."  *Id.*  Mr.

Vorotyntsev ignored that instruction and filed a document bearing Mr. Thomas's electronic

signature.  *See* Dkt. No. 637.[4]

In sum, there is no justification for the Court to alter either its ultimate conclusion—that

Shoplink's and Mr. Vorotyntsev's claims against Mr. Zubchevich must be dismissed—or the

subsidiary observations made in reaching that conclusion—they are well-founded from the Court's

review of Mr. Vorotyntsev's submissions.  Accordingly, the Court denies Mr. Vorotyntsev's motion

to alter the judgment in its entirety.

### B.    The Substitution Motion

Mr. Vorotyntsev's motion to substitute is denied.  Mr. Vorotyntsev brings the same motion

for substitution here as he brought in the Khmaladze Action.  *See* Substitution Mot. at 1 (describing

his motion for substitution in this case as "identical" to the one filed in the Khmaladze Action).  For

---

[4] Mr. Vorotyntsev's characterization of Mr. Thomas's objection as a "jurisdictional objection about which docket to file in, not a denial of all involvement" is premised on a flawed understanding of the consequences of Mr. Thomas's continued representation in the Khmaladze Action.  At bottom, Mr. Vorotyntsev's argument is that because Mr. Thomas had not moved to withdraw, Mr. Vorotyntsev was entitled to submit filings bearing Mr. Thomas's signature without his express authorization.  That is simply wrong.

the reasons identified in the Court's order in the Khmaladze Action, that motion is denied.  *See* Dkt.

No. 409, 1:16-cv-8029.  The differences in procedural posture of the motions to substitute further

justify denial of this motion.  The Court has entered judgment in this action, including on claims

dismissed at the summary judgment stage.  *See* Dkt. No. 655.  As described in further detail in this

opinion, Mr. Vorotyntsev's requests that the Court revisit its decisions dismissing Shoplink's

counterclaims have no merit.  And here, too, the Court will not allow Mr. Vorotyntsev to

"circumvent the general rule" that a corporation must proceed through counsel  *Jones v. Niagara*

*Frontier Trans. Authority*, 722 F.2d 20, 22 (2d Cir. 1983).

### C.    The Motion to Vacate

Mr. Vorotyntsev's motion to vacate final judgment for fraud on the Court is denied.  Mr.

Vorotyntsev premises this motion for relief under the Court's inherent authority on the same bases

on which he based his prior request for relief under Federal Rule of Civil Procedure 60.  *See* R60

Mot. at 2 (referencing "Exhibit B to the original Rule 60 motion").  He seeks relief from the Court's

orders granting summary judgment for Plaintiff in this action and Plaintiffs in the Khmaladze Action

on counterclaims brought by corporate entities Mr. Vorotyntsev controls.  *Id.* at 3.  He argues that

counsel for Plaintiff in this action "concealed material facts" in Plaintiff's Local Rule 56.1 filing

submitted in connection with Plaintiff's motion for summary judgment.  *Id.*  Those facts relate to

Shoplink's patent application and Mr. Vorotyntsev's use of Shoplink funds.  *Id.*  He also argues that

counsel for Plaintiffs in the Khmaladze Action made a statement in their Local Rule 56.1 statement

that was "contradicted by the documentary evidence before this Court."  *Id.*  He argues that the

Court's decision to grant summary judgment was premised on these purported fraudulent acts.  *Id.*

Finally, he argues that the decision to pursue this lawsuit was also fraudulent because Plaintiff was

pursuing claims against Shoplink's prior counsel seeking relief for Plaintiff's lost investment.  *Id.* at

4–5.

Mr. Vorotyntsev's request for relief under Rule 60(d)(3) is without merit for the same reason his prior request was without merit. As a threshold matter, he cannot raise claims on Shoplink's behalf. As stated above, the Court will not allow him to circumvent that rule through the vehicle of a motion for substitution.

Even if Mr. Vorotyntsev could raise claims on behalf of Shoplink, the Court has already addressed the arguments he raises in connection with his prior application for relief under Rule 60. In resolving that prior application, the Court considered his arguments that counsel's Local Rule 56.1 submissions were untruthful. R60 Op. at 10–12. The Court concluded that Mr. Vorotyntsev's arguments were unsupported by the record.[5] *Id.* The Court also considered Mr. Vorotyntsev's argument about Mr. Tatintsian's decision to maintain two separate lawsuits. *Id.* at 9 & n.5. The Court concluded that it was not fraud for Mr. Tatintsian to pursue relief for the same injury—the loss of his investment into Shoplink—in two different fora against two sets of defendants. *Id.*

Mr. Vorotyntsev does not offer any reason to deviate from the Court's prior conclusions. He attempts to rebut the Court's conclusion that the statements in Mr. Tatintsian's Local Rule 56.1 statement related to Mr. Vorotyntsev's use of Shoplink's funds were not untrue. He asserts that the Court did "not address the fraud" of "burying in a single conclusory sentence" the fact that Mr. Vorotyntsev and his wife returned some of the items they had allegedly purchased with Shoplink's funds. R60 Mot. at 4. Mr. Vorotyntsev omits that the Court also observed that "[t]he Rule 56.1 statement cited to the same bank statements that Mr. Vorotyntsev now characterizes as 'concealed.'" R60 Op. at 11. At bottom, Mr. Vorotyntsev's argument is that Plaintiff had an obligation to present evidence in the light most favorable to Defendant. That is not their obligation. Under Federal Rule

---

[5] Mr. Vorotyntsev "asks this Court to examine the evidence," including the "specific paragraphs of the 56.1 statements [and] the specific documents in the record that [he alleges] contradict them." R60 Mot. at 7. The Court has examined those statements and those documents. The Court reaches its conclusion that the record does not demonstrate fraud based on its review of those materials. Accordingly, Mr. Vorotyntsev's assertion that the "Court has never examined the evidence" he alleges resulted in fraud is not well-founded. R60 Mot. at 10.

17

of Civil Procedure 56(c), a party must support their factual positions by citing to evidence in the record. *Id.* at 56(c)(1)(A). Plaintiff complied with his obligation and cited to the relevant bank records. Mr. Vorotyntsev had the opportunity to rebut Plaintiff's characterization of the bank records while the parties were litigating the motion for summary judgment. *Id.* The Court, fulfilling its obligations, reviewed the underlying bank records and did not rely on Plaintiff's characterization. *See, e.g.*, Dkt. No. 403 at 5. That Mr. Vorotyntsev disagrees with Plaintiff's framing of the underlying evidence is not a basis to vacate the Court's judgment.

For avoidance of doubt, the Court has considered Mr. Vorotyntsev's claims of fraud on the merits. After reviewing his arguments and the evidence he has submitted in support to of those arguments, the Court has concluded that there is no basis to vacate its prior orders. None of the conduct of which he complains constitutes fraud that would justify the relief he seeks. Therefore, the Court will not vacate any of its prior orders under its inherent authority.

### D.      "Renewed" Motion to Intervene

The Court denies Mr. Vorotyntsev's attempt to request reconsideration of the Court's denial of Dr. Lanyon's motion to intervene. As a threshold matter, Mr. Vorotyntsev cannot represent Dr. Lanyon. "[A] non-attorney is not allowed to represent another individual in federal court litigation without the assistance of counsel." *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009). Mr. Vorotyntsev is not a lawyer. His request that the Court reconsider its prior decision denying Dr. Lanyon's motion to intervene fails for that reason alone.

Mr. Vorotyntsev's request fails for the independent reason that he does not identify any circumstances that would justify reconsidering the Court's decision under Federal Rule of Civil Procedure 60 or under Local Rule 6.3.[6] "[R]econsideration will generally be denied unless the

---

[6] Mr. Vorotyntsev stylizes the motion as a "renewed motion." However, Dr. Lanyon cannot make such a motion at this stage in the case. "[W]here the action in which a litigant seeks to intervene has been discontinued, the motion to intervene is rendered moot." *Kunz v. New York State Comm'n on Jud. Misconduct*, 155 F. App'x 21, 22 (2d Cir. 2005)

18

moving party can point to . . . matters . . . that might reasonably be expected to alter the conclusion reached by the Court." *Shrader*, 70 F.3d at 257. The Court's decision to deny Dr. Lanyon's motion to intervene was premised on his failure to meet the timeliness requirement under Federal Rule of Civil Procedure 24(a). *See* R41 Op. at 4 (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)). The Court held that Dr. Lanyon's motion was untimely he could have pursued his claims related to his lost investment in Shoplink years ago and his delay would prejudice the parties. *Id.* at 4–5. None of the "developments" that Mr. Vorotyntsev identifies alters this conclusion.[7]

For similar reasons, Dr. Lanyon is also not entitled to relief from the Court's order denying his motion under Federal Rule of Civil Procedure 60(b). As described, Mr. Vorotyntsev does not identify any new evidence that justifies relief. *See* Fed. R. Civ. P. 60(b)(2).[8] And no "extraordinary circumstances" exist. *See id.* 60(b)(6).

Mr. Vorotyntsev's arguments in support of his invocation of Federal Rule of Civil Procedure 60(b) misconstrue the reasons for the Court's denial of Dr. Lanyon motion. Mr. Vorotyntsev argues that the entry of judgment support the allegations pleaded in Dr. Lanyon's intervenor complaint—principally, that Mr. Tatintsian's decision to sue Mr. Vorotyntsev was fraudulent. Lanyon Mot. at 8.

---

(summary order). This action has been discontinued, and the Clerk has entered judgment. There is no open case in which Dr. Lanyon can intervene.

[7] Mr. Vorotyntsev argues that the timeliness of Dr. Lanyon's application should be measured from when Dr. Lanyon's "interest was *threatened*." Lanyon Mot. at 3 (emphasis in original); *see also D'Amato v. Deutsche Bank,* 236 F.3d 78, 84 (2d Cir. 2001). Mr. Vorotyntsev misconstrues the rule. In *D'Amato*, the Second Circuit identified the relevant period with which to evaluate timeliness as "how long the applicant had notice of the interest before he made the motion to intervene." *Id.* at 84 (citation and brackets omitted). Mr. Vorotyntsev misstates that requirement as requiring that "timeliness is measured from when the applicant became aware of its interest." Lanyon Mot. at 3. Mr. Vorotyntsev concedes that Dr. Lanyon's interest is the $500,000 he invested into Shoplink. *Id.* at 7. This litigation has, from the vey beginning, concerned another investor's investment into Shoplink and the alleged misuse of that investment. *See* Dkt. No. 1. If Dr. Lanyon sought to protect his own investment, he could have intervened years ago when Shoplink and Mr. Vorotyntsev first propounded their counterclaims alleging that Mr. Tatintsian's wrongful acts had injured Shoplink. Those counterclaims have long been pending in this action, and certainly for years prior to any involvement from Mr. Snyder. Dr. Lanyon's decision to move to intervene over a year after the Court dismissed the remaining counterclaims was untimely.

[8] The Clerk's entry of judgment in this case is not evidence. In any event, Mr. Vorotyntsev mischaracterizes judgment as having been entered "entirely in [his] favor." Lanyon Mot. at 8. While the Clerk did enter judgment in Mr. Vorotyntsev's favor on Mr. Tatintsian's complaint, it entered judgment in Mt. Tatintsian's favor on both Mr. Vorotyntsev's and Shoplink's counterclaims. *See* Dkt. No. 655.

But the Court's denial of Dr. Lanyon's motion was not premised on the Court's view of the merits of his claims. And as the Court explained at length in its order denying Mr. Vorotyntsev's Rule 60 motion following the dismissal of Mr. Tatintsian's final claim, Mr. Tatintsian's decision to initiate this lawsuit was not fraudulent. *See* R60 Op.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion to alter judgment, motion to substitute, motion to vacate judgment for fraud on the court, and his motion to reconsider the Court's denial of Dr. Lanyon's motion to intervene are DENIED.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 658, 661, 662, and 663 mail a copy of this order to Defendant.

SO ORDERED.

Dated:  April 24, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge